UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case N. **01 - 0120**

**CIV - GOLD**

MAGISTRATE JUDGE
SIMONTON

-------------------------------------------------------------------------x

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF
COLORED PEOPLE, INC. by its FLORIDA STATE
CONFERENCE OF BRANCHES, JIMMIE PANNELL, JULIA
STONER, NATALIE CARNEGIE, ERMA J. KELLY, JOHN L.
CHEEVER, JAMES MARSHALL, LILLIE Q. ODOM, WILLIE
STEEN, WALLACE MCDONALD, JERMAINE TERRY,
LORINE WALDEN, EMERY TIMBERLAKE, VALERIE
BUFORD-WELLS, MICHELLE FLOYD, CONSUELO MARIA
GRAHAM, SHERRY EDWARDS, KANDY WELLS, JOANNA
CLARK, JANICE KELLY, PLACIDE DOSSOUS and
RONDRICK ROSE in their own right and as representatives of all
similarly situated citizens and residents of the State of Florida,

        Plaintiffs,

vs.

KATHERINE HARRIS, Secretary of State of Florida; CLAY
ROBERTS, Director of the Florida Division of Elections;
DAVID C. LEAHY, Miami-Dade County Election Supervisor;
MIRIAM OLIPHANT, Broward County Election Supervisor;
JOHN STAFFORD, Duval County Election Supervisor; PAM
IORIO, Hillsborough County Election Supervisor; ION
SANCHO, Leon County Election Supervisor; WILLIAM
COWLES, Orange County Election Supervisor; and DEANIE
LOWE, Volusia County Election Supervisor (all in their official
capacities); and CHOICEPOINT, INC., a Georgia corporation
d/b/a DATABASE TECHNOLOGIES INC.,

        Defendants.

-------------------------------------------------------------------------x

**COMPLAINT -
CLASS ACTION**



## PRELIMINARY STATEMENT

1.      This action is brought by the National Association for the Advancement of Colored People by its Florida State Conference of Branches ("NAACP") on its own behalf and on behalf of its Florida members, and by individual Black voters, whose right to vote in the general election held in the State of Florida on November 7, 2000 was unlawfully denied or abridged.

2.      In 2000, the NAACP made extensive efforts to register new voters and to encourage its members to vote. As a result of the efforts of the NAACP, the NAACP National Voter Fund, and other organizations, turnout among Black voters in Florida increased significantly in the November 7, 2000 general election, compared to recent general elections. However, Black voters were confronted with a multitude of non-uniform election practices that impeded their exercise of the franchise or disenfranchised them. In particular, as a result of the practices complained of in this action, in precincts with substantial numbers of Black voters, there were a disproportionate number of ballots with no vote counted for the office of President of the United States, Black voters were wrongfully purged from official lists of eligible voters, the voter registration applications of Black voters were not processed properly, and registered voters encountered unjustified barriers to voting at their precincts. Such barriers were caused by, *inter alia,* the failure to provide a complete official list of eligible voters at each polling place, inadequate processes for verifying the registration of voters not appearing on precinct lists, and the failure to offer voters who moved within the same county the opportunity to vote by affirmation or affidavit.

3.      Plaintiffs contend that these practices violate the Fourteenth Amendment of the United States Constitution; Section 2 of the Voting Rights Act of 1965, codified at 42 U.S.C. §§ 1973 *et seq.*; the Civil Rights Acts of 1957 and 1960, codified at 42 U.S.C. §§ 1971(a)(1),

2

1971(a)(2)(A) and 1971(a)(2)(B); 42 U.S.C. § 1983; and/or the Florida Voting Rights Act, Fla. Stat. Ann. § 104.0515.

## JURISDICTION

4.    This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202; and by Rules 57 and 65 of the Federal Rules of Civil Procedure.

## VENUE

5.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants DAVID C. LEAHY, Miami-Dade County Election Supervisor; MIRIAM OLIPHANT, Broward County Election Supervisor; and CHOICEPOINT, INC., doing business as DATABASE TECHNOLOGIES INC., reside in this district and the state Defendants may be found in this district.

## PARTIES

**A.**    **The Plaintiffs**

6.    Plaintiff NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, INC. by its FLORIDA STATE CONFERENCE OF BRANCHES ("NAACP") is a non-profit civil rights organization with its headquarters in Baltimore, Maryland. The NAACP has more than 500,000 members nationwide. The Florida State Conference of Branches is comprised of approximately 77 NAACP youth councils, college chapters and adult branches throughout the State of Florida. The NAACP strives to advance the interests of its membership in every area, including the rights of its members and constituency to participate fully in the nomination and election of candidates for elective office. In furtherance of this purpose, the NAACP, through its Florida State Conference of Branches, conducts non-partisan voter registration and education and encourages its

3

members to vote. The NAACP as an organization is aggrieved by Defendants' actions because they significantly impede the NAACP's ability effectively to fulfill its institutional purpose of advancing voter registration and voters' full participation in the electoral process.

7.      Plaintiff NAACP also brings suit on behalf of its individual members in Florida, who have been aggrieved by Defendants' failure to comply with federal constitutional and federal and state statutory guarantees and provisions relating to voting and who would have standing to sue in their own right. These members' individual interests in fully participating in the electoral process are germane to the NAACP's organizational purpose, and neither the claims asserted nor the relief requested herein requires the participation of the NAACP's members in order to vindicate their individual rights. A significant number of NAACP members, who are eligible voters and voted in the November 2000 election, reside in precincts and counties where a disproportionately large number of ballots were not counted in the Presidential election. NAACP members were also among those voters whose names were wrongfully purged from the voter registration lists, and a significant number of its membership were unable to vote or were impeded in voting on election day because of the unlawful practices complained of herein.

8.      Individual named Plaintiffs are Black citizens of Florida who were eligible to register and vote, who were registered voters or who took timely and appropriate steps to register as voters and who sought to vote in the November 7, 2000 general election in the State of Florida but were, as a result of the practices of Defendants complained of herein, denied the opportunity to vote, denied assistance they were entitled to, or were exposed to a significantly higher risk that their votes would not be counted in the official results for the presidential election. Plaintiffs desire to vote and participate in the electoral and political processes in Florida in the future on an equal basis with other

4

residents, and to participate in future elections in which the rudimentary requirements of equal treatment and fundamental fairness are satisfied in voting and counting ballots in Miami-Dade County and throughout the state. The named Plaintiffs bring this action on their own behalf and as representatives for the class of all similarly situated Black citizens.

9. Plaintiff JIMMIE PANNELL is at least 18 years of age. He is a citizen of the United States and a legal resident of the State of Florida and Duval County. Mr. Pannell is Black.

10. Plaintiff JULIA STONER is at least 18 years of age. She is a citizen of the United States and a legal resident of the State of Florida and Duval County. Ms. Stoner is Black.

11. Plaintiff NATALIE CARNEGIE is at least 18 years of age. She is a citizen of the United States and a legal resident of the State of Florida and Hillsborough County. Ms. Carnegie is Black.

12. Plaintiff ERMA J. KELLY is at least 18 years of age. She is a citizen of the United States and a legal resident of the State of Florida and Miami-Dade County. Ms. Kelly is Black.

13. Plaintiff JOHN L. CHEEVER is at least 18 years of age. He is a citizen of the United States and a legal resident of the State of Florida and Miami-Dade County. Mr. Cheever is Black.

14. Plaintiff JAMES MARSHALL is at least 18 years of age. He is a citizen of the United States and a legal resident of the State of Florida and Miami-Dade County. Mr. Marshall is Black.

15. Plaintiff LILLIE Q. ODOM is at least 18 years of age. She is a citizen of the United States and a legal resident of the State of Florida and Miami-Dade County. Ms. Odom is Black.

16. Plaintiff WILLIE STEEN is at least 18 years of age. He is a citizen of the United States and a legal resident of the State of Florida and Hillsborough County. Mr. Steen is Black.

17.     Plaintiff WALLACE MCDONALD is at least 18 years of age. He is a citizen of the United States and a legal resident of the State of Florida and Hillsborough County. Mr. McDonald is Black.

18.     Plaintiff JERMAINE TERRY is at least 18 years of age. He is a citizen of the United States and a legal resident of the State of Florida and Hillsborough County. Mr. Terry is Black.

19.     Plaintiff LORINE WALDEN is at least 18 years of age. She is a citizen of the United States and a legal resident of the State of Florida and Broward County. Ms. Walden is Black.

20.     Plaintiff EMERY TIMBERLAKE is at least 18 years of age. He is a citizen of the United States and a legal resident of the State of Florida and Volusia County. Mr. Timberlake is Black.

21.     Plaintiff VALERIE BUFORD-WELLS is at least 18 years of age. She is a citizen of the United States and a legal resident of the State of Florida and Broward County. Ms. Buford-Wells is Black.

22.     Plaintiff MICHELLE FLOYD is at least 18 years of age. She is a citizen of the United States and a legal resident of the State of Florida and Leon County. Ms. Floyd is Black.

23.     Plaintiff CONSUELO MARIA GRAHAM is at least 18 years of age. She is a citizen of the United States and a legal resident of the State of Florida and Orange County. Ms. Graham is Black.

24.     Plaintiff SHERRY EDWARDS is at least 18 years of age. She is a citizen of the United States and a legal resident of the State of Florida and Hillsborough County. Ms. Edwards is Black.

6

25.     Plaintiff KANDY WELLS is at least 18 years of age. She is a citizen of the United States and a legal resident of the State of Florida and Hillsborough County. Ms. Wells is Black.

26.     Plaintiff JOANNA CLARK is at least 18 years of age. She is a citizen of the United States and a legal resident of the State of Florida and Broward County. Ms. Clark is Black.

27.     Plaintiff JANICE KELLY is at least 18 years of age. She is a citizen of the United States and a legal resident of the State of Florida and Duval County. Ms. Kelly is Black.

28.     Plaintiff PLACIDE DOSSOUS is at least 18 years of age. He is a citizen of the United States and a legal resident of the State of Florida and Broward County. He is Black.

29.     Plaintiff RONDRICK ROSE is at least 18 years of age. He is a citizen of the United States and a legal resident of the State of Florida and Hillsborough County. He is Black.

**B.     Defendants**

30.     Defendant KATHERINE HARRIS is the Secretary of State of Florida. She is sued in her official capacity in connection with actions taken under color of state law. As Secretary of State, Defendant HARRIS is the chief election officer of the State of Florida and has responsibility for general supervision and administration of the election laws. In addition, as Secretary of State she has responsibility for the Division of Elections of Florida's Department of State. She has the responsibility to obtain and maintain uniformity in the application, operation, and interpretation of the election laws, and to provide technical assistance to the supervisors of elections on voting systems. *See* Fla. Stat. Ann. § 97.012. She is also responsible for providing uniform standards for the proper and equitable implementation of the registration laws and coordinating the state's responsibilities under the National Voter Registration Act of 1993, ("NVRA"). *Id.* She also has the duty to adopt rules which establish minimum standards for hardware and software for electronic and

7

electromechanical voting systems, and to adopt rules to achieve and maintain the maximum degree of correctness, impartiality, and efficiency of the procedures for voting, including write-in voting, and counting, tabulating, and recording votes by voting systems used in the State of Florida. *See* Fla. Stat. Ann. § 101.015.

31.     Defendant CLAY ROBERTS is the Director of the Florida Division of Elections. He is sued in his official capacity in connection with actions taken under color of state law. The Division of Elections is responsible for adopting uniform rules for the purchase, use, and sale of voting equipment in the state. *See* Fla. Stat. Ann. § 101.294. In addition, the Director is responsible for the Bureau of Voting Systems Certification within the Division of Elections which by law is required to provide technical support to the county supervisors of elections and which is responsible for voting system standards and certification. *See* Fla. Stat. Ann. § 101.017. Defendant Roberts is also responsible for administration of the statewide central voter file and for contracting with a private entity to compare voter registration lists with other computer databases. *See* Fla. Stat. Ann. § 98.0975.

32.     Defendants DAVID C. LEAHY, MIRIAM OLIPHANT, JOHN STAFFORD, PAM IORIO, ION SANCHO, WILLIAM COWLES, and DEANIE LOWE are the county supervisors of elections for Miami-Dade, Broward, Duval, Hillsborough, Leon, Orange, and Volusia counties, respectively. They are sued in their official capacities in connection with actions taken under color of state law. Miriam Oliphant is the successor to Jane Carroll, who was supervisor of elections in Broward County during, and for 32 years before, the November 2000 election. The county supervisors of elections are the official custodians of the voter registration books in Florida and are responsible for registering voters within their respective geographical jurisdictions. *See* Fla. Stat.

Ann. § 98.015. The county supervisors of elections are required to ensure that all voter registration and list maintenance procedures which they conduct are in compliance with any applicable requirements for that county under the Voting Rights Act of 1965, and that its general registration list maintenance program is uniform, non-discriminatory and in compliance with the Voting Rights Act of 1965. *See* Fla. Stat. Ann. §§ 98.015 and 98.065. In addition, the county supervisors of elections have the duty of appointing election boards for each precinct in the county, providing forms, materials and voting equipment for use on election day, and providing training for election officials. *See* Fla. Stat. Ann. § 102.012.

33.     Defendant CHOICEPOINT, INC. doing business as DATABASE TECHNOLOGIES, INC. ("DBT") is a Georgia corporation with offices in the State of Florida and, pursuant to state law, at all times relevant to the events referred to herein, acted as an agent of the State of Florida in connection with the contract between it and the State that is more fully described below. *See* Fla. Stat. Ann. § 98.0975(3)(b).

## CLASS ACTION ALLEGATIONS

34.     The individual plaintiffs bring this class action on their own behalf and on behalf of all others similarly situated pursuant to Rule 23(a) and  (b) (2) of the Federal Rules of Civil Procedure.

35.     The class which plaintiffs seek to represent consists of all Black citizens of the State of Florida eligible to vote, who were registered voters or who took timely and appropriate steps to register as voters, who sought to vote in the November 7, 2000 general election, and who were denied an equal opportunity to vote and have their votes counted in that election, by the actions, policies and practices of the Defendants, in violation of the Fourteenth Amendment of the United

9

States Constitution, Section 2 of the Voting Rights Act of 1965, codified at 42 U.S.C. § 1973 *et seq.*,

the Civil Rights Acts of 1957 and 1960, codified at 42 U.S.C. §§ 1971(a)(1), 1971(a)(2)(A) and

1971(a)(2)(B), 42 U.S.C. § 1983 and/or the Florida Voting Rights Act, Fla. Stat. Ann. § 104.0515.

36.    The number of Black citizens of Florida who were denied the right to vote in the

November 7, 2000, election, or whose right to vote was abridged or impeded, because of

Defendants' practices complained of herein, is so numerous that joinder of all members is

impracticable.  On information and belief, tens of thousands of ballots in counties and precincts

where substantial numbers of Black citizens reside were not counted in that election. On information

and belief, thousands of Black citizens were denied registration, wrongly purged from the voter rolls,

and denied the opportunity to vote in that election.

37.    There are questions of law and fact common to the class.  These include whether the

Defendants applied qualifications or prerequisites to voting or standards, practices or procedures in

a manner that denied or abridged class members' right to vote in the November 7, 2000 general

election. All members of the class were denied the opportunity to vote, to have their votes recorded

and counted in an equal and non-arbitrary manner, or had their right to vote impaired by one or more

of the actions of the Defendants identified herein.  Additional common questions of law and fact

include, but are not limited to: whether the Defendants applied a method of recording, processing

and tabulating ballots that resulted in the denial of Black voters' right to vote; whether the

Defendants wrongfully purged registered voters from the list of eligible voters; whether the

Defendants' maintenance of lists of "inactive" registered voters, separate from lists of other

registered voters and not available at polling places, operated to deny or abridge registered

voters' right to vote; whether disparities in equipment available at polling places with substantial numbers of Black voters resulted in the denial of Black voters' right to vote; and whether Defendants failed or refused to process and record timely applications for voter registration, and to distribute voter registration cards, so as to deny citizens the right to vote.

38.     The claims of the representative plaintiffs are typical of the claims of the class as a whole.

39.     Plaintiffs can and will fairly and adequately protect the interests of the members of the class.

40.     Plaintiffs are represented by counsel who are familiar with the applicable law, including attorneys of the NAACP, the Lawyers' Committee for Civil Rights Under Law, the NAACP Legal Defense and Educational Fund, People for the American Way Foundation, the American Civil Liberties Union Foundation, the Advancement Project and Williams & Associates. Counsel for plaintiffs have the resources necessary to pursue this litigation and are experienced in class action litigation and litigation involving civil rights.

41.     Class certification pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) is warranted because the Defendants have acted or failed to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

## FACTS

**A.     Arbitrary and Racially Disparate Adverse Impact of Electoral Systems**

42.     Defendant Secretary of State KATHERINE HARRIS is the head of the Department of State, which is required to examine all makes of electronic or electromechanical voting systems to determine if they comply with state law.   Fla. Stat. Ann. § 101.5605.   Defendant CLAY

11

ROBERTS is the Director of the Florida Division of Elections and is responsible for adopting uniform rules for the purchase, use, and sale of voting equipment in the state and for voting system standards and certification. Pursuant to this authority, Defendants Harris and Roberts certified numerous voting systems for use in Florida, including several devices involving the use of "punch-card" ballots. Each county is authorized to select its voting method from the list of systems certified by Defendants Harris and Roberts.

43.     On information and belief, Miami-Dade County, as well as 24 other counties in Florida, i.e., Broward, Collier, DeSoto, Dixie, Duval, Gilchrist, Glades, Hardee, Highlands, Hillsborough, Indian River, Jefferson, Lee, Madison, Marion, Martin, Nassau, Osceola, Palm Beach, Pasco, Pinellas, Sarasota, Sumter, and Wakulla use punch-card balloting machines for voting. Forty-one of Florida's sixty-seven counties use some form of electronic voting system, and one uses manually tabulated paper ballots.

44.     State law requires that voting machines or systems must be capable of and must accurately register or record and count votes cast. Fla. Stat. Ann. §§ 101.28 & 101.5605.

45.     The punch-card balloting systems approved by Defendants Harris and Roberts, unlike other voting systems in use in Florida, have a substantially higher rate of error in recording, processing, and counting ballots than other mechanisms and machinery for voting used in Florida.

46.     In the 2000 presidential election, the percentage of ballots recorded as having no vote (non-votes) in Florida counties using a punch-card system was 3.92%, while the error rate under the optical-scan systems in use elsewhere in Florida was only 1.43%. Thus, for every 10,000 votes cast, punch-card systems result in 250 more non-votes than optical-scan systems. Siegel v. LePore, No. 00-15981, 2000 WL 1781946, *31, *32, *43 (charts C and F) (11th Cir., Dec. 6, 2000).

12

47.     State law prohibits the use of voting systems or machines which permit the voter to cast a simultaneous ballot for two different candidates for a single office.  Fla. Stat. Ann. §§ 101.28 & 101.5606.

48.     Punch-card balloting systems or machines that have been approved by Defendants, unlike some other voting machines or systems in use in Florida, permit the voter to cast a simultaneous ballot for two different candidates for a single office.

49.     State defendants do not have uniform standards or procedures adequate to insure that voters are made aware, prior to the completion of the ballot-casting process, that their ballots appear to contain non-votes or duplicate votes in one or more contests so that they may correct any unintended errors before their votes are tabulated, although some of the electronic voting systems approved for use by defendants incorporate this feature.

50.     Plaintiffs JIMMIE PANNELL, JULIA STONER,  NATALIE CARNEGIE, ERMA J. KELLY, JOHN L. CHEEVER, JAMES MARSHALL and LILLIE Q. ODOM, lawfully registered voters and residents of counties that used punch-card systems, who voted on November 7, 2000, faced a substantially greater risk that their votes would not accurately be recorded or counted than voters who live in counties that did not use punch-card voting systems.

51.     As a result of the acts and omissions of Defendants Harris and Roberts, and their own acts and omissions, election officials in counties in Florida with substantial Black populations have disproportionately selected and continue to use punch-card balloting machines.  As a consequence, Plaintiffs and other Black voters are significantly less likely to have their votes counted and accurately tabulated than other voters in the state.

52.     The use of punch-card voting machines or systems and procedures connected with their use have an adverse impact on Black voters' opportunity to participate in the electoral process and to have their votes counted in Florida, in violation of Section 2 of the Voting Rights Act of 1965.

53.     The use of punch-card voting machines or systems and procedures connected with their use in Miami-Dade County, and in the other counties in the state which use them, deprives Plaintiffs of equal protection and due process by failing to accord equal weight to each vote and equal dignity to each voter throughout the state.

54.     The next statewide election in Florida is scheduled for September, 2002, and upon information and belief, Defendants will conduct those elections in Miami-Dade and the other punch-card counties using punch-card balloting machines unless enjoined by this Court.

**B.     Racial Disparity in Election Administration in Miami-Dade County**

55.     Defendant DAVID C. LEAHY, Supervisor of Elections for Miami-Dade County, is responsible for appointing election boards for each precinct, providing forms, materials, and voting equipment for use on election day, and providing training for election officials.

56.     Precincts in Miami-Dade County with substantial percentages of Black voters had a significantly higher proportion of non-votes in the Presidential election than precincts in the county that are predominantly white.

57.     On information and belief, the number or proportion of voters in these predominantly Black precincts who intended not to cast votes in the Presidential election was not substantially higher than the number or proportion of voters in other precincts within Miami-Dade County who intended not to cast votes in the Presidential election.

14

58.     On information and belief, the high numbers or proportions of non-votes for the office of President in predominantly Black precincts resulted from practices relating to voting machines or systems and balloting procedures implemented by Defendant Leahy and his staff.

59.     Plaintiffs ERMA J. KELLY, JOHN L. CHEEVER, JAMES MARSHALL and LILLIE Q. ODOM are properly registered voters who reside in voting precincts in Miami-Dade County that have substantial percentages of Black voters. They each voted in the general election for the office of President of the United States on November 7, 2000 but are significantly less likely to have had their votes counted and accurately tabulated than voters in predominantly white precincts in Miami-Dade County.

60.     Defendant LEAHY's non-uniform methods of administering the November 7, 2000 general election denied Black voters an equal opportunity to participate in the Presidential election and have their votes counted.

**C.     Wrongful Purging of Voters from Official Lists of Eligible Voters**

61.     Pursuant to state and federal law, Defendants Harris, Roberts and the Supervisors of Elections are charged with administering and maintaining the state's overall list maintenance programs and the state's central voter file. Both state and federal law establish the manner in which the voter registration information must be maintained and the circumstances in which individuals may be purged from the voter rolls.

62.     Defendant Roberts contracted with Defendant DBT to compare information in the state's central voter file with information available in other computer databases and prepare a list of registered voters who were ineligible to vote. Upon information and belief, in the course of carrying out this contract, Defendant DBT wrongfully identified qualified voters as ineligible to vote and

15

communicated that incorrect information to Defendants.

63.     Upon information and belief, Defendants Harris, Roberts and DBT determined the matching and other criteria and sources of information for creating the lists of ineligible voters to be forwarded to county supervisors under Fla. Stat. Ann. § 98.0975. Upon information and belief, Defendants Harris, Roberts and DBT have failed to exercise appropriate diligence and care to ensure and to verify the reliability and accuracy of the list of ineligible voters that was forwarded to each county supervisor pursuant to the state list maintenance program mandated by Fla. Stat. Ann. § 98.0975.

64.     Upon information and belief, prior to the November 7, 2000 general election, Defendants Harris and Roberts failed to require that all county supervisors adopt effective measures to ensure accurate purging of the names of registered voters on the lists provided by the state, and to prevent county election supervisors from purging voters without verifying the information provided in the lists. Upon information and belief, Defendants Harris and Roberts failed to ensure that county supervisors would be able to verify in a timely manner the lists of ineligible voters provided by the state, and to determine whether the information provided by the state was accurate.

65.     Upon information and belief, prior to the November 7, 2000 general election, Defendant county supervisors adopted widely varying approaches to purging the names of registered voters based on the lists provided by the state. Upon information and belief, many Defendant county supervisors failed to verify at all or to verify adequately the information provided by the state, and, as a result, wrongfully purged numerous voters from their official lists of registered voters.

16

66.     Upon information and belief, Defendants Harris and Roberts have failed to provide, require, or enforce uniform standards, and have failed to provide adequate time or resources for county supervisors to verify the lists of ineligible voters that the state forwards to the counties so as to ensure that eligible voters are not wrongly purged from the official lists of registered voters.

67.     Upon information and belief, Defendants' administration of the voter roll purging process required by state and federal law had a disproportionate adverse impact on Black voters and resulted in a larger percentage of Black voters than white voters being wrongly removed from the official lists of registered voters.

68.     Plaintiff WILLIE STEEN has been a properly registered voter living in Hillsborough County, Florida since he was honorably discharged from the military in 1993. He has lived at his current address since December 1999. On November 7, 2000, Mr. Steen went to vote for the first time. When he arrived at his polling place, he was told that he could not vote because he had a felony conviction. Mr. Steen has never been arrested or convicted of any crime. Mr. Steen was improperly denied the right to vote.

69.     Plaintiff WALLACE MCDONALD is a properly registered voter residing in Hillsborough County, Florida. In June 2000 he received a letter from the Hillsborough County Supervisor of Elections informing him that he would be removed from the voter rolls because of a prior felony conviction. Mr. McDonald responded in writing, informing the Supervisor that he has not been convicted of a felony. He also engaged an attorney to search the court records in Hillsborough County. His attorney found no record of a felony conviction. Upon information and belief, although Mr. McDonald's attorney brought this to the attention of the Supervisor of Elections, the Supervisor nevertheless refused to reinstate Mr. McDonald as a registered voter. Mr. McDonald

17

does not have a felony conviction and was improperly denied the right to vote.

70.     Plaintiff JERMAINE TERRY is a properly registered voter living in Hillsborough County, Florida. On November 7, 2000, Mr. Terry was told by Hillsborough County voting officials at the polls that he had been purged from the voter roll, and he was not allowed to vote. There is no valid basis upon which Mr. Terry could have been purged from the voter rolls. On information and belief, records of the Supervisor of Elections of Hillsborough County indicated simply that he was deleted from the rolls pursuant to the National Voter Registration Act. Such deletion was not proper under state or federal law. As a result of this violation, Mr. Terry was improperly denied the right to vote.

71.     Plaintiff LORINE WALDEN has been a registered voter since the 1960s. About one week prior to the November 7, 2000 general election, she went in person to check the status of her registration. The employee at the Supervisor of Elections office checked something on a computer and then informed her that she was not in the system and that she would not be allowed to vote in the general election this year. There is no valid basis upon which Ms. Walden could have been purged from the voter rolls. Because the clerk specifically informed her that she could not vote in this election, Ms. Walden did not try to vote on November 7, 2000, and was effectively and improperly denied the right to vote.

72.     Plaintiff EMERY TIMBERLAKE is a properly registered voter living in Volusia County. Mr. Timberlake requested an absentee ballot for the November 7, 2000 election. He never received a ballot or any other response from the Supervisor of Elections. On November 7, 2000, Mr. Timberlake went to his polling place to vote. Mr. Timberlake gave his voter registration card and driver's license to the clerk. The clerk reviewed the voter roll and told him that he was not on it and

that he could not vote.   No further information or assistance was offered to Mr. Timberlake at that time.   There is no valid basis upon which Mr. Timberlake could have been purged from the voter rolls. On information and belief, the Supervisor of Elections removed Mr. Timberlake from the rolls in 1999 based on an alleged duplicate registration in Alabama.   Mr. Timberlake has never lived in or registered to vote in Alabama.   Mr. Timberlake was improperly denied the right to vote.

73.     Plaintiff VALERIE BUFORD-WELLS is a properly registered voter residing in Broward County.   On November 7, 2000, Ms. Buford-Wells went to her assigned precinct and presented her voter registration card and driver's license to the precinct official.   The official informed her that her name was not on the list of registered voters.   The precinct official tried to call the Broward County Supervisor of Elections office but the line was busy.   There is no valid basis upon which Ms. Buford-Wells could have been purged from the voter rolls.   Ms. Buford-Wells was improperly denied the right to vote.

**D.     Failure to Timely and Correctly Process Voter Registration Applications or Address Information**

74.     Under state and federal law, Florida residents can register to vote or update a registration in person at their county Supervisor of Elections offices or at a number of other state agencies, including the Department of Highway Safety and Motor Vehicles and social services offices, or by mailing a completed application to the Supervisors of Elections office.   Fla. Stat. Ann. §§ 97.053 *et seq*.  Under Florida law, a valid initial voter registration application submitted by mail and bearing a clear postmark is effective as of the date of the postmark. Fla. Stat. Ann. § 97.053(4). If there is no postmark, or if the postmark is unclear, the registration is effective as of the date of receipt, unless it is received within 5 days after the closing of the books for an election, in which case

the effective date of the applicant's registration is the book-closing date.

75.     Upon information and belief, Defendants Harris and Roberts have failed to provide, require, or enforce uniform standards and procedures for the timely, accurate and proper processing of voter registration applications and the registration of voters. On information and belief, Defendants Election Supervisors of Hillsborough, Leon, Orange, Broward, and Duval Counties failed or refused to process many new voter registration applications that were submitted to them prior to the deadline imposed by state law.

76.     Plaintiff MICHELLE FLOYD submitted a completed voter registration application to the Leon County Supervisor of Elections around September 2000. On November 7, 2000 she went to vote at her local polling site at the Florida A&M University Grand Ballroom. Ms. Floyd was listed on the precinct register, but instead of being given a ballot, she was referred to a clerk at another table. The clerk reviewed Ms. Floyd's identification, but then told her she could not vote and she would have to call someone else. Ms. Floyd was never permitted to vote on November 7. Shortly after the election, Ms. Floyd received her voter registration card in the mail. The card listed her registration date as September 5, 2000 and her polling site as the Grand Ballroom, where she went to vote in November. Ms. Floyd was improperly denied the right to vote on November 7, 2000.

77.     Plaintiff CONSUELO MARIA GRAHAM lives with her father in Orange County, Florida. In September 2000, Ms. Graham completed a voter registration application request on-line. On approximately October 3, 2000, she received a voter registration application in the mail for her signature. She signed the application and submitted it to the Orange County Supervisor of Elections. As of October 9, 2000, she had not received a voter registration card, so Ms. Graham completed another voter registration application, which was submitted to the Supervisor of Elections on or

before October 10, 2000, the deadline for voter registration for the November election. On November 7, 2000, Ms. Graham went to the polling site where her father voted in order to cast her ballot. She was told that she was not on the precinct register and she was not allowed to vote. At no time did any poll worker offer to call to inquire as to her eligibility to vote. Ms. Graham was improperly denied the right to vote on November 7, 2000.

78.     Plaintiff SHERRY EDWARDS is a resident of Hillsborough County, Florida. When Ms. Edwards was at the Department of Highway Safety and Motor Vehicles office in September 2000 obtaining a Florida driver's license, she registered to vote. Ms. Edwards never received a response from the Hillsborough County Supervisor of Elections regarding her voter registration application. On November 6, 2000, she contacted the Supervisor of Elections office to inquire about where to vote. She was informed that she was not a registered voter and would not be permitted to vote in the fall general election. On November 7, 2000, Ms. Edwards went to her local polling site to vote. She was not listed on the voter roll and was not allowed to vote. Ms. Edwards was improperly denied the right to vote.

79.     Plaintiff KANDY WELLS completed a voter registration application in 2000 that was personally delivered by Mrs. Wells' father to the Hillsborough County Supervisor of Elections office on October 9, 2000. Mrs. Wells did not receive a voter registration card prior to election day. She believed that her registration application had not been processed since she had not received anything from the Supervisor of Elections, and accordingly, she did not vote on November 7, 2000. On December 7, 2000, Mrs. Wells received a new voter registration card in the mail. The card indicates that it was issued on November 20, 2000. Mrs. Wells was improperly denied registration effective for the November 2000 general election.

21

80.    Plaintiff JOANNA CLARK is a resident of Broward County, Florida who has been registered to vote in Broward County since approximately 1995. In or about October 1999, Ms. Clark moved within the County, from Pompano Beach to Fort Lauderdale. In or about April 2000, Ms. Clark completed a voter's registration change of address form at the Department of Children and Family Services Office in Broward County. Ms. Clark had not received a new voter registration card, so she submitted another change of address form approximately two weeks prior to the November 7, 2000 election. On November 7, 2000, she went to her former polling place at Pompano Beach Middle School. A precinct official informed her that she was not on the voter list. Clark indicated that she had moved to Fort Lauderdale. The official told her that she had to find somewhere in Fort Lauderdale to vote but stated that she did not know the location of her new polling place and had no way of finding out. Clark noticed her name on the voter list and pointed it out to the precinct official. The official replied that she could not allow Clark to vote because that would be considered a felony and she could have Clark arrested. Clark was improperly denied the right to vote in the November 7, 2000 general election.

81.    Plaintiff JANICE KELLY is a resident of Duval County, Florida where she has been a registered voter since approximately 1994. After her initial registration in Duval County, Ms. Kelly moved to a new address within the county. When she moved, Ms. Kelly obtained a new driver's license. In 1998, Ms. Kelly went to vote at her old polling site, as she had never received information about the correct polling site based on her new address. She was permitted to vote at her old polling place and she told the poll workers there that she had moved, and provided them with her new address. Ms. Kelly never received a new voter registration card or information regarding a new polling site. On November 7, 2000, Ms. Kelly went to vote at her old polling site. There was

22

no voting at that site and there were no signs directing voters to another location.  Ms. Kelly then drove to a fire station where she had seen voters lined up earlier in the day, and there she was told that she had to go to a church down the road to vote.  Ms. Kelly rushed to the church, arriving just before 7:00 p.m., but she was told that she could not vote because the polls were closed.  Ms. Kelly was improperly denied the right to vote.

82.     The failure of Defendants Harris and Roberts to provide for and ensure the proper and timely processing of voter registrations and address changes and the failure of Defendants Hillsborough, Leon, Orange, Broward, and Duval county election supervisors to properly and timely process voter registration applications and voters' change of address information submitted before the close of registration for the 2000 general election violates state and federal law and denied Plaintiffs listed in paragraphs 76-81 above the right to vote.

**E.**     **Improper Procedures for Change of Residence and Unequal Access to Inactive List**

83.     Defendants Harris and Roberts and Defendants Election Supervisors in Broward, Hillsborough, and Miami-Dade Counties, among others, failed to comply with the National Voter Registration Act in conducting a program to verify changes of residence by voters and to remove voters ineligible to vote within their respective jurisdictions because of changes of residence.  The manner in which registration rolls and eligible voter lists were maintained by these Defendants for the November 2000 general election denied or abridged the rights of Black voters within these jurisdictions to participate in the election on the same basis as other voters.

84.     Upon information and belief, qualified Black voters in Florida were improperly denied the right to vote as a result of the practices complained of herein in disproportionately greater numbers than white voters, despite the fact that they were properly registered and included in the

category of eligible voters according to the records of the Supervisor of Elections for their respective counties.

85.     Under Defendants' address change verification and voter removal program that was in effect for the 2000 general election, certain registered voters were placed on an "inactive" list and were not included on their respective voting precincts' lists of voters on Election Day.   Although such voters remained registered voters, Defendants did not require that the names of voters on the "inactive" list be kept at the polling place and in most precincts they were not available.  As a result, an "inactive" voter was only able to vote if an official at the polling place contacted the central county office, which in most cases could be done only by telephone, to confirm the elector's eligibility to vote.   Defendants failed to provide or maintain adequate telephone capacity in Supervisors' offices.  As a result, many of the telephone lines were busy for long periods of time on election day and were still busy as of 7 p.m, the poll closing time.  The status of large numbers of voters who had been placed on an "inactive" list could not be verified and, consequently, these individuals were denied the right to vote.

86.     Defendants' address change verification and voter removal program, as described above, and in particular the failure to maintain information about voters on an "inactive" list at polling places, effectively removed persons from the official eligible voter list in violation of state and federal law.

87.     On information and belief, in Hillsborough County, ten precincts were provided with laptop computers to enable poll workers to directly access the county files of eligible voters (including voters on an "inactive" list) without having to call a central county telephone number. On information and belief, none of the county's majority Black precincts received a laptop computer.

24

88.     On information and belief, in Miami-Dade County, laptop computers were available in eighteen precincts, but only one majority-Black precinct was equipped with a laptop computer on election day to enable poll workers to directly access information concerning eligible voters (including voters on an "inactive" list).

89.     This unequal access to the inactive list resulted in disproportionately greater numbers of Black voters being wrongfully denied the right to vote, and effectively resulted in those voters being purged in a manner contrary to state and federal statutory provisions for voter list maintenance.

90.     Plaintiff PLACIDE DOSSOUS moved from Dade to Broward County in September 1999, and in July 2000 notified the Department of Highway Safety and Motor Vehicles of his new address when he changed his drivers' license. Mr. Dossous never received a new voter registration card. On November 7, 2000, Mr. Dossous first went to his previous polling place at the Korean Presbyterian Church in Dade County in an effort to find out where he should vote. The clerk told him that he was not on the voter list. The clerk could not get through to the Supervisor of Elections because of busy phone lines and therefore provided no assistance to Mr. Dossous in determining where he should vote. Mr. Dossous returned home where he later received a telephone call from someone urging him to vote. He explained that he had already tried to vote. The caller told Mr. Dossous that she had found his name in the Sheridan Vocational School voter list, in Broward County. Mr. Dossous went to the Sheridan Vocational School, where a clerk informed him that he was not on the voter list. Mr. Dossous waited for two hours while a polling official tried to telephone the Supervisor of Elections, but never got through. Mr. Dossous finally left his name and telephone number for poll officials to call when they reached the Supervisor of Elections. He never received a call. Mr. Dossous was improperly denied the right to vote in the November 7, 2000

general election.

91.     Plaintiff RONDRICK ROSE is a properly registered voter residing in Hillsborough County, Florida. In December 1999, Plaintiff Rose moved from one address to another within Hillsborough County. He changed his address with the Department of Highway Safety and Motor Vehicles and the United States Postal Service. On November 7, 2000, he went to the polling site for his new address and presented identification. Mr. Rose was not listed on the precinct register and he was instructed to complete an affirmation form, which he did, and he was then told that a poll worker would have to call to verify his eligibility to vote. On information and belief, Mr. Rose was listed in the county database as an "inactive" voter. Mr. Rose waited for approximately two hours, while a poll worker called to confirm his registration. The phone line was continuously busy and the worker was not able to get through to anyone at the Supervisor of Elections office. Mr. Rose was improperly denied the right to vote.

## National Voter Registration Act

92.     The National Voter Registration Act ("NVRA"), 42 U.S.C. § 1973gg *et seq.*, requires the Defendants to properly and timely process voter registration applications and changes of address, to timely notify applicants of the disposition of their applications, to carry out voter deletions and transfers to inactive status in a particular manner and to permit voters who have moved within the same political subdivision to vote even if they have not updated their registration to indicate their new address.

93.     Pursuant to 42 U.S.C. § 1973gg-9(b), Plaintiffs have notified Defendant Harris of the various violations of the NVRA that have occurred and requested that they be corrected as provided by statute. A copy of this letter is attached hereto as Exhibit "A." Plaintiffs anticipate amending the

Complaint to seek redress for these NVRA violations should Defendants fail or refuse to correct them.

### Equitable Relief

94.    Plaintiffs have no adequate remedy at law for such deprivation of their rights, privileges and immunities.

## CLAIMS FOR RELIEF

### COUNT I
#### (Fourteenth Amendment Equal Protection and Due Process Clauses)

95.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 94 above.

96.    Defendants Harris and Roberts have maintained and administered non-uniform methods and practices of administering elections and counting ballots in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

### COUNT II
#### (Section 2 of the Voting Rights Act of 1965)

97.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 94 above.

98.    Defendant Leahy's methods of administering the November 7, 2000 general election denied Black voters an equal opportunity to participate in the Presidential election in violation of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973.

99.    Defendants Harris, Roberts, DBT, Leahy, Oliphant (through her predecessor Carroll), and Iorio's actions in failing to adopt and implement uniform standards of reliability and accuracy for voting machines or systems that may be selected or utilized by county supervisors of elections, and procedures connected with their use; in the purging of voters from official lists of eligible voters;

and in their maintenance and administration of "inactive" lists and the unequal availability of access to those lists denied Black voters an equal opportunity to participate in the Presidential election in violation of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973.

**COUNT III**
**(42 U.S.C. § 1983)**

100.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 94 above.

101.    All Defendants, acting under color of state law, have deprived Plaintiffs of the rights, privileges, and immunities secured to them under the Fourteenth Amendment to the United States Constitution, the National Voter Registration Act, and 42 U.S.C. § 1983 to participate in the electoral process.

**COUNT IV**
**(Civil Rights Acts of 1957 & 1960)**

102.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 94 above.

103.    All Defendants, by their actions as described in this Complaint, have, acting under color of law, applied different standards, practices or procedures in determining whether some voters were qualified to vote than were applied to other voters within the same county who have been found by State officials to be qualified to vote and denied individuals the right to vote because of immaterial errors and omissions in registration and ballot applications, in violation of 42 U.S.C. §§ 1971(a)(2)(A) and 1971(a)(2)(B).

**COUNT V**
**(Fla. Stat. § 104.0515)**

104.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 94 above.

28

105.    Defendants, by their actions described in this Complaint, have applied prerequisites to voting, employed certain voting methods, and administered elections using standards, practices and procedures in a manner which results in denial or abridgement of the rights of citizens in Florida to vote on account of race or color in violation of Florida Statutes §104.0515.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor:

(1)    Certifying, for the purposes of declaratory and injunctive relief, a class of all Black citizens of the State of Florida eligible to vote, who were registered voters or who took timely and appropriate steps to register as voters, who sought to vote in the November 7, 2000 general election, and who were denied the opportunity to vote or were denied an equal opportunity to vote and have their votes counted in that election, by the actions, policies and practices of the Defendants, in violation of the Fourteenth Amendment of the United States Constitution; Section 2 of the Voting Rights Act of 1965, codified at 42 U.S.C. § 1973 *et seq.*; the Civil Rights Acts of 1957 and 1960, codified at 42 U.S.C. § 1971(a)(1), 1971(a)(2)(A) and 1971(a)(2)(B); 42 U.S.C. § 1983; and/or the Florida Voting Rights Act, Fla. Stat. Ann. § 104.0515;

(2)    Declaring that Defendants' use of "punch-card" voting machines or systems, other unreliable voting systems, and procedures connected with their use; failure to process timely voter registration applications; wrongful purge of qualified voters; failure to have complete and accurate voter lists at the polls and effective election day procedures; and failure to allow voters who have moved within the county to vote; caused the Plaintiffs and members of the Plaintiff class to be treated differently than similarly situated white voters, and denied them fundamental fairness and an equal opportunity to participate in the electoral process in the November 2000 general election,

all in violation of the law as set forth in the claims for relief;

(3)    Enjoining Defendants immediately to discontinue the use of prerequisites to voting, certain voting methods, and administering elections using standards, practices and procedures in a manner which results in denial or abridgement of the rights of citizens in Florida to vote on account of race or color, or in a manner that otherwise violates federal or state law, including, but not limited to, requiring Defendants to do the following:

a.    To decertify all "punch-card" voting methods and other unreliable voting methods as acceptable voting methods under Florida law;

b.    To adopt standards and implement training designed to insure that voting systems and procedures at polling places within their jurisdiction are equal, accurate and reliable, and are uniformly administered;

c.    To maintain any list of inactive voters at polling places as part of the official list of eligible voters and as accessible to precinct officials as are the active lists;

d.    To provide a mechanism for persons whose names do not appear on the list of registered voters at the polling place to vote in as timely a fashion as those whose names do appear on the list, subject to challenge if they are shown not to be qualified to vote;

e.    To accurately determine and restore to appropriate status all persons wrongfully purged based on the DBT list and all other persons purged in violation of state and federal law;

f.    To discontinue all voter purges of the voter registration rolls until the development of procedures to ensure uniform, non-discriminatory application of the law;

g. To prohibit the removal of the name of any person from the official voter registration lists on account of death, felony conviction or adjudication of mental incapacity based on information that has not been verified and determined to be a correct match for that person;

h. To complete all purges not later than 90 days before any election;

i. To extend, by at least four years, the time that voters identified as those who may have moved, who did not vote in November 2000, remain on the inactive list before they are purged, to remedy the situation of inactive list voters who were denied the right to vote in the November 2000 election;

j. To develop and implement training for all personnel involved in the administration of the electoral process to ensure compliance with this order and all laws related to the non-discriminatory operation of the political process;

k. To provide equitable, accurate equipment, facilities and resources for the administration of the electoral process statewide, including, but not limited to, the technology to facilitate verification of voter registration in all polling sites; and,

l. To affirmatively notify voters of their rights at polling places, by posted notice or otherwise, including their rights to assistance, to correct their ballots if they believe they have made an error, to alternative identification procedures if they do not have a photo identification and to vote even if they have changed address, including the steps to follow to assert these rights;

(4) Appointing, pursuant to Section 3(a) of the Voting Rights Act, 42 U.S.C. § 1973a, federal examiners in each of the Defendant counties for the next ten years;

(5)     Retaining jurisdiction of this case, pursuant to Section 3(c) of the Voting Rights Act, 42 U.S.C. § 1973a;

(6)     Awarding Plaintiffs their costs and disbursements associated with the filing and maintenance of this action, including an award of reasonable attorneys' fees pursuant to 42 U.S.C. §§ 19731 and 1988; and

(7)     Awarding such other equitable and further relief as the Court deems just and proper.


DATED this /̲0̲r̲ day of January, 2001.

                              Respectfully submitted,

Dennis Hayes, Esq.                LAW OFFICES
Angela Ciccolo, Esq.              WILLIAMS & ASSOCIATES, P.A.
Bruce Gear, Esq.                  Brickell BayView Centre, Suite 1830
NAACP Legal Department            80 S.W. Eighth Street
4805 Mount Hope Drive, Fifth Floor Miami, FL 33130
Baltimore, MD 21215-3297          Telephone:   305/379-6676
Telephone:   877/622-2798         Facsimile:   305/379-4541
Facsimile:   410/358-9350         E-Mail:      wmslaw@winstarmail.com
E-Mail:      bgear@naacpnet.org

                              By: _____
                                  THOMASINA H. WILLIAMS
                                  FLORIDA BAR NO. 629227

32

Barbara Arnwine, Esq.
Thomas J. Henderson, Esq.
Edward Still, Esq.
Anita Hodgkiss, Esq.
Lori Outzs Borgen. Esq.
Lawyers' Committee for Civil Rights Under Law
1401 New York Avenue, NW, Suite 400
Washington, DC 20005-2124
Telephone:   202/662-8600 or 888/299-5227
Facsimile:   202/783-5130
E-Mail:      lborgen@lawyerscomm.org

Todd A. Cox, Esq.
NAACP Legal Defense & Educational Fund, Inc.
1444 Eye Street, NW, 10th Floor
Washington, DC 20005
Telephone:   202/682-1300
Facsimile:   202/682-1312
E-Mail:      tcox@naacpldf.org

Penda Hair, Esq.
Judith Browne, Esq.
Monique Dixon, Esq.
The Advancement Project
1730 "M" Street, NW, Suite 401
Washington, DC 20036
Telephone:   202/728-9557
Facsimile:   202/728-9558
E-Mail:      jbrowneesq@aol.com

Elaine R. Jones, Esq.
   Director-Counsel
Theodore M. Shaw, Esq.
Norman Chachkin, Esq.
Jacqueline A. Berrien. Esq.
NAACP Legal Defense & Educational Fund, Inc.
99 Hudson Street, Suite 1600
New York, NY 10013
Telephone:   212/965-2200
Facsimile:   212/226-7592
E-Mail:      jberrien@naacpldf.org

Laughlin McDonald, Esq.
ACLU Voting Rights Project
2725 Harris Tower
233 Peachtree Street NE
Atlanta, GA 30303
Telephone:   404/523-2721
Facsimile:   404/653-0331
E-Mail:      lmcdonald@aclu.org

Louis M. Bograd, Esq.
American Civil Liberties Union Foundation
National Legal Department
733 15th Street, NW, Suite 620
Washington, DC 20005
Telephone:   202/393-1918
Facsimile:   202/393-4931
E-Mail:      lbograd@aclu.org

Elliot M. Mincberg, Esq.
Lawrence S. Ottinger, Esq.
Alma C. Henderson, Esq.
People for the American Way Foundation
2000 "M" Street, NW, Suite 400
Washington DC 20036
Telephone:   202/467-2392
Facsimile:   202/293-2672
E-Mail:      lottinger@pfaw.org

ATTORNEYS FOR PLAINTIFFS



**Lawyers' Committee for
Civil Rights Under Law**

1401 New York Avenue, NW
Suite 400
Washington, DC 20005-2124

Tel: 202/662-8600
Fax: 202/783-0857
Web: http://www.lawyerscomm.org

Direct Dial:

202-662-8315
Direct Fax:
202-783-5130

*Co-Chairs*
 Charles T. Lester, Jr.
 John A. Payton
*Secretary*
 Robert A. Murphy
*Treasurer*
 William L. Robinson
*Counsel*
 Nicholas T. Christakos
*Executive Director*
 Barbara R. Arnwine

*Regional Co-Chairs*

*Midwest Region*
 Gary T. Johnson
 John S. Skilton
*Northeastern Region*
 Hugh R. Jones, Jr.
 Harold C. Pachios
*Mid-Atlantic Region*
 D. Stuart Meiklejohn
 John S. Kiernan
*Southeastern Region*
 Harold T. Daniel, Jr.
 Robert E. Harrington
*Western Region*
 Jack W. Londen
 Cheryl W. Mason
*Chesapeake Region*
 George W. Jones

22 December 2000

via fax and mail

Hon. Katherine Harris
Secretary of State
The Capitol
Tallahassee, FL 32399-0250

> Re: Notice of violations of the National Voter Registration Act and related state laws

Dear Secretary Harris:

On behalf of our clients, the National Association for the Advancement of Colored People, Inc., and the Florida State Conference of Branches of the National Association for the Advancement of Colored People and numerous African American and Haitian American voters, we hereby give notice to you of violations of the National Voter Registration Act ("NVRA"), 42 U.S.C. § 1973gg et seq. that occurred prior to and during the conduct of the elections held 7 November 2000, and request, pursuant to 42 U.S.C. § 1973gg *et seq.*, that you, the State of Florida, the Division of Elections, the Department of Highway Safety and Motor Vehicles ("DHSMV"), and the Supervisors of Elections ("Supervisors") of each county correct these problems forthwith.

1. Registration

The DHSMV, and/or the county Supervisors in Hillsborough, Leon, Miami-Dade, Orange, Broward and Volusia Counties, among others, have failed to comply with 42 U.S.C. § 1973gg-6(a)(1), which provides that "each State shall ensure that any eligible applicant is registered to vote in an election" if the "valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority," to another voter registration agency, or to "an appropriate State election official" (that is, the Supervisor), or is postmarked not less than 29 days before the election. In addition, either DHSMV, or the Supervisors, or both, have failed to comply with 42 U.S.C. §

EXHIBIT
"A"

1973gg-3(d), which provides that a change of address submitted for purposes of a driver's license "shall serve as notification of change of address for voter registration" for federal elections unless the registration states otherwise on a form.

## 2. Notice of Registration

The DHSMV and/or Supervisors in Hillsborough, Leon, Miami-Dade, Orange and Volusia Counties, among others, have failed to send timely notice of the disposition of applications in violation of 42 U.S.C. § 1973gg-6(a)(2).

## 3. List Maintenance – General

The Supervisors in Broward, Hillsborough, Leon and Miami-Dade Counties, among others, have effectively removed persons from the official eligible voter list in violation of 42 U.S.C. § 1973gg-6(a)(3), (b), and (d).

Section 98.065, Fla. Stat., requires the Supervisor to place certain names upon the inactive list, but no part of the election code requires that inactive voters be included on the precinct register or the registration books used at the polling places. Because of the inability of clerks and inspectors to telephone the Supervisor's office in a reliable and timely manner, in the conduct of the 7 November 2000 elections, placement on the inactive voter list became a de facto removal from the list of eligible voters. As a result, eligible voters were told by precinct officials that they were not on the official registration list and denied the right to vote in violation of Florida law and the NVRA.

At the general election in 2000, clerks and inspectors also routinely refused to allow persons who had moved to fill out a "Change of Legal Residence of Registered Voter" form as required by § 101.045, Fla. Stat. If the voter is incorrectly placed on the inactive list, the voter will have no way of knowing that he or she should even ask for a change of address form, and the clerk and inspectors will not be able to inform the voter of the reason the voter no longer appears on the eligible voter list.

## 4. List Maintenance – Purges

Section 98.0975(1), Fla. Stat., requires the Division of Elections to provide Supervisors with lists of voters who are deceased, are mentally incompetent, or have been convicted of a felony and not had their voting rights restored. Section 98.0975(4), Fla. Stat., requires Supervisors to remove a person as a registered voter unless he/she determines that the information is incorrect as to that voter. This section and its implementation, violates 42 U.S.C. § 1973gg-6(b) ("Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office ... shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965....").

Case 1:01-cv-00120-ASG Document 1 Entered on FLSD Docket 01/12/2001 Page 36 of 37

Recent news reports regarding the compilation of names of persons convicted of felonies by Database Technologies, Inc., disclose that there were a large number of errors in the list. The *Palm Beach Post* reported on 6 December 2000, "In June, Database Technologies handed the state a list of 173,142 registered voters suspected of having died, moved away or been convicted of felonies. That included 57,770 possible felons." The article also states that, "In one glitch, the company mistakenly listed 7,972 people as possible felons, only to acknowledge later that they had been convicted only of misdemeanors." Different counties utilized a wide range of different practices in using this list to purge voters, further violating federal and state law.

This is a statewide problem involving the Secretary of State, the Division of Elections, and Supervisors in each county.

***

We request that you, the State of Florida, the Division of Elections, the Department of Highway Safety and Motor Vehicles, and the Supervisors of Elections correct these problems forthwith.

Our clients are represented by a team of co-counsel, including People for the American Way Foundation and others. Please direct correspondence and information regarding this matter to me and I will share it with other members of the team.

Sincerely,

*Anita Hodgkiss*

Anita Hodgkiss
Co-Director, Voting Rights Project

cc:
all co-counsel

# CIVIL COVER SHEET   01-0120

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, INC., by its FLORIDA STATE CONFERENCE OF BRANCHES, et al.

**DEFENDANTS**

MAGISTRATE JUDGE

KATHERINE HARRIS, Secretary of State of Florida; CLAY ROBERTS, Director of the Florida Division of Elections; DAVID C. LEAHY, Miami-Dade County etc., et al.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Leon
(IN U.S. PLAINTIFF CASES ONLY)

NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

A-dade 01cv120 Gold/Simonton

**(c)** ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)

THOMASINA H. WILLIAMS, Law Offices Williams & Associates, P.A., 80 S.W. 8th Street, Suite 1830, Miami, FL 33130.  305/379-6676

ATTORNEYS (IF KNOWN)

UNKNOWN

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:   DADE,   MONROE,   BROWARD,   PALM BEACH,   MARTIN,   ST. LUCIE,   INDIAN RIVER,   OKEECHOBEE   HIGHLANDS

## II. BASIS OF JURISDICTION   (PLACE AN X IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY)

**A CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☒ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**A TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury — Med Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**A LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt Relations
- ☐ 730 Labor/Mgmt Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl Ret Inc Security Act

**A BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**A PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**B SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS — Third Party 26 USC 7609

**A OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions A OR B

**A REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**A CIVIL RIGHTS**
- ☒ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
  HABEAS CORPUS
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

## VI. CAUSE OF ACTION   (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

14th Amendment; Section 2 of the Voting Rights Act of 1965, codified at 42 U.S.C. 1973, et seq.; the Civil Rights Act of 1957 and 1960, codified at 42 U.S.C. 1971(a)(1), 1971(a)(2)(A) & 1971(a)(2)(B); 42 U.S.C. 1983: voting rights violation.

LENGTH OF TRIAL via 2 days estimated for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint

JURY DEMAND:   ☐ YES   ☒ NO

## VIII. RELATED CASE(S)   (See instructions)
IF ANY

JUDGE _____   DOCKET NUMBER _____

DATE   JANUARY 10, 2001

SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

THOMASINA H. WILLIAMS
LAW OFFICES WILLIAMS & ASSOCIATES, P.A

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____

834554   150.00
01/10/01