# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case No. 01-0120-CIV-GOLD/SIMONTON

------------------------------------------------------------------------------x

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF
COLORED PEOPLE, INC. by its FLORIDA STATE
CONFERENCE OF BRANCHES, JIMMIE PANNELL, JULIA
STONER, NATALIE CARNEGIE, ERMA J. KELLY, JOHN L.
CHEEVER, JAMES MARSHALL, LILLIE Q. ODOM, WILLIE
STEEN, WALLACE MCDONALD, JERMAINE TERRY,
LORINE WALDEN, EMERY TIMBERLAKE, VALERIE
BUFORD-WELLS, MICHELLE FLOYD, CONSUELO MARIA
GRAHAM, SHERRY EDWARDS, KANDY WELLS, JOANNA
CLARK, JANICE KELLY, PLACIDE DOSSOUS, RONDRICK
ROSE, and URSULA HARVEY, in their own right and as
representatives of all similarly situated citizens and residents of
the State of Florida,

**AMENDED
COMPLAINT -
CLASS ACTION**

        Plaintiffs,

   vs.

KATHERINE HARRIS, Secretary of State of Florida; CLAY
ROBERTS, Director of the Florida Division of Elections; FRED
DICKINSON, Executive Director of the Florida Department of
Highway Safety and Motor Vehicles; KATHLEEN A.
KEARNEY, Secretary of the Department of Children and
Families; DAVID C. LEAHY, Miami-Dade County Election
Supervisor; MIRIAM OLIPHANT, Broward County Election
Supervisor; JOHN STAFFORD, Duval County Election
Supervisor; PAM IORIO, Hillsborough County Election
Supervisor; ION SANCHO, Leon County Election Supervisor;
WILLIAM COWLES, Orange County Election Supervisor; and
DEANIE LOWE, Volusia County Election Supervisor (all in their
official capacities); and CHOICEPOINT, INC., a Georgia
corporation d/b/a DATABASE TECHNOLOGIES INC.,

        Defendants.

------------------------------------------------------------------------------x

## PRELIMINARY STATEMENT

1.      This action is brought by the National Association for the Advancement of Colored People by its Florida State Conference of Branches ("NAACP") on its own behalf and on behalf of its Florida members, and by individual black voters, whose right to vote in the general election held in the State of Florida on November 7, 2000 was unlawfully denied or abridged.

2.      In 2000, the NAACP made extensive efforts to register new voters and to encourage its members to vote. As a result of the efforts of the NAACP, the NAACP National Voter Fund, and other organizations, turnout among black voters in Florida increased significantly in the November 7, 2000 general election, compared to recent general elections. However, black voters were confronted with a multitude of non-uniform election practices that impeded their exercise of the franchise or disenfranchised them. In particular, as a result of the practices complained of in this action, in precincts with substantial numbers of black voters, there were a disproportionate number of ballots with no vote counted for the office of President of the United States, black voters were wrongfully purged from official lists of eligible voters, the voter registration applications of black voters were not processed properly, and registered voters encountered unjustified barriers to voting at their precincts. Such barriers were caused by, *inter alia,* the failure to provide a complete official list of eligible voters at each polling place, inadequate processes for verifying the registration of voters not appearing on precinct lists, and the failure to offer voters who moved within the county the opportunity to vote by affirmation or affidavit.

2

3.      Plaintiffs contend that these practices violate the Fourteenth Amendment of the United States Constitution, Section 2 of the Voting Rights Act of 1965, codified at 42 U.S.C. §§ 1973 *et seq*., the Civil Rights Acts of 1957 and 1960, codified at 42 U.S.C. §§ 1971(a)(1), 1971(a)(2)(A) and 1971(a)(2)(B), the National Voter Registration Act of 1993, 42 U.S.C. §§ 1973gg *et seq*., 42 U.S.C. § 1983 and/or the Florida Voting Rights Act, Fla. Stat. Ann. § 104.0515.

## JURISDICTION

4.      This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202; 42 U.S.C. § 1973gg-9(b); and by Rules 57 and 65 of the Federal Rules of Civil Procedure.

## VENUE

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants DAVID C. LEAHY, Miami-Dade Elections Supervisor; MIRIAM OLIPHANT, Broward County Election Supervisor; and CHOICEPOINT, INC., doing business as DATABASE TECHNOLOGIES INC., reside in this district and the state Defendants may be found in this district.

## PARTIES

### A.    The Plaintiffs

6.    Plaintiff NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF

COLORED PEOPLE, INC. by its FLORIDA STATE CONFERENCE OF BRANCHES

("NAACP") is a non-profit civil rights organization with its headquarters in Baltimore,

Maryland.  The NAACP has more than 500,000 members nationwide.  The Florida State

Conference of Branches is comprised of approximately 77 NAACP youth councils, college

chapters and adult branches throughout the State of Florida.  The NAACP strives to advance the

interests of its membership in every area, including the rights of its members and constituency to

participate fully in the nomination and election of candidates for elective office.  In furtherance

of this purpose, the NAACP, through its Florida State Conference of Branches, conducts non-

partisan voter registration and education and encourages its members to vote.  The NAACP as an

organization is aggrieved by Defendants' actions because they significantly impede the

NAACP's ability effectively to fulfill its institutional purpose of advancing voter registration and

voters' full participation in the electoral process.

7.    Plaintiff NAACP also brings suit on behalf of its individual members in Florida,

who have been aggrieved by Defendants' failure to comply with federal constitutional and

federal and state statutory guarantees and provisions relating to voting and who would have

standing to sue in their own right.  These members' individual interests in fully participating in

the electoral process are germane to the NAACP's organizational purpose, and neither the claims

asserted nor the relief requested herein requires the participation of the NAACP's members in

order to vindicate their individual rights.  A significant number of NAACP members, who are

4

eligible voters and voted in the November 2000 election, reside in precincts and counties where a disproportionately large number of ballots were not counted in the Presidential election. NAACP members were also among those voters whose names were wrongfully purged from the voter registration lists, and a significant number of its membership were unable to vote or were impeded in voting on election day because of the unlawful practices complained of herein.

8.     Individual named Plaintiffs are black citizens of Florida who were eligible to register and vote, who were registered voters or who took timely and appropriate steps to register as voters and who sought to vote in the November 7, 2000 general election in the State of Florida but were, as a result of the practices of Defendants complained of herein, denied the opportunity to vote, denied assistance they were entitled to, or were exposed to a significantly higher risk that their votes would not be counted in the official results for the presidential election.  Plaintiffs desire to vote and participate in the electoral and political processes in Florida in the future on an equal basis with other residents, and to participate in future elections in which the rudimentary requirements of equal treatment and fundamental fairness are satisfied in voting and counting ballots in Miami-Dade County and throughout the state.  The named Plaintiffs bring this action on their own behalf and as representatives for the class of all similarly situated black citizens.

9.     Plaintiff JIMMIE PANNELL is at least 18 years of age.  He is a citizen of the United States and a legal resident of the State of Florida and Duval County.  Mr. Pannell is black.

10.     Plaintiff JULIA STONER is at least 18 years of age.  She is a citizen of the United States and a legal resident of the State of Florida and Duval County.  Ms. Stoner is black.

11.     Plaintiff NATALIE CARNEGIE is at least 18 years of age.  She is a citizen of the United States and a legal resident of the State of Florida and Hillsborough County.  Ms. Carnegie is black.

12.     Plaintiff ERMA J. KELLY is at least 18 years of age.  She is a citizen of the United States and a legal resident of the State of Florida and Miami-Dade County.  Ms. Kelly is black.

13.     Plaintiff JOHN L. CHEEVER is at least 18 years of age.  He is a citizen of the United States and a legal resident of the State of Florida and Miami-Dade County.  Mr. Cheever is black.

14.     Plaintiff JAMES MARSHALL is at least 18 years of age.  He is a citizen of the United States and a legal resident of the State of Florida and Miami-Dade County.  Mr. Marshall is black.

15.     Plaintiff LILLIE Q. ODOM is at least 18 years of age.  She is a citizen of the United States and a legal resident of the State of Florida and Miami-Dade County.  Ms. Odom is black.

16.     Plaintiff WILLIE STEEN is at least 18 years of age.  He is a citizen of the United States and a legal resident of the State of Florida and Hillsborough County.  Mr. Steen is black.

17.     Plaintiff WALLACE MCDONALD is at least 18 years of age.  He is a citizen of the United States and a legal resident of the State of Florida and Hillsborough County.  Mr. McDonald is black.

18.     Plaintiff JERMAINE TERRY is at least 18 years of age.  He is a citizen of the United States and a legal resident of the State of Florida and Hillsborough County.  Mr. Terry is black.

19.     Plaintiff LORINE WALDEN is at least 18 years of age.  She is a citizen of the United States and a legal resident of the State of Florida and of Broward County.  Ms. Walden is black.

20.     Plaintiff EMERY TIMBERLAKE is at least 18 years of age.  He is a citizen of the United States and a legal resident of the State of Florida and of Volusia County.  Mr. Timberlake is black.

21.     Plaintiff VALERIE BUFORD-WELLS is at least 18 years of age.  She is a citizen of the United States and a legal resident of the State of Florida and Broward County.  Ms. Buford-Wells is black.

22.     Plaintiff MICHELLE FLOYD is at least 18 years of age.  She is a citizen of the United States and a legal resident of the State of Florida and Leon County.  Ms. Floyd is black.

23.     Plaintiff CONSUELO MARIA GRAHAM is at least 18 years of age.  She is a citizen of the United States and a legal resident of the State of Florida and Orange County.  Ms. Graham is black.

24.     Plaintiff SHERRY EDWARDS is at least 18 years of age.  She is a citizen of the United States and a legal resident of the State of Florida and Hillsborough County.  Ms. Edwards is black.

25.     Plaintiff KANDY WELLS is at least 18 years of age.  She is a citizen of the United States and a legal resident of the State of Florida and Hillsborough County.  Ms. Wells is black.

26.     Plaintiff JOANNA CLARK is at least 18 years of age.  She is a citizen of the United States and a legal resident of the State of Florida and Broward County.  Ms. Clark is black.

27.     Plaintiff JANICE KELLY is at least 18 years of age.  She is a citizen of the United States and a legal resident of the State of Florida and Duval County.  Ms. Kelly is black.

7

28.     Plaintiff PLACIDE DOSSOUS is at least 18 years of age.  He is a citizen of the United States and a legal resident of the State of Florida and Broward County.  Mr. Dossous is black.

29.     Plaintiff RONDRICK ROSE is at least 18 years of age.  He is a citizen of the United States and a legal resident of the State of Florida and Hillsborough County.  Mr. Rose is black.

30.     Plaintiff URSULA HARVEY is at least 18 years of age.  She is a citizen of the United States and a legal resident of the State of Florida and Volusia County.  Ms. Harvey is black.

**B.**     **Defendants**

31.     Defendant KATHERINE HARRIS is the Secretary of State of Florida.  She is sued in her official capacity in connection with actions taken under color of state law.  As Secretary of State, Defendant HARRIS is the chief election officer of the State of Florida and has responsibility for general supervision and administration of the election laws.  In addition, as Secretary of State she has responsibility for the Division of Elections of Florida's Department of State.  She has the responsibility to obtain and maintain uniformity in the application, operation, and interpretation of the election laws, and to provide technical assistance to the supervisors of elections on voting systems.  *See* Fla. Stat. Ann. § 97.012.  She is also responsible for providing uniform standards for the proper and equitable implementation of the registration laws and coordinating the state's responsibilities under the National Voter Registration Act of 1993, ("NVRA").  *Id.*  She also has the duty to adopt rules which establish minimum standards for hardware and software for electronic and electromechanical voting systems, and to adopt rules to

8

achieve and maintain the maximum degree of correctness, impartiality, and efficiency of the procedures for voting, including write-in voting, and counting, tabulating, and recording votes by voting systems used in the State of Florida. *See* Fla. Stat. Ann. § 101.015.

32.     Defendant CLAY ROBERTS is the Director of the Florida Division of Elections. He is sued in his official capacity in connection with actions taken under color of state law. The Division of Elections is responsible for adopting uniform rules for the purchase, use, and sale of voting equipment in the state. *See* Fla. Stat. Ann. § 101.294. In addition, the Director is responsible for the Bureau of Voting Systems Certification within the Division of Elections which by law is required to provide technical support to the county supervisors of elections and which is responsible for voting system standards and certification. *See* Fla. Stat. Ann. § 101.017. Defendant Roberts is also responsible for administration of the statewide central voter file and for contracting with a private entity to compare voter registration lists with other computer databases. *See* Fla. Stat. Ann. § 98.0975.

33.     Defendant FRED DICKINSON is the Executive Director of the Florida Department of Highway Safety and Motor Vehicles ("DHSMV"). He is sued in his official capacity in connection with actions taken under color of state law. As Executive Director of DHSMV, Defendant DICKINSON is responsible for the proper and equitable implementation of his Department's responsibilities under the National Voter Registration Act and the Florida Voter Registration Act, Fla. Stat. Ann. § 97.032 *et seq.* He has the duty to ensure that the DHSMV provides all individuals with the opportunity to register to vote or to update a voter registration when they go to an office of the DHSMV to apply for or renew a driver's license; apply for or renew an identification card; or change an address on an existing driver's license. 42 U.S.C. § 1973gg-3; Fla. Stat. Ann. § 97.057(1).

9

34.     Defendant KATHLEEN A. KEARNEY is the Secretary of the Florida Department of Children and Families ("DCF"). She is sued in her official capacity in connection with actions taken under color of state law. As Secretary of the Department, she is charged with the duty and responsibility of properly and equitably implementing the National Voter Registration Act and the Florida Voter Registration Act, Fla. Stat. Ann. § 97.032 *et seq*. She has the duty to insure that the DCF provides "each applicant the opportunity to register to vote or to update a voter registration record, at the time the applicant applies for services or assistance from that agency, for renewal of such services or assistance, or for a change of address required with respect to the services or assistance." Fla. Stat. Ann. § 97.058(1). *See also* 42 U.S.C. 1973gg-5.

35.     Defendants DAVID C. LEAHY, MIRIAM OLIPHANT, JOHN STAFFORD, PAM IORIO, ION SANCHO, WILLIAM COWLES, and DEANIE LOWE are the county supervisors of elections for Miami-Dade, Broward, Duval, Hillsborough, Leon, Orange, and Volusia counties, respectively. They are sued in their official capacities in connection with actions taken under color of state law. Miriam Oliphant is the successor to Jane Carroll, who was supervisor of elections in Broward County during, and for 32 years before, the November 2000 election. The county supervisors of elections are the official custodians of the voter registration books in Florida and are responsible for registering voters within their respective geographical jurisdictions. *See* Fla. Stat. Ann. § 98.015. The county supervisors of elections are required to ensure that all voter registration and list maintenance procedures which they conduct are in compliance with any applicable requirements for that county under the Voting Rights Act of 1965, and that its general registration list maintenance program is uniform, non-discriminatory and in compliance with the Voting Rights Act of 1965. *See* Fla. Stat. Ann. §§ 98.015 and 98.065. In addition, the county supervisors of elections have the duty of appointing election boards for each precinct in the county, providing forms, materials and voting equipment for use on election day, and providing training for election officials. *See* Fla. Stat. Ann. § 102.012.

36.     Defendant CHOICEPOINT, INC. doing business as DATABASE TECHNOLOGIES, INC. ("DBT") is a Georgia corporation with offices in the State of Florida and, pursuant to state law, at all times relevant to the events referred to herein, acted as an agent of the State of Florida in connection with the contract between it and the State that is more fully described below.   *See* Fla. Stat. Ann. § 98.0975(3)(b).

## CLASS ACTION ALLEGATIONS

37.     The individual plaintiffs bring this class action on their own behalf and on behalf of all others similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

38.     The class which plaintiffs seek to represent consists of all black citizens of the State of Florida eligible to vote, who were registered voters or who took timely and appropriate steps to register as voters, who sought to vote in the November 7, 2000 general election, and who were denied an equal opportunity to vote and have their votes counted in that election, by the actions, policies and practices of the Defendants, in violation of the Fourteenth Amendment of the United States Constitution, Section 2 of the Voting Rights Act of 1965, codified at 42 U.S.C. § 1973 *et seq.*, the Civil Rights Acts of 1957 and 1960, codified at 42 U.S.C. §§ 1971(a)(1), 1971(a)(2)(A) and 1971(a)(2)(B), 42 U.S.C. § 1983, the Florida Voting Rights Act, Fla. Stat. Ann. § 104.0515, and/or the National Voter Registration Act, 42 U.S.C. §§ 1973gg *et seq.*

39.     The number of black citizens of Florida who were denied the right to vote in the November 7, 2000, election, or whose right to vote was abridged or impeded, because of Defendants' practices complained of herein, is so numerous that joinder of all members is impracticable.  On information and belief, tens of thousands of ballots in counties and precincts where substantial numbers of black citizens reside were not counted in that election.  On information and belief, thousands of black citizens were denied registration, wrongly purged from the voter rolls, and denied the opportunity to vote in that election.  The class members are

geographically dispersed across the State of Florida.

40.     There are questions of law and fact common to the class.  These include whether the Defendants applied qualifications or prerequisites to voting or standards, practices or procedures in a manner that denied or abridged class members' right to vote in the November 7, 2000 general election. All members of the class were denied the opportunity to vote, to have their votes recorded and counted in an equal and non-arbitrary manner, or had their right to vote impaired by one or more of the actions of the Defendants identified herein.  Additional common questions of law and fact include, but are not limited to: whether the Defendants applied a method of recording, processing and tabulating ballots that resulted in the denial of black voters' right to vote; whether the Defendants wrongfully purged registered voters from the list of eligible voters; whether the Defendants failed to allow voters who had not moved, or had moved within the same county to vote; whether the Defendants' maintenance of lists of "inactive" registered voters, separate from lists of other registered voters and not available at polling places, operated to deny or abridge registered voters' right to vote; whether disparities in equipment available at polling places with substantial numbers of black voters resulted in the denial of black voters' right to vote; and whether Defendants failed or refused to process and record timely applications for voter registration, and to distribute voter registration cards, so as to deny citizens the right to vote.

41.     The claims of the representative plaintiffs are typical of the claims of the class as a whole.

42.     Plaintiffs can and will fairly and adequately protect the interests of the members of the class.

43.     Plaintiffs are represented by counsel who are familiar with the applicable law, including attorneys of the NAACP, the Lawyers' Committee for Civil Rights Under Law, the NAACP Legal Defense and Educational Fund, People for the American Way Foundation, the American Civil Liberties Union Foundation, the Advancement Project and Williams &

Associates.  Counsel for plaintiffs have the resources necessary to pursue this litigation and are experienced in class action litigation and litigation involving civil rights.

44.    Class certification pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) is warranted because the Defendants have acted or failed to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

## LEGAL BACKGROUND

### A.    The National Voter Registration Act

45.    Under Section 8 of the National Voter Registration Act, 42 U.S.C. §§ 1973gg *et seq.*, the State of Florida must maintain an accurate and current voter registration roll through uniform and non-discriminatory procedures.  No voter shall be purged or removed by reason of failure to vote and no voter shall be removed except upon her/his request or death, by reason of criminal conviction or mental incapacity, or change of residence in accordance with precautionary procedures.  42 U.S.C. § 1973gg-6.  Under Section 10 of the NVRA, the State of Florida is required to designate a chief state election official to be responsible for coordinating the State's responsibilities under the NVRA.  42 U.S.C. § 1973gg-8.

46.    Florida law designates Defendant Harris as Florida's chief election official whose responsibilities include obtaining and maintaining uniformity in the application, operation, and interpretation of the State's election law, providing uniform standards for the proper and equitable implementation of the registration laws, and coordinating the State's responsibilities under the NVRA.  Fla. Stat. Ann. § 97.012(1), (2), and (7).  In addition, pursuant to state and federal law, Defendants Harris, Roberts and the Supervisors of Elections are charged with administering and maintaining the State's overall list maintenance programs and the State's central voter file.  Both state and federal law establish the manner in which the voter registration information must be maintained and the circumstances in which individuals may be purged from the voter rolls.

47.     The NVRA requires the Defendants to properly and timely process voter registration applications and changes of address, to timely notify applicants of the disposition of their applications, to carry out voter deletions and transfers to inactive status in a particular manner, to permit voters who have moved within the same political subdivision to vote even if they have not updated their registration to indicate their new address, and to protect registered voters from being illegally purged from existing voter registration rolls.

48.     The existing laws and practices of the State of Florida violate the NVRA in significant respects, as detailed herein.

49.     Plaintiffs are aggrieved persons under the NVRA.  In addition to other statutory and constitutional jurisdictional bases, the Act authorizes private parties to bring a civil action in a district court for declaratory or injunctive relief against state officials acting in violation of the provisions of the Act.  42 U.S.C. § 1973gg-9(b).

50.     The Act allows private citizens to give written notice "to the chief election official of the State" of a violation of the Act 90 days before filing suit in order to allow the state to cure the violation.  42 U.S.C. § 1973gg-9(b).  On December 22, 2000, Plaintiffs' attorneys notified Defendant Harris of violations of the NVRA that occurred prior to and during the conduct of the November 7, 2000, elections, and asked that the violations be corrected. (Letter from Anita Hodgkiss, Lawyers' Committee for Civil Rights Under Law, to the Hon. Katherine Harris, December 22, 2000.)

51.     Despite Defendant Harris' role as the State's chief elections official, in a January 5, 2001, letter in response to Plaintiffs' notice letter, Kristi Reid Bronson, Assistant General Counsel in the Secretary of State's Office, denied responsibility for the State's NVRA violations, writing that "[v]oter registration, list maintenance and elections in Florida are performed at the county level.  Supervisors of elections are constitutional officers.  Neither the Secretary of State nor the Division of Elections has authority to dictate how constitutional officers or other agencies perform their duties." (Letter from Bronson to Anita Hodgkiss, January 5, 2001.)

14

52.     Ms. Bronson indicated in her letter that the Secretary of State forwarded Plaintiffs' letter to the Elections Supervisors in Hillsborough, Leon, Miami-Dade, Orange, Broward, and Volusia Counties, and to the Department of Highway Safety and Motor Vehicles ("DHSMV"). Only Volusia County responded to the letter forwarded to the county supervisors by the Secretary of State, and that county's response fails to correct the violations. In light of the Secretary of State and Division of Elections' blanket refusal to accept responsibility for the NVRA violations occurring prior to and during the November 7, 2000, elections, these NVRA claims are ripe for inclusion here.

53.     Defendants' laws, policies, and practices with respect to the State of Florida's voter registration requirements and procedures for federal elections deny Plaintiffs, and others similarly situated, rights secured by the National Voter Registration Act and 42 U.S.C. § 1983. Plaintiffs are threatened with irreparable injury if the Defendants are not restrained from violating the NVRA.

**B.     The Florida Election Reform Act of 2001**

54.     Following the voting irregularities in the November 7, 2000 election, and subsequent to Plaintiffs' filing of the original Complaint in this action on January 10, 2001, the Florida State Legislature considered various proposed legislation related to the electoral process. On May 4, 2001, the Legislature passed the Florida Election Reform Act of 2001. The Act was signed into law by Governor Jeb Bush on May 10, 2001. The Florida Election Reform Act contains provisions relating to several aspects of election reform sought by Plaintiffs in this Amended Complaint, including de-certification of punch-cards as an available voting mechanism, requirements for provisional ballots, and funding for voter equipment, poll-worker training and education. S.B. 1118, 103rd Reg. Sess. (Fla. 2001).

55.     While the Act thus potentially addresses some aspects of the issues raised by this Complaint, the law has not, and cannot, yet take effect. It must first be precleared by the United States Department of Justice or approved by the United States District Court for the District of Columbia pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, and then it must be implemented effectively by both the State and the Counties. Specifically, even if the Florida Election Reform Act of 2001 is precleared, the State and County defendants must also adopt rules to govern implementation of the Act and take all other steps necessary to ensure that it is fully, uniformly and equitably implemented and enforced throughout the State.

## FACTS

### A.     Arbitrary and Racially Disparate Adverse Impact of Electoral Systems

56.     Defendant Secretary of State KATHERINE HARRIS is the head of the Department of State, which is required to examine all makes of electronic or electromechanical voting systems to determine if they comply with state law. Fla. Stat. Ann. § 101.5605. Defendant CLAY ROBERTS is the Director of the Florida Division of Elections and is responsible for adopting uniform rules for the purchase, use, and sale of voting equipment in the state and for voting system standards and certification. Pursuant to this authority, Defendants Harris and Roberts certified numerous voting systems for use in Florida, including several devices involving the use of "punch-card" ballots. Each county is authorized to select its voting method from the list of systems certified by Defendants Harris and Roberts.

57.     On information and belief, Miami-Dade County, as well as 24 other counties in Florida, i.e., Broward, Collier, DeSoto, Dixie, Duval, Gilchrist, Glades, Hardee, Highlands, Hillsborough, Indian River, Jefferson, Lee, Madison, Marion, Martin, Nassau, Osceola, Palm Beach, Pasco, Pinellas, Sarasota, Sumter, and Wakulla used punch-card balloting machines for voting in the November 7, 2000 election. Forty-one of Florida's sixty-seven counties used some form of electronic voting system, and one used manually tabulated paper ballots.

16

58.     State law requires that voting machines or systems must be capable of and must accurately register or record and count votes cast.  Fla. Stat. Ann. §§ 101.28 & 101.5605.

59.     The punch-card balloting systems approved by Defendants Harris and Roberts for use in the November 7, 2000 election, unlike other voting systems in use in Florida, have a substantially higher rate of error in recording, processing, and counting ballots than other mechanisms and machinery for voting used in Florida.

60.     In the 2000 presidential election, the percentage of ballots recorded as having no vote (non-votes) in Florida counties using a punch-card system was 3.92%, while the error rate under the optical-scan systems in use elsewhere in Florida was only 1.43%.  Thus, for every 10,000 votes cast, punch-card systems result in 250 more non-votes than optical-scan systems. Siegel v. LePore, 234 F.3d 1163, Charts C and F (11th Cir. 2000).

61.     State law prohibits the use of voting systems or machines which permit the voter to cast a simultaneous ballot for two different candidates for a single office.  Fla. Stat. Ann. §§ 101.28 & 101.5606.

62.     Punch-card balloting systems or machines that have been approved by Defendants, unlike some other voting machines or systems in use in Florida, permit the voter to cast a simultaneous ballot for two different candidates for a single office.

63.     State defendants do not have uniform standards or procedures adequate to insure that voters are made aware, prior to the completion of the ballot-casting process, that their ballots appear to contain non-votes or duplicate votes in one or more contests so that they may correct any unintended errors before their votes are tabulated, although some of the electronic voting systems approved for use by defendants incorporate this feature.  It is not yet clear whether all counties will ultimately meet this requirement if the Florida Election Reform Act of 2001 is implemented.

64.     Plaintiffs JIMMIE PANNELL, JULIA STONER,  NATALIE CARNEGIE, ERMA J. KELLY,  JOHN L. CHEEVER, JAMES MARSHALL and LILLIE Q. ODOM,

17

lawfully registered voters and residents of counties that used punch-card systems, who voted on November 7, 2000, faced a substantially greater risk that their votes would not accurately be recorded or counted than voters who live in counties that did not use punch-card voting systems.

65.   As a result of the acts and omissions of Defendants Harris and Roberts, and their own acts and omissions, election officials in counties in Florida with substantial black populations have disproportionately selected and used punch-card balloting machines. As a consequence, Plaintiffs and other black voters are significantly less likely to have their votes counted and accurately tabulated than other voters in the state.

66.   The use of punch-card voting machines or systems and procedures connected with their use have an adverse impact on black voters' opportunity to participate in the electoral process and to have their votes counted in Florida, in violation of Section 2 of the Voting Rights Act of 1965.

67.   The use of punch-card voting machines or systems and procedures connected with their use in Miami-Dade County, and in the other counties in the state which use them, deprives Plaintiffs of equal protection and due process by failing to accord equal weight to each vote and equal dignity to each voter throughout the state.

68.   The next statewide election in Florida is scheduled for September 2002. Subsequent to the filing of this lawsuit, the Florida State Legislature passed the Florida Election Reform Act of 2001 which contains provisions relating to decertification of the use of punch-card voting machines in Florida. However, the Act has not been precleared pursuant to Section 5 of the Voting Rights Act. Not until the new Act has been implemented can Plaintiffs determine whether their rights will continue to be violated by the use of and by procedures connected with the use of Florida's voting systems.

**B.**     **Racial Disparity in Election Administration in Miami-Dade County**

69.     Defendant DAVID C. LEAHY, Supervisor of Elections for Miami-Dade County, is responsible for appointing election boards for each precinct, providing forms, materials, and voting equipment for use on election day, and providing training for election officials.

70.     Precincts in Miami-Dade County with substantial percentages of black voters had a significantly higher proportion of non-votes in the Presidential election than precincts in the county that are predominantly white.

71.     On information and belief, the number or proportion of voters in these predominantly black precincts who intended not to cast votes in the Presidential election was not substantially higher than the number or proportion of voters in other precincts within Miami-Dade County who intended not to cast votes in the Presidential election.

72.     On information and belief, the high numbers or proportions of non-votes for the office of President in predominantly black precincts resulted from practices relating to voting machines or systems and balloting procedures implemented by defendant Leahy and his staff.

73.     Plaintiffs ERMA J. KELLY, JOHN L. CHEEVER, JAMES MARSHALL and LILLIE Q. ODOM are properly registered voters who reside in voting precincts in Miami-Dade County that have substantial percentages of black voters. They each voted in the general election for the office of President of the United States on November 7, 2000 but are significantly less likely to have had their votes counted and accurately tabulated than voters in predominantly white precincts in Miami-Dade County.

74.     Defendant LEAHY's non-uniform methods of administering the November 7, 2000 general election denied black voters an equal opportunity to participate in the Presidential election and have their votes counted.

75.     The Florida Election Reform Act of 2001 contains provisions relating to decertification of punch-card voting machines in all counties in Florida, including Miami-Dade County, and to training for poll workers regarding the operation of voting systems. However, the

Act has not been precleared pursuant to Section 5 of the Voting Rights Act. On information and belief, a new voting system has not yet been selected to replace the punch-card ballot system in Miami-Dade County. Not until the new Act has been implemented effectively, a new voting system has been selected, and the new system has been implemented in Miami-Dade County can Plaintiffs determine whether their rights will continue to be violated by the use of and by procedures connected with Defendant LEAHY's administration of the voting system in Miami-Dade County.

## C.    Wrongful Purging of Voters from Official Lists of Eligible Voters

76.    Pursuant to state and federal law, Defendants Harris, Roberts and the Supervisors of Elections are charged with administering and maintaining the state's overall list maintenance programs and the state's central voter file.  Both state and federal law establish the manner in which the voter registration information must be maintained and the circumstances in which individuals may be purged from the voter rolls.

77.    Defendant Roberts contracted with Defendant DBT to compare information in the state's central voter file with information available in other computer databases and prepare a list of registered voters who were ineligible to vote.  Upon information and belief, in the course of carrying out this contract, Defendant DBT wrongfully identified qualified voters as ineligible to vote and communicated that incorrect information to Defendants.

78.    Upon information and belief, Defendants Harris, Roberts and DBT determined the matching and other criteria and sources of information for creating the lists of ineligible voters to be forwarded to county supervisors under Fla. Stat. Ann. § 98.0975.  Upon information and belief, at the instruction of the State, Defendant DBT used matching criteria to identify ineligible voters that the State knew would result in a significant number of "false positives," that is, eligible voters who would identified as ineligible.

20

79.     Upon information and belief, Defendants Harris, Roberts and DBT have failed to exercise appropriate diligence and care to ensure and to verify the reliability and accuracy of the list of ineligible voters that was forwarded to each county supervisor pursuant to the state list maintenance program mandated by Fla. Stat. Ann. § 98.0975.

80.     Upon information and belief, prior to the November 7, 2000 general election, Defendants Harris and Roberts failed to require that all county supervisors adopt effective measures to ensure accurate purging of the names of registered voters on the lists provided by the State, and to prevent county election supervisors from purging voters without verifying the information provided in the lists. Upon information and belief, Defendants Harris and Roberts failed to ensure that county supervisors would be able to verify in a timely manner the lists of ineligible voters provided by the State, and to determine whether the information provided by the State was accurate.

81.     Upon information and belief, prior to the November 7, 2000 general election, Defendant county supervisors adopted widely varying approaches to purging the names of registered voters based on the lists provided by the State. Upon information and belief, many Defendant county supervisors failed to verify at all or to verify adequately the information provided by the state, and, as a result, wrongfully purged numerous voters from their official lists of registered voters.

82.     Upon information and belief, prior to the November 7, 2000 general election, Defendant county supervisors wrongly purged from the voter rolls ex-felons who had their rights restored in the states in which they committed their felonies. Upon information and belief, this practice continued after the November 7, 2000 election.

83.     The NVRA requires that if a registration record incorrectly indicates that a voter has changed her residence, the voter shall be permitted to vote upon oral or written affirmation or confirmation that the voter continues to reside at the address that is within the supervisor's jurisdiction. *See* 42 U.S.C. § 1973gg-6(d). On information and belief, Defendants fail to provide

voters who have been purged wrongfully based on an alleged address change the opportunity to vote by confirming or affirming their address within the supervisor's jurisdiction upon their appearance at a polling site on election day.

84.     The NVRA requires that a voter shall not be removed from the voter rolls based on change of residence unless the registrar confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction or the registrant (i) has failed to respond to a specified notice and (ii) has not voted during a prescribed time period.  Upon information and belief, Defendants routinely remove individuals from the voter rolls without following these procedures.  *See* Fla. Stat. Ann. § 98.045(2).

85.     Upon information and belief, Defendants Harris and Roberts have failed to provide, require, or enforce uniform standards, and have failed to provide adequate time or resources for county supervisors to verify the lists of ineligible voters that the state forwards to the counties so as to ensure that eligible voters are not wrongly purged from the official lists of registered voters.

86.     Upon information and belief, Defendants' administration of the voter roll purging process required by state and federal law had a disproportionate adverse impact on black voters and resulted in a larger percentage of black voters than white voters being wrongly removed from the official lists of registered voters.

87.     Plaintiff WILLIE STEEN has been a properly registered voter living in Hillsborough County, Florida since he was honorably discharged from the military in 1993.  He has lived at his current address since December 1999.  On November 7, 2000, Mr. Steen went to vote for the first time.  When he arrived at his polling place, he was told that he could not vote because he had a felony conviction.  Mr. Steen has never been arrested or convicted of any crime.  Mr. Steen was improperly denied the right to vote.

88.     Plaintiff WALLACE MCDONALD is a properly registered voter residing in Hillsborough County, Florida.  In June 2000 he received a letter from the Hillsborough County

Supervisor of Elections informing him that he would be removed from the voter rolls because of a prior felony conviction. Mr. McDonald responded in writing, informing the Supervisor that he has not been convicted of a felony. He also engaged an attorney to search the court records in Hillsborough County. His attorney found no record of a felony conviction. Upon information and belief, although Mr. McDonald's attorney brought this to the attention of the Supervisor of Elections, the Supervisor nevertheless refused to reinstate Mr. McDonald as a registered voter. Mr. McDonald does not have a felony conviction and was improperly denied the right to vote.

89.     Plaintiff JERMAINE TERRY is a properly registered voter living in Hillsborough County, Florida. On November 7, 2000, Mr. Terry was told by Hillsborough County voting officials at the polls that he had been purged from the voter roll, and he was not allowed to vote. There is no valid basis upon which Mr. Terry could have been purged from the voter rolls. On information and belief, records of the Supervisor of Elections of Hillsborough County indicated simply that he was deleted from the rolls pursuant to the National Voter Registration Act. Such deletion was not proper under state or federal law. As a result of this violation, Mr. Terry was improperly denied the right to vote.

90.     Plaintiff LORINE WALDEN has been a registered voter since the 1960s. About one week prior to the November 7, 2000 general election, she went in person to check the status of her registration. The employee at the Supervisor of Elections office checked something on a computer and then informed her that she was not in the system and that she would not be allowed to vote in the general election this year. There is no valid basis upon which Ms. Walden could have been purged from the voter rolls. Because the clerk specifically informed her that she could not vote in this election, Ms. Walden did not try to vote on November 7, 2000, and was effectively and improperly denied the right to vote.

91.     Plaintiff EMERY TIMBERLAKE is a properly registered voter living in Volusia County. Mr. Timberlake requested an absentee ballot for the November 7, 2000 election. He never received a ballot or any other response from the Supervisor of Elections. On November 7,

23

2000, Mr. Timberlake went to his polling place to vote. Mr. Timberlake gave his voter registration card and driver's license to the clerk. The clerk reviewed the voter roll and told him that he was not on it and that he could not vote. No further information or assistance was offered to Mr. Timberlake at that time. There is no valid basis upon which Mr. Timberlake could have been purged from the voter rolls. On information and belief, the Supervisor of Elections removed Mr. Timberlake from the rolls in 1999 based on an alleged duplicate registration in Alabama. Mr. Timberlake has never lived in or registered to vote in Alabama. Mr. Timberlake was improperly denied the right to vote.

92.    Plaintiff URSULA HARVEY is a properly registered voter residing in Volusia County. She is a student at Bethune-Cookman College (BCC) in Daytona Beach, Florida. In or about February 1998, before she enrolled at BCC, she registered to vote in Martin County where she lived with her mother. In or about September 1998, after entering BCC and moving to Daytona Beach, Ms. Harvey registered to vote in Volusia County. On November 3, 1998, she presented her Volusia County voter registration card at Precinct 620 and was permitted to vote. She did not change her voter registration or register to vote in any other location after 1998. On November 7, 2000, Ms. Harvey went to the same polling site where she voted in 1998 and tried to vote. She presented her voter registration card and driver's license to the poll worker, but was told that she was not on the voter roll. A supervisor at the precinct made a telephone call, and while she was on the telephone, the supervisor informed Ms. Harvey that she was listed as being registered in Martin County and would have to go there to vote. Ms. Harvey explained that she had been previously registered in Martin County, but that she had changed her registration to Volusia County. Ms. Harvey was not allowed to cast a ballot. Ms. Harvey was improperly denied the right to vote.

93.    The Florida Election Reform Act of 2001 contains provisions relating to provisional balloting, notification to voters prior to removal from the voter rolls, and development of a statewide voter registration database that cannot be maintained by a private entity. However, it is not clear how the new provisions of the law will operate and to what extent

24

the Act will address the concerns raised in this section. In addition, the Act has not been precleared pursuant to Section 5 of the Voting Rights Act and cannot yet go into effect. Finally, the Act fails to address many of the purge issues stated here and does not offer any retroactive relief for those individuals wrongfully purged from the voter rolls.

**D.**    **Failure to Timely and Correctly Process Voter Registration Applications and Change of Address Information**

94.    Under state and federal law, Florida residents can register to vote or update a registration in person at their county Supervisor of Elections offices or at a number of other state agencies, including the Department of Highway Safety and Motor Vehicles and social services offices, or by mailing a completed application to the Supervisors of Elections office. Fla. Stat. Ann. §§ 97.053 *et seq*. Under Florida law, a valid initial voter registration application submitted by mail and bearing a clear postmark is effective as of the date of the postmark. Fla. Stat. Ann. § 97.053(4). If there is no postmark, or if the postmark is unclear, the registration is effective as of the date of receipt, unless it is received within 5 days after the closing of the books for an election, in which case the effective date of the applicant's registration is the book-closing date.

95.    The NVRA provides that "[a]ny change of address form submitted in accordance with State law for purposes of a State motor vehicle driver's license shall serve as notification of change of address for voter registration with respect to elections for Federal office for the registrant involved unless the registrant states on the form that the change of address is not for voter registration purposes." 42 U.S.C. § 1973gg-3(d). Thus, federal law provides that a change of address notification to the DHSMV will also serve as an address change for voter registration purposes unless the registrant declines in writing to have the information used for voter registration. Under Florida law, a driver's license examiner is required to inquire "orally" or "in writing if the applicant is hearing impaired" whether "the applicant wishes to register to vote or update a voter registration record during the completion of a driver's license or identification

25

card application, renewal, or change of address." Fla. Stat. Ann. § 97.057(2)(b).  If an individual declines to register or update a registration, either orally or by failing to sign the registration application, the DHSMV must keep the declination for two years. Fla. Stat. Ann. § 97.057(2)(b)2.  State law does not require written declination and is inconsistent with the NVRA.

96.     Upon information and belief, prior to the November 7, 2000 election, Defendant Lowe failed to notify individuals whose voter registration applications were incomplete of the status of their applications in a timely manner.

97.     Upon information and belief, Defendants Harris and Roberts have failed to provide, require, or enforce uniform standards and procedures for the timely, accurate and proper processing of voter registration applications, the registration of voters, and updating of voter registrations, including changes of address.  On information and belief, Defendants Dickinson and Kearney have failed to provide, require, or enforce uniform standards and procedures for the timely, accurate and proper processing of voter registration applications and updating of voter registrations, including changes of address, received by their respective Departments.  On information and belief, Defendants Election Supervisors of Hillsborough, Volusia, Orange, Broward, and Duval Counties failed or refused to process many new voter registration applications that were submitted to them prior to the deadline imposed by state law.

98.     Plaintiff PLACIDE DOSSOUS moved from Miami-Dade to Broward County in September 1999, and in or about July 2000 notified the Department of Highway Safety and Motor Vehicles of his new address when he changed his driver's license.  Mr. Dossous never received a new voter registration card.  He did not appear on the voter roll at either of the precincts where he tried to vote on November 7, 2000, and he was not permitted to vote.  Mr. Dossous was improperly denied the right to vote.

99.     Plaintiff CONSUELO MARIA GRAHAM lives with her father in Orange County, Florida.  In September 2000, Ms. Graham completed a voter registration application request on-line.  On approximately October 3, 2000, she received a voter registration application

26

in the mail for her signature. She signed the application and submitted it to the Orange County Supervisor of Elections. As of October 9, 2000, she had not received a voter registration card, so Ms. Graham completed another voter registration application, which was submitted to the Supervisor of Elections on or before October 10, 2000, the deadline for voter registration for the November election. On November 7, 2000, Ms. Graham went to the polling site where her father voted in order to cast her ballot. She was told that she was not on the precinct register and she was not allowed to vote. At no time did any poll worker offer to call to inquire as to her eligibility to vote. Ms. Graham was improperly denied the right to vote on November 7, 2000.

100.    Plaintiff SHERRY EDWARDS is a resident of Hillsborough County, Florida. When Ms. Edwards was at the Department of Highway Safety and Motor Vehicles office in September 2000 obtaining a Florida driver's license, she registered to vote. Ms. Edwards never received a response from the Hillsborough County Supervisor of Elections regarding her voter registration application. On November 6, 2000, she contacted the Supervisor of Elections office to inquire about where to vote. She was informed that she was not a registered voter and would not be permitted to vote in the fall general election. On November 7, 2000, Ms. Edwards went to her local polling site to vote. She was not listed on the voter roll and was not allowed to vote. Ms. Edwards was improperly denied the right to vote.

101.    Plaintiff KANDY WELLS completed a voter registration application in 2000 that was personally delivered by Mrs. Wells' father to the Hillsborough County Supervisor of Elections office on October 9, 2000.  Mrs. Wells did not receive a voter registration card prior to election day. She believed that her registration application had not been processed since she had not received anything from the Supervisor of Elections, and accordingly, she did not vote on November 7, 2000. On December 7, 2000, Mrs. Wells received a new voter registration card in the mail. The card indicates that it was issued on November 20, 2000. Mrs. Wells was improperly denied registration effective for the November 2000 general election.

102.     Plaintiff JOANNA CLARK is a resident of Broward County, Florida who has been registered to vote in Broward County since approximately 1995. In or about October 1999, Ms. Clark moved within the County, from Pompano Beach to Fort Lauderdale. In or about April 2000, Ms. Clark completed a voter's registration change of address form at the Department of Children and Family Services Office in Broward County. Ms. Clark had not received a new voter registration card, so she submitted a voter registration change of address form approximately two weeks prior to the November 7, 2000 election. On November 7, 2000, she went to her former polling place at Pompano Beach Middle School. A precinct official informed her that she was not on the voter list. Clark indicated that she had moved to Fort Lauderdale. The official told her that she had to find somewhere in Fort Lauderdale to vote but stated that she did not know the location of her new polling place and had no way of finding out. Clark noticed her name on the voter list and pointed it out to the precinct official. The official replied that she could not allow Clark to vote because that would be considered a felony and she could have Clark arrested. Clark was improperly denied the right to vote in the November 7, 2000 general election.

103.     Plaintiff JANICE KELLY is a resident of Duval County, Florida where she has been a registered voter since approximately 1994. After her initial registration in Duval County, Ms. Kelly moved to a new address within the county. When she moved, Ms. Kelly obtained a new driver's license. In 1998, Ms. Kelly went to vote at her old polling site, as she had never received information about the correct polling site based on her new address. She was permitted to vote at her old polling place and she told the poll workers there that she had moved, and provided them with her new address. Ms. Kelly never received a new voter registration card or information regarding a new polling site. On November 7, 2000, Ms. Kelly went to vote at her old polling site. There was no voting at that site and there were no signs directing voters to another location. Ms. Kelly then drove to a fire station where she had seen voters lined up earlier in the day, and there she was told that she had to go to a church down the road to vote. Ms. Kelly rushed to the church, arriving just before 7:00 p.m., but she was told that she could not

vote because the polls were closed.  Ms. Kelly was improperly denied the right to vote.

104.     The failure of Defendants Harris, Roberts, Dickinson, and Kearney to provide for and ensure the proper and timely processing of voter registrations and address changes and the failure of Defendants Hillsborough, Volusia, Orange, Broward, and Duval county election supervisors to properly and timely process voter registration applications and voters' change of address information submitted before the close of registration for the 2000 general election violates state and federal law and denied Plaintiffs listed above in this section the right to vote.

105.     The Florida Election Reform Act of 2001 fails to address directly the problems raised in this section.  Theses problems may be addressed in part through the Division of Election's rule-making process.

E.     **Improper Procedures for Change of Residence, Unequal Access to Inactive Voter List, and Failure to Provide Means of Communication with Supervisor of Elections Office**

106.     Defendants Harris, Roberts, Dickinson, and Kearney, and Defendants Election Supervisors in Broward, and Hillsborough Counties, among others, failed to comply with the National Voter Registration Act in conducting a program to verify changes of residence by voters and to remove voters ineligible to vote within their respective jurisdictions because of changes of residence.  The manner in which registration rolls and eligible voter lists were maintained by these Defendants for the November 2000 general election denied or abridged the rights of black voters within these jurisdictions to participate in the election on the same basis as other voters.

107.     Upon information and belief, qualified black voters in Florida were improperly denied the right to vote as a result of the practices complained of herein in disproportionately greater numbers than white voters, despite the fact that they were properly registered and included in the category of eligible voters according to the records of the Supervisor of Elections for their respective counties.

108.    Under Defendants' address change verification and voter removal program that was in effect for the 2000 general election, certain registered voters were placed on an "inactive" list and were not included on their respective voting precincts' lists of voters on Election Day. Although such voters remained registered voters, Defendants did not require that the names of voters on the "inactive" list be kept at the polling place and they were not available at all precincts.  As a result, in precincts without an "inactive" voter list, an "inactive" voter was only able to vote if an official at the polling place contacted the central county office, which in most cases could be done only by telephone, to confirm the elector's eligibility to vote.

109.    Voters who had moved and who went to vote at the proper polling place based on their new address often did not appear on the voter roll.  In order for these voters to vote, a poll worker had to check the central voter list, a task that typically required contact with the Supervisor of Elections office by telephone.

110.    Defendants failed to provide or maintain adequate telephone capacity in Supervisors' offices.  As a result, many of the telephone lines were busy for long periods of time on election day and were still busy as of 7 p.m, the poll closing time.  The status of large numbers of voters who had been placed on an "inactive" list could not be verified and, consequently, these individuals were denied the right to vote.  In addition, voters who appeared at their new polling sites after a move also were denied the right to vote due to the inability of poll workers to verify voter registrations.

111.    Defendants' address change verification and voter removal program, as described above, and in particular the failure to maintain information about voters on an "inactive" list at polling places, effectively removed persons from the official eligible voter list in violation of state and federal law.

112.    On information and belief, in Hillsborough County, ten precincts were provided with laptop computers to enable poll workers to directly access the county files of eligible voters (including voters on an "inactive" list) without having to call a central county telephone number.

On information and belief, none of the county's majority black precincts received a laptop computer.

113.   On information and belief, in Miami-Dade County, laptop computers were available in eighteen precincts, but only one majority-black precinct was equipped with a laptop computer on election day to enable poll workers to directly access information concerning eligible voters (including voters on an "inactive" list).

114.   This unequal access to the complete county voter roll, and specifically, to the inactive list, resulted in disproportionately greater numbers of black voters being wrongfully denied the right to vote, and effectively resulted in those voters being purged in a manner contrary to state and federal statutory provisions for voter list maintenance.

115.   Plaintiff PLACIDE DOSSOUS moved from Miami-Dade to Broward County in September 1999, and in July 2000 notified the Department of Highway Safety and Motor Vehicles of his new address when he changed his drivers' license.  Mr. Dossous never received a new voter registration card.  On November 7, 2000, Mr. Dossous first went to his previous polling place at the Korean Presbyterian Church in Dade County in an effort to find out where he should vote.  The clerk told him that he was not on the voter list.  The clerk could not get through to the Supervisor of Elections because of busy phone lines and therefore provided no assistance to Mr. Dossous in determining where he should vote.  Mr. Dossous returned home where he later received a telephone call from someone urging him to vote.  He explained that he had already tried to vote. The caller told Mr. Dossous that she had found his name in the Sheridan Vocational School voter list, in Broward County.  Mr. Dossous went to the Sheridan Vocational School, where a clerk informed him that he was not on the voter list.  Mr. Dossous waited for two hours while a polling official tried to telephone the Supervisor of Elections, but never got through.  Mr. Dossous finally left his name and telephone number for poll officials to call when they reached the Supervisor of Elections.  He never received a call.  Mr. Dossous was improperly denied the right to vote in the November 7, 2000 general election.

116.   Plaintiff RONDRICK ROSE is a properly registered voter residing in Hillsborough County, Florida. In December 1999, Plaintiff Rose moved from one address to another within Hillsborough County. He changed his address with the Department of Highway Safety and Motor Vehicles and the United States Postal Service. On November 7, 2000, he went to the polling site for his new address and presented identification. Mr. Rose was not listed on the precinct register and he was instructed to complete an affirmation form, which he did, and he was then told that a poll worker would have to call to verify his eligibility to vote. On information and belief, Mr. Rose was listed in the county database as an "inactive" voter. Mr. Rose waited for approximately two hours, while a poll worker called to confirm his registration. The phone line was continuously busy and the worker was not able to get through to anyone at the Supervisor of Elections office. Mr. Rose was improperly denied the right to vote.

117.   Plaintiff VALERIE BUFORD-WELLS is a properly registered voter residing in Broward County. On November 7, 2000, Ms. Buford-Wells went to her assigned precinct and presented her voter registration card and driver's license to the precinct official. The official informed her that her name was not on the list of registered voters. The precinct official tried to call the Broward County Supervisor of Elections office but the line was busy. There is no valid basis upon which Ms. Buford-Wells could have been purged from the voter rolls. Ms. Buford-Wells was improperly denied the right to vote.

118.   The Florida Election Reform Act of 2001 contains provisions related to provisional ballots, which may, if effectively implemented, address some of the problems raised in this section. The problems may be addressed in part through the Division of Election's rule-making process, but it does not appear that either the statute or the rule-making will address accessibility of the full voter list in each polling place, improper procedures regarding the placement of voters in "inactive" status, or the need for better communications between the polling places and the Supervisor of Elections offices.

F.    **Poll Worker Error**

119.    Defendants Harris and Roberts, and the County Supervisors, are responsible for the administration of polling places on an election day and for the training of poll workers. Defendants and Harris failed to establish uniform training and election day procedures in regard to the November 7, 2000 election. The County Supervisors failed to provide adequate training and supervision to poll workers in regard to the November 7, 2000 election.

120.    Plaintiff MICHELLE FLOYD submitted a completed voter registration application to the Leon County Supervisor of Elections around September 2000. On November 7, 2000 she went to vote at her local polling site at the Florida A&M University Grand Ballroom. Ms. Floyd was listed on the precinct register, but instead of being given a ballot, she was referred to a clerk at another table. The clerk reviewed Ms. Floyd's identification, but then told her she could not vote and she would have to call someone else. Ms. Floyd was never permitted to vote on November 7th. Shortly after the election, Ms. Floyd received her voter registration card in the mail. The card listed her registration date as September 5, 2000 and her polling site as the Grand Ballroom, where she went to vote in November. Ms. Floyd's name was in fact on the voter roll. Because the poll worker erred in telling Ms. Floyd that she was not on the voter roll and in failing to provide Ms. Floyd with further assistance in determining her eligibility to vote, Ms. Floyd was improperly denied the right to vote on November 7, 2000.

121.    Plaintiff VALERIE BUFORD-WELLS is a properly registered voter residing in Broward County. On November 7, 2000, Ms. Buford-Wells went to her assigned precinct and presented her voter registration card and driver's license to the precinct official. The official informed her that her name was not on the list of registered voters. Ms. Buford-Wells was in fact on the voter roll, under her prior name of "Valerie Buford." Due to the poll worker's lack of training, Ms. Buford-Wells was improperly denied the right to vote.

122.    The Florida Election Reform Act of 2001 contains provisions relating to rule-making in regard to poll worker training and an election day procedures manual to be available in

33

every precinct. It is unclear, however, if the rule-making will address effectively the problems raised in this section.

## Equitable Relief

123.     Plaintiffs have no adequate remedy at law for such deprivation of their rights, privileges and immunities.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

(Fourteenth Amendment Equal Protection and Due Process Clauses)

124.     Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 123 above.

125.     Defendants Harris and Roberts have maintained and administered non-uniform methods and practices of administering elections and counting ballots in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

### SECOND CLAIM FOR RELIEF

(Section 2 of the Voting Rights Act of 1965)

126.     Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 123 above.

127.     Defendant Leahy's methods of administering the November 7, 2000 general election denied black voters an equal opportunity to participate in the Presidential election in violation of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973.

128.    Defendants Harris, Roberts, DBT, Leahy, Oliphant (through her predecessor Carroll), Iorio, Lowe, through their actions in failing to adopt and implement uniform standards of reliability and accuracy for voting machines or systems that may be selected or utilized by county supervisors of elections, and procedures connected with their use; in the purging of voters from official lists of eligible voters; and in their maintenance and administration of "inactive" lists and the unequal availability of access to complete voter rolls denied black voters an equal opportunity to participate in the Presidential election in violation of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973.

## THIRD CLAIM FOR RELIEF

### (42 U.S.C. § 1983)

129.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 123 above.

130.    All Defendants, acting under color of state law, have deprived Plaintiffs of the rights, privileges, and immunities secured to them under the Fourteenth Amendment to the United States Constitution, the National Voter Registration Act, and 42 U.S.C. § 1983 to participate in the electoral process.

## FOURTH CLAIM FOR RELIEF

### (Civil Rights Acts of 1957 & 1960)

131.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 123 above.

132.    All Defendants, by their actions as described in this Complaint, have, acting under color of law, applied different standards, practices or procedures in determining whether some voters were qualified to vote than were applied to other voters within the same county who have

been found by State officials to be qualified to vote and denied individuals the right to vote because of immaterial errors and omissions in registration and ballot applications, in violation of 42 U.S.C. §§ 1971(a)(2)(A) and 1971(a)(2)(B).

## FIFTH CLAIM FOR RELIEF

(Fla. Stat. § 104.0515)

133.   Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 123 above.

134.   Defendants, by their actions described in this Complaint, have applied prerequisites to voting, employed certain voting methods, and administered elections using standards, practices and procedures in a manner which results in denial or abridgement of the rights of citizens in Florida to vote on account of race or color in violation of Florida Statutes §104.0515.

## SIXTH CLAIM FOR RELIEF

(National Voter Registration Act)

135.   Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 123 above.

136.   All Defendants, by their actions described in this Complaint, including failure to properly and timely process voter registration applications and changes of address, failure to timely notify applicants of the disposition of their applications, failure to carry out voter deletions and transfers to inactive status in an appropriate manner, and failure to permit voters who have moved within the same political subdivision to vote even if they have not updated their registration to indicate their new address, have acted in a manner that violates the National Voter Registration Act ("NVRA"), 42 U.S.C. § 1973gg *et seq.*

137.    Pursuant to 42 U.S.C. § 1973gg-9(b), Plaintiffs notified Defendant Harris of the various violations of the NVRA that have occurred and requested that they be corrected as provided by statute.  To date, Defendant Harris has failed or refused to correct the violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for an Order:

(1)    Certifying, for the purposes of declaratory and injunctive relief, a class of all black citizens of the State of Florida eligible to vote, who were registered voters or who took timely and appropriate steps to register as voters, who sought to vote in the November 7, 2000 general election, and who were denied the opportunity to vote or were denied an equal opportunity to vote and have their votes counted in that election, by the actions, policies and practices of the Defendants, in violation of the Fourteenth Amendment of the United States Constitution, Section 2 of the Voting Rights Act of 1965, codified at 42 U.S.C. § 1973 *et seq.*, the Civil Rights Acts of 1957 and 1960, codified at 42 U.S.C. § 1971(a)(1), 1971(a)(2)(A) and 1971(a)(2)(B), 42 U.S.C. § 1983, the Florida Voting Rights Act, Fla. Stat. Ann. § 104.0515, and/or the National Voter Registration Act, 42 U.S.C. § 1973gg *et seq.*

(2)    Declaring that Defendants' use of "punch-card" voting machines or systems, other unreliable voting systems, and procedures connected with their use; failure to process timely voter registration applications; wrongful purge of qualified voters; failure to have complete and accurate voter lists at the polls and effective election day procedures; and failure to allow voters who have moved within the county to vote; caused the Plaintiffs and members of the Plaintiff class to be treated differently than similarly situated white voters, and denied them fundamental fairness and an equal opportunity to participate in the electoral process in the November 2000 general election, all in violation of the law as set forth in the claims for relief.

(3)    Declaring that Fla. Stat. Ann. §§ 97.057 and 98.045(2) are inconsistent with the

NVRA in the manner described in this Amended Complaint and are therefore invalid.

(4)     Enjoining Defendants immediately to discontinue the use of prerequisites to voting, certain voting methods, and administering elections using standards, practices and procedures in a manner which results in denial or abridgement of the rights of citizens in Florida to vote on account of race or color, or in a manner that otherwise violates federal or state law, including, but not limited to, requiring Defendants to do the following:

a.     To decertify all "punch-card" voting methods and other unreliable voting methods as acceptable voting methods under Florida law;

b.     To adopt standards and implement training designed to insure that voting systems and procedures at polling places within their jurisdiction are equal, accurate and reliable, and are uniformly administered;

c.     To provide a receipt to each voter who registers to vote in person at a designated voter registration site, including a Supervisor of Elections office, a DHSMV office, or a DCF office;

d.     To process all incomplete voter registrations initially received by the book closing date for an election, if it is possible to obtain the missing information prior to the election date;

e.     For all complete voter registration applications or updated information received by the book closing date for an election, to process that information and mail to the voter a new voter registration card at least 10 days before the next scheduled election;

f.     To develop procedures that will ensure that voter registration applications are processed in a timely manner;

g.     To develop and implement procedures to ensure that all customers at Department of Highway Safety and Motor Vehicle offices have an equal opportunity to

register to vote or to update a voter registration, including, but not limited to: (i) use of combined forms for motor vehicle and voter registration application; and (ii) require written declination for customers who do not wish to register to vote at DHSMV.

h.      To develop and implement procedures to ensure that all customers at Department of Children and Families offices have an equal opportunity to register to vote and to update a voter registration, including but not limited to receipt of assistance in completing voter registration application forms.

i.      To develop and implement uniform procedures regarding list maintenance, including but not limited to the use of a standardized form for change of address confirmation mailing.

j.      To maintain any list of inactive voters at polling places as part of the official list of eligible voters and as accessible to precinct officials as are the active lists;

k.      To provide a mechanism for persons whose names do not appear on the list of registered voters at the polling place to vote in as timely a fashion as those whose names do appear on the list, subject to challenge if they are shown not to be qualified to vote

l.      To provide notice to those who vote a provisional ballot and are found not to be qualified to vote regarding the basis for the disqualification, and an opportunity to challenge their disqualification;

m.      To establish a mechanism for timely communication on an election day between the polling places and the Supervisor of Elections office, and between individual voters and the Supervisor of Elections office;

n.      To accurately determine and restore to appropriate status all persons wrongfully purged based on the DBT list and all other persons purged in violation of state and

federal law;

o.   To discontinue all voter purges of the voter registration rolls until the development of procedures to ensure uniform, non-discriminatory application of the law;

p.   To prohibit the removal of the name of any person from the official voter registration lists on account of death, felony conviction or adjudication of mental incapacity based on information that has not been verified and determined to be a correct match for that person;

q.   To complete all purges not later than 90 days before any election;

r.   To extend, by at least four years, the time that voters identified as those who may have moved, who did not vote in November 2000, remain on the inactive list before they are purged, to remedy the situation of inactive list voters who were denied the right to vote in the November 2000 election;

s.   To develop and implement training for all personnel involved in the administration of the electoral process to ensure compliance with this order and all laws related to the non-discriminatory operation of the political process;

t.   To provide equitable, accurate equipment, facilities and resources for the administration of the electoral process statewide, including, but not limited to, the technology to facilitate verification of voter registration in all polling sites; and,

u.   To affirmatively notify voters of their rights at polling places, by posted notice or otherwise, including their rights to assistance, to correct their ballots if they believe they have made an error, to alternative identification procedures if they do not have a photo identification and to vote even if they have changed address, including the steps to follow to assert these rights.

(5)     Appointing, pursuant to Section 3(a) of the Voting Rights Act, 42 U.S.C. § 1973a, federal examiners in each of the Defendant counties for the next ten years.

(6)     Retaining jurisdiction of this case, pursuant to Section 3(c) of the Voting Rights Act, 42 U.S.C. § 1973a.

(7)     Awarding Plaintiffs their costs and disbursements associated with the filing and maintenance of this action, including an award of reasonable attorneys' fees pursuant to 42 U.S.C. §§ 19731, 1973gg-9, and 1988.

(8)     Awarding such other equitable and further relief as the Court deems just and proper.

DATED: August 16, 2001.

Respectfully submitted,

Thomasina H. Williams
Williams & Associates, P.A.
Brickell BayView Centre, Suite 1830
80 S.W. Eighth Street
Miami, FL 33130
Tel. 305-379-6676
Fax 305-379-4541
FL Bar No. 629227
wmslaw@winstarmail.com

Barbara Arnwine
Thomas J. Henderson*
Anita Hodgkiss*

Lori Outzs Borgen*
Lawyers' Committee for Civil Rights
    Under Law
1401 New York Ave., N.W., Suite 400
Washington, D.C. 20005-2124
Tel. 202-662-8600 or 888-299-5227
Fax 202-783-5130
lborgen@lawyerscomm.org

Dennis Hayes
Angela Ciccolo
Bruce Gear
NAACP Legal Department
4805 Mt. Hope Drive, Fifth Floor
Baltimore, MD 21215-3297
Tel. 877-622-2798
Fax 410-358-9350
aciccolo@naacpnet.org


Todd A. Cox*
NAACP Legal Defense & Educational
    Fund Inc.
1444 Eye Street, N.W., 10th Floor
Washington, DC 20005
Tel. 202-682-1300
Fax 202-682-1312
tcox@naacpldf.org


 Penda Hair*
Judith Browne*
Monique Dixon*
Advancement Project
1730 M Street NW, Suite 401
Washington, DC 20036
Tel. 202-728-9557
Fax 202-728-9558
jbrowneesq@aol.com

Elaine R. Jones
    Director-Counsel
Theodore M. Shaw*
Norman J. Chachkin*
Jacqueline A. Berrien*
Janai S. Nelson*
NAACP Legal Defense & Educational Fund, Inc.
99 Hudson St., Suite 1600
New York, NY 10013
Tel. 212-965-2200
Fax 212-216-7592
jnelson@naacpldf.org


Laughlin McDonald
ACLU Voting Rights Project
2725 Harris Tower
233 Peachtree Street NE
Atlanta, GA 30303
Tel. 404-523-2721
Fax 404-653-0331
lmcdonald@aclu.org


Louis M. Bograd
American Civil Liberties Union Foundation
National Legal Department
733 15th Street, NW, Suite 620
Washington, DC 20005
Tel. 202-393-1918
Fax 202-393-4931
BOGRAD1@aol.com


Elliot Mincberg*
Larry Ottinger*
Alma C. Henderson*
People for the American Way Foundation
2000 M Street, Suite 400
Washington DC 20036
Tel. 202-467-2392
Fax 202-293-2672
lottinger@pfaw.org

* Admitted *pro hac vice.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via U.S. mail on this _16th_ day of __August__ 2001, to:

Walter James Harvey, Esq.
Steel Hector & Davis, LLP
200 S. Biscayne Boulevard
41st Floor
Miami, FL 33131-2398
phone: 305-577-2934
fax:     305-577-7001
Attorneys for Katherine Harris,
Secretary of State of Florida, and
Clay Roberts, Director of the
Florida Division of Elections

John W. Little, III, Esq.
Steel Hector & Davis, LLP
1900 Phillips Point West
777 South Flager Drive, Suite 1900
West Palm Beach, FL 33401
phone: 561-650-7270
fax:     561-655-1509
Attorneys for Katherine Harris,
Secretary of State of Florida, and
Clay Roberts, Director of the
Florida Division of Elections

H. Ray Allen, II, Esq.
Sr. Assistant County Attorney
Rebecca M. Kert, Esq.
Assistant County Attorney
Hillsborough County Attorney's Office
601 E. Kennedy Blvd., 27th Floor
Tampa, FL 33602
phone: 813-272-5670
fax: 813-272-5846
Attorneys for Hillsborough County
Supervisor of Elections Pam Iorio

Burnadette Norris-Weeks, Esq.
100 S.E. 6th Street
Ft. Lauderdale, FL 33301
phone: 954-768-9770
fax:     954-768-9790
Attorney for Broward County Supervisor of
Elections Miriam Oliphant

Tracey I. Arpen, Jr., Esq.
Office of General Counsel
City of Jacksonville
117 W. Duval St., Suite 480
Jacksonville, FL 32202
phone: 904-630-1835
fax:     904-630-1316
Attorney for Duval County Supervisor
of Elections John Stafford

Christopher R. Haughee, Esq.
The Bentley Law Group, P.A.
690 E. Davidson St.
Bartow, FL 33830-4051
phone: 863-519-9820
fax:     863-519-0720
Attorney for Leon County
Supervisor of Elections Ion Sancho

Jeffrey P. Ehrlich, Esq.
Assistant County Attorney
Dade County Attorney's Office
Metro Dade Center
111 NW 1st Street, Suite 2810
Miami, FL 33128
phone: 305-375-5151
fax:     305-375-5634
Attorney for Miami-Dade County
Supervisor of Elections David Leahy

Michael Cirullo, Jr., Esq.
Josias Goren Cherof Doody & Ezrol, PA
3099 E. Commercial Blvd., Suite 200
Ft. Lauderdale, FL 33308-4311
phone: 954-771-4500
fax:    954-771-4923
Attorney for Orange County
Supervisor of Elections William Cowles

Mitchell Bloomberg, Esq.
Stephanie Gail Kolman, Esq.
Adorno & Zeder
2601 South Bayshore Drive, Suite 1600
Miami, FL 33133
phone: 305-858-5555
fax:    305-858-4777
Attorney for ChoicePoint, Inc.
d/b/a Database Technologies, Inc.

Raymond W. Bergan, Esq.
Daniel A. Restrepo, Esq.
Williams & Connolly, LLP
725 12th Street, NW
Washington, DC 20005
phone: 202-434-5000
fax:    202-434-5029
Attorneys for ChoicePoint, Inc.
d/b/a Database Technogies, Inc.

Daniel D. Eckert, Esq.
Frank B. Gummey, III, Esq.
Volusia County Attorney's Office
123 W. Indiana Avenue
DeLand, FL 32720-4613
phone: 386-736-5950
fax:    386-736-5990
Attorneys for Volusia County
Supervisor of Elections Deanie Lowe

David V. Kornreich, Esq.
Muller, Mintz, Kornreich, Caldwell,
 Casey, Crosland & Bramnick, PA
First Union Financial Center
200 South Biscayne Boulevard, Suite 3600
Miami, FL 33131
phone: 305-358-5500
fax:    305-379-3802
Attorneys for Volusia County
Supervisor of Elections Deanie Lowe

By: _____