# CHAPTER 2001-40

## Committee Substitute for Senate Bill No. 1118

An act relating to elections; creating the Florida Election Reform Act of 2001; amending s. 97.021, F.S.; revising definitions; amending ss. 98.471, 100.341, 100.361, F.S.; removing provisions relating to voting systems that use voting machines or paper ballots; amending s. 101.015, F.S.; requiring the Division of Elections to review the voting systems certification standards to ensure that new technologies are available and appropriately certified for use; amending s. 101.151, F.S.; modifying specifications for ballots; requiring the Department of State to adopt rules prescribing uniform ballots; amending ss. 101.21, 101.24, 101.292, 101.34, 101.341, 101.43, 101.49, 101.58, 101.71, 101.75, 104.30, 138.05, F.S.; removing provisions relating to voting machines and updating references, to conform; amending s. 101.5603, F.S.; deleting references to punchcard marking and voting devices; amending s. 101.5604, F.S.; requiring the use of precinct tabulation electronic or electromechanical voting systems in each county; amending s. 101.5606, F.S.; providing additional requirements for electronic and electromechanical voting systems; prohibiting the use of punchcard voting systems; amending s. 101.5607, F.S.; to correct a cross-reference; amending s. 101.5608, F.S.; providing procedures for ballots rejected by the vote tabulation device; amending s. 101.5612, F.S.; provide standards for logic and accuracy testing of vote tabulating equipment; amending s. 101.5614, F.S.; removing references to canvassing returns at central or regional locations, to conform; creating s. 101.595, F.S.; requiring supervisors of elections and the Department of State to report on voter errors following the general election; amending s. 102.012, F.S.; prescribing additional duties for election boards; deleting references to voting machines, to conform; amending s. 103.101, F.S., relating to the form of the presidential preference primary, to conform; amending s. 582.18, F.S., relating to the election of district supervisors; conforming a cross-reference; repealing ss. 100.071, 101.141, 101.181, 101.191, 101.251, 101.5609, F.S., relating to the specification and form of ballots, to conform; repealing ss. 101.011, 101.27, 101.28, 101.29, 101.32, 101.33, 101.35, 101.36, 101.37, 101.38, 101.39, 101.40, 101.445, 101.45, 101.46, 101.47, 101.54, 101.55, 101.56, F.S., relating to voting machines, to conform; amending s. 97.021, F.S.; revising the definitions of the terms "absent elector" and "primary election"; providing additional definitions; creating s. 101.048, F.S.; providing procedures for voting and counting provisional ballots; amending s. 101.045, F.S.; requiring verification of an elector's eligibility if the elector's name is not on the precinct register; amending s. 101.5614, F.S.; providing for the return of provisional ballots to the supervisor of elections; providing for the canvass of provisional ballots; clarifying the standard for counting votes on spoiled ballots; amending s. 101.69, F.S.; allowing a voter who has requested an absentee ballot and who decides to vote at the polls on election day to vote a provisional ballot, if the absentee

CODING: Words stricken are deletions; words underlined are additions.

EXHIBIT

A

ballot is not returned; amending s. 102.111, F.S.; changing the composition of the Elections Canvassing Commission; revising deadlines for county returns; amending s. 102.112, F.S.; revising deadlines for certification of election results; directing the Department of State to ignore late-filed election returns except in the case of a statutory emergency; amending s. 102.141, F.S.; requiring the county canvassing board to provide public notice of time and place of the canvass of provisional ballots; modifying deadlines for submitting unofficial returns; revising requirements for an automatic machine recount; amending s. 102.166, F.S.; substantially modifying standards and procedures for manual recounts; repealing s. 102.167, F.S.; eliminating a form for protests; amending s. 102.168, F.S.; revising the grounds for an election contest; amending s. 99.063, F.S.; adjusting the date to designate a Lieutenant Governor running mate; revising the primary date in 2002 and providing for only one primary until 2004; providing dates for Lieutenant Governor candidates to be designated and qualified; providing campaign finance reporting dates and contribution limits for the 2002 elections; creating s. 97.0555, F.S.; providing for registration of certain military and overseas persons; requiring the Department of State to adopt rules specifying eligibility; creating s. 101.6951, F.S.; providing for a state write-in absentee ballot for overseas voters; creating s. 101.6952, F.S.; providing for absentee ballots for overseas voters; creating s. 101.697, F.S.; providing for absentee ballot requests and voting via electronic transmission by overseas voters under certain circumstances; creating s. 101.698, F.S.; authorizing the Elections Canvassing Commission to adopt emergency rules during crises to facilitate absentee voting; amending s. 101.62, F.S.; modifying information on absentee ballot requests; amending s. 101.64, F.S.; modifying absentee ballot certificates; amending s. 101.65, F.S.; modifying instructions to absent electors; amending s. 101.657, F.S., relating to voting absentee ballots; conforming provisions; amending s. 101.68, F.S.; modifying information that must be included on an absentee ballot; authorizing the processing of absentee ballots through tabulations for a specified period before the election; amending s. 104.047, F.S.; deleting a prohibition against persons witnessing more than five ballots in an election and a prohibition against returning more than two ballots in an election, and the penalties therefor; repealing ss. 101.647, 101.685, F.S., relating to returning absentee ballots and absentee ballot coordinators; amending s. 98.255, F.S.; providing for voter education; amending s. 101.031, F.S.; providing for a Voter's Bill of Rights and Responsibilities; providing responsibilities of supervisors of elections; amending s. 101.131, F.S.; eliminating a requirement to call out names of voters; creating s. 102.014, F.S.; providing for pollworker recruitment and training; repealing s. 102.012(8) and (9), F.S., relating to pollworker training, to conform; amending s. 102.021, F.S.; to correct a cross-reference; amending s. 97.073, F.S.; revising procedures to be followed when a voter registration application is incomplete; amending s. 106.31, F.S.; providing legislative intent with respect to campaign financing; amending s. 106.33, F.S.; prohibiting the use of contributions from individuals who are not

CODING:  Words stricken are deletions; words underlined are additions.

(35) "Voting booth" or "booth" means that booth or enclosure wherein an elector casts his or her ballot, ~~be it a paper ballot, a voting machine ballot, or a ballot cast~~ for tabulation by an electronic or electromechanical device.

(36) "Voting system" means a method of casting and processing votes that functions wholly or partly by use of ~~mechanical,~~ electromechanical, or electronic apparatus or by use of paper ballots and includes, but is not limited to, the procedures for casting and processing votes and the programs, operating manuals, tabulating cards, printouts, and other software necessary for the system's operation.

Section 3.   Effective September 2, 2002, section 98.471, Florida Statutes, is amended to read:

98.471   Use of precinct register at polls.—The precinct register, as prescribed in s. 98.461, may be used at the polls in lieu of the registration books for the purpose of identifying the elector at the polls prior to allowing him or her to vote. The clerk or inspector shall require each elector, upon entering the polling place, to present a Florida driver's license, a Florida identification card issued under s. 322.051, or another form of picture identification approved by the Department of State. The elector shall sign his or her name in the space provided, and the clerk or inspector shall compare the signature with that on the identification provided by the elector and enter his or her initials in the space provided and allow the elector to vote if the clerk or inspector is satisfied as to the identity of the elector. If the elector fails to furnish the required identification, or if the clerk or inspector is in doubt as to the identity of the elector, such clerk or inspector shall follow the procedure prescribed in s. 101.49. ~~The precinct register may also contain the information set forth in s. 101.47(8) and, if so, the inspector shall follow the procedure required in s. 101.47, except that the identification provided by the elector shall be used for the signature comparison.~~

Section 4.   Section 100.341, Florida Statutes, is amended to read:

100.341   Bond referendum ballot.—The ballots used in bond referenda shall <u>include a</u> ~~be on plain white paper with~~ printed description of the issuance of bonds to be voted on as prescribed by the authority calling the referendum. A separate statement of each issue of bonds to be approved, giving the amount of the bonds and interest rate thereon, together with other details necessary to inform the electors, shall be printed on the ballots in connection with the question "For Bonds" and "Against Bonds."

Section 5.   Effective September 2, 2002, subsection (3) of section 100.361, Florida Statutes, is amended to read:

100.361   Municipal recall.—

(3)   BALLOTS.—The ballots at the recall election shall conform to the following: With respect to each person whose removal is sought, the question shall be submitted: "Shall .... be removed from the office of .... by recall?" Immediately following each question there shall be printed on the ballots the two propositions in the order here set forth:

CODING:  Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

name of the candidate for whom you desire to vote. To vote for a write-in candidate, write the name of the candidate in the blank space provided for that purpose." The ballot shall have headings under which shall appear the names of the offices and names of duly nominated candidates for the respective offices in the following order: the heading "Electors for President and Vice President" and thereunder the names of the candidates for President and Vice President of the United States nominated by the political party that which received the highest vote for Governor in the last general election of the Governor in this state, above which shall appear the name of said party. Then shall appear the names of other candidates for President and Vice President of the United States who have been properly nominated. Votes cast for write-in candidates for President and Vice President shall be counted as votes cast for the presidential electors supporting such candidates. Then shall follow the heading "Congressional" and thereunder the offices of United States Senator and Representative in Congress; then the heading "State" and thereunder the offices of Governor and Lieutenant Governor, Secretary of State, Attorney General, Comptroller, Treasurer, Commissioner of Education, Commissioner of Agriculture, state attorney, and public defender, together with the names of the candidates for each office and the title of the office which they seek; then the heading "Legislative" and thereunder the offices of state senator and state representative; then the heading "County" and thereunder clerk of the circuit court, clerk of the county court (when authorized by law), sheriff, property appraiser, tax collector, district superintendent of schools, and supervisor of elections. Thereafter follows: members of the board of county commissioners, and such other county and district offices as are involved in the general election, in the order fixed by the Department of State, followed, in the year of their election, by "Party Offices," and thereunder the offices of state and county party executive committee members. When a write-in candidate has qualified for any office, a subheading "Write-in Candidate for ...(name of office)..." shall be provided followed by a blank space in which to write the name of the candidate. In addition to the names printed on the ballot, a blank space shall be provided under each heading for an office for which a write-in candidate has qualified. With respect to write-in candidates, if two or more candidates are seeking election to one office, only one blank space shall be provided.

(b) Immediately following the name of each office on the ballot shall be printed, "Vote for One." When more than one candidate is nominated for office, the candidates for such office shall qualify and run in a group or district, and the group or district number shall be printed beneath the name of the office. Each nominee of a political party chosen in a primary shall appear on the general election ballot in the same numbered group or district as on the primary election ballot. The name of the office shall be printed over each numbered group or district and each numbered group or district shall be clearly separated from the next numbered group or district, the same as in the case of single offices. Following the group or district number shall be printed the words, "Vote for One," and the names of the candidates in the respective groups or districts shall be arranged thereunder.

(c) If in any election all the offices as set forth in paragraph (a) are not involved, those offices to be filled shall be arranged on the ballot in the order named.

CODING: Words stricken are deletions; words underlined are additions.

(8)  Should the above directions for complete preparation of the ballot be insufficient, the Department of State shall determine and prescribe any additional matter or form. Not less than 60 days prior to a general election, the Department of State shall mail to each supervisor of elections the format of the ballot to be used for the general election.

(9)  The provisions of s. 101.141(7) shall be applicable in printing of said ballot.

Section 8.  Effective September 2, 2002, section 101.21, Florida Statutes, is amended to read:

101.21  Official ballots; number; printing; payment.—

(1)  Where applicable In any county in which voting machines are not used, the supervisor of elections shall determine the actual number of ballots to be printed. The printing and delivery of ballots and cards of instruction shall, in a municipal election, be paid for by the municipality, and in all other elections by the county.

(2)  In any county in which voting machines are used, one set of official ballots shall be provided for each machine plus a number of sets equal to 5 percent of the total number of machines; one set shall be inserted or placed in or upon each machine, and the remainder of the sets shall be retained in the custody of the supervisor, unless it shall become necessary during the election to make use of same upon or in the machines.

Section 9.  Effective September 2, 2002, section 101.24, Florida Statutes, is amended to read:

101.24  Ballot boxes and ballots.—The supervisor of elections, except where voting machines are used, shall prepare for each polling place one ballot box of sufficient size to contain all the ballots of the particular precinct, and the ballot box shall be plainly marked with the name of the precinct for which it is intended. An additional ballot box, if necessary, may be supplied to any precinct. Before each election, the supervisor shall place in the ballot box or ballot transfer container as many ballots as are required in s. 101.21. After securely sealing the ballot box or ballot transfer container, the supervisor shall send the ballot box or ballot transfer container to the clerk or inspector of election of the precinct in which it is to be used. The clerk or inspector shall be placed under oath or affirmation to perform his or her duties faithfully and without favor or prejudice to any political party.

Section 10.  Effective September 2, 2002, section 101.292, Florida Statutes, is amended to read:

101.292  Definitions; ss. 101.292-101.295.—As used in ss. 101.292-101.295, the following terms shall have the following meanings:

(1)  "Governing body" means the board of county commissioners of a county or any other governing body empowered by general or special act or local ordinance to purchase or sell voting equipment.

CODING:  Words stricken are deletions; words underlined are additions.

Section 14.   Effective September 2, 2002, section 101.49, Florida Statutes, is amended to read:

101.49   Procedure of election officers where signatures differ.—

(1)   Whenever any clerk or inspector, upon a just comparison of the signatures signature, doubts shall doubt that the signature handwriting affixed to a signature identification slip of any elector who presents himself or herself at the polls to vote is the same as the signature of the elector affixed in the registration book, the clerk or inspector shall deliver to the person an affidavit which shall be in substantially the following form:

STATE OF FLORIDA,
COUNTY OF .....

I do solemnly swear (or affirm) that my name is ....; that I am .... years old; that I was born in the State of ....; that I am registered to vote, and at the time I registered I resided on .... Street, in the municipality of ...., County of ...., State of Florida; that I am a qualified voter of the county and state aforesaid and have not voted in this election.

...(Signature of voter)...

Sworn to and subscribed before me this .... day of ...., A. D. ...(year)....
...(Clerk or inspector of election)...
Precinct No. .....
County of .....

(2)   The person shall fill out, in his or her own handwriting or with assistance from a member of the election board, the form and make an affidavit to the facts stated in the filled-in form; such affidavit shall then be sworn to and subscribed before one of the inspectors or clerks of the election who is authorized to administer the oath. Whenever the affidavit is made and filed with the clerk or inspector, the person shall then be admitted to the voting machine to cast his or her vote, but if the person fails or refuses to make out or file such affidavit, then he or she shall not be permitted to vote.

Section 15.   Effective September 2, 2002, subsections (4), (5), and (8) of section 101.5603, Florida Statutes, are amended to read:

101.5603   Definitions relating to Electronic Voting Systems Act.—As used in this act, the term:

(4)   "Electronic or electromechanical voting system" means a system of casting votes by use of voting devices or marking devices and counting ballots by employing automatic tabulating equipment or data processing equipment, and the term includes touchscreen systems.

(5)   "Marking device" means either an approved apparatus used for the piercing of ballots by the voter or any approved device for marking a ballot with ink or other substance which will enable the ballot to be tabulated by means of automatic tabulating equipment.

(8)   "Voting device" means either an apparatus in which ballots are inserted and used in connection with a marking device for the piercing of

CODING:  Words stricken are deletions; words underlined are additions.

(6)(5)  It permits each voter at a primary election to vote only for the candidates seeking nomination by the political party in which such voter is registered, for any candidate for nonpartisan office, and for any question upon which the voter is entitled to vote.

(7)(6)  At presidential elections it permits each elector, by one operation, to vote for all presidential electors of a party or for all presidential electors of candidates for President and Vice President with no party affiliation.

(8)(7)  It provides a method for write-in voting.

(9)(8)  It is capable of accumulating a count of the specific number of ballots tallied for a precinct, accumulating total votes by candidate for each office, and accumulating total votes for and against each question and issue of the ballots tallied for a precinct.

(10)(9)  It is capable of tallying votes from ballots of different political parties from the same precinct, in the case of a primary election.

(11)(10)  It is capable of automatically producing precinct totals in printed, marked, or punched form, or a combination thereof.

(12)(11)  If it is of a type which registers votes electronically, it will permit each voter to change his or her vote for any candidate or upon any question appearing on the official ballot up to the time that the voter takes the final step to register his or her vote and to have the vote computed.

(13)(12)  It is capable of providing records from which the operation of the voting system may be audited.

(14)  It uses a precinct-count tabulation system.

(15)  It does not use an apparatus or device for the piercing of ballots by the voter.

Section 19.  Paragraph (b) of subsection (1) of section 101.5607, Florida Statutes, is amended to read:

101.5607  Department of State to maintain voting system information; prepare software.—

(1)

(b)  Within 24 hours after the completion of any logic and accuracy test conducted pursuant to s. 101.5612(1), the supervisor of elections shall send by certified mail to the Department of State a copy of the tabulation program which was used in the logic and accuracy testing.

Section 20.  Paragraph (b) of subsection (2) of section 101.5608, Florida Statutes, is amended to read:

101.5608  Voting by electronic or electromechanical method; procedures.—

CODING:  Words stricken are deletions; words underlined are additions.

are being conducted and when the official votes are being counted. Such designee shall not interfere with the normal operation of the canvassing board.

(3)   For electronic or electromechanical voting systems configured to tabulate absentee ballots at a central or regional site, the public testing shall be conducted by processing a preaudited group of ballots so produced as to record a predetermined number of valid votes for each candidate and on each measure and to include one or more ballots for each office which have activated voting positions in excess of the number allowed by law in order to test the ability of the automatic tabulating equipment to reject such votes. If any error is detected, the cause therefor shall be corrected and an errorless count shall be made before the automatic tabulating equipment is approved. The test shall be repeated and errorless results achieved immediately before the start of the official count of the ballots and again after the completion of the official count. The programs and ballots used for testing shall be sealed and retained under the custody of the county canvassing board.

(4)(a)1.   For electronic or electromechanical voting systems configured to include electronic or electromechanical tabulation devices which are distributed to the precincts, all or a sample of the devices to be used in the election shall be publicly tested. If a sample is to be tested, the sample shall consist of a random selection of at least 5 percent or 10 of the devices, whichever is greater. The test shall be conducted by processing a group of ballots, causing the device to output results for the ballots processed, and comparing the output of results to the results expected for the ballots processed. The group of ballots shall be produced so as to record a predetermined number of valid votes for each candidate and on each measure and to include for each office one or more ballots which have activated voting positions in excess of the number allowed by law in order to test the ability of the tabulating device to reject such votes.

2.   If any tested tabulating device is found to have an error in tabulation, it shall be deemed unsatisfactory. For each device deemed unsatisfactory, the canvassing board shall take steps to determine the cause of the error, shall attempt to identify and test other devices that could reasonably be expected to have the same error, and shall test a number of additional devices sufficient to determine that all devices are satisfactory. Upon deeming any device unsatisfactory, the canvassing board may require all devices to be tested or may declare that all devices are unsatisfactory.

3.   If the operation or output of any tested tabulation device, such as spelling or the order of candidates on a report, is in error, such problem shall be reported to the canvassing board. The canvassing board shall then determine if the reported problem warrants its deeming the device unsatisfactory.

(b)   At the completion of testing under this subsection, the canvassing board or its representative, the representatives of the political parties, and the candidates or their representatives who attended the test shall witness the resetting of each device that passed to a preelection state of readiness and the sealing of each device that passed in such a manner as to secure its state of readiness until the opening of the polls.

CODING: Words stricken are deletions; words underlined are additions.

number corresponds with the number of ballots issued by the supervisor. If there is a difference, this fact shall be reported in writing to the county canvassing board with the reasons therefor if known. The total number of voted ballots shall be entered on the forms provided. The proceedings of the election board at the precinct after the polls have closed shall be open to the public; however, no person except a member of the election board shall touch any ballot or ballot container or interfere with or obstruct the orderly count of the ballots.

~~(b)  In lieu of opening the ballot box at the precinct, the supervisor may direct the election board to keep the ballot box sealed and deliver it to a central or regional counting location. In this case, the election board shall count the stubs removed from the ballots to determine the number of voted ballots.~~

~~(2)(a)  If the ballots are to be tallied at a central location or at no more than three regional locations, the election board shall place all ballots that have been cast and the unused, void, provisional, and defective ballots in the container or containers provided for this purpose, which shall be sealed and delivered forthwith to the central or regional counting location or other designated location by two inspectors who shall not, whenever possible, be of the same political party. The election board shall certify that the ballots were placed in such container or containers and each container was sealed in its presence and under its supervision, and it shall further certify to the number of ballots of each type placed in the container or containers.~~

(2)~~(b)~~  ~~If ballots are to be counted at the precincts, such ballots shall be counted pursuant to rules adopted by~~ The Department of State~~, which rules~~ shall, in accordance with s. 101.015, adopt rules that provide safeguards ~~which conform as nearly as practicable to the safeguards provided in the procedures~~ for the counting of votes at a precinct and at a central or regional location.

~~(3)(a)  All proceedings at the central or regional counting location or other designated location shall be under the direction of the county canvassing board and shall be open to the public, but no person except a person employed and authorized for the purpose shall touch any ballot or ballot container, any item of automatic tabulating equipment, or any return prior to its release. If the ballots are tabulated at regional locations, one member of the canvassing board or a person designated by the board to represent it shall be present at each location during the testing of the counting equipment and the tabulation of the ballots.~~

(3)~~(b)~~   The results of ~~If~~ ballots ~~are~~ tabulated at precinct ~~regional~~ locations~~, the results of such election~~ may be transmitted ~~via dedicated teleprocessing lines~~ to the main computer system for the purpose of compilation of complete returns. The security guidelines for transmission of returns ~~by dedicated teleprocessing lines~~ shall conform to rules adopted by the Department of State pursuant to s. 101.015.

(7)   Absentee ballots may be counted by automatic tabulating equipment if they have been ~~punched or~~ marked in a manner which will enable them to be properly counted by such equipment.

CODING:  Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(2)   Notwithstanding the provisions of subsection (1), whenever the supervisor of elections of any county determines that the accommodations for holding any election at a polling place designated for any precinct in the county are unavailable or are inadequate for the expeditious and efficient housing and handling of voting and voting paraphernalia, ~~including voting machines where used,~~ the supervisor may provide, not less than 30 days prior to the holding of an election, that the voting place for such precinct shall be moved to another site which shall be accessible to the public on election day in said precinct or, if such is not available, to another site which shall be accessible to the public on election day in a contiguous precinct. If such action of the supervisor results in the voting place for two or more precincts being located for the purposes of an election in one building, the voting places for the several precincts involved shall be established and maintained separate from each other in said building. When any supervisor moves any polling place pursuant to this subsection, the supervisor shall, not more than 30 days or fewer than 7 days prior to the holding of an election, give notice of the change of the polling place for the precinct involved, with clear description of the voting place to which changed, at least once in a newspaper of general circulation in said county. A notice of the change of the polling place involved shall be mailed, at least 14 days prior to an election, to each registered elector or to each household in which there is a registered elector.

Section 26.   Subsection (1) of section 101.75, Florida Statutes, is amended to read:

101.75   Municipal elections; change of dates for cause.—

(1)   In any municipality, when the date of the municipal election falls on the same date as any statewide or county election and <u>the</u> voting <u>devices of the voting system used in the county</u> ~~machines~~ are not available for both elections, the municipality may provide that the municipal election may be held within 30 days prior to or subsequent to the statewide or county election.

Section 27.   Effective September 2, 2002, subsections (4) and (7) of section 102.012, Florida Statutes, are amended to read:

102.012   Inspectors and clerks to conduct elections.—

<u>(4)(a)   The election board of each precinct shall attend the polling place by 6 a.m. of the day of the election and shall arrange the furniture, stationery, and voting equipment.</u>

<u>(b)</u>   An election board shall conduct the voting, beginning and closing at the time set forth in s. 100.011. If more than one board has been appointed, the second board shall, upon the closing of the polls, come on duty and count the votes cast. In such case, the first board shall turn over to the second board all closed ballot boxes, registration books, and other records of the election at the time the boards change. The second board shall continue counting until the count is complete or until 7 a.m. the next morning, and, if the count is not completed at that time, the first board that conducted the election shall again report for duty and complete the count. The second

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

~~For President~~

~~...(Name of Candidate)...~~

~~...(Name of Candidate)...~~

~~or place a cross (X) in the blank space to the right of the name of the delegate(s) for whom you wish to vote.~~

~~...(Name of Delegate)...~~                    ~~...(Name of Candidate)...~~

Section 29.   Section 104.30, Florida Statutes, is amended to read:

104.30   Voting <u>system</u> ~~machine~~; unlawful possession; tampering.—

(1)   .Any unauthorized person who unlawfully has possession of any voting <u>system, components,</u> ~~machine~~ or key thereof is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

(2)   Any person who tampers or attempts to tamper with or destroy any voting <u>system or equipment</u> ~~machine~~ with the intention of interfering with the election process or the results thereof is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Section 30.   Effective September 2, 2002, section 138.05, Florida Statutes, is amended to read:

138.05   Form of ballot.—The clerk of the circuit court of any county in this state, when the names of the towns, villages, and cities required in s. 138.04 have been furnished him or her, shall have printed, at the expense of the county, a suitable ballot to be used in <u>the</u> ~~said~~ election, <u>the</u> ~~said~~ ballot to contain, in alphabetical order, the names of all such towns, villages, and cities, and no other places shall be printed on the ~~said~~ ballots~~; provided, that in counties where the use of voting machines is now or may hereafter be authorized by law, the requirements of this section shall, insofar as practicable, be adapted to the use of said voting machines~~.

Section 31.   Paragraph (c) of subsection (1) of section 582.18, Florida Statutes, is amended to read:

582.18   Election of supervisors of each district.—

(1)

(c)   The names of all nominees on behalf of whom such nominating petitions have been filed shall appear upon ballots in accordance with the general election laws. All qualified electors residing within the district shall be eligible to vote in such election. The candidates who receive the largest number of the votes cast from each group of candidates~~, as provided in s. 100.071,~~ in such election shall be the elected supervisors from such group for such district. In the case of a newly created district participating in a regular election for the first time, three groups of candidates shall be elected for terms of 4 years, and two groups shall be elected for initial terms of 2 years. Each candidate elected shall assume office on the first Tuesday after the first Monday in January following the election.

CODING:  Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(3)  "Candidate" means any person to whom any one or more of the following applies:

(a)  Any person who seeks to qualify for nomination or election by means of the petitioning process.

(b)  Any person who seeks to qualify for election as a write-in candidate.

(c)  Any person who receives contributions or makes expenditures, or gives his or her consent for any other person to receive contributions or make expenditures, with a view to bringing about his or her nomination or election to, or retention in, public office.

(d)  Any person who appoints a treasurer and designates a primary depository.

(e)  Any person who files qualification papers and subscribes to a candidate's oath as required by law.

However, this definition does not include any candidate for a political party executive committee.

(4)  "Central voter file" means a statewide, centrally maintained database containing voter registration information of all counties in this state.

(5)  "Department" means the Department of State.

(6)  "Division" means the Division of Elections of the Department of State.

(7)  "Election" means any primary election, special primary election, special election, general election, or presidential preference primary election.

(8)  "Election board" means the clerk and inspectors appointed to conduct an election.

(9)  "Election costs" shall include, but not be limited to, expenditures for all paper supplies such as envelopes, instructions to voters, affidavits, reports, ballot cards, ballot booklets for absentee voters, postage, notices to voters; advertisements for registration book closings, testing of voting equipment, sample ballots, and polling places; forms used to qualify candidates; polling site rental and equipment delivery and pickup; data processing time and supplies; election records retention; and labor costs, including those costs uniquely associated with absentee ballot preparation, poll workers, and election night canvass.

(10)  "Elector" is synonymous with the word "voter" or "qualified elector or voter," except where the word is used to describe presidential electors.

(11)  "General election" means an election held on the first Tuesday after the first Monday in November in the even-numbered years, for the purpose of filling national, state, county, and district offices and for voting on constitutional amendments not otherwise provided for by law.

CODING:  Words stricken are deletions; words underlined are additions.

(b) Members of the Merchant Marine of the United States who are permanent residents of the state and are temporarily residing outside the territorial limits of the United States and the District of Columbia; and

(c) Other citizens of the United States who are permanent residents of the state and are temporarily residing outside the territorial limits of the United States and the District of Columbia,

who are qualified and registered to vote as provided by law.

(20) "Overvote" means that the elector marks or designates more names than there are persons to be elected to an office or designates more than one answer to a ballot question, and the tabulator records no vote for the office or question.

(21)(18) "Persons with disabilities" means individuals who have a physical or mental impairment that substantially limits one or more major life activities.

(22)(19) "Polling place" is the building which contains the polling room where ballots are cast.

(23)(20) "Polling room" means the actual room in which ballots are cast.

(24)(21) "Primary election" means an election held preceding the general election for the purpose of nominating a party nominee to be voted for in the general election to fill a national, state, county, or district office. The first primary is a nomination or elimination election; the second primary is a nominating election only.

(25) "Provisional ballot" means a ballot issued to a voter by the election board at the polling place on election day for one of the following reasons:

(a) The voter's name does not appear on the precinct register and verification of the voter's eligibility cannot be determined; or

(b) There is an indication on the precinct register that the voter has requested an absentee ballot and there is no indication whether the voter has returned the absentee ballot.

(26)(22) "Public assistance" means assistance provided through the food stamp program; the Medicaid program; the Special Supplemental Food Program for Women, Infants, and Children; and the WAGES Program.

(27)(23) "Public office" means any federal, state, county, municipal, school, or other district office or position which is filled by vote of the electors.

(28)(24) "Qualifying educational institution" means any public or private educational institution receiving state financial assistance which has, as its primary mission, the provision of education or training to students who are at least 18 years of age, provided such institution has more than 200 students enrolled in classes with the institution and provided that the recognized student government organization has requested this designation in

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(b)1.   If it is determined that the person was registered and entitled to vote at the precinct in the election, the canvassing board shall compare the signature on the provisional ballot envelope with the signature on the voter's registration and, if it matches, shall count the ballot.

2.   If it is determined that the person voting the provisional ballot was not registered or entitled to vote at the precinct in the election, the provisional ballot shall not be counted and the ballot shall remain in the envelope containing the Provisional Ballot Voter's Certificate and the envelope marked "Rejected as Illegal."

(3)   The Provisional Ballot Voter's Certificate shall be in substantially the following form:

STATE OF FLORIDA
COUNTY OF ....

I do solemnly swear (or affirm) that my name is ....; that my date of birth is ....; that I am registered to vote and at the time I registered I resided at ...., in the municipality of ...., in .... County, Florida; that I am a qualified voter of the county and have not voted in this election.

...(Signature of Voter)...<br>...(Current Address)...

Sworn to and subscribed before me this .... day of ........, ...(year)....
...(Clerk or Inspector of Election)...

Additional information may be provided to further assist the supervisor of elections in determining eligibility. If known, please provide the place and date that you registered to vote.

(4)   In counties where the voting system does not utilize a paper ballot, the supervisor of elections shall provide the appropriate provisional ballots to each polling place.

Section 36.   Subsections (2) and (3) of section 101.045, Florida Statutes, are amended to read:

101.045   Electors must be registered in precinct; provisions for residence or name change.—

(2)(a)   An elector who moves from the precinct within the county in which the elector is registered may be permitted to vote in the precinct to which he or she has moved his or her legal residence, provided such elector completes an affirmation in substantially the following form:

Change of Legal Residence of Registered<br>Voter

Under penalties for false swearing, I, ...(Name of voter)..., swear (or affirm) that the former address of my legal residence was ...(Address of legal residence)... in the municipality of ...., in .... County, Florida, and I was registered to vote in the .... precinct of .... County, Florida; that I have not voted in the precinct of my former registration in this election; that I now reside

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

with the proper ballot for the precinct in which the elector then has his or her legal residence.

(3)   When an elector's name does not appear on the registration books of the election precinct in which the elector is registered ~~and when the elector cannot present a valid registration identification card~~, the elector may have his or her name restored if the supervisor is otherwise satisfied that the elector is validly registered, that the elector's name has been erroneously omitted from the books, and that the elector is entitled to have his or her name restored. The supervisor, if he or she is satisfied as to the elector's previous registration, shall allow such person to vote and shall thereafter issue a duplicate registration identification card.

Section 37.   Subsections (1), (2), (5), (6), and (8) of section 101.5614, Florida Statutes, are amended, and subsection (9) is added to said section to read:

101.5614   Canvass of returns.—

(1)(a)   In precincts in which an electronic or electromechanical voting system is used, as soon as the polls are closed, the election board shall secure the voting devices against further voting. The election board shall thereafter open the ballot box in the presence of members of the public desiring to witness the proceedings and count the number of voted ballots, unused ballots, <u>provisional ballots,</u> and spoiled ballots to ascertain whether such number corresponds with the number of ballots issued by the supervisor. If there is a difference, this fact shall be reported in writing to the county canvassing board with the reasons therefor if known. The total number of voted ballots shall be entered on the forms provided. The proceedings of the election board at the precinct after the polls have closed shall be open to the public; however, no person except a member of the election board shall touch any ballot or ballot container or interfere with or obstruct the orderly count of the ballots.

(b)   In lieu of opening the ballot box at the precinct, the supervisor may direct the election board to keep the ballot box sealed and deliver it to a central or regional counting location. In this case, the election board shall count the stubs removed from the ballots to determine the number of voted ballots.

(2)(a)   If the ballots are to be tallied at a central location or at no more than three regional locations, the election board shall place all ballots that have been cast and the unused, void, <u>provisional,</u> and defective ballots in the container or containers provided for this purpose, which shall be sealed and delivered forthwith to the central or regional counting location or other designated location by two inspectors who shall not, whenever possible, be of the same political party. The election board shall certify that the ballots were placed in such container or containers and each container was sealed in its presence and under its supervision, and it shall further certify to the number of ballots of each type placed in the container or containers.

(b)   If ballots are to be counted at the precincts, such ballots shall be counted pursuant to rules adopted by the Department of State, which rules

CODING:   Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

101.69   Voting in person; return of absentee ballot.—The provisions of this code shall not be construed to prohibit any elector from voting in person at the elector's precinct on the day of an election notwithstanding that the elector has requested an absentee ballot for that election. An elector who has received an absentee ballot, but desires to vote in person, shall return the ballot, whether voted or not, to the election board in the elector's precinct. The returned ballot shall be marked "canceled" by the board and placed with other canceled ballots. However, if the elector is unable to return the ballot, the elector may vote a provisional ballot as provided in s. 101.048 execute an affidavit stating that the absentee ballot has not been voted and the elector may then vote at the precinct.

Section 39.   Section 102.111, Florida Statutes, is amended to read:

102.111   Elections Canvassing Commission.—

(1)   Immediately after certification of any election by the county canvassing board, the results shall be forwarded to the Department of State concerning the election of any federal or state officer. The Governor, the Secretary of State, and the Director of the Division of Elections shall be the Elections Canvassing Commission. The Elections Canvassing Commission shall consist of the Governor and two members of the Cabinet selected by the Governor. If a member of the Elections Canvassing Commission is unable to serve for any reason, the Governor shall appoint a remaining member of the Cabinet. If there is a further vacancy, the remaining members of the commission shall agree on another elected official to fill the vacancy. The Elections Canvassing Commission shall, as soon as the official results are compiled from all counties, certify the returns of the election and determine and declare who has been elected for each federal, state, and multi-county office. In the event that any member of the Elections Canvassing Commission is unavailable to certify the returns of any election, such member shall be replaced by a substitute member of the Cabinet as determined by the Director of the Division of Elections. If the county returns are not received by the Department of State by 5 p.m. of the seventh day following an election, all missing counties shall be ignored, and the results shown by the returns on file shall be certified.

(2)   The Division of Elections shall provide the staff services required by the Elections Canvassing Commission.

Section 40.   Section 102.112, Florida Statutes, is amended to read:

102.112   Deadline for submission of county returns to the Department of State; penalties.—

(1)   The county canvassing board or a majority thereof shall file the county returns for the election of a federal or state officer with the Department of State immediately after certification of the election results.

(2)   Returns must be filed by 5 p.m. on the 7th day following a the first primary election and by 5 p.m. on the 11th day following the and general election and by 3 p.m. on the 3rd day following the second primary.

CODING:  Words stricken are deletions; words underlined are additions.

~~or the~~ tabulation of the ballots cast in such precinct and determine whether the returns correctly reflect the votes cast. If there is a discrepancy between the returns and the ~~counters of the machines or the~~ tabulation of the ballots cast, the ~~counters of such machines or the~~ tabulation of the ballots cast shall be presumed correct and such votes shall be canvassed accordingly.

(4)  The canvassing board shall submit unofficial returns to the Department of State for each federal, statewide, state, or multi-county office or ballot measure no later than noon on the day after any primary, general, special, or other election.

(5)  If the county canvassing board determines that the unofficial returns may contain a counting error in which the vote tabulation system failed to count votes that were properly marked in accordance with the instructions on the ballot, the county canvassing board shall:

(a)  Correct the error and recount the affected ballots with the vote tabulation system; or

(b)  Request that the Department of State verify the tabulation software. When the Department of State verifies such software, the department shall compare the software used to tabulate the votes with the software filed with the department pursuant to s. 101.5607 and check the election parameters.

(6)(4)  If the unofficial returns ~~for any office~~ reflect that a candidate for any office was defeated or eliminated by one-half of a percent or less of the votes cast for such office, that a candidate for retention to a judicial office was retained or not retained by one-half of a percent or less of the votes cast on the question of retention, or that a measure appearing on the ballot was approved or rejected by one-half of a percent or less of the votes cast on such measure, the board responsible for certifying the results of the vote on such race or measure shall order a recount of the votes cast with respect to such office or measure. A recount need not be ordered with respect to the returns for any office, however, if the candidate or candidates defeated or eliminated from contention for such office by one-half of a percent or less of the votes cast for such office request in writing that a recount not be made.

(a)  In counties with voting systems that use ballot cards or paper ballots, each canvassing board responsible for conducting a recount shall put each ballot through the automatic tabulating equipment for each precinct in which the office or issue appeared on the ballot and determine whether the returns correctly reflect the votes cast. Immediately before the start of the recount and after completion of the count, a test of the tabulating equipment shall be conducted as provided in s. 101.5612. If the test indicates no error, the recount tabulation of the ballots cast shall be presumed correct and such votes shall be canvassed accordingly. If an error is detected, the cause therefor shall be ascertained and corrected and the recount repeated, as necessary. The canvassing board shall immediately report the error, along with the cause of the error and the corrective measures being taken, to the Department of State. No later than 11 days after the election, the canvassing board shall file a separate incident report with the Department of State, detailing the resolution of the matter and identifying any measures that will avoid a future recurrence of the error.

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

(b)  For federal, statewide, state, and multi-county races and ballot is-
sues, requests for a manual recount shall be made in writing to the state
Elections Canvassing Commission. For all other races and ballot issues,
requests for a manual recount shall be made in writing to the county can-
vassing board.

(c)  Upon receipt of a proper and timely request, the Elections Canvassing
Commission or county canvassing board shall immediately order a manual
recount of overvotes and undervotes in all affected jurisdictions.

(3)(a)  Any hardware or software used to identify and sort overvotes and
undervotes for a given race or ballot measure must be certified by the
Department of State as part of the voting system pursuant to s. 101.015. Any
such hardware or software must be capable of simultaneously counting
votes. For certified voting systems, the department shall certify such hard-
ware or software by July 1, 2002. If the department is unable to certify such
hardware or software for a certified voting system by July 1, 2002, the
department shall adopt rules prescribing procedures for identifying and
sorting such overvotes and undervotes. The department's rules may provide
for the temporary use of hardware or software whose sole function is identi-
fying and sorting overvotes and undervotes.

(b)  This subsection does not preclude the department from certifying
hardware or software after July 1, 2002.

(c)  Overvotes and undervotes shall be identified and sorted while re-
counting ballots pursuant to s. 102.141, if the hardware or software for this
purpose has been certified or the department's rules so provide.

(1)  Any candidate for nomination or election, or any elector qualified to
vote in the election related to such candidacy, shall have the right to protest
the returns of the election as being erroneous by filing with the appropriate
canvassing board a sworn, written protest.

(2)  Such protest shall be filed with the canvassing board prior to the time
the canvassing board certifies the results for the office being protested or
within 5 days after midnight of the date the election is held, whichever
occurs later.

(3)  Before canvassing the returns of the election, the canvassing board
shall:

(a)  When paper ballots are used, examine the tabulation of the paper
ballots cast.

(b)  When voting machines are used, examine the counters on the ma-
chines of nonprinter machines or the printer-pac on printer machines. If
there is a discrepancy between the returns and the counters of the machines
or the printer-pac, the counters of such machines or the printer-pac shall be
presumed correct.

(c)  When electronic or electromechanical equipment is used, the canvass-
ing board shall examine precinct records and election returns. If there is a

CODING:  Words stricken are deletions; words underlined are additions.

(6)(7)  Procedures for a manual recount are as follows:

(a)  The county canvassing board shall appoint as many counting teams of at least two electors as is necessary to manually recount the ballots. A counting team must have, when possible, members of at least two political parties. A candidate involved in the race shall not be a member of the counting team.

(b)  If a counting team is unable to determine whether the ballot contains a clear indication that the voter has made a definite choice a voter's intent in casting a ballot, the ballot shall be presented to the county canvassing board for a determination it to determine the voter's intent.

(c)  The Department of State shall adopt detailed rules prescribing additional recount procedures for each certified voting system which shall be uniform to the extent practicable. The rules shall address, at a minimum, the following areas:

1.  Security of ballots during the recount process;

2.  Time and place of recounts;

3.  Public observance of recounts;

4.  Objections to ballot determinations;

5.  Record of recount proceedings; and

6.  Procedures relating to candidate and petitioner representatives.

(8)  If the county canvassing board determines the need to verify the tabulation software, the county canvassing board shall request in writing that the Department of State verify the software.

(9)  When the Department of State verifies such software, the department shall:

(a)  Compare the software used to tabulate the votes with the software filed with the Department of State pursuant to s. 101.5607; and

(b)  Check the election parameters.

(10)  The Department of State shall respond to the county canvassing board within 3 working days.

Section 43.  Section 102.167, Florida Statutes, is repealed.

Section 44.  Section 102.168, Florida Statutes, is amended to read:

102.168  Contest of election.—

(1)  Except as provided in s. 102.171, the certification of election or nomination of any person to office, or of the result on any question submitted by referendum, may be contested in the circuit court by any unsuccessful candi-

CODING:  Words stricken are deletions; words underlined are additions.

which the contestant relies or stating that the defendant has no knowledge or information concerning the allegations, which shall be deemed a denial of the allegations, and must state any other defenses, in law or fact, on which the defendant relies. If an answer is not filed within the time prescribed, the defendant may not be granted a hearing in court to assert any claim or objection that is required by this subsection to be stated in an answer.

(7) Any candidate, qualified elector, or taxpayer presenting such a contest to a circuit judge is entitled to an immediate hearing. However, the court in its discretion may limit the time to be consumed in taking testimony, with a view therein to the circumstances of the matter and to the proximity of any succeeding ~~primary or other~~ election.

~~(8)   The circuit judge to whom the contest is presented may fashion such orders as he or she deems necessary to ensure that each allegation in the complaint is investigated, examined, or checked, to prevent or correct any alleged wrong, and to provide any relief appropriate under such circumstances.~~

Section 45.   Subsections (1) and (2) of section 99.063, Florida Statutes, are amended to read:

99.063   Candidates for Governor and Lieutenant Governor.—

(1)   No later than 5 p.m. of the <u>9th</u> ~~6th~~ day following the second primary election, each candidate for Governor shall designate a Lieutenant Governor as a running mate. Such designation must be made in writing to the Department of State.

(2)   No later than 5 p.m. of the <u>9th</u> ~~6th~~ day following the second primary election, each designated candidate for Lieutenant Governor shall file with the Department of State:

(a)   The candidate's oath required by s. 99.021, which must contain the name of the candidate as it is to appear on the ballot; the office sought; and the signature of the candidate, duly acknowledged.

(b)   The loyalty oath required by s. 876.05, signed by the candidate and duly acknowledged.

(c)   If the office sought is partisan, the written statement of political party affiliation required by s. 99.021(1)(b).

(d)   The full and public disclosure of financial interests pursuant to s. 8, Art. II of the State Constitution.

Section 46.   <u>(1)   Notwithstanding s. 100.061, Florida Statutes, for the year 2002, a primary election for nomination of candidates of political parties shall be held on the second Tuesday in September. The candidate receiving the highest number of the votes cast in each contest in the primary election shall be declared nominated for such office. If two or more persons receive an equal and highest number of votes for the same office, such persons shall draw lots to determine who shall receive the nomination.</u>

CODING:  Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(2)   In completing the ballot, the overseas voter may designate his or her choice by writing in the name of the candidate or by writing in the name of a political party, in which case the ballot must be counted for the candidate of that political party, if there is such a party candidate on the ballot.

(3)   Any abbreviation, misspelling, or other minor variation in the form of the name of a candidate or a political party must be disregarded in determining the validity of the ballot if there is a clear indication on the ballot that the voter has made a definite choice.

(4)   The state write-in ballot shall contain all offices, federal, state, and local, for which the voter would otherwise be entitled to vote.

Section 49.   Section 101.6952, Florida Statutes, is created to read:

101.6952   Absentee ballots for overseas voters.—

(1)   If an overseas voter's request for an absentee ballot includes an e-mail address, the supervisor of elections shall inform the voter of the names of candidates who will be on the ballots via electronic transmission. The supervisor of elections shall e-mail to the voter the list of candidates for the primary and general election not later than 30 days before each election.

(2)   For absentee ballots received from overseas voters, there is a presumption that the envelope was mailed on the date stated and witnessed on the outside of the return envelope, regardless of the absence of a postmark on the mailed envelope or the existence of a postmark date that is later than the date of the election.

Section 50.   Section 101.697, Florida Statutes, is created to read:

101.697   Electronic transmission of election materials.—The Department of State shall adopt rules to authorize a supervisor of elections to accept a request for an absentee ballot and a voted absentee ballot by facsimile machine or other electronic means from overseas voters. The rules must provide that in order to accept a voted ballot, the verification of the voter must be established, the security of the transmission must be established, and each ballot received must be recorded.

Section 51.   Section 101.698, Florida Statutes, is created to read:

101.698   Absentee voting in emergency situations.—If a national or local emergency or other situation arises which makes substantial compliance with the provisions of state or federal law relating to the methods of voting for overseas voters impossible or unreasonable, such as an armed conflict involving United States Armed Forces or mobilization of those forces, including state National Guard and reserve components, the Elections Canvassing Commission may adopt by emergency rules, such special procedures or requirements necessary to facilitate absentee voting by those persons directly affected who are otherwise eligible to vote in the election.

Section 52.   Paragraph (b) of subsection (1), and subsection (7) of section 101.62, Florida Statutes, are amended to read:

CODING:  Words ~~stricken~~ are deletions; words underlined are additions.

Section 53.   Section 101.64, Florida Statutes, is amended to read:

101.64   Delivery of absentee ballots; envelopes; form.—

(1)   The supervisor shall enclose with each absentee ballot two envelopes: a secrecy envelope, into which the absent elector shall enclose his or her marked ballot; and a mailing envelope, into which the absent elector shall then place the secrecy envelope, which shall be addressed to the supervisor and also bear on the back side a certificate in substantially the following form:

Note: Please Read Instructions Carefully Before
Marking Ballot and Completing Voter's Certificate.
VOTER'S CERTIFICATE

I, ...., do solemnly swear or affirm that I am a qualified and registered voter of .... County, Florida and that I have not and will not vote more than one ballot in this election. I understand that if I commit or attempt to commit any fraud in connection with voting, vote a fraudulent ballot, or vote more than once in an election, I can be convicted of a felony of the third degree and fined up to $5,000 and/or imprisoned for up to 5 years. I also understand that failure to sign this certificate and have my signature properly witnessed will invalidate my ballot. I am entitled to vote an absentee ballot for one of the following reasons:

1.   I am unable without another's assistance to attend the polls.

2.   I may not be in the precinct of my residence during the hours the polls are open for voting on election day.

3.   I am an inspector, a poll worker, a deputy voting machine custodian, a deputy sheriff, a supervisor of elections, or a deputy supervisor who is assigned to a different precinct than that in which I am registered.

4.   On account of the tenets of my religion, I cannot attend the polls on the day of the general, special, or primary election.

5.   I have changed my permanent residency to another county in Florida within the time period during which the registration books are closed for the election. I understand that I am allowed to vote only for national and state-wide offices and on statewide issues.

6.   I have changed my permanent residency to another state and am unable under the laws of such state to vote in the general election. I understand that I am allowed to vote only for President and Vice President.

7.   I am unable to attend the polls on election day and am voting this ballot in person at the office of, and under the supervision of, the county supervisor of elections.

...(Date)...                                    ...(Voter's Signature)...

...(Last four digits of voter's social security number)...
Note: Your Signature Must Be Witnessed By Either:

a.   A Notary or Officer Defined in Item 6.b. of the Instruction Sheet.

CODING: Words stricken are deletions; words underlined are additions.

5.   Seal the mailing envelope and completely fill out the Voter's Certificate on the back of the mailing envelope.

6.   VERY IMPORTANT. In order for your absentee ballot to be counted, you must sign your name on the line above (Voter's Signature).

<u>7.   VERY IMPORTANT. If you are an overseas voter, you must include the date you signed the Voter's Certificate on the line above (Date)</u> or your ballot may not be counted., place the last four digits of your Social Security number in the space provided, and your ballot must be witnessed in either of the following manners:

a.   One witness, who is a registered voter in the state, must affix his or her signature, printed name, address, voter identification number, and county of registration on the voter's certificate. Each witness is limited to witnessing five ballots per election unless certified as an absentee ballot coordinator. A candidate may not serve as an attesting witness.

b.   Any notary or other officer entitled to administer oaths or any Florida supervisor of elections or deputy supervisor of elections, other than a candidate, may serve as an attesting witness.

<u>8.   VERY IMPORTANT. In order for your absentee ballot to be counted, it must include the signature and address of a witness 18 years of age or older affixed to the Voter's Certificate. No candidate may serve as an attesting witness.</u>

<u>9.</u>7.   Mail, deliver, or have delivered the completed mailing envelope. Be sure there is sufficient postage if mailed.

<u>10.</u>8.   FELONY NOTICE. It is a felony under Florida law to accept any gift, payment, or gratuity in exchange for your vote for a candidate. It is also a felony under Florida law to vote in an election using a false identity or false address, or under any other circumstances making your ballot false or fraudulent.

Section 55.   Section 101.657, Florida Statutes, is amended to read:

101.657   Voting absentee ballots in person.—

(1)   Notwithstanding s. 97.021(1), Any qualified and registered elector who is unable to attend the polls on election day may pick up and vote an absentee ballot in person at the office of, and under the supervision of, the supervisor of elections. Before receiving the ballot, the elector must present a Florida driver's license, a Florida identification card issued under s. 322.051, or another form of picture identification approved by the Department of State. If the elector fails to furnish the required identification, or if the supervisor is in doubt as to the identity of the elector, the supervisor must follow the procedure prescribed in s. 101.49.

(2)   As an alternative to the provisions of ss. 101.64, 101.647, and 101.65, the supervisor of elections may allow an elector to cast an absentee ballot in the main or branch office of the supervisor by depositing the voted ballot in a voting device used by the supervisor to collect or tabulate ballots. The

CODING:  Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.

vassing or processing of absentee ballots prior to the closing of the polls on election day commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(c)1.   The canvassing board shall, if the supervisor has not already done so, compare the signature of the elector on the voter's certificate with the signature of the elector in the registration books to see that the elector is duly registered in the county and to determine the legality of that absentee ballot. An absentee ballot shall be considered illegal if it does not include the signature ~~and the last four digits of the social security number~~ of the elector, as shown by the registration records, and the signature and address of an attesting witness. ~~either:~~

~~a.   The subscription of a notary or officer defined in Item 6.b. of the instruction sheet, or~~

~~b.   The signature, printed name, address, voter identification number, and county of registration of one attesting witness, who is a registered voter in the state.~~

However, an absentee ballot shall not be considered illegal if the signature of the elector or attesting witness does not cross the seal of the mailing envelope ~~or if the person witnessing the ballot is in violation of s. 104.047(3)~~. If the canvassing board determines that any ballot is illegal, a member of the board shall, without opening the envelope, mark across the face of the envelope: "rejected as illegal." The envelope and the ballot contained therein shall be preserved in the manner that official ballots voted are preserved.

2.   If any elector or candidate present believes that an absentee ballot is illegal due to a defect apparent on the voter's certificate, he or she may, at any time before the ballot is removed from the envelope, file with the canvassing board a protest against the canvass of that ballot, specifying the precinct, the ballot, and the reason he or she believes the ballot to be illegal. A challenge based upon a defect in the voter's certificate may not be accepted after the ballot has been removed from the mailing envelope.

Section 57.   Section 104.047, Florida Statutes, is amended to read:

104.047   Absentee ballots and voting; violations.—

(1)   Any person who provides or offers to provide, and any person who accepts, a pecuniary or other benefit in exchange for distributing, ordering, requesting, collecting, delivering, or otherwise physically possessing absentee ballots, except as provided in ss. 101.6105-101.694, is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(2)   Except as provided in s. 101.62 or s. 101.655, any person who requests an absentee ballot on behalf of an elector is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

~~(3)   Any person, other than a notary or other officer entitled to administer oaths or an absentee ballot coordinator as provided by s. 101.685, who~~

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

(c)   The Department of State shall reexamine the rules adopted pursuant to subsection (1) and consider the findings in the report as a basis for adopting modified rules that incorporate successful voter-education programs and techniques, as necessary.

Section 60.   Section 101.031, Florida Statutes, is amended to read:

101.031   Instructions for electors.—

(1)   The Department of State, or in case of municipal elections the governing body of the municipality, shall print, in large type on cards, instructions for the electors to use in voting. It shall provide not less than two cards for each voting precinct for each election and furnish such cards to each supervisor upon requisition. Each supervisor of elections shall send a sufficient number of these cards to the precincts prior to an election. The election inspectors shall display the cards in the polling places as information for electors. The cards shall contain information about how to vote and such other information as the Department of State may deem necessary. The cards must also include the list of rights and responsibilities afforded to Florida voters, as described in subsection (2).

(2)   The supervisor of elections in each county shall have posted at each polling place in the county the Voter's Bill of Rights and Responsibilities in the following form:

### VOTER'S BILL OF RIGHTS

Each registered voter in this state has the right to:

1.   Vote and have his or her vote accurately counted.

2.   Cast a vote if he or she is in line when the polls are closing.

3.   Ask for and receive assistance in voting.

4.   Receive up to two replacement ballots if he or she makes a mistake prior to the ballot being cast.

5.   An explanation if his or her registration is in question.

6.   If his or her registration is in question, cast a provisional ballot.

7.   Prove his or her identity by signing an affidavit if election officials doubt the voter's identity.

8.   Written instructions to use when voting, and, upon request, oral instructions in voting from elections officers.

9.   Vote free from coercion or intimidation by elections officers or any other person.

10.   Vote on a voting system that is in working condition and that will allow votes to be accurately cast.

CODING:  Words stricken are deletions; words underlined are additions.

97.073   Disposition of voter registration applications; cancellation notice.—

(1)   The supervisor must notify each applicant of the disposition of the applicant's voter registration application. The notice must inform the applicant that the application has been approved, is incomplete, has been denied, or is a duplicate of a current registration. A registration identification card sent to an applicant constitutes notice of approval of registration. If the application is incomplete, the <u>supervisor must request that</u> ~~notice must instruct~~ the applicant <u>supply the missing information in writing and sign a statement that the additional information is true and correct</u> ~~to complete another voter registration application, which the supervisor must provide~~. A notice of denial must inform the applicant of the reason the application was denied.

Section 63.   <u>Effective upon this act becoming a law, the Division of Elections, in conjunction with the Florida State Association of Supervisors of Elections, shall, from existing funds, study the benefits and drawbacks of having uniform poll opening and closing times throughout the state. A written report shall be presented to the the President of the Senate and the Speaker of the House of Representatives no later than January 1, 2002. This report must include, but is not limited to, a discussion of the circumstances surrounding the 2000 Presidential election; changing the state to one time zone; changing polling times to coincide in both time zones; and having the Central Time Zone not recognize Daylight Saving Time.</u>

Section 64.   Section 102.014, Florida Statutes, is created to read:

<u>102.014   Pollworker recruitment and training.—</u>

<u>(1)   The supervisor of elections shall conduct training for inspectors, clerks, and deputy sheriffs prior to each primary, general, and special election for the purpose of instructing such persons in their duties and responsibilities as election officials. A certificate may be issued by the supervisor of elections to each person completing such training. No person shall serve as an inspector, clerk, or deputy sheriff for an election unless such person has completed the training as required. A clerk may not work at the polls unless he or she demonstrates a working knowledge of the laws and procedures relating to voter registration, voting system operation, balloting and polling place procedures, and problem-solving and conflict-resolution skills.</u>

<u>(2)   A person who has attended previous training conducted within 2 years before the election may be appointed by the supervisor to fill a vacancy on election day. If no person with prior training is available to fill such vacancy, the supervisor of elections may fill such vacancy in accordance with the provisions of subsection (3) from among persons who have not received the training required by this section.</u>

<u>(3)   In the case of absence or refusal to act on the part of any inspector or clerk at any precinct on the day of an election, the supervisor shall appoint a replacement who meets the qualifications prescribed in section 102.012(2). The inspector or clerk so appointed shall be a member of the same political party as the clerk or inspector whom he or she replaces.</u>

CODING:  Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

Section 65.   Subsections (8) and (9) of section 102.012, Florida Statutes, are repealed.

Section 66.   Subsection (2) of section 102.021, Florida Statutes, is amended to read:

102.021   Compensation of inspectors, clerks, and deputy sheriffs.—

(2)   Inspectors and clerks of election and deputy sheriffs serving at the precincts may receive compensation and travel expenses, as provided in s. 112.061, for attending the pollworker training required by s. 102.014 102.012(8).

Section 67.   Section 106.31, Florida Statutes, is amended to read:

106.31   Legislative intent.—The Legislature finds that the costs of running an effective campaign for statewide office have reached a level which tends to discourage persons from becoming candidates and to limit the persons who run for such office to those who are independently wealthy, who are supported by political committees representing special interests which are able to generate substantial campaign contributions, or who must appeal to special interest groups for campaign contributions. The Legislature further finds that campaign contributions generated by such political committees are having a disproportionate impact vis-a-vis contributions from unaffiliated individuals, which leads to the misperception of government officials unduly influenced by those special interests to the detriment of the public interest. Furthermore, it is the intent of the Legislature that the purpose of public campaign financing is to make candidates more responsive to the voters of the State of Florida and as insulated as possible from special interest groups. The Legislature intends ss. 106.30-106.36 to alleviate these factors, dispel the misperception, and encourage qualified persons to seek statewide elective office who would not, or could not otherwise do so and to protect the effective competition by a candidate who uses public funding.

Section 68.   Section 106.33, Florida Statutes, is amended to read:

106.33   Election campaign financing; eligibility.—Each candidate for the office of Governor or member of the Cabinet who desires to receive contributions from the Election Campaign Financing Trust Fund shall, upon qualifying for office, file a request for such contributions with the filing officer on forms provided by the Division of Elections. If a candidate requesting contributions from the fund desires to have such funds distributed by electronic fund transfers, the request shall include information necessary to implement that procedure. For the purposes of ss. 106.30-106.36, candidates for Governor and Lieutenant Governor on the same ticket shall be considered as a single candidate. To be eligible to receive contributions from the fund, a candidate may shall not be an unopposed candidate as defined in s. 106.011(15) and must shall:

(1)   Agree to abide by the expenditure limits provided in s. 106.34.

(2)(a)   Raise contributions as follows:

CODING:  Words stricken are deletions; words underlined are additions.

(1)   From the funds appropriated, the department may contract with the Florida Association of Court Clerks to analyze, design, develop, operate, and maintain a statewide, on-line voter registration database and associated web site, to be fully operational statewide by June 1, 2002. The database shall contain voter registration information from each of the 67 supervisors of elections in this state, and shall be accessible through an Internet web site. The system shall provide functionality for ensuring that the database is updated on a daily basis to determine if a registered voter is ineligible to vote for any of the following reasons, including, but not limited to:

(a)   The voter is deceased;

(b)   The voter has been convicted of a felony and has not had his or her civil rights restored; or

(c)   The voter has been adjudicated mentally incompetent and his or her mental capacity with respect to voting has not been restored.

The database shall also allow for duplicate voter registrations to be identified.

(2)   The Department of State shall not contract with any private entity other than the Florida Association of Court Clerks for the operation or maintenance of the statewide voter registration database.

(3)   In administering the database, each supervisor of elections shall compare registration information provided by a voter with information held by the Department of Law Enforcement, the Board of Executive Clemency, the Office of Vital Statistics, and other relevant sources. If the supervisor of elections finds information that suggests that a voter is ineligible to register to vote, the supervisor of elections shall notify the voter by certified United States mail. The notification shall contain a statement as to the reason for the voter's potential ineligibility to register to vote and shall request information from the voter on forms provided by the supervisor of elections in order to make a final determination on the voter's eligibility. After reviewing the information requested by the supervisor of elections and provided by the voter, if the supervisor of elections determines that the voter is not eligible to vote under the laws of this state, the supervisor of elections shall notify the voter by certified United States mail that he or she has been found ineligible to register to vote in this state, shall state the reason for the ineligibility, and shall inform the voter that he or she will be removed from the voter registration rolls.

(4)   To the maximum extent feasible, state and local government entities shall facilitate provision of information and access to data to the Florida Association of Court Clerks in order to compare information in the statewide voter registration database with available information in other computer databases, including, but not limited to, databases that contain reliable criminal records and records of deceased persons. State and local governmental agencies that provide such data shall do so without charge if the direct cost incurred by those agencies is not significant.

CODING:  Words stricken are deletions; words underlined are additions.

(3)   Such information shall not be used for commercial purposes. No person to whom a list of registered voters is made available pursuant to this section, and no person who acquires such a list, shall use any information contained therein for purposes which are not related to elections, political or governmental activities, voter registration, or law enforcement.

(4)   Any person who acquires a list of registered voters from the division or supervisor of elections shall take and subscribe to an oath which shall be in substantially the following form:

I hereby swear (or affirm) that I am a person authorized by s. 98.0979, Florida Statutes, to acquire information on the registered voters of Florida; that the information acquired will be used only for the purposes prescribed in that section and for no other purpose; and that I will not permit the use or copying of such information by persons not authorized by the Election Code of the State of Florida.

                                        ...(Signature of person acquiring list)...

Sworn and subscribed before me this .... day of ........., ...(year)....
...(Name of person providing list)...

Section 73.   Effective June 30, 2001, section 98.0975, Florida Statutes, is repealed.

Section 74.   (1)   From funds appropriated from the General Revenue Fund to the Division of Elections of the Department of State in specific appropriation 2898B of the 2001-2002 General Appropriations Act, notwithstanding the proviso language to that specific appropriation, the division shall distribute the sum of $5,949,375 in fiscal year 2001-2002 to the counties to fund comprehensive voter education programs and pollworker recruitment and training programs provided in this act. The Division shall divide the total amount of funds appropriated by the total number of registered voters in the state for the 2000 General Election to establish a funding level per individual voter. Each county shall receive an amount equal to the funding level per individual voter multiplied by the number of registered voters in the county, as certified by the Department of State for the 2000 General Election.

(2)   No county shall receive any funds pursuant to subsection (1) until the county supervisor of elections provides to the Department of State a detailed description of the voter-education programs to be implemented pursuant to s. 98.255, Florida Statutes, for the 2002 election cycle.

(3)   This section shall take effect July 1, 2001.

Section 75.   The Division of Elections of the Department of State shall provide a report to the Governor, the President of the Senate, and the Speaker of the House of Representatives by November 15, 2001, detailing the progress that each county required by this act to upgrade a voting system has made toward the implementation of such system. This section shall take effect July 1, 2001.

CODING:  Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.



U.S. DEPARTMENT OF JUSTICE
Civil Rights Division

JDR:GS:AHN:DCM:par          *Voting Section*
DJ 166-012-3                 *P.O. Box 66128*
2001-1693                    *Washington, DC 20035-6128*

August 17, 2001

The Honorable Robert A. Butterworth
Attorney General
State of Florida
The Capitol
Tallahassee, Florida  32399-1050

Dear Mr. Attorney General:

This refers to Chapter 2001-40, the "Florida Election Reform
Act of 2001," which makes numerous changes to the election code
of the State of Florida, submitted to the Attorney General
pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. 1973c.
The changes made pursuant to Chapter 40 include, but are not
limited to, the following:

(a)  changing the membership of the State Elections
Canvassing Commission;

(b)  creating new and revised procedures governing absentee
voting by overseas and in-state voters;

(c)  revising ballot format requirements;

(d)  revising the time period for a gubernatorial candidate
to designate a running mate for lieutenant governor, and the
qualifying procedures for the lieutenant governor;

(e)  creating the availability and form of state write-in
ballots;

(f)  establishing the requirement that ballots be counted if
there is a clear indication on the ballot that the voter has made
a definite choice, including the requirement that the Department
of State adopt rules prescribing what constitutes "a clear
indication on the ballot that the voter has made a definite
choice";

**EXHIBIT**

B

-2-

(g)  requiring the Department of State to adopt rules prescribing a uniform primary and general election ballot for each certified voting system;

(h)  changing public campaign finance laws for the 2002 primary and general elections;

(i)  establishing an entitlement to provisional ballots for voters whose eligibility cannot be determined, and establishing the procedures for canvassing provisional ballots;

(j)  establishing procedures to be followed when a voting device rejects a ballot;

(k)  revising the duties of precinct election boards;

(l)  revising training requirements for election officials and employees;

(m)  revising canvassing and recount procedures;

(n)  authorizing the Department of State to appoint deputies to observe or examine registration and election processes, voting systems and equipment;

(o)  requiring county supervisors of elections to report voter errors to the Department of State, and the Department of State to prepare reports on voting systems;

(p)  changing the schedule for sending precinct vote totals to county canvassing boards and for filing election returns with the Department of State, including requiring the Department of State to ignore returns filed late;

(q)  requiring the Department of State to certify software and hardware to sort undervotes and overvotes;

(r)  requiring the Department of State to prescribe minimum standards for nonpartisan voter education;

(s)  requiring the Department of State to print, and county supervisors of elections to post in all polling places a "Voter's Bill of Rights and Responsibilities";

(t)  revising the qualifications and appointment of poll workers;

-4-

(jj) establishing testing procedures for automatic vote tabulation equipment;

(kk) eliminating the requirement that election officials call out voter names loud enough for poll watchers to hear; and

(ll) eliminating fines for county election boards that file late returns.

We received your submission on June 15 and 19, 2001; supplemental information was received on July 16, 2001.

We further note that Sections 52-55 and 57 of Chapter 40 repeal prior amendments concerning absentee voting procedures that were included in Chapter 129 (1998), and objected to by the Attorney General on August 14, 1998.

With regard to Sections 1-34, 37, 39, 40, 42-59, 61-69, and 73-78 of Chapter 40, the Attorney General does not interpose any objection to the specified changes. However, we note that Section 5 expressly provides that the failure of the Attorney General to object does not bar subsequent litigation to enjoin the enforcement of the changes. See the Procedures for the Administration of Section 5 (28 C.F.R. 51.41).

Certain sections of Chapter 40 include provisions that are enabling in nature. Therefore, any changes affecting voting that are adopted pursuant to this legislation will be subject to Section 5 review (e.g., adoption of a uniform polling place procedures manual; special emergency procedures adopted by the elections canvassing commission relating to methods of voting for overseas voters, or any extension of the deadline for the receipt of election returns; and the following rules to be developed by the Department of State: the form of the state's write-in ballot; procedures authorizing election supervisors to accept requests for absentee ballots and voted ballots by electronic means from overseas voters; a uniform primary and general election ballot for each certified voting system; additional manual recount procedures for each certified voting system; safeguards for counting ballots at a precinct or centralized location; standards for each voting system for what constitutes a clear indication that the voter has made a definite choice; minimum standards for nonpartisan voter education; and specifications on what documentation is sufficient to determine eligibility for late registration under Fla. Stat. § 97.0555). See 28 C.F.R. 51.15.

-6-

period for accepting such comments, if any, on the changes, and all formal or informal comments received from minority persons, committees, or organizations representing the interests of minority persons. Provide the name, telephone number, and organizational affiliation, if any, of any racial or ethnic minority individual, committee, group member, or organization who has been active in the political process generally and/or who has specifically commented on the proposed changes. If any of these persons have specifically commented on the proposed changes, provide a copy of those comments, and describe the circumstances in which the comments were provided, and the action, if any, that was taken in response. If no action was taken, please provide an explanation.

     5.   With respect to Sections 70-72 of Chapter 40, please also provide the information set forth below. In your response, please include a comparison of the requirements and procedures provided under prior Florida law (i.e., Fla. Stat. § 98.0975) with those established by the new law (i.e., Fla. Stat. § 98.0977). If you find it helpful, you may provide your comparison in a chart form:

     (a)  whether the statewide voter registration database will contain the names and voter registration status of all registered voters in the State of Florida, or only those residents of Florida who have been identified as having lost their right to vote or whose continuing eligibility to vote has been questioned; and indicate the categories of information to be provided for each voter in the database;

     (b)  the sources of information from which a voter's potential ineligibility to vote may be determined, including a description of the role, if any, that county and local election officials will have in providing information for such determinations and in making such determinations;

     (c)  the title of the state, county, or local official who will make the determination about an individual voter's potential and final ineligibility status;

     (d)  the standard of proof required, and the nature and degree of evidence necessary to determine that a voter is potentially ineligible such that he or she is or will be identified as such in the database for any of the specified reasons;

-8-

(b)  a detailed description of any alternative provisional
     balloting measures or systems proposed by members of
     the Governor's Select Task Force on Election
     Procedures, Standards and Technology, or by any member
     or caucus of the Florida Legislature, as set forth in
     request numbers 2-4 above, with a focus on the basis
     for rejection of any proposal(s) that would have
     permitted the acceptance of provisional ballots cast
     by eligible voters legally registered within the
     county but outside their precinct.

     7.  With respect to Section 60, which contains the "Voter's
Bill of Rights and Responsibilities," please provide:

(a)  the origin and basis for inclusion of each of the
     enumerated items under the "Responsibility" portion of
     the section, and provide a description of any
     alternatives or amendments proposed thereto including
     the reasons for their rejection;

(b)  a description of the extent, if any, to which election
     officials or poll workers are authorized to enforce
     compliance with any of the "Responsibilities" and how
     any such enforcement would be effectuated; and

(c)  whether the "Voter's Bill of Rights and
     Responsibilities" will be printed in any languages
     other than English.

     The Attorney General has sixty days to consider a completed
submission pursuant to Section 5.  This sixty-day review period
will begin when we receive the information specified above.  See
the Procedures for the Administration of Section 5 (28 C.F.R.
51.37).  However, if no response is received within sixty days of
this request, the Attorney General may object to the proposed
changes consistent with the burden of proof placed upon the
submitting authority.  See also 28 C.F.R. 51.40 and 51.52(a) and
(c).  Changes which affect voting are legally unenforceable
unless Section 5 preclearance has been obtained.  Clark v.
Roemer, 500 U.S. 646 (1991); 28 C.F.R. 51.10.  Therefore, please
inform us of the action the State of Florida plans to take to
comply with this request.



# OFFICE OF THE ATTORNEY GENERAL

## THE CAPITOL

### TALLAHASSEE, FLORIDA 32399-1050

Reply to:

Office of the Attorney General
State Programs Civil Division
(850)414-3300; SunCom 994-3300

ROBERT A. BUTTERWORTH
*Attorney General*
*State of Florida*

October 15, 2001

Mr. Joseph D. Rich
Acting Chief, Voting Section
Civil Rights Division
Department of Justice
Post Office Box 66128
Washington, D. C. 20035-6128

      RE: Submission Under Section 5 of the Voting Rights Act
      Florida Election Reform Act of 2001, Chapter 2001-40, Laws of Florida
      File No. 2001-1693

Dear Mr. Rich:

This is in response to your letter of August 17, 2001 requesting additional information regarding all or parts of Sections 35, 36, 38, 41, 60, and 70-72 of Florida's Election Reform Act of 2001.

This response follows the numbering system set out in your August 17 letter. The response for each of the eight sections will be by reference to the four paragraphs on page 5 of your letter, and the separate paragraph and subparagraphs pertaining to each section. (For example, for Section 35, the responses appear as 1 through 4, followed by 6 (a and (b)).

### Section 35
1.
(a.)    The following are excerpts from various reports and analyses that provide a detailed description of the need for provisional ballots. As the Governor's Task Force on Election Procedures, Standards and Technology ("Governor's Task Force") Recommendation 22 provides, provisional ballots would be used as a method to "encourag[e] votes by those who[se] registration status could not be clarified quickly at the polls." (See Exhibit A, Book 1, page 56). The analysis of House Bill ("HB") 1925 in the House Committee on Rules, Ethics and Elections provides that "[d]uring the 2000 General Election, there were reports of voters presenting themselves at the polls only to find that their names were not on the precinct register. Numerous poll workers reported that they were unable to reach the supervisor of elections' offices to verify whether the persons were registered to vote. Some voters were turned away, others were told to come back later, and still others were allowed to vote even though their registration was questionable." (See Exhibit B, Book 1, Tab 4C, page 3). The Senate Committee on Ethics and Elections' interim report, *Review of the Voting Irregularities of the 2000 Presidential Election,* in recommending the adoption of a provisional ballot provides that "[i]n order to assure that all eligible voters who go to the polls are allowed to vote and to assure that no ineligible person is allowed to cast a vote, verification of the

**EXHIBIT**

C

Mr. Joseph D. Rich
Page 3

Committee on Rules, Ethics and Elections. (See Exhibit B, Book 1, Tab 4A). Section 4 of this amendment contained this section on provisional ballots creating 101.048, Florida Statutes. The amendment passed, and the bill, as amended, was then referred to the Procedural and Redistricting Council ("PRC") for further debate and vote. (See Exhibit B, Book 1, Tab 5, Section 34, pages 32-34).

April 10, 2001      PCB REE 01-12 was filed as HB 1925 and contained the language in the amendment on April 2, 2001 regarding this change in provisional ballots. (See Exhibit B, Book 1, Tab 7, Section 34, pages 32-34).

April 19, 2001      HB 1925 was heard before the PRC. This provisional ballot language can be found in section 34 of the bill. (See Exhibit B, Book 1, Tab 7, Section 34, pages 32-34). Representative Goodlette offered a strike all amendment that was adopted. The only change in this amendment regarding this provisional ballot language was that the elector had to be eligible to vote "at the precinct." (See Exhibit B, Book 1, Tab 7A, Section 34, page 30, line 21). HB 1925 was made into a Council Substitute.

April 24, 2001      Council Substitute for House Bill ("CS/HB") 1925 was placed on the Special Order calendar and heard on the floor for the second reading. (Exhibit B, Book 1, Tab 9, page 557). Representative Ryan (D-Dania Beach) offered amendment number 4 that attempted to reinstate the language in the original HB 1925. (See Exhibit B, Book 1, Tab 8B, Section 34, pages 30-32). This amendment failed. (See Exhibit B, Book 1, Tab 9, page 579).

April 25, 2001      CS/HB 1925 was read a third time in its entirety. (See Exhibit B, Book 1, Tab 9, pages 557-669). The bill passed as amended – 78 yeas, 39 nays – and was immediately certified to the Senate. (See Exhibit B, Book 1, Tab 9, page 669).

<u>Senate</u>

March 1, 2001:      The Florida Senate Committee on Ethics and Elections staff recommended the use of provisional ballots in an interim project report entitled, *Review of the Voting Irregularities of the 2000 Presidential Election.* (See Exhibit A, Tab 2, pages 5-6, 24-25, 46).

March 23, 2001:     Senate Bill 1118 filed by Senator Posey (Rockledge), chairman of the Senate Committee on Ethics and Elections, was heard by the committee. (See Exhibit C, Book 1, Tab 1A). A Proposed Committee Substitute ("PCS") for SB 1118 was offered by the Committee on Ethics and Elections that related to this change in provisional ballots. (See Exhibit C, Book 1, Tab 1B). The Committee adopted the proposed committee substitute, passed the bill, and ordered a committee substitute. (See Exhibit C, Book 1, Tab 1E). The Committee Substituted for Senate Bill ("CS/SB") 1118 provided that if a voter is in the proper county but in the wrong precinct and casts a provisional ballot,

Mr. Joseph D. Rich
Page 5

May 4, 2001:          The Florida Senate and the Florida House of Representatives adopted the
                      Conference Committee report containing the final provisional ballot sections -
                      including section 35.

(b)     The following are hearings, meetings, deliberations and debates that involved
any state or local official, legislator, committee or staff member regarding the relative merits and
demerits of section 35.

The Governor's Select Task Force on Election Procedures, Standards and Technology:

| | |
|---|---|
| January 8-9, 2001 | Tallahassee |
| January 23, 2001 | Orlando |
| February 1, 2001 | Ft. Lauderdale |
| February 6, 2001 | Jacksonville |
| February 26, 2001 | Tallahassee |

House Legislative Meetings:
HB 1925:

| | |
|---|---|
| April 2, 2001 | Amendment heard in House Committee on Rules, Ethics and Elections |
| April 19, 2001 | Heard by Procedural and Redistricting Council |
| April 24, 2001 | Heard on floor of House of Representatives |
| April 25, 2001 | Heard and passed on floor of House of Representatives |

Senate Legislative Meetings:
SB 1118:

| | |
|---|---|
| March 23, 2001 | Heard in Committee on Ethics and Elections |
| April 26, 2001 | Heard on floor of Florida Senate |
| April 27, 2001 | Heard on floor of Florida Senate |
| April 27, 2001 | Heard on the floor of the House of Representatives |
| April 30, 2001 | Heard on the floor of the Florida Senate |
| April 30, 2001- | Heard in the Conference Committee |
| May 4, 2001 | Heard and approved in both chambers |

SB 1374:

| | |
|---|---|
| April  5, 2001 | Heard in Committee on Ethics and Elections |
| April 18, 2001 | Heard in  Appropriations subcommittee on General Government |

3.
(a.)    Please see Exhibit D (tapes of all of the House of Representatives meetings); Exhibit E (tapes
        of all Florida Senate meetings); and Exhibit F (tapes of all of the conference committee
        meetings).

(b.)    None that could be located.

(c.)    Please see Exhibit A, Book 1, Tab 3 (copies of all notices in the legislative process in
        chronological order for both the House and the Senate). These notices were posted online on

Mr. Joseph D. Rich
Page 7

Members of the Florida Legislature are constantly receiving informal input from their constituents and other Florida residents, both minority and non-minority, either directly or through registered lobbyists, on a wide range of issues. The members also receive input from state officials.

The Florida Legislature has an open meeting policy whereby interested citizens and/or their registered lobbyist(s) may address any committee on any bill under consideration, at the discretion of the committee chair.

6.

(a.)      If a person goes to a polling place and his or her name is not on the precinct register, as has been the practice for many years, the poll worker will try to verify that person's eligibility and correct precinct number. This will entail contacting the supervisor's office by telephone or by using a laptop computer to communicate with the supervisor or to access the registration database. If the poll worker can determine that the person is in the wrong precinct, the poll worker will direct the person to the correct precinct. If the poll worker can determine that the person is not eligible to vote at all, the poll worker will notify the person of that finding. If the poll worker cannot determine eligibility or correct precinct number, the person shall be issued a provisional ballot and be allowed to vote.

(b.)      The Governor's Task Force provided Recommendation 22 regarding provisional ballots. "The Division of Elections should examine viable options for using provisional ballots so that voters whose eligibility is in question at the polling place on election day can submit votes in appropriate races subject to verification of their eligibility." (See Exhibit A, Book 1, pages 56-7). The Governor's Task Force noted that there was confusion regarding the exact nature of provisional ballots. The report does not state whether or not the voter must be in his or her precinct for a provisional ballot to be counted.

In the House of Representatives, a workshop was held on March 21, 2001 regarding Proposed Committee Bill for Rules, Ethics and Elections ("PCB REE") 01-12. (See Exhibit B, Book 1, Tab 2). This PCB did not contain any reference to provisional ballots. This PCB was amended on April 2, 2001, to include provisional ballots and to require that an elector must be eligible to vote in the election to cast a provisional ballot. (See Exhibit B, Book 1, Tab 4A, Section 4, pages 4-6). This PCB was later filed as HB 1925. (See Exhibit B, Book 1, Tab 5). A strike all amendment was offered on April 19, 2001, that provided that the elector must be eligible to vote at the precinct. (See Exhibit B, Book 1, Tab 5, Section 34, pages 32-34). HB 1925, as amended, was passed in the House of Representatives and was certified to the Senate. (See Exhibit B, Book 1, Tab 9, page 669).

In the Senate, on March 23, 2001, the Senate Committee on Ethics and Elections heard SB 1118 and the Proposed Committee Substitute ("PCS") for SB 1118, relating to provisional ballots. The Committee adopted the PCS, passed the bill and ordered a committee substitute. (See Exhibit C, Book 1, Tab 1E). CS/SB 1118 provided that if a voter is in the proper county, but in the wrong precinct and casts a provisional ballot, the ballot is to be duplicated for the races that the voter would otherwise have been eligible to vote for had she or he been in the proper precinct. On April 27, 2001, the Florida Senate passed CS/SB 1118, and sent it to the House of Representatives.

The House of Representatives then amended SB 1118 on April 27, 2001. (See Exhibit C, Book 1, Tab 3B). Of note, the provisional ballot language was substantially the same except that the House amendment required the elector to be at the correct precinct. The Senate refused to concur in the

Mr. Joseph D. Rich
Page 9

|                  |                                                                                                                                                                                                                                                                                                                                                                                                                                        |
|------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                  | Order calendar and heard on the floor. (See Exhibit B, Tab 9, page 559). Representative Ryan offered amendment number 4 that attempted to reinstate the language in the original HB 1925. (See Exhibit B, Tab 8B, Section 34, pages 30-32). This amendment did not amend any of the language in this provisional ballot change. (See Exhibit B, section 35, pages 32-35). This amendment failed. (See Exhibit B, Tab 9, page 579). |
| April 25, 2001   | CS/HB 1925 was read a third time in its entirety with 4 amendments. (See Exhibit B, Tab 9, pages 557-669).  None of these amendments attempted to change this provisional ballot change. (See Exhibit B, Tab 9, pages 557-669). The bill passed as amended – 78 yeas, 39 nays – and was immediately certified to the Senate.  (See Exhibit B, Tab 9, pages 669).                                                                  |

Senate

| April 18, 2001: | The Senate Appropriations Subcommittee on General Government heard Committee Substitute for Senate Bill (" CS/SB") 1374. (See Exhibit C, Book 2, Tab 15). The Committee adopted Amendment 6 by Senator King (R-Jacksonville), incorporating this change in  provisional ballot language from CS/SB 1118. (See Exhibit C, Book 2, Tab 15C, Section 77).  The Committee voted the bill favorably and ordered a second committee substitute. |

| March 1, 2001: | The Florida Senate Committee on Ethics and Elections staff recommended the use of provisional ballots in an interim project report entitled, *Review of the Voting Irregularities of the 2000 Presidential Election* (March 2001). (See Exhibit A,  Tab 2, pages 5-6, 24-25, 46). |

| March 23, 2001: | Senate Bill ("SB") 1118 filed by Senator Posey, (Rrockledge), chairman of the Senate Committee on Ethics and Elections, was heard by the committee. (See Exhibit C, Book 1, Tab 1). A Proposed Committee Substitute for SB 1118 was offered by the committee that created this change. (See Exhibit C, Book 1, Tab 1B, Section 3). The Committee adopted the proposed committee substitute, passed the bill, and ordered a committee substitute. |

| April 26, 2001: | The full Florida Senate heard CS/SB 1118 on second reading on the floor. (See Exhibit C, Book 1, Tab 2).  The sum and substance of CS/CS/SB 1374, including this provisional ballot section, was adopted in a strike-all amendment to CS/SB 1118. |

| April 27, 2001: | The Florida Senate passed CS/SB 1118, including this provisional ballot section. (See Exhibit C, Book 1, Tab 3A). |

| April 27, 2001: | The Florida House of Representatives amended CS/SB 1118 with the substance of its election package. (See Exhibit C, Book 1, Tab 3B). The House amendment contains identical language for this section of provisional ballot language. (See Exhibit C, Book 1, Tab 3B, section 33). |

Conference Committee

Mr. Joseph D. Rich
Page 11

<u>House of Representatives</u>

April 2, 2001     Amendment #1 to Proposed Committee Bill for the House Committee on
                  Rules, Ethics and Elections ("PCB REE") 01-12 was presented by
                  Representative Dudley Goodlette, chairman of the House Committee on Rules,
                  Ethics and Elections. (See Exhibit B, Tab 4A, Section 7, page 11). This
                  amended section 101.69, Florida Statutes, to allow for the use of provisional
                  ballots when a voter is voting in person, but cannot return an absentee ballot.
                  The amendment passed, and the bill was then referred to the Procedural and
                  Redistricting Council ("PRC") for further debate and vote. (See Exhibit B, Tab
                  5, Section 37).

April 10, 2001    PCB REE 01-12 was filed as House Bill ("HB") 1925 and contained the
                  language in the amendment on April 2, 2001 regarding this change for
                  provisional ballots. (See Exhibit B, Tab 5, Section 37). The analysis to HB
                  1925 on April 11, 2001, contains information on provisional ballots, but does
                  not specifically address this amendment to section 101.69, Florida Statutes.
                  (See Exhibit B, Tab 5A, pages 3 and 9).

April 19, 2001    HB 1925 was heard before PRC for further debate and discussion. This
                  provisional ballot language can be found in section 37 of the bill. (See Exhibit
                  B, Tab 7, pages 39-40). Representative Goodlette offered a strike all
                  amendment that was adopted. (Exhibit B, Tab 7A). This amendment did not
                  change the language in this provisional ballot change (See Exhibit B, Tab 7A,
                  Section 37). The bill as amended was passed.

April 24, 2001    Committee Substitute for House Bill ("CS/HB") 1925 was placed on Special
                  Order calendar. (See Exhibit B, Tab 9, page 557). Representative Ryan offered
                  amendment number 4 that attempted to reinstate the language in the original
                  HB 1925. (See Exhibit B, Tab 8B, Section 38). This amendment did not
                  change any of the language in this provisional ballot change. (See Exhibit B,
                  Tab 8B, Section 38). This amendment failed. (See Exhibit B, Tab 9, page 579).

April 25, 2001    CS/HB 1925 was read a third time in its entirety with 4 amendments. (See
                  Exhibit B, Tab 9, pages 557-669). None of these amendments attempted to
                  change this provisional ballot change. (See Exhibit B, Tab 9, pages 557-669).
                  The bill passed as amended – 78 yeas, 39 nays – and was immediately certified
                  to the Senate. (See Exhibit B, Tab 9, pages 669).

<u>Senate</u>

March 1, 2001:    The Florida Senate Committee on Ethics and Elections staff recommended the
                  use of provisional ballots in an interim project report entitled, *Review of the
                  Voting Irregularities of the 2000 Presidential Election* (March 2001). (See
                  Exhibit A, Tab 2, pages 5-6, 24-25, 46).

March 23, 2001:   Senate Bill 1118 filed by Senator Posey, chairman of the Senate Committee on
                  Ethics and Elections, was heard by the committee. (See Exhibit C, Book 1, Tab

Mr. Joseph D. Rich
Page 13

3.
(a.)          Please see "Section 35" 3.(a.)
(b.)          Please see "Section 35" 3.(b.)
(c.)          Please see "Section 35" 3.(c.)
(d.)          Please see "Section 35" 3.(d.)
(e.)          Please see "Section 35" 3.(e.)

4.            Please refer to "Section 35" 4.

6.
(a.)          Please refer to "Section 35" 6.(a.)
(b.)          Please refer to "Section 35" 6.(b.)

## Section 41

1.
(a.)          Please refer to "Section 35" 1.(a.)
(b.)          Please refer to "Section 35" 1.(b.)

2.
(a.)          Please refer to "Section 35" 2.(a.)
(b.)          The following is the legislative history of the change in chronological order.
First, the House of Representatives history is detailed, followed by the Senate, and finally the
conference committee that was appointed to reconcile differences in the election reform bill.

House of Representatives

April 10, 2001      Proposed Committee Bill, Rules Ethics and Elections ("PCB REE") 01-12 was
                    filed as House Bill ("HB") 1925. (See Exhibit B, Tab 5).

April 19, 2001      HB 1925 was heard before the Procedural and Redistricting Council for further
                    debate and discussion.  (See Exhibit B, Tab 7, pages 34-37). The bill as
                    amended was passed.

April 24, 2001      Committee Substitute for House Bill ("CS/HB") 1925 was placed on Special
                    Order calendar and heard on the floor for the second time. (See Exhibit B, Tab
                    9, page 557).

April 25, 2001      CS/HB 1925  was read a third time in its entirety with 4 amendments. (See
                    Exhibit B, Tab 9, pages 557-669).

Senate

March 1, 2001:      The Florida Senate Committee on Ethics and Elections staff recommended the
                    use of provisional ballots in an interim project report entitled, *Review of the
                    Voting Irregularities of the 2000 Presidential Election* (March 2001).  (See
                    Exhibit A,  Tab 2, pages 5-6, 24-25, 46).

Mr. Joseph D. Rich
Page 15

4.      Please see "Section 35" 4.

## Section 60

1.

(a.)     The Governor's Task Force recommended a Voter's Bill of Rights and Responsibilities in Recommendation 3. (See Exhibit A, Book 1, Tab 1, pages 20-21). The Governor's Task Force recommended that "the Florida Legislation should direct the Supervisors of Elections to create and publish prominently in every precinct a "Voter's Bill of Rights and Responsibilities" to define clearly and succinctly the duties and responsibilities of voters, poll-workers, election officials, and candidates to each other." The Bill of Rights idea was raised by several members of the general public and the Governor's Task Force members agreed with this concept and further suggested a balancing reference to a Bill of Voter Responsibilities.

Two Governor's Task Force members, Senator Daryl Jones (D-Miami) and Representative Chris Smith (D-Broward), recommended that the Voter's Bill of Rights should be a statement of the voters rights that is posted in a conspicuous location at every precinct. In addition to the bill of rights, "[t]he Task Force also strongly suggest[ed] that the responsibilities of voters, poll-workers, election officials, and candidates to one another be a major part of such a statement." (See Exhibit A, Book 1, Tab 1, page 21). **Both legislators eventually sponsored the Voter's Bill of Rights and Responsibilities.**

(b.)     This change will inform voters of their rights and responsibilities, which is the clear stated purpose of this legislation.

2.
(a.)     Please see 1.(a.) above.
(b.)     The following is the legislative history of the change in chronological order. First the House of Representatives history is detailed, followed by the Senate, and finally the Conference Committee that was appointed to reconcile the differences in the election reform bill.

House of Representatives

| April 23, 2001: | The Florida House of Representatives placed Special Rule 01-13 on Committee Substitute for House Bill ("CS/HB") 1925 and attached 8 amendments under that rule. (See Exhibit B, Tab 8). One of these amendments was proposed by Representative Smith (D-Broward) and contains the Voter's Bill of Rights and Responsibilities. (Exhibit B, Tab 8A, pages 1-3). |
| April 24, 2001: | This amendment, number 3, was heard and adopted on the floor of the House of Representatives. (Exhibit B, Tab 9, pages 560-561 and 581). |
| April 25, 2001: | The bill, as amended, was passed by the House of Representatives and immediately certified to the Senate. (See Exhibit B, Tab 9, page 669). |

Senate

| April 5, 2001: | The Senate Ethics and Elections ("SEE") Committee heard Senate Bill ("SB") |

Mr. Joseph D. Rich
Page 17

conference committee was appointed to resolve these differences. (See Exhibit C, Book 1, Tab 4, page 618 and 639).

April 30, 2001: The Conference Committee met and discussed the issues that they did not agree on including the Voter's Bill of Rights and Responsibilities. (See Exhibit C, Book 1). The House representatives offered to go to the Senate position, which was accepted. (See also Exhibit C, Book 1, Tab 7, page 5 – outlines the comparison between the two positions).

May 3, 2001: The Conference Committee issued its final report, including the Voter's Bill of Rights and Responsibilities, which is the language found in section 60 of Chapter 2001-40. (See Exhibit C, Book 1, Tab 10).

May 4, 2001: The House of Representatives and the Florida Senate voted to adopt the Conference Committee Report containing the Voter's Bill of Rights and Responsibilities section.

(c.) The following are all of the meetings and hearings in which section 60 of Chapter 2001-40 was discussed:

Governor's Task Force Meetings:

| January 8-9, 2001 | Tallahassee |
| January 23, 2001 | Orlando |
| February 1, 2001 | Ft. Lauderdale |
| February 6, 2001 | Jacksonville |
| February 26, 2001 | Tallahassee |

House Legislative Meetings:

| April 2, 2001 | House Committee on Rules, Ethics and Elections |
| April 19, 2001 | Heard by Procedural and Redistricting Council |
| April 24, 2001 | Heard on Floor of House of Representatives |
| April 25, 2001 | Heard and passed on the floor of the House of Representatives |

Senate Legislative Meetings:

| April 5, 2001 | Senate Committee on Ethics and Elections |
| April 18, 2001 | Heard by Senate Subcommittee on General Government |
| April 26, 2001 | Heard on floor of Florida Senate |
| April 27, 2001 | Heard and passed on floor of Florida Senate |

Conference Committee Meetings:

| April 30 – May 3, 2001 | Conference Committee |

3.

(a.) Please see Exhibit D (tapes of all of the House of Representatives meetings); Exhibit E (tapes of all Florida Senate meetings): and Exhibit F (tapes of all of the conference committee meetings).

Mr. Joseph D. Rich
Page 19

## Section 70-72

1.

(a.)     The Statewide Voter Registration Database was proposed in response to problems with the central voter file list maintenance and to complement the upgrade in technology for voting systems. The Governor's Task Force on Election Procedures, Standards and Technology ("Governor's Task Force") recommended the creation of a statewide on-line voter registration database in Recommendation 17. (See Exhibit A, Book 1, Tab 1, page 49-51). The Governor's Task Force noted that "[t]he Central Voter File functions very nicely for its apparently intended purpose, but it has limited usefulness as a current, complete, and accurate voter roster for election days." (See Exhibit A, Book 1, Tab 1, page 50). This being said, the Governor's Task Force stated that the most important elements in a voter registration system is that system's accuracy and currency.

(b.)     This will provide for the maintenance of voter registration files in a current and accurate format, which is the intention behind the legislation.

2.

(a.)     Again, a Statewide Voter Registration Database was initially recommended by the Governor's Task Force. It was proposed by Representative Dudley Goodlette in House Bill 1925 and Senator Lisa Carlton in Senate Bill 1374. (See Exhibit B, Tab 4A, Sections 2-3, pages 2-4; and Exhibit C, Book 2, Tab 13A , Section 76, page 75).

(b.)     The following is a legislative history of the change in chronological order. First, the House of Representatives history is detailed, followed by the Senate and finally the Conference Committee that was appointed to reconcile differences in the election reform bill.

House of Representatives

| April 2, 2001 | Representative Goodlette offered Amendment No. 1 to Proposed Committee Bill for Rules, Ethics and Elections ("PCB REE") 01-12. (See Exhibit B, Tab 4A, Sections 2-3, pages 2-4). This amendment contained the language in sections 70 and 72 of Chapter 2001-40, but not the funding element found in section 71. The amendment provides that the Department of State, in collaboration with the State Technology Office, is to develop a statewide voter registration database. |
| --- | --- |
| | Representative Cantens then offered Amendment 2a to Amendment #1. (See Exhibit B, Tab 4B, page 1). This amendment provided that the database would be operational by June 1, 2002 and that funding would be provided in the General Appropriations Act. |
| | Both amendments were adopted and the PCB REE 01-12 was adopted unanimously and filed as House Bill ("HB") 1925. (See Exhibit B, Tab 4C). |
| April 19, 2001 | Representative Goodlette offered a strike all amendment to HB 1925. (See Exhibit B, Tab 7A). This amendment altered the language of what is now |

Mr. Joseph D. Rich
Page 21

|  |  |
|---|---|
| | other than the FACC. The Committee voted the bill favorably and ordered a second committee substitute. |
| April 22, 2001 | The bill analysis for Committee Substitute for Committee Substitute for Senate Bill ("CS/CS/SB 1374") provided that the bill appropriated $2 million to the Department of State for an online voter registration database. The FACC estimated the cost to be $1,903,422 for implementation. (See Exhibit C, Book 2, Tab 16, pages 24-25). |
| April 26, 2001: | The full Florida Senate heard CS/SB 1118 on second reading on the floor. (See Exhibit C, Book 1, Tab 2, page 480). The sum and substance of CS/CS/SB 1374, including the statewide voter registration database sections, are adopted in a strike-all amendment to CS/SB 1118. (See Exhibit C, Book 1, Tab 2, pages 480-504). These particular sections regarding the voter registration database can be found at sections 98-100 on page 503. This amendment does contain a $2 million appropriation for the implementation of the database. The bill rolled to third reading. |
| April 27, 2001: | The Florida Senate passed CS/SB 1118, including the statewide voter registration database sections, and was immediately certified to the House. (See Exhibit C, Book 1, Tab 3, page 556). |
| April 27, 2001: | The Florida House of Representatives amended CS/SB 1118 with the substance of its election package. (See Exhibit C, Book 1, Tab 3B, pages 1347-1369). |

<u>Conference Committee</u>

|  |  |
|---|---|
| April 27, 2001: | The Florida House of Representatives amended CS/SB 1118 to include the substance of the House election package. (See Exhibit C, Book 1, Tab 3B, pages 1347-1369). |
| April 30, 2001: | The Florida Senate refused to concur in the House amendment, and a conference committee was appointed to resolve these differences. (See Exhibit C, Book 1, Tab 4, page 618 and 639). |
| April 30, 2001: | The Conference Committee met and discussed the issues that they did not agree on including the Voter Registration Database. The positions varied in that the House wanted the eligibility determination to be on a local level, limited copying of information and progress reports; and the Senate had a limitation on who the Department of State could contract with. (See also Exhibit C, Book 1, Tab 7A, page 6 – outlines the comparison between the two positions). The position taken was a mixture of the two positions. The House accepted the limitation on who the Department of State could contract with and the Senate accepted the progress reports, copying and local level eligibility determinations. |
| May 3, 2001: | The Conference Committee issued its final report, including the Statewide |

Mr. Joseph D. Rich
Page 23

(d.)      Please see Exhibit A, Book 1 and 2, for public testimony at the Governor's Task Force
meetings.  In addition, Exhibits D and E contain public testimony at legislative meetings.

(e.)      Please see Exhibit A, Book 1, Tab 2, an interim report by the Senate Ethics and Elections
Committee, *Review of the Voting Irregularities of the 2000 Presidential Election.*  Please see
Exhibit A, Book 1, Tab 1, final report of the Governor's Select Task Force on Election Procedures,
Standards and Technology.

4.        Please see "Section 35" 4.

5.

| | 98.0975 | 98.0977 |
|---|---|---|
| 5a | The statewide voter registration database shall be a statewide, centrally maintained database containing the voter registration information of all counties in this state. s. 98.097(1), F.S. | The statewide voter registration database will contain voter registration information for all registered voters in the State of Florida.  Name, date of birth, race or ethnicity, sex, last four digits of social security number, and address. |
| 5b | The entity contracted by the division shall compare information in the central voter file with available information in other computer databases, including, without limitation, databases containing reliable criminal records and records of deceased persons.  The supervisor, after receiving the list from the Division, shall attempt to verify the information provided. | Florida Department of Law Enforcement, Board of Executive Clemency, Office of Vital Statistics, and other relevant sources.  The supervisor of elections must perform their duties for list maintenance. |
| 5c | Supervisors make the determination. | Supervisor of elections makes the determination. |
| 5d | The supervisor must attempt to verify the information provided. | If the supervisor of elections finds information that suggests that a voter is ineligible to register to vote, the supervisor shall notify the voter.  This starts the inquiry process in which the voter will have opportunity to respond. |
| 5e | If the supervisor does not determine that the information provided by the division is incorrect, the supervisor must remove the name of any person who is deceased, convicted of a felony, or adjudicated mentally incompetent. | The statute only provides that after reviewing the information requested by the supervisor of elections and provided by the voter, if the supervisor of elections determines that the voter is not eligible to vote under the laws of the state, the supervisor of elections shall notify the voter.  This is basically a |
| 5f | N/A* | The supervisor of elections will make this determination based on all available information. |

Mr. Joseph D. Rich
Page 25

## INDEX TO EXHIBITS

The following is a brief outline of the exhibits used to respond to the letter of August 17, 2001. This will provide a road map to the pertinent information. The exhibits are referenced in the response as follows: Exhibit #, Book #, Tab #, and page # (if applicable). The tape indexes are in chronological order and note the tape counter at the point the database, provisional ballots or the voter's bill of rights is discussed.

Exhibit A
Book 1:
        Tab 1:      Governor's Select Task Force on Election Procedures, Standards and Technology
        Tab 2:      Senate Committee on Ethics and Elections Report – *Review of Voting Irregularities of the 2000 Presidential Election*
        Tab 3:      Public notices regarding legislative meetings
        Tab 4:      Public notices regarding Governor's Task Force Meetings

Book 2:      Transcripts of the Governor's Task Force Meetings
        Tab 1: January 8, 2001    Morning session , Tallahassee
        Tab 2: January 8, 2001    Afternoon session, Tallahassee
        Tab 3: January 9, 2001    Part 1, Tallahassee
        Tab 4: January 9, 2001    Part 2, Tallahassee
        Tab 5: February 26, 2001  Final (Teleconferenced) Meeting

Book 3:      Transcripts of the Governor's Task Force Meetings
        Tab 1: January 23, 2001  Orlando
        Tab 2: February 1, 2001   Davie
        Tab 3: February 6, 2001   Jacksonville

Exhibit B    House of Representatives
        Information related to House Bill 1925

Exhibit C    Florida Senate
Book 1:      Information related to Senate Bill 1118
Book 2:      Information related to Senate Bill 1374 and Senate Bill 2098

Exhibit D    Tapes of House Meetings and Floor debate
        Tape 1: March 28, 2001 Rules, Ethics and Elections Committee Meeting
        Side A:      Database         Begins: 387  Ends: 462
                      Provisional Ballots  Begins: 463  Ends: 466
        Side B:      Database         Begins: 45  Ends: 54
                      Database        Begins: 502  Ends: 564
        Tape 2:  April 2, 2001 Rules, Ethics and Elections Committee Meeting
        Side A:      Database         Begins: 51  Ends: 112
                      Provisional Ballots  Begins: 419  Ends: 452
        Tape 3: April 19, 2001 Procedural and Redistricting Council Meeting
        Side A:      Database         Begins: 31  Ends: 50
        Side B:      Provisional Ballots  Begins: 383  Ends: 386
                      Database        Begins: 427  Ends: 429
        Tape 4: April 19, 2001 Procedural and Redistricting Council Meeting
        Side A:      Provisional Ballots  Begins: 438  Ends: 549
        Tape 5: April 24, 2001 House Floor

# Section I
## Notices of Development of Proposed Rules and Negotiated Rulemaking

**DEPARTMENT OF STATE**

**Division of Elections**

| RULE TITLES: | RULE NOS.: |
|---|---|
| Clear Indication of Voter's Choice on a Ballot | 1S-2.027 |
| State Write-in Ballot | 1S-2.028 |
| Eligibility for Late Registration by Overseas Citizens | 1S-2.029 |
| Electronic Transmission of Absentee Ballots | 1S-2.030 |
| Recount Procedures | 1S-2.031 |
| Uniform Primary and General Election Ballot | 1S-2.032 |
| Standards for Nonpartisan Voter Education | 1S-2.033 |
| Polling Place Procedures Manual | 1S-2.034 |

PURPOSE AND EFFECT: To establish standards for the topic titles shown above, in compliance with the requirements of Chapter 2001-40, Laws of Florida, the "Florida Election Reform Act of 2001".

SUBJECT AREA TO BE ADDRESSED: Procedural requirements and standards for implementation of the provisions of Chapter 2001-40, Laws of Florida.

SPECIFIC AUTHORITY: 97.0555, 98.255(1), 101.151(8), 101.6951, 101.697, 102.014(5), 102.166(3),(5)(b),(6)(c) FS. (as amended by Chapter 2001-40, Laws of Florida), 101.015 FS.

LAW IMPLEMENTED: 97.0555, 98.255(1), 101.151(8), 101.6951, 101.697, 102.014(5), 102.166(3),(5)(b),(6)(c) FS. (as amended by Chapter 2001-40, Laws of Florida)

IF REQUESTED IN WRITING AND NOT DEEMED UNNECESSARY BY THE AGENCY HEAD, RULE DEVELOPMENT WORKSHOP WILL BE HELD AT THE TIME, DATE AND PLACE SHOWN BELOW:

TIME AND DATE: 1:30 p.m., June 7, 2001

PLACE: Saddlebrook Resort – Tampa, 5700 Saddlebrook Way, Wesley Chapel, Florida 33543-4499

THE PERSON TO BE CONTACTED REGARDING THE PROPOSED RULE DEVELOPMENT IS: Paul Craft, Division of Elections, (850)921-4110

THE PRELIMINARY TEXT OF THE PROPOSED RULE DEVELOPMENT IS NOT AVAILABLE.

**DEPARTMENT OF LAW ENFORCEMENT**

**Office of Inspector General**

| RULE CHAPTER TITLE: | RULE CHAPTER NO.: |
|---|---|
| Violent Crime Emergency Account | 11N-1 |
| RULE TITLES: | RULE NOS.: |
| Purpose | 11N-1.001 |
| Criteria | 11N-1.002 |
| Limitations | 11N-1.003 |
| Procedures for Emergency Funding | 11N-1.004 |
| Procedures for Formal Funding Requests | 11N-1.005 |
| Contributions | 11N-1.006 |
| Annual Audit | 11N-1.007 |

PURPOSE AND EFFECT: To review and update Chapter 11N pursuant to legislative amendments to s. 943.031 and 943.042, F.S., to allow funding for illicit money laundering investigative efforts or task force efforts to contribute to achieving the state's goal of reducing drug-related crime.

SUBJECT AREA TO BE ADDRESSED: The Violent Crime Council's funding for multiagency or statewide drug control or illicit money laundering investigative efforts or task force efforts.

SPECIFIC AUTHORITY: 943.03(4), 943.042 FS.

LAW IMPLEMENTED: 943.031, 943.042 FS.

IF REQUESTED IN WRITING AND NOT DEEMED UNNECESSARY BY THE AGENCY HEAD, A RULE DEVELOPMENT WORKSHOP WILL BE HELD AT THE TIME, DATE AND PLACE SHOWN BELOW:

TIME AND DATE: 8:30 a.m., Monday, June 11, 2001

PLACE: Embassy Suites Orlando Downtown, San Juan Rooms 2 & 3, 191 E. Pine Street, Orlando, Florida 32801

NOTICE UNDER THE AMERICANS WITH DISABILITIES ACT: Persons needing an accommodation to participate in any proceeding should call (850)410-7900 (Voice) or (850)656-9597 (TDD), at least five working days before such proceeding.

THE PERSON TO BE CONTACTED REGARDING THE PROPOSED RULE DEVELOPMENT AND A COPY OF THE PRELIMINARY DRAFT, IF AVAILABLE, IS: Joyce Gainous-Harris, Florida Department of Law Enforcement, 2331 Phillips Road, Tallahassee, Florida 32308

THE PRELIMINARY TEXT OF THE PROPOSED RULE DEVELOPMENT IS NOT AVAILABLE.

**EXHIBIT**

*D*

# OPINION

**6A** TIMES ■ FRIDAY, OCTOBER 19, 2001 • • • •

## :DITORIALS

# A vote of confidence

### Proposed rules for handling flawed ballots and conducting recounts would help to restore confidence in Florida's flawed election system.

The Florida Division of Elections has pro->osed new rules for determining voter intent >n flawed ballots and for conducting recounts ifter a close election. The new rules would >rovide common-sense solutions for the kinds >f problems that turned the 2000 presidential >ote tally into a circus, and they should go a .ong way toward protecting the right of Florid-ans to a fair and accurate vote count.

Punch card voting machines have been >utlawed in Florida, and counties must choose between optical scanners and elec-tronic machines for future elections. Nearly all of the rules involving voter intent relate to errors that could happen with optical scan-ners, which require voters to mark their bal-lots by hand by filling in a designated space next to a candidate's name. In every election, a small percentage of voters don't follow the rules. Either through confusion or misunder-standing, they select candidates in a variety of ways, often by circling or underlining the can-didate's name or by marking the appropriate space but failing to fill it in properly.

While those votes will not be valid in ma-chine counts, the voter's intent should be con-sidered in hand recounts as long as the choice is clear. That was often difficult with punch cards, with their hanging, dimpled and preg-nant chads. The proposed rules are specific and cover the common mistakes found on hand-marked ballots.

A new law passed in the last legislative ses-sion also makes it clear when recounts must take place. Machine recounts are required when the winning vote total is within .5-per-cent of the next candidate's numbers, and

hand recounts of overvotes and undervotes are required when the difference is .25-per-cent or less.

The proposed rules for recount proce-dures also should be welcomed by Florida vot-ers. There were no uniform procedures in 2000, so county canvassing boards had to wing it. Many voters will remember the havoc as canvassing boards sat haggling over votes while vocal interest groups tried to influence the outcome. That shouldn't happen in the fu-ture.

Canvassing boards will be given specific procedural steps to take in recounts, which will protect the right of candidates and the public to observe the proceedings. In the event of a disturbance, however, they will be told to stop the recount until order is restored. If these rules had been in place in 2000, Florid-ians would have had much more confidence in the outcome.

There's a reason the proposed rules are thorough and practical: Division of Elections Director Clay Roberts sought the advice of the state's supervisors of elections before writing the rules. Although Secretary of State Kather-ine Harris wasn't actively involved in the pro-cess, she did approve the rules. Harris has been correctly criticized in the past for ne-glecting her election duties, but she should get credit for addressing many of the prob-lems.

Public hearings on the proposed rules will be held before they become law, and they may need some minor tweaking. But the state elec-tions office has made a good start toward bringing order to last year's election chaos.

# $120-million can be a big help

House Speaker Tom Feeney offers two ex-cuses for refusing to delay the intangibles tax cut he pushed through last session: Such a de-lay would be bad for the economy, and the money it would save — about $120-million — is minuscule compared to what's needed to

What exactly could Feeney's $120-million tax cut buy for Florida? That "drop in the bucket" could buy medical services for 38,000 needy adults ($98-million), plus prescription drugs for another 30,000 low-income seniors ($30-million). It could buy dentures, eye-glasses or hearing aides for 42,000 elderly or

■ **Don Wright**

WE DON'T
STINKING



## COLUMNS

# States nee

■ **E.J. Dionne Jr.**

AKRON, Ohio — While states are burning.

One state government afte exactly what you *don't* want go of recession: cutting spending same time.

Because of the bad econo executive director of the Nati tion, "state revenues are falling tale was told this week in C Robert Taft when he laid out I deficit of just under $1.5-billion

Taft has proposed, among in budget cuts and $465-milli use the more palatable term 1 staff, "loophole closings"). N low Republicans in the Legisl proposals.

Taft has a lot of compan governors who find themselv some of President Bush's be name just three, John Eng Pataki in New York and J president's brother.

The fiscal crisis of the sta

## **AFFIDAVIT**

STATE OF FLORIDA
COUNTY OF_____Leon_____

BEFORE ME, the undersigned authority, this day personally appeared SANDRA C.

LAMBERT, who, being by me first duly sworn, states:

1. That she is the Director of the Division of Driver Licenses, Department of Highway

Safety and Motor Vehicles.

2. That the documents are true and accurate to the best of her knowledge. These

documents attest to the policies, procedures and training for "motor voter" process. These

documents were presented to the US Commission on Civil Rights.


FURTHER AFFIANT SAYETH NOT.

_____
AFFIANT

Sworn to and subscribed before me
this 12 day of OCTOBER 0 01 , by SANDRA C. LAMBERT WHO IS PERSONALLY KNOWN to ME.

_____
NOTARY PUBLIC, State of Florida at Large
Printed name of Notary:
Commission #:
Commission Expires:

PAMELA L. DE CAMBH
MY COMMISSION # CC 70622.2
EXPIRES: January 1, 2002
Bonded Thru Notary Public Underwriters



EXHIBIT
Co n P.
E

# UNITED STATES COMMISSION ON CIVIL RIGHTS HEARING ON ALLEGATIONS OF ELECTION DAY IRREGULARITIES IN FLORIDA

# MIAMI, FLORIDA

# FEBRUARY 16, 2001

1. Any and all documents and communications describing how your office implemented or coordinated the implementation of the investigations of allegations of people who allege they registered to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993 and were not on the voter files/rolls for the November 7, 2000 election.

**RESPONSE**

A spreadsheet is included in which complaints are summarized providing description of complaints, review findings and resolutions.  No other responsive documents exist.

2. Any and all documents and communications regarding the training of examiners, as well as any other Division of Driver Licenses employee, to register any Floridian to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993.

**RESPONSE**

All initial training information was developed by the Division of Elections and is not available from DHSMV.  Motor Voter program training information used for new employee and in-service refresher training is included in the submission of responsive documents.

3. Any and all training or instructions provided to Floridians regarding the Division of Driver Licenses involvement with voter registration through the Motor Voter program in compliance with the National Voter Registration Act of 1993.

**RESPONSE**

The voter registration poster which is displayed in driver licensing locations and voter registering information available on the Department of Highway Safety and Motor Vehicles internet site is included in the submission of responsive documents.

4. Samples of the application completed by a Division of Driver Licenses examiner to register any Floridian to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993 are included in the submission of responsive documents.

**RESPONSE**

A sample voter registration application generated by the driver license automated application process is included.

5. Any and all "end of the day" motor voter reports from October 1, 1999 through October 31, 2000.

**RESPONSE**

The local driver licensing office forwarded all "end of day" motor voter reports to the appropriate Supervisor of Elections. It was the department's legal interpretation that s. 97.057(4), F.S. prohibits the department from retaining a copy of the "end of day" records. The department's legal staff has revisited this interpretation and advised the division to retain a copy of all "end of day" motor voter reports.

6. Any and all documents and communications reflecting allegations of people alleging they registered to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993 and were not on the voter files/rolls for the November 7, 2000 elections.

**RESPONSE**

A summary of allegations with the complaint and department responses is included.

7. Any and all documents and communications reflecting the standards for investigating allegations of people who allege they registered to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993 and were not on the voter files/rolls for the November 7, 2000 elections.

**RESPONSE**

The department policy and procedures for resolving consumer complaints is included.

8.  Any and all documents and communications regarding the training of Division of Driver Licenses staff on the methodology of investigating allegations of people who allege they registered to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993 and were not on the voting files/rolls for the November 7, 2000 elections.

**RESPONSE**

Please see responsive documents provided for request number 7.

9.  Any and all documents and communications regarding the results of any investigation of allegations of people who allege they registered to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993 and were not on the voting files/rolls for the November 7, 2000 elections.

**RESPONSE**

Please see responsive documents provided for request number 1.

10. Any and all documents and communications regarding the number and categorizations of complaints by type of allegation and/or or type of complaint for the November 7, 2000 election.

**RESPONSE**

Please see responsive documents provided for request number 1.

11. Any and all documents and communications comparing the number and categorizations of complaints by type of allegation and/or type of complainant in other elections.

**RESPONSE**

Please see responsive documents provided for request number 1.

12. Any and all documents and communications describing the standards for approving the voting systems used to record and tabulate votes.

**RESPONSE**

No responsive information or documents exist or were in existence prior to your request. This question is best answered by the individual Supervisors of Elections. It is not within DHSMV purview.



**UNITED STATES COMMISSION ON CIVIL RIGHTS
HEARING ON ALLEGATIONS OF ELECTION- DAY
IRREGULARITIES IN FLORIDA**
624 Ninth Street, N.W.
Washington, D.C. 20425

RECEIVED
FEB 0 9 2001
By_____

## ACKNOWLEDGEMENT OF SUBPOENA

I, Kathy Jimenez, as Legal Counsel for the Florida Department of Highway Safety and
Motor Vehicles, am authorized to and do hereby accept service of the subpoena for
Sandra Lambert, Director, Division of Driver Licenses, to appear before the U.S.
Commission on Civil Rights in Miami, Florida on February 16, 2001 at 12:30 p.m.

_____

Kathy Jimenez
Legal Counsel
Florida Department of Highway Safety & Motor Vehicles

RECEIVED

FEB 0 9 2001

Dept. of Highway Safety & Motor Vehicles
Office of General Counsel

*UNITED STATES OF AMERICA*

*COMMISSION ON CIVIL RIGHTS*

*SUBPOENA*

RECEIVED
UNITED STATES MARSHAL

2001 FEB -9  AM 10: 04

SOUTHERN DISTRICT OF
FLORIDA
WARRANTS

RECEIVED

FEB 0 9 2001

Dept. of Highway Safety & Motor Vehicles
Office of General Counsel

To      *Sandra Lambert, Director, Division of Driver Licenses*

at      *Florida Department of Highway Safety & Motor Vehicles, Miami Legal Office, 2515 West Flagler Street; Miami, FL (305) 643-7596*

*PURSUANT to the authority of Public Law 103-419, 108 Stat. 4338, and Notice of Hearing having been duly published in the Federal Register on December 13, 2000, at 65 F.R. 77850, a copy of which is attached hereto,*

*YOU ARE HEREBY COMMANDED to be and appear before the United States Commission on Civil Rights, or a duly appointed Subcommittee thereof, at a Hearing for the attendance and testimony of witnesses on February 16, 2001, at 1:15 p.m. , at the Wynhdham Miami Biscayne Bay Hotel, 1601 Biscayne Boulevard, Miami, FL 33132, then and there to testify with respect to what you may know relative to a matter of inquiry committed by law to the consideration of said Commission, and not to depart without leave of said Commission, and*

*DUCES TECUM*                    ,

*YOU ARE HEREBY COMMANDED FURTHER to bring with you and produce before said Commission, or a duly authorized Subcommittee thereof, the following:*

*See Attached Exhibit "A"*

*HEREOF FAIL NOT, as you will answer your default under the pains and penalties in such cases provided for in Section 3(e)(2) of Public Law 103-419, 108 Stat. 4338, as amended, of the Civil Rights Commission Amendments Act of 1994, reproduced herein.*

*PURSUANT to the Rules on Hearings of the United States Commission on Civil Rights, a copy of which is attached hereto, an office has been established at: 624 Ninth Street, N.W. Room 620, Washington, DC 20425, (202) 376-8351, for return of subpoenas. [For communications to the Commission with respect to the Hearing and this subpoena, contact Edward A. Hailes, Jr., General Counsel, at the Office of the General Counsel].*

*Issued by the United States Commission on Civil Rights, and*

*Given under my hand this the 6th day of February 2001.*

*Mary Frances Berry*
*Chairperson*

CCR-1017
(May 1999)

### Exhibit "A"
## SUBPOENA DUCES TECUM

In accordance with the Subpoena Duces Tecum you are commanded to produce the following documents and in producing the requirement information you are to use the following instructions and definitions

## INSTRUCTIONS AND DEFINITIONS

The definitions and instructions included in the United States Commission on Civil Rights' **Subpoena Duces Tecum,** served contemporaneously herewith, are incorporated herein by reference.

1. The pronoun "you" refers to **Director, Division of Drivers Licenses, Department of Highway Safety and Motor Vehicles** and your agents, subordinate employees, representatives, and unless privileged, attorneys.

2. The United States Commission on Civil Rights shall be referred to as either the Agency or U.S. Commission on Civil Rights.

3. The word "document (referred to in this Exhibit in all cases as "documents") or words of like or similar import means:
   A. correspondence;
   B. memoranda;
   C. data;
   D. telexes;
   E. letters;
   F. books;
   G. charts;
   H. diagrams;
   I. still photographs;
   J. moving pictures;
   K. tapes;
   L. records;
   M. graphs;
   N. index cards;
   O. inventories;
   P. handwritten notes;
   Q. agreements;
   R. jottings;
   S. scribblings;
   T. other writings;
   U. printed material;
   V. pamphlets;

W. cables;

X. telegrams;

Y. calendars;

Z. diary entries;

AA. studies;

BB. working papers;

CC. tabulations;

DD. data sheets;

EE. reports;

FF. index catalogues;

GG. typewritten notes;

HH. printed notes;

II. contracts;

JJ. memoranda of understanding;

KK. computer printouts;

LL. electronic mail;

MM. Any and every means by which information is recorded and/or transmitted, including, but not limited to, any recorded, transcribed, punched, computerized, filmed, and/or graphic matter, however produced and/or reproduced;

NN. File folders containing such data, the precise order in which such items are contained in the file folder and all wording on each such file folder; and

OO. Computer terminals or systems containing such information or items.

4. The word "person" means any natural person and/or any corporation, partnership, association, joint venture, limited partnerships, committee, any government and/or governmental body, commission, board, and/or agencies and/or other business association and/or entity, including both the singular and the plural.

5. The term "communication" means any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversations, dialogues, discussions, interview, consultations, agreements, and other understandings between or among two or more persons.

6. If any document responsive to this request was, but is no longer, in your possession, custody or control, please furnish a description of each such document and indicate the manner and circumstances under which it left your possession, custody, and control and state its present location and custodian, if known.

7. If for any request there are no responsive documents in your possession, custody, or control, state whether documents that would have been responsive were destroyed or mislaid, and if so, the circumstances under which they were destroyed or mislaid.

8. For any document response to any request for production but withheld pursuant to a claim of privilege, identify:

a. the author's name and title or position;
b. the recipient's name and title or position;
c. all persons receiving copies of the document;
d. the number of pages of the document;
e. the date of the document;
f. the subject matter of the document; and the basis for the claimed privilege.

9. These requests are continuing and responses to document requests are to be supplemented when you receive subsequent or additional information, either directly or indirectly.

10. Unless specified, all requests are for information and documents in place prior to and applicable to the November 7, 2000 election.

## SUBPOENA DUCES TECUM REQUESTS

You are required to produce the following:

1. Any and all documents and communications describing how your office implemented or coordinated the implementation of the investigations of allegations of people who allege they registered to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993 and were not on the voter files/rolls for the November 7, 2000 election.

2. Any and all documents and communications regarding the training of examiners, as well as any other Division of Drivers Licenses employee, to register any Floridian to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993.

3. Any and all training or instructions provided to Floridians regarding the Division of Drivers Licenses involvement with voter registration through the Motor Voter program in compliance with the National Voter Registration Act of 1993.

4. Samples of the application completed by a Division of Drivers Licenses examiner to register any Floridian to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993.

5. Any and all "end of the day" motor voter reports from October 1, 1999 through October 31, 2000.

6. Any and all documents and communications reflecting allegations of people who allege they registered to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993 and were not on the voter files/rolls for the November 7, 2000 elections.

7. Any and all documents and communications reflecting the standards for investigating allegations of people who allege they registered to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993 and were not on the voter files/rolls for the November 7, 2000 elections.

8. Any and all documents and communications regarding the training of Division of Drivers Licenses staff on the methodology of investigating allegations of people who allege they registered to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993 and were not on the voting files/rolls for the November 7, 2000 elections.

9. Any and all documents and communications regarding the results of any investigation of allegations of people who allege they registered to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993 and were not on the voting files/rolls for the November 7, 2000 elections.

10. Any and all documents and communications regarding the number and categorizations of complaints by type of allegation and/or type of complainant for the November 7, 2000 election.

11. Any and all documents and communications comparing the number and categorizations of complaints by type of allegation and/or type of complainant in other elections.

12. Any and all documents and communications describing the standards for approving the voting systems used to record and tabulate votes.

13. Any and all documents and communications between the Division of Drivers License and the Governor of Florida, Florida Secretary of State, Florida Director of Division of Elections, Florida Attorney General and/or any and all county Supervisors of Elections regarding the Division of Drivers Licenses involvement with voter registration through the Motor Voter program in compliance with the National Voter Registration Act of 1993.

14. Any and all documents and communications explaining the process by which a Floridian registers to vote through a Division of Drivers Licenses office.

15. Any and all documents and communications reflection the number of voter registration applications submitted at each State of Florida Drivers License Office in compliance with the National Voter Registration Act of 1993 from October 1, 1999 through October 31, 2000.

16. Any and all documents and communications describing the process by which the Division of Drivers Licenses insures that voter registration forms are properly received by the local Supervisor of Elections office.

ACTION: Notice of Membership.

SUMMARY: This Notice is issued to announce the membership of the Broadcasting Board of Governors (BBG) Performance Review Board.

DATES: Upon publication.

FOR FURTHER INFORMATION CONTACT: Ms. Linda C. Beard (Executive Secretary), Office of Personnel, Broadcasting Board of Governors, 330 Independence Avenue SW, Washington, DC 20237, Telephone: (202) 619–1523.

SUPPLEMENTARY INFORMATION: In accordance with sections 4314(c) (1) through (5) of the Civil Service Reform Act of 1978 (Pub. L. 95454), the following is a list of members of the 2000 Performance Review Board for the Broadcasting Board of Governors.

*Chairperson:* Director for International Broadcasting Bureau, Brian Conniff (Acting). Panel 1— International Broadcasting Bureau SES Members.

*Chairperson:* Chief of Staff for the Broadcasting Board of Governors, Josiah H. Beeman. Panel 2: Broadcasting Board of Governors SES Members Career SES Members.

Patricia Popovich, Deputy Chief, Information Officer For Management, Information Resources Management Bureau, Department of State.

Mike Blank, Executive Officer for the Immediate Office of the Secretary for Health and Human Services.

Alternate Career SES Members, Stephen Smith, Associate Director for Management, International Broadcasting Bureau, Broadcasting Board of Governors.

Dated: December 7, 2000.

John S. Welch,

*Director, Office of Personnel.*

[FR Doc. 00–31746 Filed 12–12–00; 8:45 am]

BILLING CODE 8610-01-P

## COMMISSION ON CIVIL RIGHTS

### Hearing on Allegations of Voting Irregularities in the Presidential Election on November 7, 2000

AGENCY: Commission on Civil Rights.

ACTION: Notice of hearings.

SUMMARY: Notice is hereby given pursuant to the provisions of the Civil Rights Commission Amendments Act of 1994, Section 3. Public Law 103–419, 108 Stat. 4338, as amended, and 45 CFR 702.3., that public hearings before the U.S. Commission on Civil Rights will commence on Thursday, January 11. 2001, beginning at 9:00 a.m., in the morning in Tallahassee, FL, and on

subsequent days in Miami, FL, Jacksonville, FL, and Tampa, FL. The purpose of these hearings is to collect information within the jurisdiction of the Commission, under Public Law 98–183, Section 5(a)(1) and Section 5(a)(5), related particularly to allegations that eligible persons in Florida were denied the right to vote or to have their votes properly counted in the election of the Presidential electors on November 7, 2000.

The Commission is authorized to hold hearings and to issue subpoenas for the production of documents and the attendance of witnesses pursuant to 45 CFR 701.2. The Commission is an independent bipartisan, fact finding agency authorized to study, collect, and disseminate information, and to appraise the laws and policies of the Federal Government, and to study and collect information with respect to discrimination or denials of equal protection of the laws under the Constitution because of race, color, religion, sex, age, disability, or national origin, or in the administration of justice. The Commission has broad authority to investigate allegations of voting irregularities even when alleged abuses do not involve discrimination.

Hearing impaired persons who will attend the hearings and require the services of a sign language interpreter, should contact Pamela Dunston, Administrative Services and Clearinghouse Division at (202) 376–8105 (TDD (202) 376–8116), at least five (5) working days before the scheduled date of the hearings.

FOR FURTHER INFORMATION CONTACT: Les Jin, Office of the Staff Director (202) 376–7700.

Dated: December 11, 2000.

Edward A. Hailes, Jr.,

*Acting General Counsel.*

[FR Doc. 00–31904 Filed 12–11–00. 2:52 pm]

BILLING CODE 6335-01-M

## DEPARTMENT OF COMMERCE

### Foreign-Trade Zones Board

[Docket 68–2000]

### Foreign-Trade Zone 64—Jacksonville, FL; Application for Subzone Status; Atlantic Marine, Inc. (Shipbuilding and Repair)

An application has been submitted to the Foreign-Trade Zones Board (the Board) by the Jacksonville Port Authority, grantee of FTZ 64, requesting special-purpose subzone status for the shipbuilding facility of Atlantic Marine, Inc. (AMI), in Jacksonville, Florida. The

application was submitted pursuant to the provisions of the Foreign-Trade Zones Act, as amended (19 U.S.C. 81a–81u), and the regulations of the Board (15 CFR Part 400). It was formally filed on December 5, 2000.

The AMI shipyard (81 acres, 275,000 sq. ft.) is located along the St. Johns River at 8500 Heckscher Drive in Jacksonville. The facility is used for the construction, repair, and conversion of commercial vessels for domestic and international customers. The application indicates that all steel mill products are sourced domestically. Foreign components that may be used at the AMI shipyard (up to 12% of vessel value) include propulsion units, engines and control systems, pumps, air-conditioning systems, hydraulic parts, fire doors, pipes, solenoids, valves, multimeters, gaskets, washers, signaling equipment, davits and lifeboats, electric motors, articles of rubber and chrome, navigation and electronic equipment, propellers, anchors, deck cranes, plumbing fixtures, lighting equipment, carpet, furniture, wall and ceiling panels, and table and kitchen ware (2000 duty rate range: free—29%, *ad valorem*).

FTZ procedures would exempt AMI from Customs duty payments on the foreign components (except steel mill products) used in export activity. On its domestic sales, the company would be able to choose the duty rate that applies to finished oceangoing vessels (duty free) for the foreign-origin components noted above. The manufacturing activity conducted under FTZ procedures would be subject to the "standard shipyard restriction" applicable to foreign-origin steel mill products (e.g., angles, pipe, plate), which requires that Customs duties be paid on such items. The application indicates that the savings from FTZ procedures would help improve the facility's international competitiveness.

In accordance with the Board's regulations, a member of the FTZ Staff has been designated examiner to investigate the application and report to the Board.

Public comment on the application is invited from interested parties. Submissions (original and three copies) shall be addressed to the Board's Executive Secretary at the address below. The closing period for their receipt is February 12, 2001. Rebuttal comments in response to material submitted during the foregoing period may be submitted during the subsequent 15-day period (to February 26, 2001).

A copy of the application will be available for public inspection at the following locations:



Code of Federal Regulations

# 45

**Part 500 to 1199**
Revised as of October 1, 2000

## Public Welfare

Illinois, Indiana, Michigan, Minnesota, Ohio, and Wisconsin

Region VI: Southwestern Regional Office, Heritage Plaza, 418 South Main, First Floor, San Antonio, Texas 78204, (512) 229-5570

Arkansas, Louisiana, Oklahoma, Texas, and New Mexico

Region VII: Central States Regional Office, 911 Walnut Street, Room 3103, Kansas City, Missouri 64106, (816) 374-5253

Iowa, Kansas, Missouri, and Nebraska

Region VIII: Rocky Mountain Regional Office, The Executive Tower Building, 1405 Curtis Street, Suite 2956, Denver, Colorado 80202, (303) 844-2211

Colorado, Montana, North Dakota, South Dakota, Utah, and Wyoming

Region IX: Western Regional Office, 3660 Wilshire Boulevard, Suite 810, Los Angeles, California 90010, (213) 688-3437

Arizona, California, Hawaii, and Nevada.

Region X: Northwestern Regional Office, 915 Second Avenue, Room 2854, Seattle, Washington 98174, (206) 442-1248

Alaska, Idaho, Oregon, and Washington.

## PART 702—RULES ON HEARINGS, REPORTS AND MEETINGS OF THE COMMISSION

### Subpart A—Hearings and Reports

Sec.
702.1   Definitions.
702.2   Authorization for hearing.
702.3   Notice of hearing.
702.4   Subpoena.
702.5   Conduct of proceedings.
702.6   Executive session.
702.7   Counsel.
702.8   Evidence at Commission proceedings.
702.9   Cross-examination at public session.
702.10  Voluntary witnesses at public session of a hearing.
702.11  Special executive session.
702.12  Contempt of the Commission.
702.13  Intimidation of witnesses.
702.14  Transcript of Commission proceedings.
702.15  Witness fees.
702.16  Attendance of news media at public sessions.
702.17  Communications with respect to Commission proceedings.
702.18  Commission reports.

### Subpart B—Meetings

702.50  Purpose and scope.
702.51  Definitions.
702.52  Open meeting requirements.
702.53  Closed meetings.
702.54  Closed meeting procedures.
702.55  Public announcement of meetings.
702.56  Records.
702.57  Administrative review.

## Subpart A—Hearings and Reports

AUTHORITY: Secs. 101-106, 71 Stat. 634-636, as amended; 42 U.S.C. 1975-1975e; Pub. L. 94-409, 90 Stat. 1241.

SOURCE: 32 FR 4061, Mar. 15, 1967, unless otherwise noted. Designated Subpart A as 42 FR 14108, Mar. 15, 1977.

### § 702.1  Definitions.

For purposes of the following Rules on Hearings of the United States Commission on Civil Rights, the following definitions shall apply, unless otherwise provided:

(a) *The Act* shall refer to the Civil Rights Act of 1957, 71 Stat. 634, as amended.

(b) *The Commission* shall refer to the United States Commission on Civil Rights or, as provided in § 702.2, to any authorized subcommittee thereof.

(c) *The Chairman* shall refer to the Chairman of the Commission or authorized subcommittee thereof or to any acting Chairman of the Commission or of such subcommittee.

(d) *Proceeding* shall refer collectively to any public session of the Commission and any executive session held in connection therewith.

(e) *Hearing* shall refer collectively to a public session of the Commission and any executive session held in connection therewith, but shall not include a session held for the sole purpose of receiving subpenaed documents.

(f) *The rules in this part* shall refer to the Rules on Hearings of the Commission.

(g) *Report* refers to statutory reports or portions thereof issued pursuant to Section 104(c) of the Civil Rights Act of 1957, as amended.

(h) *Verified answer* refers to an answer the truth of which is substantiated by oath or affirmation attested to by a notary public or other person who has legal authority to administer oaths.

[32 FR 4061, Mar. 15, 1967, as amended at 36 FR 5702, Mar. 27, 1971. Designated at 42 FR 14108, Mar. 15, 1977, and further amended at 44 FR 76149, Dec. 19, 1979]

Commission on Civil Rights

§ 702.6

### § 702.2 Authorization for hearing.

Under section 105(f) of the Act the Commission or, on the authorization of the Commission, any subcommittee of two or more members, at least one of whom shall be of each major political party, may, for the purpose of carrying out the provisions of the Act, hold such hearings and act at such times and places as the authorized subcommittee or such authorized subcommittee may deem advisable; and the holding of hearings by the Commission or the appointment of a subcommittee to hold hearings pursuant to this section must be approved by a majority of the Commission, or by a majority of the members present at a meeting at which at least a quorum of four members is present.

### § 702.3 Notice of hearing.

At least 30 days prior to the commencement of any hearing, the Commission shall cause to be published in the FEDERAL REGISTER notice of the date on which such hearing is to commence, the place at which it is to be held, and the subject of the hearing.

### § 702.4 Subpenas.

(a) Subpenas for the attendance and testimony of witnesses or the production of written or other matter may be issued by the Commission over the signature of the Chairman and may be served by any person designated by the Chairman.

(b) A witness compelled to appear before the Commission or required to produce written or other matter shall be served with a copy of the rules in this part at the time of service of the subpena.

(c) The Commission shall not issue any subpena for the attendance and testimony of witnesses or for the production of written or other matter which would require the presence of the party subpenaed at a place outside the State wherein the witness is found or resides or is domiciled or transacts business, or has appointed an agent for receipt of service of process except that, in any event, the Commission may issue subpenas for the attendance and testimony of witnesses and the production of written or other matter at a place within 50 miles of the place where the witness is found or resides or

is domiciled or transacts business or has appointed an agent for receipt of service of process.

(d) The Chairman shall receive and the Commission shall dispose of requests to subpena additional witnesses except as otherwise provided in § 702.6(e).

(e) Requests for subpena shall be in writing, supported by a showing of the general relevance and materiality of the evidence sought. Witness fees and mileage, computed pursuant to § 702.15, shall be paid by the person at whose instance a witness is subpenaed.

(f) Subpenas shall be issued at a reasonably sufficient time in advance of their scheduled return, in order to give subpenaed persons an opportunity to prepare for their appearance and to employ counsel, should they so desire.

(g) No subpenaed document or information contained therein shall be made public unless it is introduced into and received as part of the official record of the hearing.

[32 FR 4063, Mar. 15, 1967. Designated at 42 FR 1102, Mar. 15, 1977, and amended at 44 FR 75149, Dec. 19, 1979]

### § 702.6 Conduct of proceedings.

(a) The Chairman shall announce in an opening statement the subject of the proceeding.

(b) Following the opening statement, the Commission shall first convene in executive session if one is required pursuant to the provisions of § 702.6.

(c) The Chairman shall, subject to the approval of the Commission—

(1) Set the order of presentation of evidence and appearance of witnesses;

(2) Rule on objections and motions;

(3) Administer oaths and affirmations;

(4) Make all rulings with respect to the introduction into or exclusion from the record of documentary or other evidence;

(5) Regulate the course and decorum of the proceeding and the conduct of the parties and their counsel to insure that the proceedings are conducted in a fair and impartial manner.

(d) Proceedings shall be conducted with reasonable dispatch and due regard shall be had for the convenience and necessity of witnesses.

263

(e) The questioning of witnesses shall be conducted only by Members of the Commission, by authorized Commission staff personnel, or by counsel to the extent provided in § 702.7.

(f) In addition to persons served with a copy of the rules in this part pursuant to §§ 702.4 and 702.6, a copy of the rules in this part will be made available to all witnesses.

(g) The Chairman may punish breaches of order and decorum by censure and exclusion from the proceedings.

§ 702.6  Executive session.

(a) If the Commission determines that evidence or testimony at any hearing may tend to defame, degrade, or incriminate any person, it shall receive such evidence or testimony or summary of such evidence or testimony in executive session.

(b) The Commission shall afford any persons defamed, degraded, or incriminated by such evidence or testimony an opportunity to appear and be heard in executive session, with a reasonable number of additional witnesses requested by them, before deciding to use such evidence or testimony.

(1) Such person shall be served with notice in writing of the date, time, and place made available for the appearance of witnesses at executive session, at least 10 days prior to such date, or where service is by mail at least 14 days prior to such date. This notice shall be accompanied by a copy of the rules in this part and by a brief summary of the information which the Commission has determined may tend to defame, degrade, or incriminate such person.

(2) The notice, summary, and rules in this part shall be served personally by depositing the same in the United States mail as certified mail, or by leaving a copy thereof at the last known residence or business address of such person.

(3) The date of service, for purposes of this section, shall be the day when the material is deposited in the United States mail or is delivered in person, as the case may be. When service is made by certified mail, the return post office receipt shall be proof of service; in all other cases, the acknowledgment of the

party served, or the verified return of the one making service shall be proof of the same.

(c) If a person receiving notice under this section notifies the Commission within five days of service of such notice, or where service is by mail within eight days of service of such notice, that the time scheduled therein constitutes a hardship, the Commission may, in its discretion, set a new time for such person's appearance at the executive session.

(d) In the event such persons fail to appear at executive session at the time and place made available under paragraph (b) or (c) of this section, they shall not be entitled to another opportunity to appear at executive session, except as provided in § 702.11.

(e) If such persons intend to submit sworn statements of themselves or others, or if they intend that witnesses appear in their behalf at executive session, they shall, no later than 48 hours prior to the time set under paragraph (b) or (c) of this section, submit to the Commission, all such statements and a list of all witnesses. The Commission will inform such persons whether the number of witnesses requested is reasonable within the meaning of paragraph (b) of this section. In addition, the Commission will receive and dispose of requests from such persons to subpena other witnesses. Requests for subpenas shall be made sufficiently in advance of the scheduled executive session as to afford persons subpenaed reasonable notice of their obligation to appear at that session. Subpenas returnable at executive session shall be governed by the provisions of § 702.4.

(f) Persons for whom an executive session has been scheduled, and persons compelled to appear at such session, may be represented by counsel at such session to the extent provided by § 702.7.

(g) Attendance at executive session shall be limited to Members of the Commission, authorized Commission staff personnel, witnesses and their counsel at the time scheduled for their appearance, and such other persons whose presence is requested or consented to by the Commission.

(h) In the event the Commission determines to release or to use evidence

**Commission on Civil Rights**

§702.10

or testimony which it has determined may tend to defame, degrade, or incriminate any persons, in such a manner as to reveal publicly their identity, such evidence or testimony, prior to such public release or use, will be presented at a public session, and the Commission will afford them an opportunity to appear as voluntary witnesses or to file a sworn statement in their own behalf and to submit brief and pertinent sworn statements of others.

[32 FR 4063, Mar. 15, 1967. Designated at 42 FR 14108, Mar. 15, 1977, and amended at 44 FR 75150, Dec. 19, 1979]

**§702.7  Counsel.**

(a) Persons compelled to appear in person before the Commission and any witness appearing at a public session of the Commission will be accorded the right to be accompanied and advised by counsel, who will have the right to subject their clients to reasonable examination, and to make objections on the record and to argue briefly the basis for such objections.

(b) For the purpose of this section, counsel shall mean an attorney at law admitted to practice before the Supreme Court of the United States, or the highest court of any State or Territory of the United States.

(c) Failure of any persons to obtain counsel shall not excuse them from attendance in response to a subpena, nor shall any persons be excused in the event their counsel is excluded from the proceeding pursuant to §702.5(g). In the latter case, however, such persons shall be afforded a reasonable time to obtain other counsel, said time to be determined by the Commission.

[32 FR 4063, Mar. 15, 1967. Designated at 42 FR 14108, Mar. 15, 1977, and amended at 44 FR 75150, Dec. 19, 1979]

**§702.8  Evidence at Commission proceedings.**

(a) The rules of evidence prevailing in courts of law or equity shall not control proceedings of the Commission.

(b) Where a witness testifying at a public session of a hearing or a session for return of subpenaed documents offers the sworn statements of other persons, such statements, in the discretion of the Commission, may be in-

cluded in the record, provided they are received by the Commission within 24 hours in advance of the witness' appearance.

(c) The prepared statement of a witness testifying at a public session of a hearing, in the discretion of the Commission, may be placed into the record, provided that such statement is received by the Commission 24 hours in advance of the witness' appearance.

(d) In the discretion of the Commission, evidence may be included in the record after the close of a public session of a hearing, provided the Commission determines that such evidence does not tend to defame, degrade, or incriminate any person.

(e) The Commission will determine the pertinency of testimony and evidence adduced at its proceedings, and may refuse to include in the record or a proceeding or may strike from the record any evidence it considers to be cumulative, immaterial, or not pertinent.

[32 FR 4063, Mar. 15, 1967. Designated at 42 FR 14108, Mar. 15, 1977, and amended at 44 FR 75150, Dec. 19, 1979; 44 FR 75792, Dec. 22, 1979]

**§702.9  Cross-examination at public session.**

If the Commission determines that oral testimony of a witness at a public session tends to defame, degrade, or incriminate any person, such person, or through counsel, shall be permitted to submit questions to the Commission in writing, which, in the discretion of the Commission, may be put to such witness by the Chairman or by authorized Commission staff personnel.

[44 FR 75150, Dec. 19, 1979]

**§702.10  Voluntary witnesses at public session of a hearing.**

A person who has not been subpenaed and who has not been afforded an opportunity to appear pursuant to §702.6 may be permitted, in the discretion of the Commission, to make an oral or written statement at a public session of a hearing. Such person may be questioned to the same extent and in the same manner as other witnesses before the Commission.

265

§ 702.11                                    45 CFR Ch. VII (10-1-00 Edition)

### § 702.11  Special executive session.

If, during the course of a public session, evidence is submitted which was not previously presented at executive session and which the Commission determines may tend to defame, degrade, or incriminate any person, the provisions of § 702.6 shall apply, and such extensions, recesses or continuances of the public session as it deems necessary shall be ordered by the Commission, except that the time and notice requirements of § 702.6 may be modified by the Commission provided reasonable notice of a scheduled executive session is afforded such person, and except that the Commission may, in its discretion, strike such evidence from the record, in which case the provisions of § 702.6 shall not apply.

### § 702.12  Contempt of the Commission.

Proceedings and process of the Commission are governed by section 105(g) of the Act, which provides:

In case of contumacy or refusal to obey a subpena, any district court of the United States or the United States court of any territory or possession, or the District Court of the United States for the District of Columbia, within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or is domiciled or transacts business, or has appointed an agent for receipt of service of process, upon application by the Attorney General of the United States shall have jurisdiction to issue to such person an order requiring such person to appear before the Commission or a subcommittee thereof, there to produce pertinent, relevant and nonprivileged evidence if so ordered, or there to give testimony touching the matter under investigation; and any failure to obey such order of the court may be punished by said court as a contempt thereof.

### § 702.13  Intimidation of witnesses.

Witnesses at Commission proceedings are protected by the provisions of 18 U.S.C. 1505, which provide:

Whoever corruptly, or by threats of force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness in any proceeding pending before any department or agency of the United States, or in connection with any inquiry or investigation being had by either House, or any Committee of either House, or any joint committee of the Congress; or

Whoever injures any party or witness in his person or property on account of his attending or having attended such proceeding, inquiry, or investigation, or on account of his testifying or having testified to any matter pending therein; or

Whoever, with intent to avoid, evade, prevent, or obstruct compliance in whole or in part with any civil investigative demand duly and properly made under the Antitrust Civil Process Act willfully removes from any place, conceals, destroys, mutilates, alters, or by other means falsifies any documentary material which is the subject of such demand; or

Whoever corruptly, or by threats of force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which such proceeding is being had before such department or agency of the United States, or the due and proper exercise of the power of inquiry under which such inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

### § 702.14  Transcript of Commission proceedings.

(a) An accurate transcript shall be made of the testimony of all witnesses at all proceedings of the Commission. Transcripts shall be recorded solely by the official reporter, or by any other person or means designated by the Commission.

(b) Every person who submits data or evidence shall be entitled to retain or, on payment of lawfully prescribed costs, procure a copy or transcript thereof, except that witnesses in a hearing held in executive session may for good cause be limited to inspection of the official transcript of their testimony. Transcript copies of public sessions may be obtained by the public upon the payment of the cost thereof.

(c) Persons who have presented testimony at a proceeding may ask within 60 days after the close of the proceeding to correct errors in the transcript of their testimony. Such requests shall be granted only to make the transcript conform to their testimony as presented at the proceeding.

[32 FR 6053, Mar. 15, 1967. Designated at 42 FR 14106, Mar. 15, 1977, and amended at 44 FR 75150, Dec. 19, 1979]

01/03/01   13:13   ☎202 376 7672   U S C C R
Case 1:01-cv-00120-ASG   Document 179   Entered on FLSD Docket 10/24/2001   Page 69 of 124
...mission on Civil Rights
§702.18

## §702.15  Witness fees.

Pursuant to section 102(j) of the Act: A witness attending any session of the Commission shall be paid the same fees and mileage that are paid witnesses in the courts of the United States. Mileage payments shall be tendered to the witness upon service of a subpena issued on behalf of the Commission or any subcommittee thereof.

[32 FR 4063, Mar. 15, 1967. Designated at 42 FR 14106, Mar. 15, 1977, and amended at 37 FR 22115, Oct. 31, 1972]

## §702.16  Attendance of news media at public sessions.

Reasonable access for coverage of public sessions shall be provided to the various communications media, including newspapers, magazines, radio, newsreels, and television, subject to the physical limitations of the room in which the session is held and consideration of the physical comfort of Commission members, staff, and witnesses. However, no witnesses shall be televised, filmed, or photographed during the session nor shall the testimony of any witness be broadcast or recorded for broadcasting, if the witness objects.

[44 FR 75160, Dec. 19, 1979]

## §702.17  Communications, with respect to Commission proceedings.

During any proceeding held outside Washington, D.C., communications to the Commission with respect to such proceeding must be made to the Chairman or authorized Commission staff personnel in attendance. All requests for subpenas returnable at a hearing, requests for appearance of witnesses at a hearing, and statements or other documents for inclusion in the record of a proceeding, required to be submitted in advance, must be submitted to the Chairman, or such authorized person as the Chairman may appoint, at an office located in the community where such hearing or proceeding is scheduled to be held. The location of such office will be set forth in all subpenas issued under the rules in this part and in all notices prepared pursuant to §705.2.

[44 FR 75150, Dec. 19, 1979]

## §702.18  Commission reports.

(a) If a Commission report tends to defame, degrade, or incriminate any person, the report or relevant portions thereof shall be delivered to such person at least thirty (30) days before the report shall be made public in order that such person may make a timely verified answer to the report. The Commission shall afford such person an opportunity to file with the Commission a verified answer to the report or relevant portions thereof not later than twenty (20) days after service of the report or relevant portions thereof upon such person as provided by the regulations in this part.

(1) Such person shall be served with a copy of the report or relevant portions thereof, with an indication of the section(s) that the Commission has determined tend to defame, degrade, or incriminate such person, a copy of the Act and a copy of the regulations in this part.

(2) The report or relevant portions thereof, the Act, and regulations in this part shall be served by depositing the same in the U.S. mail via certified mail, return receipt requested, or by leaving a copy thereof at the last known residence or business address of such person.

(3) The date of service for the purposes of this section shall be the day the material is delivered either by the post office or otherwise, to such person or the agent of such person or at the last known residence or business address of such person. The acknowledgement of the party served, or the verified return of the one making service shall be proof of service except that when service is made by certified mail, the return post office receipt may also constitute proof of same.

(b) If a person receiving a Commission report or relevant portions thereof under this part requests an extension of time from the Commission within 7 days of service of such report, the Commission may, upon a showing of good cause, grant the person additional time within which to file a verified answer.

(c) A verified answer shall plainly and concisely state the facts and law constituting the person's reply or defense to the charges or allegations contained in the report.

§ 702.50

45 CFR Ch. VII (10-1-00 Edition)

(d) Such verified answer shall be published as an appendix to the report: *Provided, however,* That the Commission may except from the answer such matter as it determines to be scandalous, prejudicial or unnecessary.

[36 FR 5702, Mar. 27, 1971. Designated at 42 FR 14108, Mar. 15, 1977, and amended at 44 FR 76151, Dec. 19, 1979]

## Subpart B—Meetings

AUTHORITY: 5 U.S.C. 552b, Pub. L. 94-409, 90 Stat, 1241.

SOURCE: 42 FR 14108, Mar. 15, 1977, unless otherwise noted.

### § 702.50  Purpose and scope.

This section contains the regulations of the U.S. Commission on Civil Rights implementing sections (a)-(f) of 5 U.S.C. 552b, the "Government in the Sunshine Act," They are adopted to further the principle that the public is entitled to the fullest practicable information regarding the decisionmaking processes of the Commission. They open to public observation meetings of the Commissioners of the U.S. Commission on Civil Rights except where the rights of individuals are involved or the ability of the Commission to carry out its responsibilities requires confidentiality.

### § 702.51  Definitions.

(a) *Commission* means the U.S. Commission on Civil Rights and any Subcommittee of the Commission authorized under 42 U.S.C. 1975d(f).

(b) *Commissioner* means a member of the U.S. Commission on Civil Rights appointed by the President under 42 U.S.C. 1975(b).

(c) *Solicitor* means the Solicitor of the U.S. Commission on Civil Rights.

(d) *Meeting* means the deliberations of at least the number of Commissioners required to take action on behalf of the Commission where such deliberations determine or result in the joint conduct or disposition of official Commission business.

(1) The number of Commissioners required to take action on behalf of the Commission is four, except that such number is two when the Commissioners

are a Subcommittee of the Commission authorized under 42 U.S.C. 1975d(f).

(2) Deliberations among Commissioners regarding the setting of the time, place, or subject matter of a meeting, whether the meeting is open or closed, whether to withhold information discussed at a closed meeting, and any other deliberations required or permitted by 5 U.S.C. 552b (d) and (e) and § 702.54 and § 702.55 of this subpart, are not meetings for the purposes of this subpart.

(3) The consideration by Commissioners of Commission business which is not discussed through conference calls or a series of two party calls by the number of Commissioners required to take action on behalf of the Commission is not a meeting for the purposes of this subpart.

(e) *Public announcement* or *publicly announce* means the use of reasonable methods, such as the posting on Commission public notice bulletin boards and the issuing of press release, to communicate information to the public regarding Commission meetings.

(f) *Staff Director* means the Staff Director of the U.S. Commission on Civil Rights.

[42 FR 14108, Mar. 15, 1977, as amended at 44 FR 75151, Dec. 19, 1979]

### § 702.52  Open meeting requirements.

(a) Every portion of every Commission meeting shall be open to public observation, except as provided in § 702.53 of this subpart. Commissioners shall not jointly conduct or dispose of agency business other than in accordance with this subpart.

(b) This subpart gives the public the right to attend and observe Commission open meetings; it confers no right to participate in any way in such meetings.

(c) The Staff Director shall be responsible for making physical arrangements for Commission open meetings which provide ample space, sufficient visibility and adequate acoustics for public observation.

(d) The presiding Commissioner at an open meeting may exclude persons from a meeting and shall take all steps necessary to preserve order and decorum.

1. Any and all documents and communications describing how your office implemented or coordinated the implementation of the investigations of allegations of people who allege they registered to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993 and were not on the voter files/rolls for the November 7, 2000 election.

## RESPONSE

A spreadsheet is included in which complaints are summarized providing description of complaints, review findings and resolutions.  No other responsive documents exist.

| AME | COMPLAINT | FINDINGS | RESOLUTION |
|---|---|---|---|
| [redacted] | Registered to vote on June 14, 2000, when getting a FL DL. | Obtained Florida license June 14, 2000 [redacted] Application coded with M - Currently Registered | Response by email of our role in the registration process |
| Email [redacted] | Son [redacted] could not vote. Registered 7/27/99 when changing his address. | Obtained Florida license July 27, 1999 at [redacted] Application coded with M - Currently Registered | Response by email of our role in the registration process |
| Email [redacted] | Concern that if her father had not picked up her voter registration card she would not have been able to vote. | Explained to her that the local Supervisor of elections is the only agency that can legally register. Replacement license issued June 7, 2000 @ [redacted] Application coded with 1 - New Registration. Application forwarded to Supervisor of Elections. | Response by email of our role in the registration process |
| Email [redacted] | Not able to vote after she re-registered with her married name. | Duplicate ID card issued Feb 22, 2000 at 1304 [redacted] Application coded for name and address change and forwarded to Supervisor of Elections. | Response by email of our role in the registration process |
| Email [redacted] | Register on line? | | Mailed a voter registration application. |
| Email [redacted] | [redacted] Mother registered in [redacted] when getting a new DL in 97. | Renewed by mail June 6, 1999. Would have received the uniform state application included in the renewal mail-out to her. | Response by email of our role in the registration process |
| Email ) [redacted] | Unable to vote. Registered to vote on 10/02/97. | Original issue at [redacted] Oct. 2, 1997. Nothing found on transaction file. | Response by email of our role in the registration process |
| Mail [redacted] | Children were not allowed to vote. They registered to vote when changing DL from Virginia license. | Not enough information to locate children's records. Follow up letter sent to try and obtain additional information. | |
| [redacted] | Unable to vote | Was registered to vote however he applied for registration after the books were closed | Response by phone to explain.. He claimed that he should have told him that. Was told him we would work with the Supervisors of Election to handle this situation next time. He was still upset and said he was denied the right to vote. |
| Phone call [redacted] | | | |

| ███ Call | COMPLAINT | FINDINGS | RESOLUTION |
|---|---|---|---|
| Unable to vote. | Application taken at DL office and sent to Supervisor of Elections. | Phone call to let customer know application sent to Supervisor. |
| Conflicting complaint. She told staff that she and her husband were not registered. When asked, she told the supervisor of elections they were asked. | Issued at ███ July 7, 1999. **Application coded as currently registered. ███ on Sept. 24, 1999.** Application coded as declined. | She stated that they waited too long to check on not receiving their voter registration cards and have since applied for another registration. |
| Unable to vote | Application taken at DL Office and sent to Supervisor of Elections. | Phone call to let customer know application sent to Supervisor of Elections. |
| Unable to vote – said he registered when he renewed his tag in 1999 | No driver license activity since 1997. Record showed he was ineligible to vote. | Phone call to explain. |

2. Any and all documents and communications regarding the training of examiners, as well as any other Division of Driver Licenses employee, to register any Floridian to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993.

**RESPONSE**

All initial training information was developed by the Division of Elections and is not available from DHSMV. Motor Voter program training information used for new employee and in-service refresher training is included in the submission of responsive documents.

# Motor/Voter Training and Application Procedures

We are legally required to ask all eligible customers if they are interested in applying for voter registration. Do not use the term "register to vote".

We are required to fill out the voter application for the customer. This must be completed electronically, unless the printer is inoperable, at which time the examiner will manually fill out the form.

## 1.  Select voter registration application type.



Voter Registration
◯ New   ◯ Reissue   ◯ Change   ◯ Current   ◯ Declined   ◯ Ineligible

- **New**-original application for the county listed on the application. "New" means:
  1. never registered in that county; or
  2. never registered anywhere; or
  3. registered in another state; or
  4. registered in another county in Florida.

- **Reissue**-application for duplicate of current voter registration card. Usually used when customer's voter registration card is lost or stolen **and** does not require any changes.

- **Change**-application for change of name, date of birth, party affiliation or address **within the same county**.

- **Current**-customer is currently registered to vote and all information on their voter registration card is correct.

- **Declined**-eligible customer declined to apply for voter registration.

- **Ineligible**-customer is not eligible to apply for voter registration.

## 2. Fill out Registration Application.



- ♦ **Change Registration**-Select the type of change(s) being made on the application.

- ♦ **Adjudged**-Yes/no will be pre-filled from information previously entered on the FDLIS application. If yes, competency must be restored to apply for voter registration.

- ♦ **Convicted felon**-Enter Yes or No. If the answer is yes, rights must be restored to apply for voter registration.

- ♦ **Mailing address**-This field will be pre-filled from information previously entered on the FDLIS application.

- ♦ **Physical address**-If the physical address is the same as the mailing address, select the button to copy mailing address to physical address. If the physical address is different from the mailing address, fill in the physical address.

- ♦ **Homestead exemption address**-Ask the customer if they file for homestead exemption. If the answer is "no", leave this field blank. If the answer is "yes", and the homestead exemption address is the same as the mailing address, select the button to copy mailing address to homestead exemption address. If the homestead address is different from the mailing address, enter the correct homestead address.

- ♦ **Language**-Select English or Spanish.

- ♦ **Daytime Phone**-Enter daytime phone number, if available.

02/14/01                                                                                              2

- ◆ **Voter Party-**Select voter party from list.

- ◆ **Voting Assistance-**Select yes or no (yes, if the customer needs assistance with the actual voting process).

- ◆ **Previous Voter Registration-**Fill in <u>all</u> previous voter registration information.

- ◆ **OK-**When the application is complete, review the information with the customer. If information is correct, select OK.

## 3. Print Voter Application

- ◆ **Print Application-**Enter "Printer Settings" and make sure application is correctly printed. If application is not correctly printed, reprint the application. Voter applications are printed on #67 white vellum bristol paper through the envelope feeder tray, identified as C5 and landscape. If the printer has lost the settings, reprint the application with the correct printer settings.

- ◆ **Review Information-**Have the customer review all information on the application and confirm that it is correct. The customer's license number and the last four digits of their social security number will be on the printed form.

- ◆ **Obtain Signature-**If information is correct, have the customer sign the voter application. Each examiner is responsible for making sure their customer's card is printed and signed. Have the customer read the oath and then sign the application.

- ◆ **Inform Customer-**Tell your customer they will receive their voter registration card in the mail from the Supervisor of Elections. The customer must contact the Supervisor of Elections in their resident county if the registration card is not received within 30 days.

## 4. <u>Reports</u>

- ◆ Print two copies of the motor/voter report. If any applications were omitted from the printed report, they must be manually listed on both copies of the report.

- ◆ All pre-printed forms must be date stamped, initialed and listed on the report.

- ◆ If any applications listed on the report are missing, indicate "missing" next to the name on both copies of the report and provide the Supervisor of Elections with the persons address so they can obtain an application.

- ◆ One copy of the report, along with all of the applications, must be sent to the election's officials within five days of application.

- ◆ One copy of the report must be maintained in a confidential file for four years. This file must be locked in a secure location in the Office Manager's office and is not public record.

# Motor/Voter
# In-Service Training Outline for Office Managers

**Goals and Objectives**
The goal and objective of this training session is to reinforce the proper procedures for the motor/voter process.

**Review "Motor/Voter Application Procedures"**
Stress the following information:
- Ask all eligible customers.
- We process applications-we do not register voters.
- Use electronic application, not manual applications.
- Select application type-be very careful about your selection. Never select "decline" unless the customer actually declines.
- Fill out all previous registration information.
- The person filling out the application is the person responsible for printing the application and obtaining the signature.
- Make sure the motor/voter report and the applications balance.

**Review "Motor/Voter Questions and Answers"**
Ask questions, review correct answers.

**Closely Monitor Motor/Voter Process and Reports**

**Individually train all staff members on Motor/Voter Report procedures**

# Motor/Voter Questions and Answers

1. Who is eligible to apply for voter registration?
**Any customer being processed for a driver license or identification card who is a US citizen, a Florida resident, and is at least 17 years of age. If the customer is a convicted felon, their rights must be restored before they apply for voter registration. If the have been adjudged incompetent, the competency must be restored before they apply for voter registration.**

2. What is the correct way to ask a customer about voter registration?
**"Are you interested in *applying* for voter registration or changing your present voter registration?" We fill out applications-we do not register voters.**

3. Do I have to ask eligible customers if they want to apply for voter registration?
**Yes, you are required to ask every eligible customer.**

4. Why do I have to ask all eligible customers if they want to apply for voter registration?
**Section 97.057, Florida Statutes, requires us to ask all eligible customers.**

5. Are employees liable if they choose not to ask customers if they would like to apply for voter registration?
**If the employee does not ask eligible customers, they are in violation of section 97.057, F.S. and the National Voting Rights Act of 1993 and can be held liable for violating an individual's civil rights, in addition to disciplinary action.**

6. Are employees with personal beliefs contrary to this program exempt from liability?
**No, all employees are required to offer this service.**

7. If I issue driver licenses in a tax collector office, am I required to ask eligible customers if they want to apply to register to vote?
**Yes, you must follow the same guidelines as examiners in state-operated driver license offices.**

8. If an eligible customer comes in today, declines to apply for voter registration, returns tomorrow and is eligible, am I required to ask the customer if they want to apply again?
**Yes, you must ask every eligible customer.**

9. Can I fill out an application for registration if the customer lives in a different county?
**Yes, fill out the application and submit it to your local Supervisor of Elections with your other applications.**

10. Can I fill out an application for registration if the customer does not have a social security number?
**Yes, you can. However, if there are all "9's" in the social security block on the application, the customer will be contacted by the Supervisor of Elections for the last four numbers of their social security number before they can register to vote.**

02/08/01

11.  Can I fill out an application for registration if the customer has not registered their vehicles in Florida?
**Yes.  Vehicle registrations have no bearing on our voter registration application procedures.**

12.  If the customer is registered in one county and moves to another county, what type of application should I select?
**New Registration.  Be sure to fill in previous registration information.**

13.  If the customer is changing their address within the same county, what type of application should I select?
**Change registration.  Be sure to fill in previous registration information.**

14.  If the customer is making a name change, what type of application should I select?
**Change registration.  Be sure to fill in previous registration information.**

15.  If a customer's voter registration card was lost or stolen and does not require any changes, what type of application should I select?
**Reissue registration.**

16.  If the customer is currently registered out of state, what type of application should I select?
**New application.  Be sure to fill in previous registration information.**

17.  Are we allowed to recommend a party affiliation if the customer asks?
**No, we do not recommend party affiliations under any circumstances.**

18.  Is the customer required to provide documentation to verify their physical address?
**No, we accept the information verbally,**

19.  Who can a customer contact to find out if their rights have been restored?
**They should contact the Office of Executive Clemency at 850-488-2952.**

20.  If the customer is not obtaining a license or ID card, can they apply for voter registration in our offices?
**Yes, give them the preprinted form to fill out.  When you receive the preprinted form from the customer, enter your initials and a date stamp on the back under the area for postage.**

21.  Should I accept the preprinted form for the customer if they ask me to?
**Yes, you can include it with your daily forms printed in the office.  Manually enter the customer's name on both copies of the motor/voter transmittal report.**

22.  Can I ask the customer to fill out a preprinted form instead of filling out the application on the computer?
**We are legally required to fill out the voter application for the customer. This must be completed electronically unless the printer is inoperable, at which time the examiner will manually fill out the form.**

23.  How long do I have to get the applications to the Supervisor of Elections?
**The transmittal report along with all of the applications are required to be forwarded to the elections officials within five days of application.**

24.  What does voting assistance mean?
**Voting assistance means the customer needs assistance in the voting booth. The customer may need assistance reading the ballot or may need assistance due to disabilities.**

Case 1:01-cv-00120-ASG    Document 179    Entered on FLSD Docket 10/24/2003    Page 82 of 124

# State of Florida
## DEPARTMENT OF
## HIGHWAY SAFETY AND MOTOR VEHICLES

**FRED O. DICKINSON**
Executive Director

August 17, 2000

JEB BUSH
Governor

**KATHERINE HARRIS**
Secretary of State

**BOB BUTTERWORTH**
Attorney General

**ROBERT F. MILLIGAN**
Comptroller

**BILL NELSON**
Treasurer and
Insurance Commissioner

**BOB CRAWFORD**
Commissioner of Agriculture

**TOM GALLAGHER**
Commissioner of Education

TO:       DDL Bureau Chiefs
            BAR/BFO OMCs
            BAR/BFO Management Analyst
            BFO Trainers
            Office Supervisors

FROM:    David C. Laing
            Senior Management Analyst II
            Division of Driver Licenses

SUBJECT:    Changes to the Motor Voter Application

In conjunction with the new voter registration requirements, we are updating the FDLIS application to allow the voter registrations forms to be printed on the HP4050 printers with the use of an envelope tray feeder. Upon installation, the FDLIS application's operating system will be upgraded to Uniface 7.2.

The following changes have been made to the FDLIS program concerning the voter registration application:

1. FDLIS will automatically display the last four digits of the social security number. You will no longer need to ask if the customer would like to suppress their social security number.

2. The Florida DL/ID number will be displayed on the application.

3. There is a new address requirement concerning the homestead exemption address.

   - You would inquire if the customer has claimed homestead exemption and if the address is the same as their physical address (or the 911 address for clarification).

   - If they answer "yes" to filing homestead exemption and "no" to this address being the same as their present physical address, then you would fill in the appropriate block with the homestead exemption address.

   - If the addresses (physical and homestead) are the same, a button has been provided to fill in the address as required.

---

DIVISIONS/FLORIDA HIGHWAY PATROL • DRIVER LICENSES • MOTOR VEHICLES • ADMINISTRATIVE SERVICES
Neil Kirkman Building, Tallahassee, Florida 32399-0500
http://www.hsmv.state.fl.us/

FDLIS 2000 Version 2.10
August 17, 2000
Page 2

Since we will be issuing the motor voter form on the new HP4050 printers, the Division of Elections has agreed to allow us to use a lighter weight paper (67# vellum as compared to 90# white index). Each office should have received a supply of this paper from the Bureau Chief's office. We will be stocking the paper in the Supply Room and you will be advised of the stock number once it is available.

NOTE:  DO NOT MOVE ANY PRINTER WITHOUT THE APPROVAL OR KNOWLEDGE OF YOUR MANAGEMENT ANALYST, TRAINER OR OMC.

If your CompuPrint printer is still in good shape and operational, the supervisor can offer this printer to the local FHP station or Division of Motor Vehicle office and prepare a Property Inventory Transfer (HSMV 94310) for them to sign.   However, they must be made aware that these printers are no longer under maintenance and once they are inoperable, they should be surplused/salvaged.

If the CompuPrint printer is no longer useable, please complete the appropriate paperwork (Surplus Property Form – SP7001) and submit to your Bureau Chiefs Office for approval and final disposal.

Please note that the jet directs that were attached to your CompuPrint printer should not be misplaced, as this is an accountable, numbered property inventory item, and should be retained at your office for future use.

Regarding the HP4000 printers that will be removed from the field offices, these printers will be transferred with the completed HSMV 94310 form to either BFO staff personnel or the BAR offices per the attached spreadsheet.  We will be looking at the distribution and transfer of the older HP5 printers back to Tallahassee GHQ.  Our aim is to have only HP4000 and HP4050 printers in the field as they use the same OPC/toner cartridges.

Should you have any questions concerning the transfer or install of printers, or the need for more motor voter paper, please contact your Management Analyst or Bureau Chief's Office.

DCL:kec
Attachment

cc:  DL Tax Collectors' Offices

State of Florida
# DEPARTMENT OF
# HIGHWAY SAFETY AND MOTOR VEHICLES
## TALLAHASSEE, FLORIDA 32399-0500

.D O. DICKINSON, III
Executive Director

June 29, 1999

TO:         All Driver License Employees

FROM:       Sandra C. Lambert, Director
            Division of Driver Licenses

SUBJECT:    Bulletin #004-99, Motor Voter Application for Voter Registration

The 1998 Florida Legislature passed SB-1402 which modified the information submitted to the supervisor of elections on the voter registration application.   Certain sections of this bill will become effective July 1, 1999, which has the approval of the Department of Justice.

Those items that have a direct affect on the issuance of a voter registration application in our offices are as follows:

1. Must elicit the address of property for which the applicant has been granted a homestead exemption, if any.

2. Must elicit the last four digits of the social security number.

3. Must indicate the Florida driver's license number or the identification number from a Florida identification card issued under s. 322.051.

With regard to Item #1, without additional programming, we will be unable to capture the homestead exemption address.  This programming should be completed and installed after the calendar year.  Consequently, implementation will be delayed on this item.

In handling Item #2 concerning submitting the last four digits of the social security number, using our present program, we will no longer ask if the applicant would like to suppress their social security number as this is no longer an option in the registration process.  We will automatically answer "NO" to the question about suppressing the SSN, and it will be printed on the voter registration form.

Bulletin #04–99, Motor Voter Application for Voter Registration
June 29, 1999

Page 2


For those customers that do not have social security numbers, the Division of Elections will advise the supervisors of elections that if there are all "9s" on the application in the SSN block, they will have to contact the applicant for the information. We should advise the customer that they will be contacted by their supervisor of elections for the last four digits of their SSN before they can register to vote.

In processing Item #3, we will have to manually write in the Florida DL/ID number on the application at the top or bottom of the form, where space is available, until the FDLIS program can display the data on the application.

A work request order has been submitted to ISA Programming to correct the FDLIS 2000 program to represent the new voter registration application forms. The new revised forms (dated 7/99) will be available in late July in our Supply Room, however, an initial supply of forms will be forwarded to the Bureau Chiefs' offices for distribution. All old forms that predate June 1998 should be destroyed immediately.

SCL:kec

cc: Tax Collector DL Offices

**State of Florida** —

# DEPARTMENT OF
# HIGHWAY SAFETY AND MOTOR VEHICLES

FRED O. DICKINSON, III
Executive Director

LAWTON CHILES
Governor
SANDRA B. MORTHAM
Secretary of State
BOB BUTTERWORTH
Attorney General
ROBERT F. MILLIGAN
Comptroller
BILL NELSON
Treasurer and
Insurance Commissioner
BOB CRAWFORD
Commissioner of Agriculture
FRANK T. BROGAN
Commissioner of Education

December 22, 1997

TO:         BFO Bureau Chiefs
            BAR Planner IIs
            BAR/BFO Office Supervisors
            DL Tax Collector's Offices

FROM:       David C. Laing, Senior Management Analyst II
            Office of Director
            Division of Driver Licenses

SUBJECT:    FDLIS Version 1.S 12/97 Update

         This FDLIS Version 1.S update will fix a number of screens as well as introduce a new requirement in the motor voter application.

         Please reproduce and distribute this information to all employees. The update streamer tape should be installed as soon as possible. If you do not have a current save tape, one should be completed prior to the install. **This version must be loaded before Wednesday, December 31, 1997.** It will take approximately 30 minutes to load this version and it should be accomplished either first thing in the morning, or after you have completed your day's work and have run your end-of-day reports.

**MOTOR VOTER LAW CHANGE:** The main objective of this version is to enhance the Motor Voter Registration which requires as of January 1, 1998, that we ask all customers wishing to register to vote specific questions about adjudged incompetent and felony convictions. We presently ask customers wishing driver licenses about being adjudged incompetent and their restoration date, but now we must ask this question when issuing an ID card if the customer wants to register to vote. In addition, we are to ask if the customer has ever been convicted of a felony and if so, have their rights been restored.

NOTE: **No questions** should be asked about felony convictions unless the customer wants to register to vote as either a NEW registration, a CHANGE registration, or a REPLACEMENT registration. The answer to these questions will determine the customer's eligibility to register to vote.

**State of Florida**
**DEPARTMENT OF**
**HIGHWAY SAFETY AND MOTOR VEHICLES**

**JEB BUSH**
Governor
**KATHERINE HARRIS**
Secretary of State
**BOB BUTTERWORTH**
Attorney General        -
**ROBERT F. MILLIGAN**
Comptroller
**BILL NELSON**
Treasurer and
Insurance Commissioner
**BOB CRAWFORD**
Commissioner of Agriculture
**TOM GALLAGHER**
Commissioner of Education

**FRED O. DICKINSON**
Executive Director

July 14, 2000

TO:             All Driver Licensing Personnel

FROM:        Sandra C. Lambert, Director
                   Division of Driver Licenses

SUBJECT:   Upcoming Election Primaries


          With the upcoming election primaries and voter registration book openings and closings, we need to be very conscientious that our voter registration applications are thoroughly completed and signed by the customer before submission to the local Supervisor of Elections.

          We have begun the preliminary rollout of the new HP4050 laser printers that will produce the motor voter registration application much more efficiently than the old CompuPrint printer.  It will take approximately three to four months to complete this rollout inasmuch as each site will have to be visited and every workstation remapped to the new printers.  I am sure you all are looking forward to working with the new printers for the production of a better product for our Supervisor of Elections.

          My main concern is that we do not delay in our deliveries of the applications to the Supervisors of Elections and that the applications are a good quality product with the correct information and signatures included.  If you are still using your CompuPrint printer, please ensure that the blocks at the top of the application have been checked and the application is signed.  If you do not have a laser printer that is functional, you must complete the voter registration application for the customer by hand and have them verify the information and sign the oath.  We do not just hand the customer an application and have them fill it out.  We are required to do this for them if they wish to register to vote or change their registration in any way.  Please keep all of these instructions in mind throughout this election campaign time.

          We appreciate all your hard work and diligence in your daily endeavor to provide good customer service not only to the customers that walk through your doors, but to our sister agencies such as the Election Offices.

SCL:kec

**State of Florida**

# DEPARTMENT OF
# HIGHWAY SAFETY AND MOTOR VEHICLES

### TALLAHASSEE, FLORIDA 32399-0500

FRED O. DICKINSON, III
Executive Director

December 3, 1994

TO:        Regional Administrators
           Assistant Regional Administrators
           Highway Safety Specialists
           Office Supervisors

FROM:      Richard A. Weaver, Chief
           Bureau of Field Operations

SUBJECT:   FDLIS Version 1.M Enhancements

The FDLIS Version 1.M enhancements are as follows.  Please reproduce and distribute this information to our employees as soon as possible.  The update streamer tapes should be installed as soon as possible.  If you do not have a current save tape, one should be done prior to the install.

The main enchancement of this version is the field's capability to produce a voter registration application as a result of the passing of the National Voter Registration Act of 1993 and Section 97.057, Florida Statutes.  In order to prepare for this version, the following procedures and purchases had to be made:

(GHQ Duties)
- purchase of 173 laser printers with OPC kits and toner cartridges and drop ship one to each field location to replace ADMIN message printer;
- purchase of 90 lb. index paper to produce the voter registration application and forward 500 sheets to each field location;
- perforation of the 90 lb. index paper to produce a registration form measures 8 1/2"x5" to be made prior to shipping;

(Field Duties)
- obtain a successful site save from each office prior to loading the new operating system;
- install the new operating system and replenish the site information with the site save;
- install Version 1.M enhancements;
- bring the laser printer on-line.  The printers will require minor adjustments which will be provided by FDLIS Programming.

FDLIS Version 1.M Enhancements
December 3, 1994
Page 2

Each field office will receive a supply of the Division of Election's pre-printed English and Spanish voter registration forms that will be given to customers who are not receiving services at our offices (DL or ID card issuance).

This version must be installed and operational before the beginning of the new year as we must begin voter registration on January 3, 1995. The voter registration application will be batched once the customer has signed the oath, and batches will be sent daily to the local county supervisor of elections.

1.   **F1-NAME INQUIRY**

The Name program will now stop at the F2-Eligibility Screen when a full name, date of birth, and sex are entered to allow the examiner to select options. Before, when a name, date of birth, and sex were entered the Name program would go straight to the Host without allowing a selection of options.

2.   **F2-ELIGIBILITY**

The issue process will no longer allow an examiner to enter an out of state driver license number on the issue screen. The out of state driver license information must be entered on the F2-Eligibility Screen and be checked through NDR and DLR. This change was done to prevent the issuance of a license without doing a change state of record.

3.   **F7-MOTOR VEHICLE INQUIRY**

The F7-Motor Vehicle Inquiry has been modified to allow examiners to search the motor vehicle files by vehicle identification number (VIN) along with the current Title and Tag searches. Only one option may be selected at a time; however the driver license number may be left on the screen and the program will search the motor vehicle file selected by the tag, title, or VIN.

4.   **S-F1-NLETS INQUIRY**

The NLETS Inquiry now allows examiners to check out of state tags. The issuing state, tag number, tag year, and tag type; example: PC - passenger car, TK truck, MC - motorcycle, and PE - prestige tag. Only one type of inquiry may be done at a time, out of state driver license number, name, or tag, all are available from the same menu.

5.   **S-F8-DL RECORD ADD**

The add suspension/revocation has bee modified to allow the addition of Identification Card suspensions. This will be a one year suspension.

FDLIS Version 1.M Enhancements
December 3, 1994
Page 3

Other changes include.

6. DL34 FORM

The safe driver date will not print it it has already passed.

7. DAILY DIVIDER CARD

The date will print in the correct order Month/Day/Year. Also, the card will allow six digits for the camera number.

8. MOTOR VOTER

This is the major part of Version M. Changes include changing print programs to print on the new printers to writing the motor voter programs. If a print does not work on the laser printer or prints strange, please notify the Programming Section immediately.

A. Setting up the laser printers. ISA will send out detailed instructions on how to set the printers up. Once they are hooked up the following screens must be updated. First, under the Supervisors Menu choose S-F4 Terminal Security. Under the terminal security section you specify which printer number will be the laser printer. The second change is to the SF5 printer Security Screen. The type of printer must be changed to "LAS" for laser. Making these two changes will allow print screens and reports to print on the laser printer and tell the Motor Voter programs which printer to use.

B. Motor Voter Program. A new line has been added to the EL51 Issue Screen. Examiners will be required to "X" whether a customer is currently registered, declines to register, is a new registrant or changes a current registration. If the customer is currently registered, declines registration, is under the age of seventeen, or is not a U.S. citizen or a Florida resident, the Issue Program will go into the EL60 Transaction Review screen as it has always done. If the customer is a New Registrant, or wishes to make a change on their current registration, the Issue Program will go into the new Motor Voter program for the completion of the customer's voter registration information and a card will be produced for the customer's signature. NOTE: If a customer is currently registered to vote in another Florida county, they are considered to be a "new registration" in their new county and NOT to be considered a change of registration.

C. Motor Voter Reprint Program. In case of equipment failure or information being entered on the Voter Registration incorrectly, a reprint program has been provided. The reprint may be done from the (F11) Miscellaneous Functions Menu then doing (S-F8) Reprint Motor Voter Form and entering the log number and the first four characters of the driver license number that you wish to reprint.

FDLIS Version 1.M Enhancements
December 3, 1994
Page 4

  D. Motor Voter Report (RPT10). This is an addition to the End-Of-Day reports and will assist in batching the voter registration forms by county. As with the other reports it may be run individually or will run when an "X" is placed in Produce ALL Reports.

  Attached is the update procedure. Before beginning your update, please clean your disk and streamer tape drives. It will take approximately 30 minutes to accomplish this update and you will not be able to process customers during that period of time. Once an office has been updated, please have them complete a new SYSTEM SAVE tape and new build diskettes. SITE SAVE tapes are to be made on a weekly basis.

  Update to your FDLIS Manual and Examiner's Manual will be forthcoming to address these changes.

RAW:cb
Attachment

cc: Glenn L. Blocker
  Alan Cochrane
  Gloria Cooksey
  Ralph Cobb
  Tommy Edwards
  Kathy Cruce
  Assistant Chiefs, BFO
  BFO Staff
  Shirley Branson
  Bernie Schroeder
  Warren Smith

## Motor Voter

- The print programs have been modified to allow printing from an envelope bin. Forms should be separated and inserted in the envelope bin. Instructions are included for installation. Future forms will come precut to fit in the bin.
- Two help keys have been added to the **Prefilled Voter Registration Screen (EL80)** *Help* gives the County and State Help Charts and *Shift-Help* will prefill the legal address with the mailing address.
- The **Prefilled Voter Registration Screen (EL80)** has been modified to retain information. This information will be retained as long as you stay in the issuance process. After the form prints you will go to the **Transaction Review Screen (EL60)**. If the form did not print correctly press *Previous Page* then from the **EL51 Screen** press *Transmit* and you will get the **Prefilled Voter Registration Screen (EL80)** with the data you just filled on the form.
- DOB has been added as a change type.
- Edits have been placed on the legal residence to restrict post office boxes and route numbers. The legal street address should be placed on this line not the mailing address unless they are the same.
- A new category has been added for ineligible customers. Previous releases of FDLIS showed ineligible customers as declined. This field will be Prefilled if either the citizen or resident fields are no, or the customer is not 17 years of age.
- Several changes have been made on the registration form. The signature line has been removed to accommodate election offices which scan cards into their system. Customers should sign in the middle of the signature box. Zip Code has been added to the residence address and you should no longer get the residence Zip in the mailing address. The length of the middle name has been increased.
- A manual voter registration count has been added to the end of day reports. This manual count will be sent to DHSMV and printed on Report 10. When you print Report 10 or Report 3 you will be asked to enter the number of manual forms issued.

## End of Day Reports

- A new report has been added (Report 11) that will list all check transactions done in the office. This report should be retained and used if the bank loses any checks.
- The disqualification fee has been corrected on Report 4. Previously the disqualification fees were dropping off this report.
- Report 10 now has manual count on it. Once everyone is on the new version this will be sent to HQ with your DL16's.

## Eligibility/Issue

- A new field has been added to the eligibility screens for a driver not eligible for a hardship license. BDI will add a correspondence when they add an ADMIN Suspension. If "ELIGIBLE FOR HARDSHIP LICENSE" is the correspondence added then the correspondence date is the date the customer will be eligible for a hardship license. If "NOT ELIGIBLE FOR HARDSHIP LICENSE" is onfile the customer is not eligible for a hardship license. To get a sample try inquiring on DLN V625-814-49-327-0.
- In the past if a driver would turn 60 during his next renewal period he would be issued a permanent ID card. FDLIS has been modified to not allow issuance of an ID card until he is 60 years of age.
- Code has been added to not allow a clearance of a disqualification until the period is up.
- ID cards which expire in the next century have been changed to allow duplicates.

- FR case type 2's must be closed with an SR22 and can no longer be closed with an SR21. A fee should always be collected on a case type 2. *YOU MUST USE A "*" TO CLOSE A CASE TYPE 2.*

## TRANSCRIPTS ARE PRINTING ON THE LASER PRINTER CORRECTLY

- Transcripts and other print will print on the laser in portrait mode. Any blank sheets fed should be reused. The printer will send a group of print every 3 minutes. A transcript may get broken among more than one group of print. Be sure to look for "END OF RECORD" on the bottom of a transcript to be sure you have the whole transcript printed.

## Other Changes

- 941 has been added as a valid area code.

## DLR NOTE

- More states are joining DLR and getting online with PDPS. It is important that if a license is being surrendered you enter the state and the out of state number on the eligibility screen. If a DLR check is not done you will be prompted in the issuance process.

## Motor Voter

- The print programs have been modified to allow printing from a envelope bin. Forms should be separated and inserted in the envelope bin. Instructions are included for installation. Future forms will come precut to fit in the bin.
- Two help keys have been added to the **Preffilled Voter Registration Screen (EL80)** *Help* gives the is the **County and State Help Charts** and *Shift-Help* will prefill the legal address with the mailing address.
- The **Prefilled Voter Registration Screen (EL80)** has been modified to retain information. This information will be retained as long as you stay in the issuance process. After the form prints you will go to the **Transaction Review Screen (EL60)**. If the form did not print correctly press *Previous Page* then from the EL51 Screen press *Transmit* and you will get the **Prefilled Voter Registration Screen (EL80)** with the data you just filled on the form.
- A new category has been added for ineligible customers. Previous releases of FDLIS showed ineligible customers as declined. This field will be Prefilled if either the citizen or resident fields are no or the customer is not 17 years of age.
- The signature line has been removed to accommodate election offices which scan cards into their system. Customers should sign in the middle of the signature box.
- Zip Code has been added to the residence address and you should no longer get the residence Zip in the mailing address.
- The length of the middle name has been increased.
- We have modified several programs to collect more statistics and keep better track of voter registrations.
- A manual voter registration has been added to the end of day reports. This manual count will be sent to DHSMV and printed on Report 10. When you print Report 10 or Report 3 you will be ask to enter the number of manual forms issued.
- A new change type has been added for date of birth change.

## End of Day Reports

- A new report has been added (Report 11) that will list all check transactions done in the office. This report should be retained and used if the bank loses or misdeposits any checks.
- The disqualification fee has been corrected on Report 4. Previously the disqualification fees were dropping off this report.

## Transaction Time Monitoring

- We have added code so that we can monitor response time throughout the state. This will help us in determining communications problems and there reasons.

| | |
|---|---|
| **Chapter:** Applicant Processing | **Issued:** 01/01/95 |
| **Section:** Procedures | **Revised:** 11/01/95 |

AUTHORITY    Section 97.057(1), F.S., Voter registration by the Department of Highway Safety and Motor Vehicles.  "The Department of Highway Safety and Motor Vehicles shall provide the opportunity to register to vote or to update a voter registration record to each individual who comes to an office of that department to: (a) Apply for or renew a driver's license;  (b) Apply for or renew an identification card pursuant to chapter 322; or  (c) Change an address on an existing driver's license or identification card."

POLICY    In an effort to comply with the above statute, all applicants (unless <u>known</u> to be ineligible which requires a degree of certainty) shall be asked if they wish to register to vote or update a current voter registration, which would include changes of address, name and party affiliation (or combinations thereof).  A person who is known to be ineligible will not be offered voter registration (non-citizens, non-residents, under 17 years of age).

NOTE:  Unless the person is otherwise known to be ineligible, obtaining a "valid in Florida only" license does not necessarily make a person ineligible to register to vote in Florida.  See General Counsel Docket #DDL-95-24.

HOW TO REGISTER    Any applicant for a Florida driver license or identification
TO VOTE    card may register to vote or update a current Florida voter registration by providing some basic information that will be added to the issuance screens.  Once the voter information has been captured and the DL/ID card issuance has been transmitted, a voter registration application will be produced on a laser printer.  The following procedures should be adhered to ensure every applicant has an opportunity to register or update their current voter registration.

1.    Every driver license office will display wall posters in English and Spanish which will describe the office's ability to provide voter registration along with the requirements and other basic information on voter registration procedures.

2.    All voter registration services will remain confidential and information obtained will be used for voter registration purposes only.  The DL/ID card record will have no indication of voter registration activity or declination.

| Chapter: Applicant Processing | Issued: 01/01/95 |
|---|---|
| Section: Procedures | Revised: 11/01/95 |

3. In order to be eligible to register, the customer must have answered YES to the question of Florida residency and US citizenship. **If there is an "N" in either of these fields. voter registration will not be allowed.**

4. On the EL51 screen (PREFILLED LICENSE ISSUANCE SCREEN), below the REMARKS line, there are the VOTER REGISTRATION options, which offers the following:

NEW REG - New Registration
Individual is filling out an initial voter registration application. When registering for the first time in a different county, it is considered a new registration. NOT a change of registration.

CHG.REG - Change Registration
Individual is moving within the county or changing name. address, DOB, and/or party affiliation.

CURR.REG - Currently Registered (no further processing)
Individual declines registration because they are already registered.

DECLINED - Declines Registration
Individual declines any registration action.

INELIGIBLE - Ineligible for registration
Individual is not eligible for registration due to being a non-citizen, non-resident, or under 17 years of age.

FILLING IN THE FDLIS SCREENS

Upon choosing either "New Reg" or "Chg.Reg," the EL80 - PREFILLED VOTER REGISTRATION SCREEN will be displayed. See attached sample below. The following fields must be completed before leaving this screen:

1. Party Affiliation - "X" one of the following choices:
   - Democratic
   - Republican
   - None
   - Other (must fill in name of minor political party).

   Presently, FDLIS allows 20 characters for notation of the minor political party when choosing "Other" under party affiliation. We should spell out the name of the minor party due to similar names in parties. For example, there is an "Independent" party and an "Independence" party. However, in checking with the Division of Elections, the following shortened titles are permissable for the various parties.

| Chapter: | Applicant Processing | Issued: | 01/01/95 |
| Section: | Procedures | Revised: | 11/09/95 |

ABBREV   FLORIDA'S MINOR PARTIES  (as of 10/10/95)

LIB     Libertarian Party of Florida

GRE     The Green Party of Florida, Inc.

TAX     United States Taxpayers Party of Florida

SOC     Socialist Workers Party

INT     Independent Party

RUS     American Restore U.S. Harmony Party

IDP     The Independence Party of Florida

CST     Constitutional Party of Florida

LAW     Natural Law Party of Florida

RES     Reform Silly Party of Florida

2. Daytime Phone - (Optional - if registrant chooses not to give their daytime phone number, please fill in spaces with 999s or 000s.)

3. Voting Assistance (Y/N)?

4. Physical Address - Registrant's legal residence address.

5. Name and/or Address on Last Voter Registration - Registrant's previous name and physical address.

6. OOS COUNTY - Name of out-of-state county previously registered in.

7. ENGLISH? (Y/N) - If the response is "Y," the voter registration application will be printed in English. If the response is "N," the registration application will be printed in Spanish.

8. SUPPRESS SSN (Y/N) - A "Y" answer will not allow the printing of the social security number on the registration application; however, a "N" answer will permit the social security number to be placed on the application. This item will in no way affect the inclusion of the social security number on the driver license data base. The documentation of the social security number is a part of our issuance process and a requirement in the building of the driver history record.

Chapter:   Applicant Processing                        Issued:    01/01/95
Section:   Procedures                                  Revised:   11/01/95

---

Office:   EO1   Printed:  01-03-95        12:40
  EL80                  .PREFILLED VOTER REGISTRATION SCREEN.      Page 3

New Reg __  Chg Reg __  [Change Type: (X)  (DOB __  Addr __  Name __  Party __) ]
CURRENT _____  FLORIDA _____  VOTER _____  __
Mailing Address:
PO BOX 32399 _____  TALLAHASSEE _____ , 13 FL 32399-2399
DOB: 01-01-42    SEX: M   RACE: 5                            SSN: 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

             ********* Complete the Following Fields **********

PARTY:(X)       Democratic __           Republican __         None __
                Other _____
DAYTIME PHONE: ___-___-____             VOTING ASSISTANCE (Y/N) __
Physical Address:
_____  _____ ,  __ __ ___-____
                                                                 CO ST ZIP
Name and/or Address on Last Voter Registration:

_____  _____  _____  _____ ,  __ __ ___-____
OOS COUNTY_____  CO ST ZIP
ENGLISH?  (Y/N)  __       SUPPRESS SSN  (Y/N)  __  '

---

PRODUCING THE        Once the voter registration screen is completed and transmitted,
VOTER REGISTRA-      the issuance process will be back on track in producing the
TION APPLICATION     driver license or ID card.  The DL/ID card will be transmitted
                     to the forms printer and the voter registration application will
                     be sent to the laser printer.

                     A 90 lb. white index paper is used to produce the voter
                     registration application and has been approved by the Division
                     of Elections as acceptable.  A lighter weight paper is not
                     acceptable; therefore, only the 90 lb. white index paper will be
                     used in the laser printers for the registration application.
                     This paper has been cut to size to produce an 8" x 5"
                     application.

| Chapter: | Applicant Processing | Issued: | 01/01/95 |
|----------|---------------------|---------|----------|
| Section: | Procedures | Revised: | 11/01/95 |

REPRINTING THE
APPLICATION

The index paper is to be placed in the envelope feeder tray of the laser printer. Every effort should be made to produce a quality product. Should the paper jam or for some reason the application is incorrect, the voter registration application can be reprinted with the initial information if you have not left the TRANSACTION REVIEW screen (EL60). In order to do a reprint of the EL80 screen (PREFILLED VOTER REGISTRATION) with the initial information, press the PRIOR PAGE key before leaving your EL60 screen, TRANSACTION REVIEW. However, once you have exited TRANSACTION REVIEW, the data is erased.

If you have continued on past the EL60 screen, TRANSACTION REVIEW, you must access the F11, Miscellaneous Menu, and choose function S-F8, REPRINT MOTOR VOTER FORM. Once you have entered the log number and verified the correct record on the EL81 form, the EL80 screen (PREFILLED VOTER REGISTRATION) will be displayed again for completion and transmitting.

NOTE: Information concerning the voter registration is highly confidential and not kept on the log files. Should you need to reprint the registration application, the pertinent information must be reentered unless you have not transmitted past your TRANSACTION REVIEW screen as described above.

HOW TO GIVE
THE OATH

The oath on the voter registration application shall be administered as follows:

1. Ask the registrant, "Please read and affirm that the information given by you in this registration is true and correct."

2. If registrant gives an affirmative answer, obtain his/her signature in the space provided.

   * Neither the examiner nor the registrant is required to raise their hand or place the other hand on a Bible while the oath is being administered.

3. In the event the registrant gives a negative answer, ask what is incorrect and proceed with reprinting the voter registration application through the F11, Miscellaneous Menu, and the S-F8 function to produce a corrected application. Once the new application is produced, proceed with the affirming by the registrant as to the truth of the statements made in the application.

Online
# Sunshine

| Welcome | Session | Committees | Legislators | Information Center | Statutes & Constitution | Lobbyist Information |

| View Statutes | Search Statutes | Constitution | Laws of Florida | Order |

Select Year: 2000 ▼                                         Go

# The 2000 Florida Statutes

**Title IX**
ELECTORS AND ELECTIONS

**Chapter 97**
Qualification And Registration Of Electors

**View Entire Chapter**

**TITLE IX**
**ELECTORS AND ELECTIONS**

**CHAPTER 97**
**QUALIFICATION AND REGISTRATION OF ELECTORS**

**PART I**
**GENERAL PROVISIONS (ss. 97.011-97.025)**

**PART II**
**FLORIDA VOTER REGISTRATION ACT (ss. 97.032-97.105)**

**PART I**
**GENERAL PROVISIONS**

97.011  Short title.

97.012  Secretary of State as chief election officer.

97.021  Definitions.

97.023  Procedures on complaints of violations.

97.025  Election Code; copies thereof.

**97.011  Short title.**--Chapters 97-106 inclusive shall be known and may be cited as "The Florida Election Code."

**History.**--s. 1, ch. 26870, 1951; s. 1, ch. 65-60; s. 1, ch. 77-175.

**97.012  Secretary of State as chief election officer.**--The Secretary of State is the chief election officer of the state, and it is his or her responsibility to:

(1)  Obtain and maintain uniformity in the application, operation, and interpretation of the election laws.

(2)  Provide uniform standards for the proper and equitable implementation of the registration laws.

(3)  Actively seek out and collect the data and statistics necessary to knowledgeably scrutinize the effectiveness of election laws.

(4)  Provide technical assistance to the supervisors of elections on voter education and election personnel training services.

| Chapter: | Applicant Processing | Issued: | 01/01/95 |
| Section: | Procedures | Revised: | 11/01/95 |

4.  After the registrant has affirmed and signed the voter
    registration application, they can be directed to the
    cashier for the final processing of their driver license or
    identification card.

**FINAL HANDLING OF REGISTRATION APPLICATION**

The voter registration application is to be batched with the
End-of-Day Report 10, MOTOR VOTER REPORT. This report will be
produced when you choose "Produce ALL Reports" or individually
by choosing Report 10. All voter registration applications will
be sent DAILY to the local supervisor of election's office along
with the MOTOR VOTER REGISTRATION FORM TRANSMITTAL (Report 10).

To account for the manually produced voter registration forms,
when producing the End-of-Day report or specifically Report 10,
MOTOR VOTER REPORT, the system will produce the following
prompt, "ENTER NUMBER OF MANUALLY DONE REGISTRATIONS (EX 123)".
If you do not enter a three digit numeric response, the system
will prompt you with the following, "ENTRY MUST BE IN ###
FORMAT". The manual count is then printer on Report 10.

Some of the Supervisors of Elections may wish to send a courier
to retrieve the registrations instead of waiting for them to be
mailed. These arrangements can be made on the local level;
however, by law we are required to deliver the registration
applications within five days of issuance. Therefore, unless
special arrangements are made with the county's Supervisor of
Elections, Report 10 and the registration applications will be
mailed daily.

**TOTAL CONFIDENTIALITY**

Due to the confidentiality of the voter registration process, no
record of registrations should be kept in the field offices.
Therefore, once you have produced Report 10 and sent it to the
Supervisor of Elections with the applications, DO NOT REPRODUCE
this report for your files. The only information to be kept by
our department will be the declinations that will be transmitted
through FDLIS to the host computer.

(5) Provide technical assistance to the supervisors of elections on voting systems.

(6) Provide voter education assistance to the public.

(7) Coordinate the state's responsibilities under the National Voter Registration Act of 1993.

(8) Provide training to all affected state agencies on the necessary procedures for proper implementation of this chapter.

(9) Ensure that all registration applications and forms prescribed or approved by the department are in compliance with the Voting Rights Act of 1965.

(10) Coordinate with the United States Department of Defense so that armed forces recruitment offices administer voter registration in a manner consistent with the procedures set forth in this code for voter registration agencies.

(11) Create and maintain a central voter file.

(12) Maintain a voter fraud hotline and provide election fraud education to the public.

**History.**--s. 1, ch. 75-98; s. 21, ch. 84-302; s. 2, ch. 89-348; s. 1, ch. 90-315; s. 2, ch. 94-224; s. 1381, ch. 95-147; s. 34, ch. 97-13; s. 1, ch. 98-129.

**97.021 Definitions.**--For the purposes of this code, except where the context clearly indicates otherwise, the term:

(1) "Absent elector" means any registered and qualified voter who:

(a) Is unable without another's assistance to attend the polls. '

(b) Is an inspector, a poll worker, a deputy voting machine custodian, a deputy sheriff, a supervisor of elections, or a deputy supervisor who is assigned to a different precinct than that in which he or she is registered to vote.

(c) On account of the tenets of his or her religion, cannot attend the polls on the day of the general, special, or primary election.

(d) May not be in the precinct of his or her residence during the hours the polls are open for voting on the day of the election.

(e) Has changed his or her residency to another county in this state within the time period during which the registration books are closed for the election for which the ballot is requested.

(f) Has changed his or her residency to another state and is ineligible under the laws of that state to vote in the general election; however, this pertains only to presidential ballots.

(2) "Ballot" or "official ballot" when used in reference to:

(a) "Voting machines," except when reference is made to write-in ballots, means that portion of the printed strips of cardboard, paper, or other material that is within the ballot frames containing the names of candidates, or a statement of a proposed constitutional amendment or other question or proposition submitted to the electorate at any election.

(b) "Paper ballots" means that printed sheet of paper containing the names of candidates, or a statement of proposed constitutional amendments or other questions or propositions submitted to the electorate at any election, on which sheet of paper an elector casts his or her vote.

(c) "Electronic or electromechanical devices" means a ballot which is voted by the process of punching or marking with a marking device for tabulation by automatic tabulating equipment or data processing equipment.

(3) "Candidate" means any _ son to whom any one or more of the fo___ing applies:

(a) Any person who seeks to qualify for nomination or election by means of the petitioning process.

(b) Any person who seeks to qualify for election as a write-in candidate.

(c) Any person who receives contributions or makes expenditures, or gives his or her consent for any other person to receive contributions or make expenditures, with a view to bringing about his or her nomination or election to, or retention in, public office.

(d) Any person who appoints a treasurer and designates a primary depository.

(e) Any person who files qualification papers and subscribes to a candidate's oath as required by law.

However, this definition does not include any candidate for a political party executive committee.

(4) "Central voter file" means a statewide, centrally maintained database containing voter registration information of all counties in this state.

(5) "Department" means the Department of State.

(6) "Division" means the Division of Elections of the Department of State.

(7) "Election" means any primary election, special primary election, special election, general election, or presidential preference primary election.

(8) "Election board" means the clerk and inspectors appointed to conduct an election.

(9) "Election costs" shall include, but not be limited to, expenditures for all paper supplies such as envelopes, instructions to voters, affidavits, reports, ballot cards, ballot booklets for absentee voters, postage, notices to voters; advertisements for registration book closings, testing of voting equipment, sample ballots, and polling places; forms used to qualify candidates; polling site rental and equipment delivery and pickup; data processing time and supplies; election records retention; and labor costs, including those costs uniquely associated with absentee ballot preparation, poll workers, and election night canvass.

(10) "Elector" is synonymous with the word "voter" or "qualified elector or voter," except where the word is used to describe presidential electors.

(11) "General election" means an election held on the first Tuesday after the first Monday in November in the even-numbered years, for the purpose of filling national, state, county, and district offices and for voting on constitutional amendments not otherwise provided for by law.

(12) "Lists of registered electors" means copies of printed lists of registered electors, computer tapes or disks, or any other device used by the supervisor of elections to maintain voter records.

(13) "Minor political party" is any group as defined in this subsection which on January 1 preceding a primary election does not have registered as members 5 percent of the total registered electors of the state. Any group of citizens organized for the general purposes of electing to office qualified persons and determining public issues under the democratic processes of the United States may become a minor political party of this state by filing with the department a certificate showing the name of the organization, the names of its current officers, including the members of its executive committee, and a copy of its constitution or bylaws. It shall be the duty of the minor political party to notify the department of any changes in the filing certificate within 5 days of such changes.

(14) "Newspaper of general circulation" means a newspaper printed in the language most commonly spoken in the area within which it circulates and which is readily available for purchase

commonly spoken in the area within which it circulates and which is issued primarily for purposes for members of a particular ___fessional or occupational group, a news___er the primary function of which is to carry legal notices, or a newspaper that is given away primarily to distribute advertising.

(15) "Nominal value" means having a retail value of $10 or less.

(16) "Nonpartisan office" means an office for which a candidate is prohibited from campaigning or qualifying for election or retention in office based on party affiliation.

(17) "Office that serves persons with disabilities" means any state office that takes applications either in person or over the telephone from persons with disabilities for any program, service, or benefit primarily related to their disabilities.

(18) "Persons with disabilities" means individuals who have a physical or mental impairment that substantially limits one or more major life activities.

(19) "Polling place" is the building which contains the polling room where ballots are cast.

(20) "Polling room" means the actual room in which ballots are cast.

(21) "Primary election" means an election held preceding the general election for the purpose of nominating a party nominee to be voted for in the general election to fill a national, state, county, or district office. The first primary is a nomination or elimination election; the second primary is a nominating election only.

(22) "Public assistance" means assistance provided through the food stamp program; the Medicaid program; the Special Supplemental Food Program for Women, Infants, and Children; and the WAGES Program.

(23) "Public office" means any federal, state, county, municipal, school, or other district office or position which is filled by vote of the electors.

(24) "Qualifying educational institution" means any public or private educational institution receiving state financial assistance which has, as its primary mission, the provision of education or training to students who are at least 18 years of age, provided such institution has more than 200 students enrolled in classes with the institution and provided that the recognized student government organization has requested this designation in writing and has filed the request with the office of the supervisor of elections in the county in which the institution is located.

(25) "Special election" is a special election called for the purpose of voting on a party nominee to fill a vacancy in the national, state, county, or district office.

(26) "Special primary election" is a special nomination election designated by the Governor, called for the purpose of nominating a party nominee to be voted on in a general or special election.

(27) "Supervisor" means the supervisor of elections.

(28) "Voter registration agency" means any office that provides public assistance, any office that serves persons with disabilities, any center for independent living, or any public library.

(29) "Voting booth" or "booth" means that booth or enclosure wherein an elector casts his or her ballot, be it a paper ballot, a voting machine ballot, or a ballot cast for tabulation by an electronic or electromechanical device.

(30) "Voting system" means a method of casting and processing votes that functions wholly or partly by use of mechanical, electromechanical, or electronic apparatus or by use of paper ballots and includes, but is not limited to, the procedures for casting and processing votes and the programs, operating manuals, tabulating cards, printouts, and other software necessary for the system's operation

(a) The complainant gave proper written notice of the alleged violation the Secretary of State;

(b) The complainant participated in the informal dispute resolution process; and

(c) An agreement is not reached or an alleged violation is not corrected within 90 days after receipt of notice or 20 days after receipt of notice if the alleged violation occurred within 120 days before the date of an election.

**History.**--s. 4, ch. 94-224; s. 1383, ch. 95-147.

**97.025 Election Code; copies thereof.**--A pamphlet of a reprint of the Election Code, adequately indexed, shall be prepared by the Department of State. It shall have a sufficient number of these pamphlets printed so that one may be given, upon request, to each candidate who qualifies with the department. A sufficient number may be sent to each supervisor, prior to the first day of qualifying, for distribution, upon request, to each candidate who qualifies with the supervisor and to each clerk of elections. The cost of printing the pamphlets shall be paid out of funds appropriated for conducting elections.

**History.**--s. 38, ch. 3879, 1889; RS 192; s. 69, ch. 4328, 1895; GS 253; RGS 297; CGL 353; s. 2, ch. 26870, 1951; s. 17, ch. 65-134; ss. 10, 35, ch. 69-106; s. 5, ch. 77-175; s. 2, ch. 79-365; s. 5, ch. 94-224.

**Note.**--Former s. 99.54; s. 98.251.

### PART II
### FLORIDA VOTER REGISTRATION ACT

97.032  Short title.

97.041  Qualifications to register or vote.

97.051  Oath upon registering.

97.052  Uniform statewide voter registration application.

97.053  Acceptance of voter registration applications.

97.055  Registration books; when closed for an election.

97.057  Voter registration by the Department of Highway Safety and Motor Vehicles.

97.058  Voter registration agencies.

97.0583  Voter registration at qualifying educational institutions.

97.0585  Declinations to register; place of registration and registration information; confidentiality.

97.061  Special registration for electors requiring assistance.

97.071  Registration identification card.

97.073  Disposition of voter registration applications; cancellation notice.

97.1031  Notice of change of residence within the same county, change of name, or change of party.

97.105  Permanent single registration system established.

**History.**--s. 2, ch. 6469, 1913; RGS 300; s. 1, ch. 8582, 1921; CGL 356; s. 1, ch. 13761, 1929; s. 1, ch. 18060, 1937; s. 1, ch. 19663, 1939; s. 1, ch. 26870, 1951; s. 1, ch. 28156, 1953; s. 1, ch. 61-370; s. 2, ch. 65-60; s. 1, ch. 67-32; s. 2, ch. 67-142; s. 2, ch. 67-386; s. 1, ch. 69-137; s. 1, ch. 69-280; s. 1, ch. 69-377; s. 1, ch. 70-269; s. 1, ch. 70-439; s. 1, ch. 71-206; s. 1, ch. 73-157; s. 31, ch. 73-333; s. 23, ch. 77-104; s. 1, ch. 77-175; s. 1, ch. 79-157; s. 24, ch. 79-400; s. 1, ch. 81-105; s. 15, ch. 82-143; s. 22, ch. 84-302; s. 1, ch. 87-184; ss. 5, 12, ch. 87-363; s. 1, ch. 89-338; s. 3, ch. 89-348; s. 2, ch. 90-315; s. 3, ch. 94-224; s. 1382, ch. 95-147; s. 1, ch. 96-57; s. 54, ch. 96-175; s. 1, ch. 96-327; s. 35, ch. 97-13; s. 3, ch. 98-129.

**Note.**--Former s. 102.02.

**97.023  Procedures on complaints of violations.--**

(1)(a)  Any person who is aggrieved by a violation of either the National Voter Registration Act of 1993 or a voter registration or removal procedure under the Florida Election Code may file a written complaint with the department, which shall serve as notice to the Secretary of State.

(b)  A complaint must state the alleged violation and the person or entity responsible, who must be the department, a voter registration agency, a supervisor, the Department of Highway Safety and Motor Vehicles, or an Armed Forces Recruitment Center. If the department determines that a complaint fails to allege both a violation and a person or entity responsible for the violation, the department shall inform the complainant that he or she has not given sufficient notice and the steps that must be taken in order to give proper notice.

(c)  For the purposes of this section, a violation of either the National Voter Registration Act of 1993 or a voter registration or removal procedure under the Florida Election Code is the failure to perform an act required or the performance of an act prohibited by either the National Voter Registration Act of 1993 or a voter registration or removal procedure under the Florida Election Code.

(d)  The department has primary jurisdiction over complaints filed under the provisions of this section.

(2)  When a complaint is filed with the department, the parties to the complaint must be given the opportunity to resolve the complaint through an informal dispute resolution process to be established by the department. This process must provide for:

(a)  A time limitation of 30 days on the process, unless the alleged violation occurred within 120 days before the date of an election, in which case there must be a time limitation of 20 days;

(b)  A mediator provided by the department, who may be a department employee unless the department is alleged to be responsible for the violation, in which case the Governor must appoint a mediator who is not a department employee;

(c)  Notice to a complainant;

(d)  Notice to a respondent of the allegations filed against him or her in the complaint;

(e)  An opportunity for the parties to submit written statements, present oral argument either in person or by telephone, and present evidence; and

(f)  A written statement by the mediator to the department stating the outcome of the dispute resolution process.

(3)  If an alleged violation occurred within 30 days before the date of a state or federal election and the alleged violation will affect the registrant's right to vote in that election, the complainant may immediately bring an action in the circuit court in the county where the alleged violation occurred. Otherwise, the following are conditions precedent for a complainant to bring an action for declaratory or injunctive relief in the circuit court in the county where the alleged violation occurred:

**97.032  Short title.**--This ⌐__ may be cited as the ²⁴Florida Voter Regi___tion Act."

**History.**--s. 7, ch. 94-224.

**97.041  Qualifications to register or vote.**--

(1)(a)  A person may become a registered voter only if that person:

1.  Is at least 18 years of age;

2.  Is a citizen of the United States;

3.  Is a legal resident of the State of Florida;

4.  Is a legal resident of the county in which that person seeks to be registered; and

5.  Registers pursuant to the Florida Election Code.

(b)  A person who is otherwise qualified may preregister on or after that person's 17th birthday and may vote in any election occurring on or after that person's 18th birthday.

(2)  The following persons, who might be otherwise qualified, are not entitled to register or vote:

(a)  A person who has been adjudicated mentally incapacitated with respect to voting in this or any other state and who has not had his or her right to vote restored pursuant to law.

(b)  A person who has been convicted of any felony by any court of record and who has not had his or her right to vote restored pursuant to law.

(3)  A person who is not registered may not vote.

**History.**--ss. 1, chs. 3850, 3879, 1889; RS 154; s. 1, ch. 4328, 1895; GS 170; RGS 215; s. 1, ch. 8583, 1921; CGL 248; s. 1, ch. 26870, 1951; s. 2, ch. 28156, 1953; s. 1, ch. 63-408; s. 3, ch. 65-60; s. 1, ch. 67-67; ss. 1, 4, ch. 71-108; s. 1, ch. 72-197; s. 2, ch. 73-157; s. 31, ch. 73-333; s. 1, ch. 74-5; s. 1, ch. 77-175; s. 2, ch. 89-338; s. 8, ch. 94-224.

**Note.**--Former s. 98.01.

**97.051  Oath upon registering.**--A person registering to vote must subscribe to the following oath: "I do solemnly swear (or affirm) that I will protect and defend the Constitution of the United States and the Constitution of the State of Florida, that I am qualified to register as an elector under the Constitution and laws of the State of Florida, and that I am a citizen of the United States and a legal resident of Florida."

**History.**--s. 7, ch. 3879, 1889; RS 161; s. 8, ch. 4328, 1895; GS 178; RGS 222; CGL 257; s. 4, ch. 25383, 1949; s. 1, ch. 26870, 1951; s. 3, ch. 69-280; ss. 2, 4, ch. 71-108; s. 1, ch. 72-63; s. 2, ch. 77-175; s. 1, ch. 81-304; s. 9, ch. 94-224.

**Note.**--Former s. 98.11.

**97.052  Uniform statewide voter registration application.**--

(1)  The department shall prescribe a uniform statewide voter registration application for use in this state.

(a)  The uniform statewide voter registration application must be accepted for any one or more of the following purposes:

2. Change of address.

3. Change of party affiliation.

4. Change of name.

5. Replacement of voter registration identification card.

(b) The department is responsible for printing the uniform statewide voter registration application and the voter registration application form prescribed by the Federal Election Commission pursuant to the National Voter Registration Act of 1993. The applications and forms must be distributed, upon request, to the following:

1. Individuals seeking to register to vote.

2. Individuals or groups conducting voter registration programs. A charge of 1 cent per application shall be assessed on requests for 10,000 or more applications.

3. The Department of Highway Safety and Motor Vehicles.

4. Voter registration agencies.

5. Armed forces recruitment offices.

6. Qualifying educational institutions.

7. Supervisors, who must make the applications and forms available in the following manner:

a. By distributing the applications and forms in their offices to any individual or group.

b. By distributing the applications and forms at other locations designated by each supervisor.

c. By mailing the applications and forms to applicants upon the request of the applicant.

(c) The uniform statewide voter registration application may not be reproduced by any private individual or group.

(2) The uniform statewide voter registration application must be designed to elicit the following information from the applicant:

(a) Full name.

(b) Date of birth.

(c) Address of legal residence.

(d) Mailing address, if different.

(e) County of legal residence.

(f) Address of property for which the applicant has been granted a homestead exemption, if any.

(g) Race or ethnicity that best describes the applicant:

1. American Indian or Alaskan Native.

3. Black, not Hispanic.

4. White, not Hispanic.

5. Hispanic.

(h) Sex.

(i) Party affiliation.

(j) Whether the applicant needs assistance in voting.

(k) Name and address where last registered.

(l) Last four digits of the applicant's social security number.

(m) Florida driver's license number or the identification number from a Florida identification card issued under s. 322.051.

(n) Telephone number (optional).

(o) Signature of applicant under penalty for false swearing pursuant to s. 104.011, by which the person subscribes to the oath required by s. 3, Art. VI of the State Constitution and s. 97.051, and swears or affirms that the information contained in the registration application is true.

(p) Whether the application is being used for initial registration, to update a voter registration record, or to request a replacement registration identification card.

(q) Whether the applicant is a citizen of the United States.

(r) That the applicant has not been convicted of a felony or, if convicted, has had his or her civil rights restored.

(s) That the applicant has not been adjudicated mentally incapacitated with respect to voting or, if so adjudicated, has had his or her right to vote restored.

The registration form must be in plain language and designed so that convicted felons whose civil rights have been restored and persons who have been adjudicated mentally incapacitated and have had their voting rights restored are not required to reveal their prior conviction or adjudication.

(3) The uniform statewide voter registration application must also contain:

(a) The oath required by s. 3, Art. VI of the State Constitution and s. 97.051.

(b) A statement specifying each eligibility requirement under s. 97.041.

(c) The penalties provided in s. 104.011 for false swearing in connection with voter registration.

(d) A statement that, if an applicant declines to register to vote, the fact that the applicant has declined to register will remain confidential and may be used only for voter registration purposes.

(e) A statement that informs the applicant who chooses to register to vote or update a voter registration record that the office at which the applicant submits a voter registration application or updates a voter registration record will remain confidential and may be used only for voter registration purposes.

8. Signature of the applicant swearing or affirming under the penalty for false swearing pursuant to s. 104.011 that the information contained in the registration application is true and subscribing to the oath required by s. 3, Art. VI of the State Constitution and s. 97.051.

(b) An applicant who fails to designate party affiliation must be registered without party affiliation. The supervisor must notify the voter by mail that the voter has been registered without party affiliation and that the voter may change party affiliation as provided in s. 97.1031.

History.--s. 11, ch. 94-224; s. 27, ch. 97-13; s. 5, ch. 98-129.

### 97.055 Registration books; when closed for an election.--

(1) The registration books must be closed on the 29th day before each election and must remain closed until after that election. If an election is called and there are fewer than 29 days before that election, the registration books must be closed immediately. When the registration books are closed for an election, voter registration and party changes must be accepted but only for the purpose of subsequent elections. However, party changes received between the book-closing date of the first primary election and the date of the second primary election are not effective until after the second primary election.

(2) In computing the 29-day period for the closing of the registration books, the day of the election is excluded and all other days are included. If the 29th day preceding an election falls on a Sunday or a legal holiday, the registration books must be closed on the next day that is not a Sunday or a legal holiday.

History.--s. 2, ch. 25391, 1949; s. 2, ch. 26870, 1951; s. 5, ch. 29934, s. 1, ch. 29761, 1955; s. 3, ch. 65-134; s. 2, ch. 67-530; s. 1, ch. 71-124; ss. 7, 8, ch. 72-63; s. 4, ch. 74-5; s. 1, ch. 77-174; s. 5, ch. 77-175; s. 7, ch. 80-292; s. 5, ch. 81-304; s. 1, ch. 83-25; s. 27, ch. 84-302; s. 11, ch. 85-80; s. 6, ch. 89-338; s. 12, ch. 94-224.

Note.--Former s. 97.02; s. 98.051.

### 97.057 Voter registration by the Department of Highway Safety and Motor Vehicles.--

(1) The Department of Highway Safety and Motor Vehicles shall provide the opportunity to register to vote or to update a voter registration record to each individual who comes to an office of that department to:

(a) Apply for or renew a driver's license;

(b) Apply for or renew an identification card pursuant to chapter 322; or

(c) Change an address on an existing driver's license or identification card.

(2) The Department of Highway Safety and Motor Vehicles shall:

(a) Notify each individual, orally or in writing, that:

1. Information gathered for the completion of a driver's license or identification card application, renewal, or change of address can be automatically transferred to a voter registration application;

2. If additional information and a signature are provided, the voter registration application will be completed and sent to the proper election authority;

3. Information provided can also be used to update a voter registration record;

4. All declinations will remain confidential and may be used only for voter registration purposes;

(f) A statement that informs the applicant that a person who has been granted a homestead exemption in this state, and who registers to vote in any precinct other than the one in which the property for which the homestead exemption has been granted, shall have that information forwarded to the property appraiser where such property is located, which may result in the person's homestead exemption being terminated and the person being subject to assessment of back taxes under s. 193.092, unless the homestead granted the exemption is being maintained as the permanent residence of a legal or natural dependent of the owner and the owner resides elsewhere.

(4) A supervisor may produce a voter registration application that has the supervisor's direct mailing address if the department has reviewed the application and determined that it is substantially the same as the uniform statewide voter registration application.

(5) The voter registration application form prescribed by the Federal Election Commission pursuant to the National Voter Registration Act of 1993 or the federal postcard application must be accepted as an application for registration in this state if the completed application or postcard application contains the information required by the constitution and laws of this state.

**History.**--s. 5, ch. 25391, 1949; s. 2, ch. 26870, 1951; s. 1, ch. 59-231; s. 8, ch. 65-134; s. 1, ch. 67-170; s. 8, ch. 69-377; ss. 10, 35, ch. 69-106; s. 2, ch. 72-63; s. 5, ch. 77-175; s. 23, ch. 84-302; s. 6, ch. 89-338; s. 10, ch. 94-224; s. 2, ch. 96-327; s. 26, ch. 97-13; s. 4, ch. 98-129.

**Note.**--Former s. 97.05; s. 98.111.

### 97.053 Acceptance of voter registration applications.--

(1) Voter registration applications, changes in registration, and requests for a replacement registration identification card must be accepted in the office of any supervisor, the division, a driver license office, a voter registration agency, or an armed forces recruitment office when hand delivered by the applicant or a third party during the hours that office is open or when mailed.

(2) A completed voter registration application that contains the information necessary to establish an applicant's eligibility pursuant to s. 97.041 becomes the official voter registration record of that applicant when received by the appropriate supervisor.

(3) The registration date for a valid initial voter registration application that has been hand delivered is the date when received by a driver license office, a voter registration agency, an armed forces recruitment office, the division, or the office of any supervisor in the state.

(4) The registration date for a valid initial voter registration application that has been mailed and bears a clear postmark is the date of the postmark. If an initial voter registration application that has been mailed does not bear a postmark or if the postmark is unclear, the registration date is the date the registration is received by any supervisor or the division, unless it is received within 5 days after the closing of the books for an election, excluding Saturdays, Sundays, and legal holidays, in which case the registration date is the book-closing date.

(5)(a) A voter registration application is complete if it contains:

1. The applicant's name.

2. The applicant's legal residence address.

3. The applicant's date of birth.

4. An indication that the applicant is a citizen of the United States.

5. The last four digits of the applicant's social security number.

6. An indication that the applicant has not been convicted of a felony or that, if convicted, has had his or her civil rights restored.

5. The particular driver license office in which the person applies to register to vote or updates a voter registration record will remain confidential and may be used only for voter registration purposes.

(b) Require a driver's license examiner to inquire orally, or inquire in writing if the applicant is hearing impaired, and whether the applicant wishes to register to vote or update a voter registration record during the completion of a driver's license or identification card application, renewal, or change of address.

1. If the applicant chooses to register to vote or to update a voter registration record:

a. All applicable information received by the Department of Highway Safety and Motor Vehicles in the course of filling out the forms necessary under subsection (1) must be transferred to a voter registration application;

b. The additional necessary information must be obtained by the driver's license examiner and must not duplicate any information already obtained while completing the forms required under subsection (1); and

c. A voter registration application with all of the applicant's voter registration information must be presented to the applicant to sign.

2. If the applicant declines to register to vote, update the applicant's voter registration record, or change the applicant's address by either orally declining or by failing to sign the voter registration application, the Department of Highway Safety and Motor Vehicles must keep the declination for 2 years.

(3) For the purpose of this section, the Department of Highway Safety and Motor Vehicles, with the approval of the Department of State, shall prescribe:

(a) A voter registration application that is the same in content, format, and size as the uniform statewide voter registration application prescribed under s. 97.052; and

(b) A form that will inform applicants under subsection (1) of the information contained in paragraph (2)(a).

(4) The Department of Highway Safety and Motor Vehicles must forward completed voter registration applications within 5 days after receipt to the supervisor of the county where the office that processed or received that application is located.

(5) The Department of Highway Safety and Motor Vehicles must send, with each driver's license renewal extension application authorized pursuant to s. 322.18(8), a uniform statewide voter registration application, the voter registration application prescribed under paragraph (3)(a), or a voter registration application developed especially for the purposes of this subsection by the Department of Highway Safety and Motor Vehicles, with the approval of the Department of State, which must meet the requirements of s. 97.052.

(6) A person providing voter registration services for a driver license office may not:

(a) Seek to influence an applicant's political preference or party registration;

(b) Display any political preference or party allegiance;

(c) Make any statement to an applicant or take any action the purpose or effect of which is to discourage the applicant from registering to vote; or

(d) Disclose any applicant's voter registration information except as needed for the administration of voter registration.

(7)  The Department of Highway Safety and Motor Vehicles shall compile lists, by county, of those individuals whose names have been purged from its driver's license database because they have been licensed in another state and shall provide those lists annually to the appropriate supervisors.

(8)  The Department of Highway Safety and Motor Vehicles shall collect data determined necessary by the Department of State for program evaluation and reporting to the Federal Election Commission pursuant to the National Voter Registration Act of 1993.

(9)  The Department of Highway Safety and Motor Vehicles must ensure that all voter registration services provided by driver license offices are in compliance with the Voting Rights Act of 1965.

**History.**--s. 13, ch. 94-224.

**97.058  Voter registration agencies.**--

(1)  Each voter registration agency must provide each applicant the opportunity to register to vote or to update a voter registration record, at the time the applicant applies for services or assistance from that agency, for renewal of such services or assistance, or for a change of address required with respect to the services or assistance.

(2)  Each voter registration agency, other than a public library, must develop and provide each applicant with a form approved by the department containing all of the following:

(a)  The questions:

1.  "If you are not registered to vote where you live now, would you like to apply to register to vote today?"

2.  "If you are registered to vote where you live now, would you like to update your voter registration record?"

(b)  For agencies providing public assistance, the statement, "Applying to register or declining to register to vote will not affect the amount of assistance that you will be provided by this agency."

(c)  Boxes for the applicant to check which indicate that:

1.  The applicant would like to register to vote or update a current voter registration;

2.  The applicant would like to decline to register to vote; or

3.  The applicant is already registered to vote and does not need to update the voter registration,

together with the statement, "If you do not check any box, you will be considered to have decided not to register to vote or update a voter registration at this time."

(d)  The statement, "If you would like help in filling out the voter registration application, we will help you. The decision whether to seek or accept help is yours. You may fill out the voter registration application in private."

(e)  The statement, "If you believe that someone has interfered with your right to register or to decline to register to vote, your right to privacy in deciding whether to register or in applying to register to vote, or your right to choose your own political party or other political preference, you may file a complaint with the Secretary of State."

(f)  The address and telephone number of the appropriate office in the department where a complaint may be filed.

(g)  A statement that all declinations will remain confidential and may be used only for voter

(h)  A statement that informs the applicant who chooses to register to vote or update a voter registration record that the office at which the applicant submits a voter registration application or updates a voter registration record will remain confidential and may be used only for voter registration purposes.

(3)(a)  A voter registration agency may use the uniform statewide voter registration application or may create and use a voter registration application that meets the requirements of s. 97.052, with the approval of the department.

(b)  A voter registration agency must provide to each applicant under subsection (1) the voter registration application that the agency decides to use pursuant to paragraph (a). An applicant who indicates a desire to register to vote or update a voter registration record must be provided the same degree of assistance with regard to the completion of that voter registration application as is provided by the agency with regard to the completion of its own forms, unless the applicant refuses that assistance.

(4)  If a voter registration agency provides services to a person with a disability at the person's home, the agency must also provide voter registration services at the person's home.

(5)  A voter registration agency must establish procedures for providing voter registration services to applicants who apply by telephone.

(6)  A voter registration agency must forward completed voter registration applications within 5 days after receipt to the supervisor of the county where the agency that processed or received that application is located.

(7)  A voter registration agency must retain declinations for a period of 2 years, during which time the declinations are not considered a record of the client pursuant to the laws governing the agency's records.

(8)  A person providing voter registration services for a voter registration agency may not:

(a)  Seek to influence an applicant's political preference or party registration;

(b)  Display any political preference or party allegiance;

(c)  Make any statement to an applicant or take any action the purpose or effect of which is to lead the applicant to believe that a decision to register or not to register has any bearing on the availability of services or benefits;

(d)  Make any statement to an applicant or take any action the purpose or effect of which is to discourage the applicant from registering to vote; or

(e)  Disclose any applicant's voter registration information except as needed for the administration of voter registrations.

(9)  A voter registration agency must collect data determined necessary by the department for program evaluation and reporting to the Federal Election Commission pursuant to the National Voter Registration Act of 1993.

(10)  Each state agency which contracts with a private provider that is also a voter registration agency as defined in s. 97.021 is responsible for contracting for voter registration services with that provider and for ensuring that the private provider complies with the provisions of this section.

(11)  Each voter registration agency must ensure that all voter registration services provided by its offices are in compliance with the Voting Rights Act of 1965.

History.--s. 14, ch. 94-224.

**97.0583  Voter registratio___; qualifying educational institutions ___**ach qualifying educational institution shall provide each student enrolled in that institution the opportunity to register to vote or to update a voter registration record on each campus at least once a year. Qualifying educational institutions are also encouraged to provide voter registration services at other times and places, such as upon application for financial aid, during admissions, at registration, upon issuance of student identifications, and at new-student orientation.

**History.**--s. 3, ch. 96-327.


**97.0585  Declinations to register; place of registration and registration information; confidentiality.--**

(1)  All declinations to register to vote made pursuant to ss. 97.057 and 97.058 are confidential and exempt from the provisions of s. 119.07(1) and s. 24(a), Art. I of the State Constitution and may be used only for voter registration purposes.

(2)  Information relating to the place where a person registered to vote or where a person updated a voter registration is confidential and exempt from the provisions of s. 119.07(1) and s. 24(a), Art. I of the State Constitution; and a voter's signature, social security number, and telephone number may not be copied and are exempt for that purpose from the provisions of s. 119.07(1) and s. 24(a), Art. I of the State Constitution.

**History.**--ss. 1, 2, ch. 94-345; s. 24, ch. 96-406.


**97.061  Special registration for electors requiring assistance.--**

(1)  Any person who is eligible to register and who is unable to read or write or who, because of some disability, needs assistance in voting shall upon that person's request be registered by the supervisor under the procedure prescribed by this section and shall be entitled to receive assistance at the polls under the conditions prescribed by this section.

(2)  If a person is qualified to register pursuant to this section, the supervisor shall note in that person's registration record that the person needs assistance in voting.

(3)  Upon registering any person pursuant to this section, the supervisor must make a notation on the registration books or records which are delivered to the polls on election day that such person is eligible for assistance in voting, and the supervisor may issue such person a special registration identification card or make some notation on the regular registration identification card that such person is eligible for assistance in voting. Such person shall be entitled to receive the assistance of two election officials or some other person of his or her own choice, other than the person's employer, the agent of the person's employer, or an officer or agent of the person's union, without the necessity of executing the "Declaration to Secure Assistance" prescribed in s. 101.051. Such person shall notify the supervisor of any change in his or her condition which makes it unnecessary for him or her to receive assistance in voting.

**History.**--s. 14, ch. 6469, 1913; RGS 318; CGL 375; s. 3, ch. 25388, 1949; s. 6, ch. 25391, 1949; s. 1, ch. 26870, 1951; s. 3, ch. 28156, 1953; s. 1, ch. 59-446; s. 1, ch. 61-358; s. 4, ch. 65-60; s. 3, ch. 77-175; s. 1, ch. 79-366; s. 2, ch. 81-304; s. 1, ch. 84-302; s. 15, ch. 94-224; s. 1384, ch. 95-147.

**Note.**--Former ss. 97.06 and 102.21.


**97.071  Registration identification card.--**

(1)  A registration identification card must be furnished to all voters registering under the permanent single registration system and must contain:

(a)  Voter's registration number.

(b)  Date of registration.

c) Full name.

d) Party affiliation.

e) Date of birth.

f) Race or ethnicity, if provided by the applicant.

g) Sex, if provided by the applicant.

h) Address of legal residence.

i) Precinct number.

j) Signature of supervisor.

k) Place for voter's signature.

l) Other information deemed necessary by the department.

2) A voter may receive a replacement of a registration identification card by providing a signed, written request for a replacement card to the supervisor. Upon verification of registration, the supervisor shall issue the voter a duplicate card without charge.

(3) In the case of a change of name, address, or party affiliation, the supervisor must issue the voter a new registration identification card. However, a registration identification card indicating a party affiliation change made between the book-closing date for the first primary election and the date of the second primary election may not be issued until after the second primary election.

**History.**--s. 13, ch. 3879, 1889; RS 167; s. 15, ch. 4328, 1895; GS 191, 192; RGS 235, 236; CGL 288, 289; s. 4, ch. 24203, 1947; s. 11, ch. 25035, 1949; s. 1, ch. 26870, 1951; s. 10, ch. 27991, 1953; s. 6, ch. 65-60; s. 8, ch. 69-377; ss. 10, 35, ch. 69-106; s. 18, ch. 94-224; s. 28, ch. 97-13; s. 7, ch. 98-129; s. 2, ch. 2000-250.

**Note.**--Former ss. 98.31 and 98.32.

**97.073  Disposition of voter registration applications; cancellation notice.--**

(1) The supervisor must notify each applicant of the disposition of the applicant's voter registration application. The notice must inform the applicant that the application has been approved, is incomplete, has been denied, or is a duplicate of a current registration. A registration identification card sent to an applicant constitutes notice of approval of registration. If the application is incomplete, the notice must instruct the applicant to complete another voter registration application, which the supervisor must provide. A notice of denial must inform the applicant of the reason the application was denied.

(2) Within 2 weeks after approval of a voter registration application that indicates that the applicant was previously registered in another jurisdiction, the supervisor must notify the registration official in the prior jurisdiction that the applicant is now registered in the supervisor's county.

**History.**--s. 19, ch. 94-224.

**97.1031  Notice of change of residence within the same county, change of name, or change of party.--**

(1) When an elector moves from the address named on that person's voter registration record to another address within the same county, the elector must provide a signed, written notification of such move to the supervisor and obtain a registration identification card reflecting the new

(2) When the name of an elector is changed by marriage or other legal process, the elector must provide a signed, written notification of such change to the supervisor and obtain a registration identification card reflecting the new name.

(3) When an elector seeks to change party affiliation, the elector must provide a signed, written notification of such intent to the supervisor and obtain a registration identification card reflecting the new party affiliation, subject to the issuance restriction in s. 97.071(3).

(4) The supervisor shall make the necessary changes in the elector's records as soon as practical upon receipt of such notice of a change of address of legal residence, name, or party affiliation and shall issue the new registration identification card as required by s. 97.071(3).

**History.**--s. 7, ch. 78-403; s. 5, ch. 80-292; s. 21, ch. 94-224; s. 29, ch. 97-13; s. 31, ch. 99-2; s. 3, ch. 2000-250.

**97.105 Permanent single registration system established.**--A permanent single registration system for the registration of electors to qualify them to vote in all elections is provided for the several counties and municipalities. This system shall be put into use by all municipalities and shall be in lieu of any other system of municipal registration. Electors shall be registered in pursuance of this system by the supervisor or by a deputy supervisor, and electors registered shall not thereafter be required to register or reregister except as provided by law.

**History.**--s. 1, ch. 25391, 1949; s. 2, ch. 26870, 1951; s. 1, ch. 59-237; s. 2, ch. 69-377; s. 1, ch. 73-155; s. 32, ch. 73-333; s. 5, ch. 77-175; s. 23, ch. 94-224.

**Note.**--Former s. 97.01; s. 98.041.

Welcome • Session • Committees • Legislators • Information Center • Statutes and Constitution • Lobbyist Information

Disclaimer: The information on this system is unverified. The journals or printed bills of the respective chambers should be consulted for official purposes. Copyright © 2000 State of Florida. Contact us.

3. Any and all training or instructions provided to Floridians regarding the Division of Driver Licenses involvement with voter registration through the Motor Voter program in compliance with the National Voter Registration Act of 1993.

## RESPONSE

The voter registration poster which is displayed in driver licensing locations and voter registering information available on the Department of Highway Safety and Motor Vehicles internet site is included in the submission of responsive documents.

# REGISTER TO VOTE NOW
# IN YOUR DL OFFICE

**The following voter registration services can be performed in any driver license office:**
- **register to vote in Florida**
- **change your name and/or address, if changed since you last voted**
- **enroll in a political party or change your enrollment**

## TO REGISTER YOU MUST:

- be a U.S. citizen.
- be a Florida resident.
- be 18 years old (you may preregister if you are 17).
- not now be adjudicated mentally incapacitated with respect to voting in Florida or any other state.
- not have been convicted of a felony without your civil rights having been restored pursuant to law.
- not claim the right to vote in another county or state.

NOTICE: The office at which you register, or your decision not to register, will remain confidential and will be used for voter registration purposes only.

## SOCIAL SECURITY NUMBER:

The disclosure of your social security number is voluntary. It is being requested pursuant to Section 97.052(2) (k), Florida Statutes. Although your social security number will only be used for registration purposes, it will be open to ᵇlic inspection.

## DEADLINE INFORMATION:

If you choose to register in this office, your registration application will be delivered to your county supervisor of election and the date of processing will be your registration date. **You must be registered at least 29 days before you can vote in an election.**

If your application is complete and you are qualified as a voter, a registration identification card will be mailed to you.

## RACE/ETHNICITY:

(1) American Indian or Alaskan Native
(2) Asian or Pacific Islander
(3) Black, not of Hispanic origin
(4) Hispanic
(5) White, not of Hispanic origin

## PARTY AFFILIATION:

- Democratic Party
- Republican Party
- Other Party (minor political party)
- None (no party affiliation)

You can only vote for candidates of your party affiliation in primary elections. However, you may vote for any candidate regardless of your party affiliation in the general election. You may also vote for nonpartisan candidates and issues in any election, regardless of party affiliation.

**QUESTIONS:** Call your county elections office or 1-800-3FL-VOTE (1-800-335-8683). Hearing impaired with TDD, may call 1-800-303-3805.

*(Otro lado por Español)*

# Registering to Vote

**Register to Vote at Your Driver License Office**
You can register to vote while doing your driver license business! A driver license examiner will ask you if you wish to register to vote, change your address or party affiliation and provide you with documentation of registration or changes at the time you receive your license. Your official registration card will be mailed later from your local supervisor of elections office. Take advantage of this great service - it's free.

If you'd like to register or change your voter registration address on-line, click here.

---

**HOME | Driver License | Tag & Title | Highway Patrol | Email Us | Phones | Search**

4. Samples of the application completed by a Division of Driver Licenses examiner to register any Floridian to vote through the Motor Voter program in compliance with the National Voter Registration Act of 1993 are included in the submission of responsive documents.

**RESPONSE**

A sample voter registration application generated by the driver license automated application process is included.

| 1 | Are you a U.S. citizen? YES | | 2 | [X] I am not a convicted felon, or if I am, my rights relating to voting have been restored. | 3 | [X] I have not been adjudicated mentally incapacitated, or if I have, my competency has been restored. | | Official Use Only |
|---|---|---|---|---|---|---|---|---|
| 4 | Type: NEW | | | | 5 | Date of Birth: 01/01/1950 | | |
| 6 | Last Name LICENSE | | | Suffix | First Name FLORIDA | | Middle Name COMMERCIAL | 7 Sex M |
| 8 | Legal Residence Address 2900 APALACHEE PARKWAY | | | | City TALLAHASSEE | | Zip Code FL 32399-0500 | 10 County LEON |
| 9 | Mailing Address 2900 APALACHEE PARKWAY | | | | City TALLAHASSEE | | Zip Code FL 32399-6552 | |
| 11 | Homestead exemption address | | | | City | | Zip Code | |
| 12 | Last 4 digits of Social Security Number: 6213 | | | | 13 Race S | 14 Daytime Phone: | Ext. | 15 FL DL/ID number: L252-243-50-001-0 |
| 16 | Party Affiliation SOUTHERN PARTY OF FLORIDA | | | | 20 | Oath: I do solemnly swear (or affirm) that:<br>- I will protect and defend the Constitution of the United States and the Constitution of the State of Florida.<br>- I am qualified to register as an elector under the Constitution and laws of the State of Florida.<br>- I am a U.S. citizen.<br>- I am a legal resident of Florida.<br>- All information on this form is true. I understand that if it is not true, I can be convicted of a felony of the third degree and fined up to $5,000 and/or imprisoned for up to five years. | | |
| 17 | Former Name if mailing a name change | | | | | | | |
| 18 | Name & Address where last registered | | | | | | | |
| 19 | Voting Assistance? NO | | | | Signature or Mark | | 02/07/01 11:47 174467 | |

NOTE: The fact that you registered or vote at this office will remain confidential and used for voter registration purposes only.

5.  Any and all "end of the day" motor voter reports from October 1, 1999 through October 31, 2000.

**RESPONSE**

The local driver licensing office forwarded all "end of day" motor voter reports to the appropriate Supervisor of Elections.  It was the department's legal interpretation that s. 97.057(4), F.S. prohibits the department from retaining a copy of the "end of day" records.  The department's legal staff has revisited this interpretation and advised the division to retain a copy of all "end of day" motor voter reports.