UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 01-120-CIV-GOLD/SIMONTON

------------------------------------------------------------------------x

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF
COLORED PEOPLE, INC. by its FLORIDA STATE
CONFERENCE OF BRANCHES, et al.,

                Plaintiffs,

vs.

JIM SMITH, Secretary of State of Florida; et al.,

                Defendants.

------------------------------------------------------------------------x

NIGHT BOX
FILED
SEP 1[?] 2002
CLARENCE MA[DDOX]
CLERK, USDC / S.D.FL./MIA

## NOTICE OF FILING FULLY EXECUTED SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND DEFENDANT PAM IORIO

Plaintiffs hereby give notice of filing the attached fully executed Settlement Agreement between Plaintiffs and Defendant Pam Iorio, dated August 30, 2002, and state as follows:

1. On September 3, 2002, Plaintiffs submitted a Notice of Filing a copy of the Settlement Agreement between Plaintiffs and Defendant Pam Iorio. In that Notice, Plaintiffs indicated that an original copy of the agreement would be filed subsequently.

2. Attached herein is an original Settlement Agreement between Plaintiffs and Defendant Pam Iorio, bearing original signatures from both parties.

Dated: September 16, 2002

Respectfully submitted,

Barbara Arnwine
Thomas J. Henderson*
Anita S. Hodgkiss*

*/s/ Lori Outzs Borgen*

Lori Outzs Borgen*
Cara Fineman*
Lawyers' Committee for Civil Rights
 Under Law
1401 New York Ave., N.W., Suite 400
Washington, D.C. 20005-2124
Tel. 202-662-8600 or 888-299-5227
Fax 202-783-5130
lborgen@lawyerscomm.org

SETTLEMENT AGREEMENT
NAACP ET AL. V. SMITH ET AL., CASE NO. 01-0120-CIV
GOLD/SIMONTON

In a joint effort to resolve any and all pending claims, the named Plaintiffs in the above-styled lawsuit, and Defendant Pam Iorio, Hillsborough County Supervisor of Elections ("The Supervisor"), agree and stipulate as follows:

I. INTRODUCTION

    A. Nothing contained in this Settlement Agreement ("Agreement") shall be considered or interpreted to be an admission of liability or wrongdoing by the Supervisor. The Supervisor has taken an oath to support, protect and defend the Constitution and the laws of the United States and of the State of Florida. The Supervisor is dedicated to act in a manner consistent with the requirements of federal, state, and local election law. Plaintiffs have not alleged that the Supervisor acted in a purposefully discriminatory manner toward any group. It is further understood by the Parties that following the November 2000 general election, new laws, rules, and procedures were implemented in Florida that affect the registration and voting process. The Supervisor contends that these changes have made necessary some of the practices called for within this Agreement. This Agreement is entered into by the Parties in order to resolve this litigation in the most effective and efficient manner for all Parties and in mutual recognition that it is in the Parties' best interest to resolve this matter in lieu of incurring the expense and time of a trial. To the extent that this Agreement states that the Supervisor will "continue" a practice or policy, such language is not an admission by Plaintiffs that the Supervisor has previously undertaken such a practice or policy, nor do Plaintiffs deny such, but reflects the Supervisor's belief that she is merely continuing practices that she engaged in prior to this Agreement.

    B. Unless otherwise set forth herein, nothing in this Agreement creates any administrative duties or judicial remedies or causes of action, with respect to Florida voter registration, election procedures or list maintenance other than exist under relevant state and federal law on the date this Agreement is executed by the Parties. Nothing in this Agreement creates any liability, cause of action or enforcement right under Section II.H of the Agreement against the Supervisor, arising from or related to any action or inaction by third parties, including without limitation the Secretary of State, Division of Elections, Florida Department of Children and Families, Florida Department of Highway Safety and Motor Vehicles, and any Supervisor of Elections of any county other than Hillsborough County, Florida, in response to or as a result of actions undertaken by the Supervisor pursuant to the terms of this Agreement.

    C. The Supervisor's obligations under this Agreement shall not apply to municipal elections that are not conducted in conjunction with a countywide election.

II. AGREEMENT

In exchange for the Plaintiffs' agreement to file a voluntary dismissal with prejudice of this action against the Supervisor, the Supervisor agrees:

1

A. Administration of Voting at Precincts

1. To continue to maintain a list, within each precinct register, of active and inactive voters within each precinct.

2. At least 30 days before each federal, state, or county election, beginning with the 2002 General Election, the Supervisor will provide to Plaintiffs' counsel and make available to the general public a report and supporting documents containing (a) plans for improving the communications system between the polling places and the Supervisor of Election's office, including the number of phone lines (b) which precincts will have computers, the criteria used for assigning the computers to the precincts, and the method for accessing data, and (c) the method by which voters who reside and are registered in Hillsborough County who appear at the wrong precinct will be assisted in finding the location of their correct precinct and polling place.

3. The Supervisor plans to gradually increase the number of laptop computers and technicians to operate the computers at precincts. Increase will depend on funding and successful recruitment of personnel. The Supervisor will allocate 75 laptop computers for use at precincts during the 2002 General Election and will assign qualified personnel to operate the computers.

4. To continue to assign at all times at least one poll worker to each polling site who is trained to instruct voters on the use of the voting equipment.

5. To continue not to post any sign that states that a voter "must" have photo identification in order to cast a ballot and to continue to provide a form at the check-in table that a voter can complete if he or she does not have any photo identification or does not have identification of the type approved under Florida law.

6. Pursuant to Florida's Public Records Law, Chapter 119.07(1)(a), and upon request and without charge to provide to anyone who tries but is not allowed to vote during such election a copy of his or her voter affirmation form or other similar form, along with an explanation for the basis for his or her not being allowed to vote within 60 days of the request.

7. To continue the practice of requesting that all poll Clerks complete a survey regarding election day administration and/or the operations at the precinct during the election, after each election, and to continue to make comment cards available at each precinct, for anyone to complete and return to the Supervisor.

B. Provisional Ballots

1. To continue to train all poll clerks on the use of provisional ballots, including the following elements:

    a. To determine if a voter is in the correct precinct based on the voter's current residential address before giving the voter a provisional ballot, and if the voter is not in the correct precinct, to direct the voter to the correct precinct;

2

      b.    To instruct voters that their ballot will not be counted if they are in the wrong precinct;

      c.    To offer a provisional ballot to any voter who does not receive a regular ballot, even if the Supervisor of Elections' data indicates that the voter is ineligible to vote;

      d.    To offer a provisional ballot to any voter for whom the poll worker is not able to determine eligibility, for example, based on an inability to communicate with the Supervisor of Elections' office or otherwise review countywide voter registration data on Election Day;

      e.    To instruct voters to accurately complete the provisional ballot envelope by supplying all requested information, in order to assist in determining whether or not the voter is eligible to vote, as outlined in section 101.048, Florida Statutes.

2.    To continue the current practice, following each election, to provide a written explanation by first class mail to the address on the Provisional Ballot Voter's Certificate and Affirmation if available, and if not available, to the address on record in the Supervisor's office, for those persons whose provisional ballots are not counted, disqualified, or "Rejected as Illegal," pursuant to section 101.048(2)(b) of the Florida Statutes, of the reason(s) for the rejection of the provisional ballot.–Beginning with the November 2002 general election, the Supervisor will make reasonable efforts to provide such explanation in a timely manner before the book closing date for the next scheduled election, so long as such book closing date is at least thirty days after the date of the election in which the subject provisional ballots were cast. Should circumstances prevent completion of this task in a timely manner for all provisional ballots, such failure shall not constitute a breach of the Agreement.

3.    To continue to provide notice of the time and date of the canvassing board meeting where the validity of provisional ballots will be determined pursuant to section 102.141(2), Florida Statutes.

C.    Voter Education

    1.    To continue, upon request, to conduct workshops for persons interested in engaging in voter registration drives, including information regarding provisional ballots.

    2.    To continue outreach activities consistent with Rule 1S-2.033, Florida Administrative Code.

    3.    To continue to work to develop plans to expand voter registration outreach to all voters, including minorities within the community.

3

D. Voter Registration

1. To continue to make reasonable efforts to process (including the mailing of voter registration cards) voter registration applications and registration changes within 30 days of receipt of the application.

2. To continue to make reasonable efforts to mail voter registration cards, for all new voter registration applications received by book closing date for that election, at least 10 days before the election. To continue to make reasonable efforts to process registration changes received by the book closing date, prior to Election Day, even if new registration cards cannot be sent to those voters, to ensure that on Election Day every eligible voter whose registration or registration change was timely received, is on the voter rolls with their current address and will be able to vote. Inability to meet these deadlines will not constitute a breach of this Agreement.

E. List Maintenance

1. To continue to comply with the Supervisor's legal duty to conduct list maintenance in conformance with all state and federal laws. Further, the Supervisor will follow the applicable list maintenance provisions specified in Section III and IV of the Settlement Agreement, dated August 30, 2002, between named Plaintiffs in this lawsuit and the Florida Secretary of State and the Director of the Division of Elections and in communication(s) issued by the Secretary of State or the Division of Elections pursuant thereto.

2. To provide to Plaintiffs an electronic list of those voters who were placed in canceled status in Hillsborough County as a result of their being in inactive status and failing to vote in the November 7, 2000 election, as the second general election in which such persons did not vote after being placed in inactive status. The list will not include any such persons whose status changed to deceased, active, or other status, after having been placed in canceled status as described above.

3. To not remove from the voter rolls, or deny registration to, any ex-felon based on a felony conviction outside the State of Florida if the Supervisor knows that such individual's felony conviction occurred in a state that grants automatic restoration of rights to those with felony convictions (including the states identified pursuant to Section III.D of the Settlement Agreement between Plaintiffs and the Secretary of State and the Division of Elections) unless (a) directed differently by the Division or (b) the Court issues a ruling to the contrary.

F. Ongoing Consultation

1. In accordance with the Supervisor's current practices of meeting with all members of the public, to meet with Hillsborough County named Plaintiffs and their counsel on at least one occasion at a mutually convenient time to discuss, address, and correct, to the extent possible, the problems encountered by Hillsborough County named Plaintiffs. Plaintiffs have not yet requested a

4

    meeting with the Supervisor, and the Supervisor will meet with plaintiffs at a mutually convenient time. Plaintiffs' counsel shall contact the Supervisor's counsel to schedule the meeting.

  2. In accordance with the Supervisor's current practices, to continue to meet with representatives of the local NAACP regularly prior to the 2002 General Election and 2004 Elections and solicit their views on what steps are needed to ensure successful elections.

G. Implementation of Statewide Relief

  1. To comply with lawful directions from the Secretary of State which the Supervisor is obligated to follow by law implementing any further relief obtained in this litigation, whether through agreement, settlement, or Court order.

  2. The Parties agree to incorporate, into this Agreement, Section VIII as fully set forth in the Settlement Agreement, dated August 30, 2002, between named plaintiffs in this lawsuit and the Florida Secretary of State and the Director of the Division of Elections.

H. Enforcement

  1. The term of this Agreement shall extend through May 15, 2005. The Parties shall maintain copies of all documents relating to the satisfaction of this Agreement through the May 15, 2005, end date of the Agreement.

  2. Plaintiffs' voluntary dismissal of their claims against the Supervisor is based and conditioned on this Agreement and the performance of its obligations. Nothing contained herein shall be interpreted to waive any claims Plaintiffs may make against other Defendants in this litigation, including in particular State Defendants. Unless specifically waived in the Agreement, Plaintiffs have not waived and do not relinquish any rights under federal and state law.

  3. Upon execution of the Settlement Agreement, the Parties will file a Joint Motion for Approval of this Agreement and Dismissal With Prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure along with a dismissal with prejudice of all claims against the Supervisor. Upon approval of this Agreement, the Parties will ask the Court to enter a Final Order dismissing with prejudice all claims against the Supervisor consistent with the terms of this Agreement which shall be attached to the Order of Dismissal. This Agreement shall not be effective until entry of the Order dismissing the Supervisor with prejudice. This Agreement is not a consent decree, nor shall it be construed as such, and the Court shall not retain jurisdiction.

  4. Notwithstanding the Order of Dismissal, the Parties agree that enforcement of the Agreement shall proceed as follows:

    a. If Plaintiffs believe that the Supervisor has materially breached the terms of this Agreement, Plaintiffs' counsel will provide a written notice via traceable U.S. mail or private courier, including but not limited to certified mail with return receipt requested or overnight mail ("Notice")

to the Supervisor of the provisions of this Agreement with which they believe the Supervisor has not complied. Such notification shall be sent by Plaintiffs within ten (10) business days of discovery of such alleged breach, and a copy shall be forwarded to the Supervisor's counsel. The Supervisor agrees that, upon receipt of this Notice, the Supervisor will conduct an investigation and respond, in writing, via one of the methods set forth above, to Plaintiffs within ten (10) business days of receipt, such response to be sent to the person who provided notice to the Supervisor. There shall be no award of attorneys' fees or costs to either party for any actions/inactions taken at this stage, regardless of the eventual outcome of the dispute.

  b. If Plaintiffs reasonably believe that the response provided by the Supervisor does not resolve the issue of alleged noncompliance, the Parties may invoke mediation procedures as described in Chapter 9 of the Local Rules of the United States District Court, Middle District of Florida to resolve the matter; provided that Plaintiffs may not file an action pursuant to paragraph 4c, unless mediation occurs or is waived by both Parties. The mediation shall occur in Hillsborough County. The costs of mediation shall be divided evenly between the Parties. Each party to the mediation shall bear its own costs and attorneys' fees. Mediation must occur within thirty days of the Supervisor's written response to the Notice unless otherwise agreed in writing by the Parties. For alleged violations which Plaintiffs, in good faith, reasonably believe may result in immediate and irreparable harm to Plaintiffs, the Notice shall so indicate this belief, and the Parties must then make reasonable efforts to commence Mediation within five business days of the Notice. Neither side is entitled to attorneys' fees or costs for any time devoted to this mediation process, regardless of outcome.

  c. If the issue(s) of alleged noncompliance raised in the Notice is not resolved during mediation, then Plaintiffs' sole recourse is to file a separate action for breach/enforcement of this Agreement in the United States District Court for the Middle District of Florida to enforce the Agreement's terms. The Supervisor will not object to the filing of such a case on the grounds of lack of jurisdiction, or seek to transfer this action to state court. Plaintiffs will not seek to transfer any action under this Agreement to any District Court other than the United States District Court for the Middle District of Florida. Strict compliance with ¶ H(4)(a)-(b) is agreed by the Parties to be a condition precedent to the filing of any such lawsuit. Neither Party may recover attorneys' fees or costs for any such action unless the noncompliance with this Agreement that is the subject of the action is determined by the Court to constitute a separate violation of federal or state law and such fees are provided for pursuant to said law.

5. The terms of this Agreement are binding on the Supervisor and the Supervisor's successors. This Agreement may be enforced from the date of the Order of Dismissal referred to in ¶ H(3) until May 15, 2005.

6. The Plaintiffs and Supervisor acknowledge that no election is error free. Should the Plaintiffs or their counsel learn of any election related issue during the conduct of any election in Hillsborough County during the term of this Agreement and not otherwise covered by the terms of this Agreement, Plaintiffs may contact the Supervisor, provide specific information on the issue to the Supervisor, and afford an opportunity for the Supervisor to investigate the matter. Within 30 days, Supervisor may meet with Plaintiffs, the aggrieved individuals, and/or their counsel prior to the initiation of any litigation by Plaintiffs or their counsel against the Supervisor relating to any such issue not covered by the terms of this Agreement.

I. Attorneys' Fees and Costs

1. Each party to this Agreement shall bear its own attorneys' fees and costs in this action.

3. The Supervisor will waive all unpaid costs incurred to date by Plaintiffs to obtain public records including photocopying fees and costs.

J. Public Statement and Press Release

1. The Parties agree that neither Party will issue any public statement regarding this Agreement until it is formally presented to the Court for its approval.

2. Upon presentation of this Agreement to the Court, the Parties will issue a joint press release regarding the settlement agreement, the contents of which will be agreed upon by the Parties in advance.

K. Execution

The Parties having reviewed the above terms and conditions, and being in mutual agreement thereto, do hereby execute this Agreement by counterpart in the following manner.

Dated: August 30, 2002

_____
Pam Iorio, Supervisor of Elections
Hillsborough County, Florida
601 E. Kennedy Blvd., 16th Floor
Tampa, FL 33602

For Defendant

_____
Anita Hodgkiss
Lawyers' Committee For Civil Rights
1401 New York Ave., N.W., Ste. 400
Washington, D.C. 20005

For Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing was served by U.S. Mail on the following counsel on this 16th day of September, 2002:

John W. Little, III, Esq.
Walter J. Harvey, Esq.
Steel Hector & Davis, LLP
Attorneys for Secretary of State and
Director, Division of Elections
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401

George L. Waas, Esq.
Douglas B. MacInnes, Esq.
Office of the Attorney General
Department of Legal Affairs
PL-01 The Capital
Tallahassee, FL 32399-1050

H. Ray Allen, II, Esq.
Florida Bar No. 255890
Hillsborough County Attorney's Office
601 E. Kennedy Blvd., 27th Floor
Tampa, FL 33602
AllenR@hillsboroughcounty.org
Attorney for Defendant Pam Iorio,
Supervisor of Elections of
Hillsborough County

Michael Cirullo, Jr., Esq.
Florida Bar No. 973180
Josias Goren Cherof Doody & Ezrol, PA
3099 E. Commercial Blvd., Suite 200
Ft. Lauderdale, FL 33308-4311
mcirullo@cityatty.com
Attorney for Defendant William Cowles,
Supervisor of Elections of
Orange County

_____
Lori Outzs Borgen, Esq.