**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 01-120-CIV-GOLD/SIMONTON**

**NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE
INC., by its FLORIDA STATE CONFERENCE
OF BRANCHES, et al.,**



FILED by _____ D.C.

**SEP 1 9 2002**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

       Plaintiff,

vs.

**JIM SMITH, Secretary of State of Florida, et al.,**

       Defendants.

_____/

## SECOND AMENDED ORDER

      THIS MATTER is before the Court on *Plaintiffs' Motion to Withdraw Request for Class Certification* **[D.E.611]** and the Parties' *Joint Motions for Approval of Settlement Agreements and Dismissal with Prejudice* **[D.E. 605 & 606]**.  Copies of the Settlement Agreements are attached as Exhibits A, B, C, D, and E.  Upon consideration of the matter, the court finds and concludes as follows:

      1. By its motion to withdraw request for class certification, the Plaintiffs' request seek permission to withdraw their request for class certification **[D.E. 100]**, and for the Court to vacate so much of its July 31, 2002 Interim Order on Class Certification and Motions for Summary Judgment **[D.E. 520]** as granted conditional certification as to subclasses specified therein.  The Court **GRANTS** Plaintiffs' motion and hereby **WITHDRAWS** and **VACATES** conditional class certification as specified in its prior Order.

1

2. The parties' Joint Motions for Approval of Settlement Agreements and for Dismissal with Prejudice are hereby **GRANTED** and the cause is hereby **DISMISSED WITH PREJUDICE**.   Under the unique circumstances of this case, the Court concludes that class notice and a fairness hearing is not required.   The Court is clearly satisfied that there has been no abuse of the class action device, no collusion, and no prejudice to absent putative class member. In so finding, the Court notes the comprehensive scope of the settlements: the public benefit and purpose involved, the fact that the settlement agreements involve only equitable relief and do not provide for monetary awards to any individual plaintiffs, the need to implement the settlement terms, to the extent practical before the November, 2002 General Election, and the presence in this lawsuit of a named institutional Plaintiff (the NAACP) that will represent the interest of subclass members in monitoring implementation.

3. The pro se motion of Willie Steen **[D.E. 609]** to reconsider the Court's order dismissing him as a party in the case **[D.E. 574]** is **DENIED**.

4. This case is hereby **CLOSED**.


DONE AND ORDERED in chambers at Miami, Florida, this *18* day of September 2002.


**ALAN S. GOLD**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:
**U.S. Magistrate Judge Andrea Simonton**
**(See attached Service List)**

## SERVICE LIST

Anita S. Hodgkiss, Esq.
Lori Outzs Borgen, Esq.
Barbara Arnwine, Esq.
Thomas J. Henderson, Esq.
Lawyers' Committee for Civil Rights Under Law
1401 New York Avenue, Suite 400
Washington, D.C. 20005-2124
Telephone # (202) 662-8315 (A. S. Hodgkiss
Direct Line)
Main Telephone # (202) 622-8600
Fax # (202) 783-5130
E-mail: ahodgkiss@lawyerscomm.org
**Attorney for all of the Plaintiffs**

John W. Little, III, Esq.
Steel Hector & Davis, LLP
1900 Phillips Point West
777 S. Flagler Drive, Suite 1900
West Palm Beach, FL 33401-6198
Telephone # (561) 650-7270
Fax # (561) 655-1509
E-mail: jlittle@steelhector.com
**Attorney for Katherine Harris, Secretary of
State of Florida and Clay Roberts, Director of
the Florida Division of Elections**

H. Ray Allen, II, Esq.
Senior Assistant County Attorney
Julia Mandell, Esq.
Ken Tinkler, Esq.
Assistant County Attorneys
Hillsborough County Attorney's Office
601 E. Kennedy Boulevard, 27th Floor
Tampa, FL 33602
Telephone # (813) 272-5670
Fax # (813) 272-5846
E-mail: allenr@hillsboroughcounty.org
**Attorneys for Hillsborough County
Supervisor of Elections Pam Iorio**

Thomasina H. Williams, Esq.
Law Office Williams and Associates, P.A.
Brickell Bay View Centre, Suite 1830
80 S.W. Eighth Street
Miami, FL 33130
Telephone # (305) 379-6676
Fax # (305) 379-4541
E-mail: wmslaw@winstarmail.com
**Attorney for all of the Plaintiffs**

George L. Waas, Esq.
Douglas B. MacInnis
Assistant Attorneys General
Department of Legal Affairs
PL-01, The Capitol
Tallahassee FL 32399-1050
Telephone # (850) 414-3662
Fax # (850) 488-4872
E-mail: George_Waas@oag.state.fl.us
**Attorneys for Fred Dickinson,
Executive Director
Florida Department of Highway
Safety and Motor Vehicles and
Kathleen Kearney, Secretary of the
Florida Department of Children and Families**

Michael D. Cirullo, Jr., Esq.
Josias, Goren, Cherof, Doody & Ezrol, P.A.
3099 E. Commercial Boulevard, Suite 200
Ft. Lauderdale, FL 33308-4311
Telephone # (954) 771-4500
Fax # (954) 771-4923
E-mail: mcirullo@cityatty.com
**Attorney for Orange County Supervisor of
Elections William Cowles**

Mr. Willie Steen
1308 E. Norfolk Street
Tampa, FL 33604-5032

**EXHIBIT A**

## SETTLEMENT AGREEMENT

## SECTION I.  PARTIES AND TERM OF AGREEMENT

**A. Parties**.  This Settlement Agreement (hereinafter "Agreement") is entered into between the following (hereinafter collectively referred to as "Parties"):

Those named Plaintiffs in the lawsuit styled:
*National Association for the Advancement of Colored People, Inc. et al. v. Jim Smith, Florida Secretary of State, et al.* (Case No. 01-0120-CIV-GOLD/SIMONTON) in the United States District Court for the Southern District of Florida (hereinafter "Plaintiffs")

and

Defendants Jim Smith, Secretary of State of Florida, and Edward C. Kast, Director of the Division of Elections (hereinafter "Defendants").

**B. Term**.  This Agreement shall be effective upon final Court approval as set out below, and shall continue through May 15, 2005.  The terms of this Agreement are binding on Defendants and their successors.  The Parties shall maintain copies of all documents related to satisfaction of this Agreement through the May 15, 2005 end date for the Agreement.

## SECTION II. MUTUAL UNDERSTANDINGS; PURPOSE AND INTENT; AGREEMENT APPROVAL PROCESS

**A.  No Concessions Regarding Allegations**.  It is mutually understood by the Parties that nothing contained in this Agreement shall be considered or interpreted to be an admission of liability or violation of any laws by Defendants, nor shall it be considered an admission by Plaintiffs of an inability to prove the allegations raised  in the lawsuit.  Rather, the Parties are entering into this Agreement to resolve the existing litigation in the most effective and efficient manner for all involved.  To the extent that this Agreement states that Defendants will "continue" a practice or policy, such language is not an admission by Plaintiffs that Defendants have previously undertaken such a practice or policy.  Similarly, to the extent that this Agreement states that Defendants will take or refrain from any action, such language is not an admission by Defendants that they have not already implemented or refrained from such a practice independent of this lawsuit or Agreement.

**B.  Purpose and Intent of Agreement.**  Defendants have taken an oath to support, protect and defend the Constitution and laws of the United States and of the State of Florida, and are dedicated to act in a manner consistent with the requirements of federal, state and local election law. Plaintiffs have not alleged that Defendants acted in a purposefully discriminatory manner toward any group.  It is further understood by the Parties to this Agreement that following the November 2000 general election, new laws, rules and procedures were implemented in Florida that affect the registration and voting process.  Defendants contend that these changes have made necessary some of the practices called for within this Agreement.  In

1

exchange for the Plaintiffs' agreement to file a voluntary dismissal of this action with prejudice against Defendants, Defendants agree to follow the specified procedures.   Nothing in this Agreement is intended  or shall be interpreted to alter the Defendants' authority with respect to voter registration or election procedures from that established by relevant state and federal law as it exists on the date this Agreement is executed by the Parties.  Nothing in this Agreement creates any administrative duties or judicial remedies or causes of action, with respect to Florida voter registration or election procedures other than exist under relevant state and federal law on the date this Agreement is executed by the Parties.  Nothing in this Agreement creates any liability, cause of action or enforcement right under Section IX of the Agreement against the Defendants, arising from or related to any action or inaction by third parties, including without limitation Supervisors of Elections, in response to or as a result of actions undertaken by Defendants pursuant to the terms of this Agreement.

**C.  Class Certification Understanding.**  This litigation was brought as a class action. On July 31, 2002, the Court conditionally certified four subclasses of voters against Defendants. Plaintiffs hereby agree to request that they be permitted to withdraw their request for class certification as it relates to Defendants.  Therefore, the Parties believe the requirements of Rule 23(e) of the Federal Rules of Civil Procedure do not apply and need not be followed.  To the extent that the Court determines that Rule 23(e) approval is required, the Parties will submit a joint proposal regarding Rule 23(e) compliance within ten (10) days from the Court's determination.  The Parties and their Counsel further agree that the fact of this settlement shall not be cited or urged by them in this or other litigation as an indication of the propriety of class certification.

**D.  Effect of Agreement Upon Remaining Lawsuit.**  Nothing contained herein shall be interpreted to waive any claims Plaintiffs may have or make against other defendants in this litigation, whether they be State or local defendants.  Unless otherwise specifically waived in this Agreement, the Parties have not waived and do not relinquish any rights under federal and state law.

**E.  Approval of Agreement.**  Upon execution of this Agreement, Counsel for Plaintiffs and Defendants agree to file a "Joint Notice of Settlement and Motion for Dismissal With Prejudice" pursuant to Fed. R. Civ. P. 41(a)(2).  That Joint Notice shall request that the Court enter a final order of dismissal with prejudice of all claims against Defendants, based upon the terms of this Agreement, which shall be attached to the Order of Dismissal.  This Agreement is not effective unless or until Defendants are dismissed with prejudice on the terms described above.  This Agreement is not a consent decree, nor shall it be construed as such, and the Court shall not retain jurisdiction.

**SECTION III.**          **ANALYSIS OF CERTAIN LISTS PROVIDED TO SUPERVISORS OF ELECTIONS IN 1999 AND 2000 BY THE DIVISION OF ELECTIONS.**

**A.**  The Division will apply its current matching criteria described in Exhibit "A" to the lists provided by DBT to the Plaintiffs in DBT's settlement of this litigation, excluding those individuals identified at that time as having clemency and whose names therefore were not transmitted to the counties in 1999 and 2000.  The resulting list will contain the names of voters

who were included in a felons or duplicates exceptions list transmitted to the counties in 1999 and/or 2000 but who do not meet the current matching criteria contained in Exhibit "A." This list will be referred to as the "Report of Filtering Results." The "matches" in 2000 with data from states with "automatic restoration" shall be addressed pursuant to III.D. below.

**B.** Defendants will transmit the Report of Filtering Results to the respective county Supervisors of Elections, together with a letter from the Division which informs the Supervisors that, pursuant to the settlement of this litigation:

(1) The 1999 and 2000 felons and duplicates exceptions lists were re-analyzed using more stringent criteria in an attempt to identify potential "false positives."

(2) The Report of Filtering Results for the county is being provided for the Supervisor's review and reevaluation. The Supervisor should review person-by-person the Report of Filtering Results and determine whether each person included on the lists who was removed from the voter roll was correctly removed. With respect to individuals originally on a felon exceptions list, that review and reevaluation should also include the provisions of paragraph C below. With respect to individuals originally on a duplicate exceptions list, the review and reevaluation should include the steps described in Section IV.C. of this Agreement.

(3) To the extent that the Supervisor's review and reevaluation determines that the name of any elector has been erroneously removed from the registration books, section 98.081(3), Florida Statutes, requires that "the name of the elector shall be restored by the Supervisor upon satisfactory proof, even though the registration period for that election is closed."

(4) Notwithstanding the provisions of B(1) through B(3) above, further review and reevaluation is not necessary:

(i) to the extent that the Supervisor did not utilize the 1999 and 2000 felon or duplicate exceptions lists to identify voters whom the Supervisor removed from the voter rolls before the November, 2000 election or if the voter's name is still on the voter rolls,

(ii) with respect to any individual removed from the voter rolls in 1999 or 2000 based on the felon or duplicate exceptions lists provided by the Division for whom a Supervisor has a written file or record documenting that the initial determination of ineligibility resulted from personal contact between the individual and the Supervisor's Office establishing the initial determination of ineligibility, or

(iii) for whom a Supervisor has a written file or record documenting that the initial determination of ineligibility resulted from information provided to the Supervisor's Office by a state or federal official, including pursuant to section 98.093(1), (2) or (3), Florida Statutes.

(5) As to any individual appearing on the Report of Filtering Results who is

3

restored to the voter rolls as provided in this section, the Supervisor should provide the Registration Identification Card described in section 97.071, Florida Statutes, and a letter indicating that the individual had previously been removed from the voter rolls and is being restored to the rolls.

(6) Each Supervisor is requested, upon completion of review and reevaluation of individuals on the Report of Filtering Results, to provide information to the Division concerning the results (numbers of persons restored to the rolls, etc.) of the review and reevaluation process.

C.  Felon Exception Lists

(1)    Defendants further agree to identify, based on "DOE" coding in the Report of Filtering Results, those individuals in that Report who were included on the original felon exceptions lists in 1999 or 2000 because of a "match" with data from the Florida Department of Law Enforcement.

(2)    When transmitting the Report of Filtering Results to the Supervisors, Defendants will advise that where a "match" was made with data from the Florida Department of Law Enforcement in producing the 1999 and 2000 felon exceptions lists, the original determination of ineligibility should be reevaluated by the Supervisor because the Division cannot guarantee the accuracy of each entry on the list.

(3)    Defendants will advise Supervisors that this reevaluation is not necessary as to individuals whom, Supervisors' records document, were mailed notice of potential ineligibility and of the opportunity to appeal to FDLE the original determination of eligibility.

(4)    If such records are not available, or if no letter or other written notice was sent to the individuals previously identified on the felon exceptions lists, Supervisors should send the notice of ineligibility provided for under section 98.0977(3), Florida Statutes, together with notice of the opportunity for an appeal to FDLE, to individuals on the list by certified mail at their last known address.

(5)    If the individual did not respond to the notice mailed pursuant to paragraphs (3) and (4) above but subsequently seeks to vote during the term of this Agreement, the Supervisor should allow such individual to vote a provisional ballot pursuant to section 101.048, Florida Statutes, if that individual appears at or is directed to (and arrives during the posted polling hours at) his or her precinct and executes the Provisional Ballot Voter's Certificate.  In determining whether to count a provisional ballot completed by such individual, the Supervisor should inform the County Canvassing Board, for its consideration, of the basis for the 1999 or 2000 removal of the voter from the rolls and of the Division's advice in paragraph (2) above.  To the extent practical, the Supervisor should also afford notice to the individual of the opportunity for that individual to provide such information as he or she desires to the Supervisor or to pursue a future appeal to FDLE.  The Supervisor should consider any additional information produced as a result of these options in determining whether to restore the individual to the rolls.

(6)    Defendants agree to provide Counsel for Plaintiffs with an opportunity to review and comment upon the communication that the Division plans to include when it transmits the Report of Filtering Results to county Supervisors of Elections.

**D.**  Defendants further agree to identify all individuals included on the original felon exceptions lists in 2000 because of a "match" with data from states with automatic restoration of the franchise (specifically, Ohio, New Jersey, Texas, Connecticut, South Carolina, Illinois, Washington [for convictions after July 1, 1984] and Wisconsin); to make  contact with an appropriate officer or agency of the state in which the conviction was reported in order to determine on a reliable basis whether the individual's rights have been or have not been restored; and to advise county Supervisors of Elections of all individuals whose rights were restored by the state of conviction, for appropriate action by the Supervisor pursuant to section 98.081(3), Florida Statutes.

**SECTION IV.**        **MATCHING CRITERIA AND PROCEDURES, AND METHODS FOR DETERMINING POTENTIAL INELIGIBILITY DURING TERM OF THIS AGREEMENT**

**A.**  During the term of this Agreement, if Defendants conduct any comparisons of individuals on the statewide voter registration database ("central database") with individuals on other databases pursuant to section 98.0977, Florida Statutes, they shall apply and implement the matching criteria and procedures which the Division has previously established, as set forth in Exhibit "A" hereto.

**B.**  During the term of this Agreement, if Defendants conduct any comparison of individuals on the central database with individuals on a database or other compilation of information concerning persons convicted of felonies in states other than Florida, Defendants agree that:

(1) they shall notify Counsel for Plaintiffs of the state(s) involved at least 30 days prior to commencing the comparisons;

(2) in the case of states which provide for automatic restoration of the franchise to ex-felons (Ohio, New Jersey, Texas, Connecticut, South Carolina, Illinois, Washington [for convictions after July 1, 1984] and Wisconsin, and states with similar statutory provisions as identified by Plaintiffs' Counsel and confirmed by Defendants' Counsel), they will not identify an individual as potentially ineligible without first making contact with an appropriate officer or agency of the state in which the conviction was reported in order to determine whether the individual's rights have been restored, and

(3) in the case of other states, they will not identify an individual as potentially ineligible without locating and verifying reasonably reliable data for use with respect to clemency actions.

**C.** During the term of this Agreement, if Defendants conduct any analysis of the central database for the purpose of identifying possible duplicate registrations, they will utilize enhanced

matching criteria as provided in Exhibit "A" and they will transmit information concerning possible duplicate registrations to Supervisors of Elections in each county in which a possible duplicate registration may exist. Defendants agree to advise Supervisors when that information is transmitted that the Supervisors in counties in which the same individual appears to be a registrant should consult together to review the registrant's entire voting history (including the individual's last recorded voting or registration activity) in order to establish that there is in fact a duplicate registration and to determine the jurisdiction on whose rolls the individual should be maintained as a registrant, and that once the Supervisors have made that determination, the registrant should receive notice of the actions taken by the Supervisor(s) removing the registrant by mail sent to his or her last known voter registration address on the records of the county(ies) removing the registrant.

**D.**   Nothing in this section is intended to affect the authority of Supervisors to remove individuals from the voter rolls in accordance with the National Voter Registration Act based upon information provided to the Supervisor's Office by a state or federal official, including pursuant to sections 98.093(1), (2) or (3), Florida Statutes.

**E.**   The Division intends to prepare a training manual on the use of the central database for Supervisors of Elections in performing their duties under section 98.0977, Florida Statutes. Defendants agree to provide Counsel for Plaintiffs with a draft of that manual and the opportunity to review and comment upon it.  Unless otherwise agreed by the Parties' counsel, the Division will provide the draft to Plaintiffs' Counsel for review and comment within ten (10) days from the Division's receipt of the preclearance determination from the Department of Justice.  The Parties to this Agreement further agree that Plaintiffs may pursue the procedures in the Enforcement section (*infra* Section IX) of this Agreement with respect to any portions of the final manual that they contend are inconsistent with the provisions of this Agreement, including the purpose of avoiding erroneous removal of individuals from the voter rolls.

**F.**   Defendants will advise Supervisors of Elections of the various counties that they should consult the Supervisor's voter registration system whenever a voter contacts or visits their offices, in order to determine whether the entry for the voter contains information in all of the data fields on the uniform statewide voter registration application required by section 97.052(2), Florida Statutes, and to attempt to obtain accurate and updated information from the voter for any fields without such data, recognizing that some of the fields are optional.

**G.**   Defendants agree to collect information (through such mechanisms as surveys, statistical reports, in meetings, training sessions, and on-site visits, to the extent the Division deems appropriate) to determine whether and how Supervisors of Elections are implementing the State's list maintenance programs.  Beginning in 2003, Defendants further agree to prepare a report annually based on the collected information during the term of this Agreement.

## SECTION V. NATIONAL VOTER REGISTRATION ACT RESPONSIBILITIES

**A.**   Defendants have designated and created the position of National Voter Registration Act ("NVRA") Coordinator ("Coordinator") within the Division of Elections in order, *inter alia*, to facilitate execution of the coordinating responsibilities of the Secretary of State under the NVRA.

**B.** During the term of this Agreement, Defendants agree that the Coordinator shall be required to spend at least 75% of his or her time coordinating the State's responsibilities under the NVRA.

**C.** A job description for the Coordinator's position is appended to this Agreement as Exhibit "B." That job description enumerates the responsibilities of the Coordinator. Defendants agree that they will not materially change the responsibilities of the Coordinator during the term of this Agreement, and that they shall provide notice to Counsel for Plaintiffs of any modification of the job description or listing of job duties of the Coordinator's position during the term of this Agreement.

**D.** Defendants agree that during the term of this Agreement, the Coordinator shall be delegated the authority vested in the Secretary or Department of State under sections 97.012 and 98.212(2), Florida Statutes, in furtherance of the Coordinator's job duties with respect to the NVRA. Defendants further agree that the authority provided to the Department by these statutes is sufficient to permit the Coordinator to visit the Department of Highway Safety and Motor Vehicles, voter registration agencies or Election Supervisors' offices, to request reasonable reporting of data by such agencies or offices, and to provide training to personnel of such agencies or offices when necessary to ameliorate or prevent potential noncompliance with the NVRA, in addition to regular annual training on the NVRA. The Coordinator will collect information (through such mechanisms as surveys, training sessions and on-site visits, to the extent the Division deems appropriate) of entities required to conduct voter registration under the NVRA to identify challenges or problems and shall make such recommendations as the Coordinator deems appropriate to address them. However, nothing herein creates or enlarges the Division of Elections' authority or control over the agencies and Supervisors with which the Division is coordinating.

**SECTION VI.        UNIFORM        APPLICATION,        OPERATION        AND INTERPRETATION OF ELECTION LAWS**

**A.** During the term of this Agreement, Defendants agree to continue to provide training regarding registration and polling place procedures, as well as NVRA and other legal requirements, at least once annually at the statewide meetings of county Supervisors of Elections, and to consult at that time with Supervisors concerning any implementation problems that they have encountered so that such problems may be addressed through future training, training materials, or recommendations by the Division for such structural or legal changes as may be appropriate.

**B.** Defendants have prepared a manual for pollworkers, *see* section 102.014(5), Florida Statutes, that has been made previously available to Counsel for Plaintiffs to review. This manual sets forth examples of procedures for the conduct of elections that are capable of adoption or replication throughout the State, as appropriate, and that are consistent with applicable legal requirements.

**C.** Defendants agree that, during the term of this Agreement, they will collect information (through such mechanisms as statistical reports, requesting evaluative data and

7

suggestions from Election Supervisors and county election personnel in meetings and training sessions, on-site observation, etc., in a manner that the Division deems appropriate) to address the new procedures in law or problems encountered by voters and pollworkers at the precincts including an assessment of the extent to which actual practice reflects the recommendations within the manual. Beginning in 2003 and continuing through the term of this Agreement, Defendants agree to prepare an annual report of their assessment and to make that report available to the Florida Legislature.

**D.** In making its report, Defendants shall describe the extent of variations throughout the state, and make such recommendations as Defendants deem appropriate for achieving greater uniformity and effectiveness in the conduct of elections, including but not limited to the following areas:

(1) Accessibility to complete registration information for the entire county, in electronic (laptop computer) and/or hard copy format, at each polling place located within that county;

(2) Adequacy of equipment, resources, technology and facilities for election-day communication between polling places and Supervisors' offices (*e.g.*, ratio of telephone trunk lines available for incoming and outgoing calls, etc.);

(3) Adequacy of staffing at polling places;

(4) Availability of alternative voting procedures such as provisional ballots and affirmation voting, and whether individuals who sought to vote by provisional ballot or affirmation but whose ballots were not counted were notified of this fact and given an explanation for the decision not to count their vote;

(5) Availability, at polling places and a central location on Election Day, of assistance to help voters in locating their correct precinct;

(6) Adequacy of poll worker training, including training with respect to new provisions of Florida election law on provisional ballots;

(7) The advisability of providing a receipt when a voter registration application or update is personally delivered to the Supervisor's Office or when a group of five or fewer are personally delivered.

**E.** The Parties to this Agreement agree that nothing in this section is intended nor shall be interpreted to modify or draw into question any provision of any settlement agreement between Plaintiffs and an individual county Supervisor of Elections that has been or may be negotiated in this action.

## SECTION VII.    REPORTING

Defendants agree to provide copies to Counsel for Plaintiffs of any reports or evaluations they receive or produce pursuant to the provisions of this Agreement within 30 days of their

completion or receipt. Where this Agreement requires notice, documents or reports to be provided to Counsel for Plaintiffs, service to the attention of Anita Hodgkiss at the Lawyers' Committee shall constitute notice, reporting and/or service on Counsel for Plaintiffs.

## SECTION VIII.    EFFECT OF CHANGES TO FLORIDA ELECTION LAW

**A.** The Parties recognize that the provisions of this Agreement have been negotiated in light of the passage by the Florida Legislature of the Florida Election Reform Act of 2001 (FERA), which has been granted preclearance under Section 5 of the Voting Rights Act of 1965 by the Attorney General of the United States, and of additional legislation enacted in 2002, specifically Chapters 2002-17 and 2002-189 of the Laws of Florida ("2002 Laws"), most provisions of which have been precleared. This Agreement assumes compliance with and implementation of Florida election law in effect (enacted and precleared) as of the date of this Agreement.

**B.** The Parties further agree that during the term of this Agreement, if additional portions of the 2002 Laws are precleared by the Attorney General of the United States or the United States District Court for the District of Columbia, or if the Florida Legislature amends any portions of Florida election law in effect (enacted and precleared) as of the date of this Agreement, Plaintiffs may pursue the procedures in the Enforcement section of this Agreement (*infra* Section IX) with respect to any changes which Plaintiffs assert substantially impede the State's ability to fulfill its responsibilities under the Voting Rights Act of 1965, the NVRA, or under this Agreement. It is the intent of the Parties that, except as may be determined in proceedings brought by Plaintiffs under the Enforcement section of this Agreement, this Agreement shall be read consistently with all current and future state and federal election law, with the understanding that nothing in this Agreement binds or limits the Florida Legislature in the performance of its duties. Likewise, nothing in this section should be interpreted as a commitment or agreement by Defendants to disregard future state or federal law.

## SECTION IX.    ENFORCEMENT OF AGREEMENT

**A. Written Notification of Alleged Breach and Voluntary Correction.** If Plaintiffs believe that one or both Defendants have breached the terms of this Agreement, Plaintiffs will notify Defendants of the provision of the Agreement with which they allege one or both Defendants have not complied, and with a written explanation of the nature of the alleged breach. Said notification shall be within ten (10) business days of discovering such alleged breach. Upon receipt of this written notice and explanation ("Notice"), either or both Defendants will conduct an appropriate investigation and respond, in writing, within ten (10) business days. However, if the book closing date for the next election is less than ten (10) business days away, Defendants will respond by the book closing date. The Parties may, if warranted, take voluntary corrective action. There shall be no award of attorneys' fees or costs to either Party for any actions/inactions taken at this stage, regardless of the eventual outcome of the dispute.

**B. Mediation.** If Plaintiffs reasonably believe that the response provided by either or both Defendants does not resolve the issue(s) or alleged violation(s) raised in the Notice, the Parties may invoke a confidential mediation process ("Mediation") to resolve the dispute.

9

Mediation shall take place in Leon County; the mediator need not be from that county, however. The costs of Mediation shall be divided evenly between the Parties. Unless otherwise agreed in writing between the Parties, Mediation must commence within thirty (30) calendar days from receipt of Notice. For alleged violations which Plaintiffs, in good faith, reasonably believe may result in immediate and irreparable harm to Plaintiffs, the Notice shall so indicate this belief, and Mediation must then commence within five (5) business days, if at all practicable. However, should Plaintiffs learn of an alleged breach at a time that is five (5) days or less prior to an election, they shall promptly notify Defendants of the alleged breach, and either or both Defendants shall make a good-faith effort to correct the alleged breach within 24 hours thereof. The Parties shall conduct the Mediation in good faith in an attempt to resolve the matter(s) contained in the Notice, and shall therefore have a representative, with full authority to settle the dispute, attend the Mediation (subject to any limitations imposed upon Defendants by section 45.062, Florida Statutes). Neither side is entitled to attorneys' fees or costs for any time devoted to this Mediation process, regardless of outcome.

   **C.  Performance of this Agreement.** If the issue(s) of noncompliance raised in the Notice is/are not resolved through Mediation, then Plaintiffs' sole remedy is to file a separate action to enforce performance of this Agreement in the U.S. District Court for the Southern District of Florida. Defendants will not object to the filing of such a case on the grounds of lack of jurisdiction. Strict compliance with paragraphs A and B of Section IX is agreed by the Parties to be a condition precedent to the filing of any such action. Neither Party may recover attorneys' fees or costs for any such action unless the noncompliance with this Agreement that is the subject of the action is determined by the Court to constitute a separate violation of federal or state law and such fees are provided for pursuant to said law.

## SECTION X. TIME FOR PERFORMANCE

   The Division will endeavor to complete the tasks called for under Section III by March 31, 2003, but failure to do so shall not constitute a breach. Regardless of when the Report of Filtering Results is transmitted by the Division to the counties, nothing in this Agreement shall be interpreted to require the county Supervisors of Elections to perform the requested review and reevaluation under Section III until after the November, 2002 General Election.

## SECTION XI.      ATTORNEYS' FEES AND COSTS IN CASE NO. 01-0120-CIV-GOLD/SIMONTON

   **A.  Attorneys' Fees/Costs.** Each Party shall bear its own attorneys' fees. Defendants agree to process a claim with the State Division of Risk Management in the amount of $90,000 for Plaintiffs' costs for this litigation in settlement of any and all claims for attorneys' fees and/or costs that Plaintiffs or Plaintiffs' Counsel may have in connection with claims against Defendants.

   **B.  Public Records and Copying Costs.** Defendants agree to waive any and all unpaid costs currently due and owing from Plaintiffs as a result of copies provided pursuant to any public records or discovery request. Plaintiffs similarly waive any and all unpaid costs which Defendants may owe as a result of discovery requests or other litigation-related costs. Defendants will waive labor, photocopying, and all other fees for obtaining any public records request, up to $2,500, for documents to be provided subsequent to the execution of this

10

Agreement, up to May 15, 2005, the end date of this Agreement.

## SECTION XII.        EXECUTION

    **A.**  The Parties agree that neither Party will issue any public statement regarding this Agreement until it is formally presented to the Court for its approval.

    **B.**  Upon presentation of this Agreement to the Court, the Parties will issue a joint press statement regarding the settlement Agreement, the contents of which will be agreed upon by the Parties in advance.

    **C.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein and all negotiations and understandings between the Parties shall be deemed merged into this Agreement.  No waiver, modification or amendment of the terms of this Agreement shall be valid or binding unless in writing and signed by the Parties.

    **D.**  The Parties, having reviewed the above terms and conditions, and being in mutual agreement thereto, do hereby execute this Agreement by counterpart in the following manner:

Dated August 30, 2002

_____
L. Clayton Roberts, Esquire
General Counsel
Florida Department of State
PL02 The Capitol
Tallahassee, Florida 32399-0250

for Defendants Jim Smith, in his official
capacity as Florida Secretary of State and
Edward Kast, in his official capacity as
Director of the Florida Division of Elections

Anita S. Hodgkiss, Esquire
Lawyers Committee For Civil Rights
1401 New York Avenue, N.W.
Suite 400
Washington, D.C. 20005

for Plaintiffs

Agreement, up to May 15, 2005, the end date of this Agreement.

## SECTION XII.        EXECUTION

**A.**  The Parties agree that neither Party will issue any public statement regarding this Agreement until it is formally presented to the Court for its approval.

**B.**  Upon presentation of this Agreement to the Court, the Parties will issue a joint press statement regarding the settlement Agreement, the contents of which will be agreed upon by the Parties in advance.

**C.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein and all negotiations and understandings between the Parties shall be deemed merged into this Agreement.  No waiver, modification or amendment of the terms of this Agreement shall be valid or binding unless in writing and signed by the Parties.

**D.**  The Parties, having reviewed the above terms and conditions, and being in mutual agreement thereto, do hereby execute this Agreement by counterpart in the following manner:

Dated August 30, 2002


L. Clayton Roberts, Esquire
General Counsel
Florida Department of State
PL02 The Capitol
Tallahassee, Florida 32399-0250


for Defendants Jim Smith, in his official
capacity as Florida Secretary of State and
Edward Kast, in his official capacity as
Director of the Florida Division of Elections


Anita S. Hodgkiss, Esquire
Lawyers Committee For Civil Rights
1401 New York Avenue, N.W.
Suite 400
Washington, D.C. 20005


for Plaintiffs


11

# EXHIBIT A

**EXHIBIT A**

This summary is drafted for the purposes of settlement only.  If there is any point of conflict between this summary and any technical documents describing or implementing the procedures discussed herein, including the Match Filter Design, Appendix 1 hereto; Match Ranking Design, Appendix 2 hereto and the Match Ranking Design Modifications, Appendix 3 hereto, that cannot be harmonized under any circumstances, this summary controls the interpretation of the process. If the Division of Elections determines that an adjustment in the match basis initial or required points, (attached hereto as Appendix 4), or the match rank criteria (attached hereto as Appendix 5) is required during the term of this agreement, notice of such change will be provided to Anita Hodgkiss, Lawyers' Committee for Civil Rights Under Law, 1401 New York Ave., N.W., Washington, D.C. 20005, Counsel for Plaintiffs at least 10 days before implementation.

The Division of Elections will only put valid data into the CVDB and the Division will use only valid data in processing.[1]

# Base Matches

As a first procedure, a base match needs to be established. A base match occurs when a voter record on the Central Voter Database ("CVDB") has certain elements which are the same as found in agency data or other county data.  There are seven base matches which are performed in the hierarchial order listed below. The match names, the items compared and the uses of the matches (i.e., felons, deaths and duplicates) are:

1.   NAM- Last Name[2], First Name[3], least common denominator of the middle name and
      Date of Birth match.  Used in all matches.
2.   NSS - Social Security Number (full nine digits), Last Name and either First Name or
      Date of Birth.  Used in all matches.[4]
3.   NDL - Florida ID (Florida Driver's License number or Florida Identification number),
      Last name and either First Name or Date of Birth.  Used in duplicate matches to
      identify duplicate registrations only.
4.   SSL - Social Security Number and Last Name.  Used in Duplicate and Death matches
      only.  This match is not used for base matches due to Date of Birth requirement in
      Business Rule 2 below.
5.   SSB - Social Security Number and Date of Birth.  Used in Duplicate and Death matches
      only.  This match is not used for base matches due to Last Name requirement in

---

1 Valid data is data that is in conformance with its attribute (length, format and content) requirements.
2 Last names are always normalized to remove all spaces and punctuation in any comparison.
3 For NAM, NSS, and NDL, first names are normalized to remove all spaces and punctuation. A nickname table with gender identification is used for determining matches, so that "Bob" is the same as "Robert." The nickname table gender must match the gender in the database.
4 Except where all characters are "9" and where all characters are "0".

Business Rule 1 below.
6.     DLL - Florida ID and Last Name. Used in Duplicate matches only. This match is not used for base matches due to Date of Birth requirement in Business Rule 2 below.
7.     DLB - Florida ID and Date of Birth. Used in Duplicate matches only. This match is not used for base matches due to Last Name requirement in Business Rule 1 below.

When Felon data matches between the CVDB and FDLE records, they are then compared to Executive Clemency data. If the voter record which matched FDLE data then matches Executive Clemency data, the voter is not reported as a felon match to the counties. Clemency data may be matched based upon any of the above listed Base Matches. Business rules 3, 4 & 5 will apply. No point ranking and no threshold criterion is required.

# Business Rules

Base Matches which occur are then evaluated by a set of match filters which are designed to enforce the following business rules. If these rules are not met, the match pair is not reported to the counties as a match.

1.     The Last Name in both records must be exact. Any difference in the spelling of the last name will cause the match not to be reported to the counties.

2.     The Date of Birth in both records must be exact. Date of Birth must be present and valid in both records, including in NSS and NDL Base Matches when such matches involve first name matches.

3.     There can be no conflict in Race data. Race codes are optional in voter registration. If race codes exist in both records being compared in a match, then they must be identical. Hispanic does not match White or Black in this rule.

4.     There can be no conflict in gender data (gender codes are optional in voter registration). If Gender codes exist in both records, then they must match.

5.     There can be no conflict in Social Security Number (requirements for Social Security data in voter registration vary by county and over time). A match can be made if Social Security data contains nine digits on one record and four digits on another record. However, any Social Security number containing other than nine or four digits will not be matched and transpositions will not be accepted. Social Security numbers will not be valid or accepted where any field contains all zeroes, if the first digit of a nine digit social security number is eight, or if the first two digits of a nine digit social security number are between 73 and 79 inclusive.

For business rules 3, 4 & 5, "null" is acceptable and is a universal value that matches anything for

the business rules only.

# Point Ranking

If a match passes the business rules, it is assigned a base point value for the initial match. The match ranking process then assigns additional points for quality items.  The match rank criteria is attached hereto as Appendix 5.

The system requires a minimum threshold of total quality points.  All matches which exceed the threshold are reported, in descending order of points.

# **Appendix C – Transposed Date Matching**

Date1 and Date2 will both be broken down into their 2 digit month, 2 digit day and 4 digit year parts.

**Rules:**

1. If Date1.Month (01) equals a transposed Date2.Month (10)  and Date1.Day equals Date2.Day exactly and Date1.Year equals Date2.Year exactly then there is a match **OR**
2. If Date1.Day (02) equals a transposed Date2.Day (20) and Date1.Month equals Date2.Month exactly and Date1.Year equals Date2.Year exactly then there is a match **OR**
3. If Date1.Month equals Date2.Day and Date2.Month equals Date1.Day and the Date1.Year equals Date2.Year match exactly then there is a match.

**Examples:**

1. 01/02/2002 -> 10/02/2002
   Date1.Month = 01
   Date1.Day = 02
   Date1.Year = 2002
   Date2.Month = 10
   Date2.Day = 02
   Date2.Year = 2002

2. 03/02/2002 -> 03/20/2002
   Date1.Month = 03
   Date1.Day = 02
   Date1.Year = 2002
   Date2.Month = 03
   Date2.Day = 20
   Date2.Year = 2002

3. 04/03/2002 -> 03/04/2002
   Date1.Month = 04
   Date1.Day = 03
   Date1.Year = 2002
   Date2.Month = 03
   Date2.Day = 04
   Date2.Year = 2002

Copyright - Accenture

# Match Ranking Design
# Deliverable ID 293D

The purpose of this design document is to verify that the design is complete and in a condition where coding can begin. The undersigned confirms that this design document is complete and in a condition where coding can begin.

**Florida Division of Elections Design Sign-Off**

_____        _____
Name                                                      Title


_____
Date

The level of effort to complete the coding and implementation for Match Ranking are within the estimates provided within the Implementation Task Order.

The CVD project team estimates that the programming and implementation of the Match Ranking change request will be completed on or before Friday May 17, 2002.

Copyright - Accenture

# Florida Department of State – Division of Elections
## Central Voter Database

# Match Filter Design

# Table of Contents

Match Basis Filter Procedure ...........................................................................................3
   Modified Business Rules Definitions.............................................................................3
      SSB and DLB Match Types..................................................................................3
      Match Rank of -99.................................................................................................3
      Additional Rules....................................................................................................3
      Update Match Rank Based on Additional Rules.................................................3
   Business Rules Specifications .......................................................................................3
      SSN Matching possibilities:..................................................................................3
      GENDER Matching possibilities: .........................................................................4
      DOB Matching possibilities:.................................................................................4
      RACE Matching possibilities: ..............................................................................4

# Match Basis Filter Procedure

## Modified Business Rules Definitions

### SSB and DLB Match Types

o The Match Basis Initial Points table will be set up so that the Base Match Rank points for Match Basis SSB (where the match is based on the Social Security Number and Date of Birth) and DLB (where the match is based on Florida ID and Date of Birth) will be assigned a value of –99 (negative 99).

### Match Rank of -99

o The Match Filter stored procedure will process all matches that have a Status Code of 'BRT ' (Below Ranking Threshold) and a positive Base Match Rank value. For those matches that are set to Base Match Rank –99, the stored procedure Match Filter will not run.

### Additional Rules

o The Match Filter stored procedure will filter out all matches that don't also match on SSN, Date of Birth, Gender, and Race. It is important to note that Gender and Race codes will never be NULL, because the data transform will translate nulls into "U" for unknown on Gender and into "9" for Race.

### Update Match Rank Based on Additional Rules

o If the match passes the additional Business Rules, then the process will update the Match Rank to be equal to the Match Basis Initial Points for the specific Match Basis from the Match Basis Initial Points table (tblMatchRankPointsMod). If the match fails to meet the additional criteria, then the process will update the Match Rank to be –99 in the Matches table (tblMatches).

## Business Rules Specifications

### SSN Matching possibilities:

**Format processing**
- If first 5 Digits are 9's then reduce the SSN to last 4 digits for comparison
- If first 5 Digits are 0's then reduce the SSN to last 4 digits for comparison
- If ALL Digits are 9's then set the SSN to a blank value for comparison
- If ALL Digits are 0's then set the SSN to a blank value for comparison
- If the SSN is a NULL value then set the SSN to a blank for comparison

**Match processing (True Responses)**
- If Voter1's SSN9 is equal to Voter2's SSN9 (SSN9=SSN9)

- If Voter1's SSN4 is equal to Voter2's SSN4 (SSN4 = SSN4)
- If Voter1's SSN4 is equal to Voter2's last 4 of a SSN9 (SSN4 = last 4 of SSN9)
- If Voter1's SSN is Blank and is equal to Voter2's SSN9, SSN4 or Blank (Blank = = SSN9, SSN4 or Blank)

*GENDER Matching Possibilities:*

**Format processing**
- None Required

**Match processing (True Responses)**

- If Voter1's is a Male and Voter2's is a Male or Unknown (M = M, U)
- If Voter1's is a Female and Voter2's is a Female or Unknown (F = F, U)
- If Voter1's is Unknown and Voter2's is a Male, Female or Unknown (U = U, F, M)

*DOB Matching Possibilities:*

**Format processing**
- If the date is NULL set it to a BLANK

**Match processing (True Responses)**
- If Voter1's DOB is equal to Voter2's DOB  (DOB = DOB2)
- If Voter1's DOB and Voter2's DOB are BLANK (BLANK = BLANK)
- If Voter1's or Voter2's DOB is BLANK (DOB  = NULL, '' or DOB2 = NULL, '')

*RACE Matching Possibilities:*

**Format processing**
- None Required

**Match processing (True Responses)**
- If Voter1's race is equal to Voter2's race
    1 = 1 (American Indian or Alaskan Native)
    2 = 2 (Asian Or Pacific Islander)
    3 = 3 (Black, Not Hispanic)
    4 = 4 (Hispanic)
    5 = 5 (White, Not Hispanic)
    6 = 6 (Other)
- If Voter1 or Voter2's race is Unknown (9 = 1, 2, 3, 4, 5, 6)

4 of 4

ATTACHMENT 1
MATCHFILTER STORED PROCEDURE DESIGN

o  The MatchFilter stored procedure will be used to set all Match Rank Values to -99 that are not NAM Match Basis (NAM Match Basis is a match based on Last Name, First Name, Lowest Common Denominator, and Date of Birth, where Date of Birth is required and cannot be blank or nulls) and that have a StatusCode of 'BRT' (Below Ranking Threshold). For those matches that are set to MatchRank -99, the stored procedure MatchRanking will not run.

**Code Logic:**
```
update tblmatches set MatchRank = -99
where MatchBasisCode <> 'NAM'
and StatusCode = 'BRT'
```

o  Then process all NAM matches and filter out all that don't also match on SSN, Gender, and Race.

**SSN Matching possibilities:**
If First 5 Digits are 9's then reduce the SSN to last 4 digits
If First 5 Digits are 0's then reduce the SSN to last 4 digits
If ALL Digits are 9's then set the SSN to a blank value
If ALL Digits are 0's then set the SSN to a blank value

SSN9 = SSN9
SSN4 = SSN4
SSN4 = last 4 of SSN9
NULL = SSN9, SSN4, NULL
Blank = SSN9, SSN4, NULL

**GENDER Matching possibilities:**
M = M
F = F
U = U
NULL = U, M, F, NULL

**RACE Matching possibilities:**
1 = 1 (American Indian or Alaskan Native)
2 = 2 (Asian Or Pacific Islander)
3 = 3 (Black, Not Hispanic)
4 = 4 (Hispanic)
5 = 5 (White, Not Hispanic)
6 = 6 (Other)
9 = 1, 2, 3, 4, 5, 6, NULL
NULL = 1, 2, 3, 4, 5, 6, NULL

ATTACHMENT 1
MATCH FILTER STORED PROCEDURE DESIGN

o   If the match passes the 3 additional criteria, then the process will update the Match Rank to be
    equal to the Match Basis Initial Points for the NAM Match Basis from the Match Ranking Points
    Mod table.  If the match fails to meet the 3 additional criteria, then update the Match Rank to be -99.

o   The MatchRanking stored procedure will then run and only rank those records that have a Status
    Code of 'BRT' (below ranking threshold) and have Match Rank Points greater than zero.

**Florida Department of State – Division of Elections**
Central Voter Database

# Match Ranking Design

Copyright - Accenture

# Table of Contents

Proposed Process ........................................................................................................ 3
Relationship between tables ....................................................................................... 4
New Codes for Match Status ...................................................................................... 5
New CVD DatabaseTables .......................................................................................... 5
New Processing for All Matches ................................................................................. 7
Voter Registration Duplicates .................................................................................... 8
   Name Match ............................................................................................................. 8
   SSN & Name Match .............................................................................................. 10
   FL ID & Name Match ............................................................................................ 11
   SSN & DOB  Match .............................................................................................. 13
   FLID & DOB Match .............................................................................................. 15
Death Matches ........................................................................................................... 17
   Name Match ........................................................................................................... 17
   SSN & Name Match .............................................................................................. 20
   SSN & DOB  Match .............................................................................................. 23
Felon Matches ........................................................................................................... 25
   Name Match ........................................................................................................... 25
   SSN & Name Match .............................................................................................. 27
   SSN & Last Name Match ....................................................................................... 28
   SSN & DOB  Match .............................................................................................. 30
Clemency Clearing a Felony Conviction .................................................................... 32
Appendix A – Partial String Matching ....................................................................... 33
Appendix B - Transposed String Matching ................................................................ 36
Appendix C – Transposed Date Matching .................................................................. 37

Copyright - Accenture

## Proposed Process



Copyright - Accenture

## Relationship between tables



Copyright - Accenture

## New Codes for Match Status

➢ DOE – DOE Researching
➢ FHP – False Hit Previously Identified
➢ BRT – Below Ranking Threshold

## New CVD DatabaseTables

1. A new table will be created to store the current information on false matches tblVerifiedFalseMatches. The table does not currently exist and will need to be created.
   ➢ FalseHitID
   ➢ MatchType
   ➢ SiteID
   ➢ CountyID
   ➢ VoterID
   ➢ MatchData1
   ➢ MatchData2

|         |   | MatchData1  | MatchData2      |
|---------|---|-------------|-----------------|
| Dups:   | R | Voter ID    | County ID       |
| Deaths: | D | Death Cert. | Death Year      |
| Felons: | F | FDLE #      | Conviction Date |

Copyright - Accenture

2. Match Ranking will be table driven from the tblMatchRankPointsMod table. This table stores the match rank points modifiers. The table does not currently exist and will need to be created.
Columns include:
   ➢ MatchRankType – holds the identifier of the match ranking item
      1. MatchBasisInitialPoints
      2. ExactGender
      3. PartialGender
      4. Race
      5. SSN9Exact
      6. SSN9Transposed
      7. SSN4Exact
      8. SSN4Transposed
      9. FLIDExact
      10. FLIDTransposed
      11. AddrLinePartial
      12. AddrLineExact
      13. NoActivity
      14. DOBPartial
      15. FirstNamePartial
      16. NoNicknameFirst
      17. MiddlenameExists
      18. LastNamePartial
      19. MiddleNameMaiden
      20. AddrCityPartial
      21. AddrCityExact
      22. AddrZipPartial
      23. AddrZipExact
      24. CountyExact
   ➢ MatchBasisCode – holds the match basis ('NAM')
   ➢ RecordTypeCode – 'D', 'I','C','F',etc…
   ➢ MatchRankThreshold – percentage required for passing the matchranktype, in some cases there will be no threshold as the matchranktype may not support it.
   ➢ MatchRankPoints – holds the user defined value for that match

Copyright - Accenture

3.  Any changes to the tblMatchRankPointsMod table will be written to the tblMatchRankPointsModHistory table. This table stores the match rank points modifiers. The table does not currently exist and will need to be created. Columns include:
    - ➢  MatchRankType – holds the identifier of the match ranking
    - ➢  MatchBasisCode – holds the match basis ('NAM')
    - ➢  RecordTypeCode – 'D', 'I','C','F',etc...
    - ➢  MatchRankThreshold – percentage required for passing the matchranktype, in some cases there will be no threshold as the matchranktype may not support it.
    - ➢  MatchRankPoints – holds the user defined value for that match
    - ➢  ChangeDateTime – date time
    - ➢  ChangeUser – varchar(50)
    - ➢  ChangeReason – varchar(255)

4.  Match Ranking will be table driven from the tblMatchRankPointsReq table. This table holds the match rank points threshold for a pending match. The table does not currently exist and will need to be created. Columns include:
    - ➢  RecordTypeCode – 'D', 'I','C','F',etc...
    - ➢  MatchRankPoints – points required for pending record

5.  Race matching requires the ability to allow different race values to match. Race matches will be table driven within the tblMatchRankRace table. The table does not currently exist and will need to be created. Records found on this table indicate that the race values match. For example, if a record holds 'White' and 'Hispanic', the match ranking process will interpret any race checks for 'White' and 'Hispanic' as true. Columns include:
    - ➢  Race1 – holds a race value
    - ➢  Race2 – holds a race value

## New Processing for All Matches

➢  **For Death and Felon Only!** When a match is created where the matching data is already matched to another voter, the new match will be set to "DOE Research". For example, if a match is found between voter 1 and death 1, and death 1 is already matched to voter 3, the new match will be set to "DOE Research".. When a new match is to be inserted, if there already exists a match in the tblMatches table joined based on MatchID with it's associated matches table (tblMatchesFelonIdentity, tblMatchesDeath, etc...) where the RecordTypeCode and "DestinationID" record exist, the status is changed to Duplicate.

A new match status code of 'DOE' will be created for "DOE RESEARCH"

For example if a tblMatches record exists for a death registration. The tables look like this: (these tables joined by MatchID)

Copyright - Accenture

tblMatches (MatchID, VoterID, RecordTypeCode) = (1,1,'D')
tblMatchesDeath (MatchID, DeathID) = (1,2)

This says that the VoterID = 1 matches the DeathID = 2 based on RecordTypeCode = 'D'

For any new matches if RecordTypeCode = 'D' and "DestinationID" (DeathID in this case) = 2, those matches will be created with a "DOE Research"status code.

Compare any matches that are about to be created with the information in the table tblVerifiedFalseMatches. If the record exists it is determined already be a confirmed false match. So the match should be created with a unique status indicating false match. A new match status code of 'FHP' will be created for "FALSE HIT PREVIOUSLY IDENTIFIED"

# **Voter Registration Duplicates**

## Name Match
(Code NAM: Last, First, LCD Middle, DOB)

*Gender Code Matches*

If the GenderCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the GenderCode column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.
  ➢ If the V1.GenderCode = V2.GenderCode exactly then the match will receive the MatchRankPoints associated with ExactGender.
  ➢ If the V1.GenderCode = Unspecified and V2.GenderCode = Unspecified then the match will receive the MatchRankPoints associated with ExactGender.
  ➢ If the GenderCode = Unspecified (gender code 'U') then the match will receive the MatchRankPoints associated with PartialGender.

*Race Code Matches*

If the RaceCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the RaceCode column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints. If the exact match returns false, a secondary search will be performed using the data from the tblRaceMatch table. If the Voter1.RaceCode = RaceCode1 and Voter2.RaceCode = RaceCode2, then the match rank will receive the MatchRankPoints. Values of NULL will be ignored for race matching and will not receive the MatchRankPoints.

Copyright - Accenture

*Social Security Number*

If the SocSecNo column from tblVoters for the VoterID specified in the tblMatches record is equal to the SocSecNo column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.

➢ If the columns are both of 9 characters in length and match exactly then the match will receive the MatchRankPoints associated with SSN9Exact **OR**

➢ If the columns are both of 9 characters in length and match as defined in **Appendix B – Transposed String Matching** with a MatchRankThreshold hit percentage then the match will receive the MatchRankPoints associated with SSN9Transposed **OR**

➢ If the columns are both of 4 characters in length and match exactly then the match will receive the MatchRankPoints associated with SSN4Exact **OR**

➢ If the columns are both of 4 characters in length and match as defined in **Appendix B – Transposed String Matching** with a MatchRankThreshold hit percentage then the match will receive the MatchRankPoints associated with SSN4Transposed.

➢ Note: If there is a 9 digit SSN compared to a 4 digit SSN then the last 4 digits on the 9 digit SSN should be used

*Florida ID*

If the StateIDNo column from tblVoters for the VoterID specified in the tblMatches record is equal to the StateIDNo column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.

➢ If the columns match exactly then the match will receive the MatchRankPoints associated with FLIDExact **OR**

➢ If the columns match as defined in **Appendix B – Transposed String Matching** with a MatchRankThreshold hit percentage then the match will receive the MatchRankPoints associated with FLIDTransposed.

*First Name*

If the FirstName column from tblVoters for the VoterID specified in the tblMatches record is equal to the FirstName column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.

*Middle Name*

If the MiddleName column from tblVoters for the VoterID specified in the tblMatches record is equal to the MiddleName column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID and if both columns

Copyright - Accenture

compared have data (cannot be blank) then the match rank will receive the MatchRankPoints.

*No Activity After Duplicate Registration Date*

Assumption: Based on the Duplicate Registration logic when a match is created. The older registered voter is listed as the VoterID on the tblMatches record. The latest registered voter is listed as the VoterID in the tblMatchesVoter record.

Get the DateRegistered from tblVoters for the VoterID in tblMatchesVoter.
Get the DateLastChangeVoter and LastDateVoted from tblVoters for the VoterID in tblMatches.

If DateLastChangeVoter and LastDateVoted is less than DateRegistered then it is assumed that there has not been any activity in the older county after the registration date in the newer county. Therefore, the match receives the MatchRankPoints.

## SSN & Name Match

(Code NSS: SSN, Last, First or DOB)
(Code SSL: SSN and Last Name)

*Gender Code Matches*

If the GenderCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the GenderCode column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.
  ➢ If the V1.GenderCode = V2.GenderCode exactly then the match will receive the MatchRankPoints associated with ExactGender.
  ➢ If the V1.GenderCode = Unspecified and V2.GenderCode = Unspecified then the match will receive the MatchRankPoints associated with ExactGender.
  ➢ If the GenderCode = Unspecified (gender code 'U') then the match will receive the MatchRankPoints associated with PartialGender.

*Race Code Matches*

If the RaceCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the RaceCode column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints. If the exact match returns false, a secondary search will be performed using the data from the tblRaceMatch table. If the Voter1.RaceCode = RaceCode1 and Voter2.RaceCode = RaceCode2, then the match rank will receive the MatchRankPoints. Values of NULL will be ignored for race matching and will not receive the MatchRankPoints.

Copyright - Accenture

*Florida ID*

If the StateIDNo column from tblVoters for the VoterID specified in the tblMatches record is equal to the StateIDNo column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.
➢ If the columns match exactly then the match will receive the MatchRankPoints associated with FLIDExact **OR**
➢ If the columns match as defined in **Appendix B – Transposed String Matching** with a MatchRankThreshold hit percentage then the match will receive the MatchRankPoints associated with FLIDTransposed

*First Name*

If the FirstName column from tblVoters for the VoterID specified in the tblMatches record is a partial match to the FirstName column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.
Note: For SSL matches the FirstName columns should not be an exact match if they were then they should be NSS matches
➢ If the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage then the match will receive the MatchRankPoints.

*Date Of Birth*

If the DateOfBirth column from tblVoters for the VoterID specified in the tblMatches record is a transposed date match to the DateOfBirth column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.
Note: For SSL matches the DateOfBirth columns should not be an exact match if they were then they should be NSS matches
➢ The definition of "is equal" will mean the columns match as defined in **Appendix C – Transposed Date Matching**.

*No Activity After Duplicate Registration Date*

Assumption: Based on the Duplicate Registration logic when a match is created. The older registered voter is listed as the VoterID on the tblMatches record. The latest registered voter is listed as the VoterID in the tblMatchesVoter record.

Get the DateRegistered from tblVoters for the VoterID in tblMatchesVoter.
Get the DateLastChangeVoter and LastDateVoted from tblVoters for the VoterID in tblMatches.

If DateLastChangeVoter and LastDateVoted is less than DateRegistered then it is assumed that there has not been any activity in the older county after the

Copyright - Accenture

registration date in the newer county. Therefore, the match receives the MatchRankPoints.

## FL ID & Name Match

(Code NDL: FLID, Last, First or DOB)
(Code DLL: FLID and Last Name)

### *Gender Code Matches*

If the GenderCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the GenderCode column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.

> If the V1.GenderCode = V2.GenderCode exactly then the match will receive the MatchRankPoints associated with ExactGender.
> If the V1.GenderCode = Unspecified and V2.GenderCode = Unspecified then the match will receive the MatchRankPoints associated with ExactGender.
> If the GenderCode = Unspecified (gender code 'U') then the match will receive the MatchRankPoints associated with PartialGender.

### *Race Code Matches*

If the RaceCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the RaceCode column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints. If the exact match returns false, a secondary search will be performed using the data from the tblRaceMatch table. If the Voter1.RaceCode = RaceCode1 and Voter2.RaceCode = RaceCode2, then the match rank will receive the MatchRankPoints. Values of NULL will be ignored for race matching and will not receive the MatchRankPoints.

### *Social Security Number*

If the SocSecNo column from tblVoters for the VoterID specified in the tblMatches record is equal to the SocSecNo column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive extra points.

> If the columns are both of 9 characters in length and match as defined in **Appendix B – Transposed String Matching** with a MatchRankThreshold hit percentage then the match will receive the MatchRankPoints **OR**
> If the columns are both of 4 characters in length and match as defined in **Appendix B – Transposed String Matching** with a MatchRankThreshold hit percentage then the match will receive the MatchRankPoints.

Copyright - Accenture

> Note: If there is a 9 digit SSN compared to a 4 digit SSN then the last 4 digits on the 9 digit SSN should be used

*First Name*

If the FirstName column from tblVoters for the VoterID specified in the tblMatches record is a partial match to the FirstName column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.

Note: For DLL matches the FirstName columns should not be an exact match if they were then they should be NDL matches

> If the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage then the match will receive the MatchRankPoints.

*Date Of Birth*

If the DateOfBirth column from tblVoters for the VoterID specified in the tblMatches record is a transposed date match to the DateOfBirth column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.

Note: For DLL matches the DateOfBirth columns should not be an exact match if they were then they should be NDL matches

> The definition of "is equal" will mean the columns match as defined in **Appendix C – Transposed Date Matching**.

*No Activity After Duplicate Registration Date*

Assumption: Based on the Duplicate Registration logic when a match is created. The older registered voter is listed as the VoterID on the tblMatches record. The latest registered voter is listed as the VoterID in the tblMatchesVoter record.

Get the DateRegistered from tblVoters for the VoterID in tblMatchesVoter. Get the DateLastChangeVoter and LastDateVoted from tblVoters for the VoterID in tblMatches.

If DateLastChangeVoter and LastDateVoted is less than DateRegistered then it is assumed that there has not been any activity in the older county after the registration date in the newer county. Therefore, the match receives the MatchRankPoints.

# SSN & DOB Match

(Code SSB: SSN and Birth Date)

Copyright - Accenture

*Gender Code Matches*

If the GenderCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the GenderCode column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.

➢ If the V1.GenderCode = V2.GenderCode exactly then the match will receive the MatchRankPoints associated with ExactGender.

➢ If the V1.GenderCode = Unspecified and V2.GenderCode = Unspecified then the match will receive the MatchRankPoints associated with ExactGender.

➢ If the GenderCode = Unspecified (gender code 'U') then the match will receive the MatchRankPoints associated with PartialGender.

*Race Code Matches*

If the RaceCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the RaceCode column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints. If the exact match returns false, a secondary search will be performed using the data from the tblRaceMatch table. If the Voter1.RaceCode = RaceCode1 and Voter2.RaceCode = RaceCode2, then the match rank will receive the MatchRankPoints. Values of NULL will be ignored for race matching and will not receive the MatchRankPoints.

*Florida ID*

If the StateIDNo column from tblVoters for the VoterID specified in the tblMatches record is equal to the StateIDNo column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.

➢ The definition of "is equal" will mean the columns match as defined in **Appendix B – Transposed String Matching** with a MatchRankThreshold hit percentage.

*Last Name*

If the LastName column from tblVoters for the VoterID specified in the tblMatches record is equal to the LastName column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.

➢ The definition of "is equal" will mean the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage.

Copyright - Accenture

*First Name*

If the FirstName column from tblVoters for the VoterID specified in the tblMatches record is equal to the FirstName column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.

➢ The definition of "is equal" will mean the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage.

*Middle Name / Last Name (i.e. Maiden Name)*

If the MiddleName column from tblVoters for the VoterID specified in the tblMatches record contains the LastName column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive MatchRankPoints **OR** if the MiddleName column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID contains the LastName from tblVoters for the VoterID specified in the tblMatches record then the match rank will receive the MatchRankPoints.

*No Activity After Duplicate Registration Date*

Assumption: Based on the Duplicate Registration logic when a match is created. The older registered voter is listed as the VoterID on the tblMatches record. The latest registered voter is listed as the VoterID in the tblMatchesVoter record.

Get the DateRegistered from tblVoters for the VoterID in tblMatchesVoter.
Get the DateLastChangeVoter and LastDateVoted from tblVoters for the VoterID in tblMatches.

If DateLastChangeVoter and LastDateVoted is less than DateRegistered then it is assumed that there has not been any activity in the older county after the registration date in the newer county. Therefore, the match receives the MatchRankPoints.

# FLID & DOB Match
(Code DLB: FLID and Birth Date)

*Gender Code Matches*

If the GenderCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the GenderCode column from tblVoters for the VoterID specified in the tblMatchesVoter record where the tblMatches record MatchID is the same as the tblMatchesVoter MatchID then the match rank will receive the MatchRankPoints.

Copyright - Accenture

> ➢ If the V1.GenderCode = V2.GenderCode exactly then the match will
>   receive the MatchRankPoints associated with ExactGender.
> ➢ If the V1.GenderCode = Unspecified and V2.GenderCode = Unspecified
>   then the match will receive the MatchRankPoints associated with
>   ExactGender.
> ➢ If the GenderCode = Unspecified (gender code 'U') then the match will
>   receive the MatchRankPoints associated with PartialGender.

*Race Code Matches*

If the RaceCode column from tblVoters for the VoterID specified in the
tblMatches record is equal to the RaceCode column from tblVoters for the
VoterID specified in the tblMatchesVoter record where the tblMatches record
MatchID is the same as the tblMatchesVoter MatchID then the match rank will
receive the MatchRankPoints. If the exact match returns false, a secondary search
will be performed using the data from the tblRaceMatch table. If the
Voter1.RaceCode = RaceCode1 and Voter2.RaceCode = RaceCode2, then the
match rank will receive the MatchRankPoints. Values of NULL will be ignored
for race matching and will not receive the MatchRankPoints.

*Florida ID*

If the StateIDNo column from tblVoters for the VoterID specified in the
tblMatches record is equal to the StateIDNo column from tblVoters for the
VoterID specified in the tblMatchesVoter record where the tblMatches record
MatchID is the same as the tblMatchesVoter MatchID then the match rank will
receive the MatchRankPoints.
> ➢ The definition of "is equal" will mean the columns match as defined in
>   **Appendix B – Transposed String Matching** with a MatchRankThreshold
>   hit percentage.

*Last Name*

If the LastName column from tblVoters for the VoterID specified in the
tblMatches record is equal to the LastName column from tblVoters for the
VoterID specified in the tblMatchesVoter record where the tblMatches record
MatchID is the same as the tblMatchesVoter MatchID then the match rank will
receive the MatchRankPoints.
> ➢ The definition of "is equal" will mean the columns match as defined in
>   **Appendix A – Partial String Matching** with a MatchRankThreshold hit
>   percentage.

*First Name*

If the FirstName column from tblVoters for the VoterID specified in the
tblMatches record is equal to the FirstName column from tblVoters for the
VoterID specified in the tblMatchesVoter record where the tblMatches record
MatchID is the same as the tblMatchesVoter MatchID then the match rank will
receive the MatchRankPoints.

Copyright - Accenture

> The definition of "is equal" will mean the columns match as defined in
**Appendix A – Partial String Matching** with a MatchRankThreshold hit
percentage.

*Middle Name / Last Name (i.e. Maiden Name)*

If the MiddleName column from tblVoters for the VoterID specified in the
tblMatches record contains the LastName column from tblVoters for the VoterID
specified in the tblMatchesVoter record where the tblMatches record MatchID is
the same as the tblMatchesVoter MatchID then the match rank will receive 1
extra point **OR** if the MiddleName column from tblVoters for the VoterID
specified in the tblMatchesVoter record where the tblMatches record MatchID is
the same as the tblMatchesVoter MatchID contains the LastName from tblVoters
for the VoterID specified in the tblMatches record then the match rank will
receive the MatchRankPoints.

*No Activity After Duplicate Registration Date*

Assumption: Based on the Duplicate Registration logic when a match is created.
The older registered voter is listed as the VoterID on the tblMatches record. The
latest registered voter is listed as the VoterID in the tblMatchesVoter record.

Get the DateRegistered from tblVoters for the VoterID in tblMatchesVoter.
Get the DateLastChangeVoter and LastDateVoted from tblVoters for the VoterID
in tblMatches.

If DateLastChangeVoter and LastDateVoted is less than DateRegistered then it is
assumed that there has not been any activity in the older county after the
registration date in the newer county. Therefore, the match receives the
MatchRankPoints.

## Death Matches

### Name Match

(Code NAM: Last, First, LCD Middle, DOB)

*Gender Code Matches*

If the GenderCode column from tblVoters for the VoterID specified in the
tblMatches record is equal to the GenderCode column from tblDeath for the
DeathID specified in the tblMatchesDeath record where the tblMatches record
MatchID is the same as the tblMatchesDeath MatchID then the match rank will
receive the MatchRankPoints.
> If the Voter.GenderCode = Death.GenderCode exactly then the match will
receive the MatchRankPoints associated with ExactGender.
> If the Voter.GenderCode = Unspecified and Death.GenderCode =
Unspecified then the match will receive the MatchRankPoints associated
with ExactGender.

Copyright - Accenture

> If the Voter.GenderCode = Unspecified (gender code 'U') then the match will receive the MatchRankPoints associated with PartialGender.

*Race Code Matches*

If the RaceCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the RaceCode column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints. If the exact match returns false, a secondary search will be performed using the data from the tblRaceMatch table. If the tblVoters.RaceCode = RaceCode1 and tblDeath.RaceCode = RaceCode2, then the match rank will receive the MatchRankPoints. Values of NULL will be ignored for race matching and will not receive the MatchRankPoints.

*Social Security Number*

If the SocSecNo column from tblVoters for the VoterID specified in the tblMatches record is equal to the SocSecNo column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.
> If the columns are both of 9 characters in length and match exactly then the match will receive the MatchRankPoints associated with SSN9Exact **OR**
> If the columns are both of 9 characters in length and match as defined in **Appendix B – Transposed String Matching** with a MatchRankThreshold hit percentage then the match will receive the MatchRankPoints associated with SSN9Transposed **OR**
> If the columns are both of 4 characters in length and match as defined in **Appendix B – Transposed String Matching** with a MatchRankThreshold hit percentage then the match will receive the MatchRankPoints associated with SSN4Transposed.
> Note: If there is a 9 digit SSN compared to a 4 digit SSN then the last 4 digits on the 9 digit SSN should be used

*First Name*

If the FirstName column from tblVoters for the VoterID specified in the tblMatches record is equal to the FirstName column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.

*Middle Name*

If the MiddleName column from tblVoters for the VoterID specified in the tblMatches record is equal to the MiddleName column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record

Copyright - Accenture

MatchID is the same as the tblMatchesDeath MatchID and if both columns compared have data (cannot be blank) then the match rank will receive the MatchRankPoints.

### Address Line 1

If the AddrAddressLine1 column from tblVoters for the VoterID specified in the tblMatches record is equal to the AddrAddressLine1 column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.

➤ The term "is equal" means the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage and will receive the MatchRankPoints associated with AddrLinePartial **OR** with a 100% hit percentage then the match will receive the MatchRankPoints associated with AddrLineExact.

### Address City

If the AddrCity column from tblVoters for the VoterID specified in the tblMatches record is equal to the AddrCity column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.

➤ The term "is equal" means the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage and will receive the MatchRankPoints associated with AddrCityPartial **OR** with a 100% hit percentage then the match will receive the MatchRankPoints associated with AddrCityExact.

### Address Zip

If the AddrZip column from tblVoters for the VoterID specified in the tblMatches record is equal to the AddrZip column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.

➤ The term "is equal" means the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage and will receive the MatchRankPoints associated with AddrZipPartial **OR** with a 100% hit percentage then the match will receive the MatchRankPoints associated with AddrZipExact.

### County of Death / Residence County

➤ If the SiteID column "translated to a CountyCode" from tblVoters for the VoterID specified in the tblMatches record is equal to the ResidenceCountyCode column and/or the CountyOfDeathCode column from tblDeath for the DeathID specified in the tblMatchesDeath record where the

Copyright - Accenture

tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.

> Note: The county codes are stored in tblSites for all the voters, A lookup table may be needed to make sure that there is an appropriate Site Column that matches appropriately to the CountyOfDeathCode column and ResidenceCountyCode column that are in tblDeath.

> Note: These are code fields they are either going to match or not. Don't look at MatchRankThreshold

### No Activity After Date of Death

Get the DateOfDeath from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID.

By using the voter's VoterID, get the voters DateLastChangeVoter and LastDateVoted from tblVoters.

If DateLastChangeVoter and LastDateVoted are less than DateOfDeath then it is assumed that there has not been any activity after the death date. Therefore, the match receives the MatchRankPoints.

## SSN & Name Match

(Code NSS: SSN, Last, First or DOB)
(Code SSL: SSN and Last Name)

### Gender Code Matches

If the GenderCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the GenderCode column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.

> If the Voter.GenderCode = Death.GenderCode exactly then the match will receive the MatchRankPoints associated with ExactGender.

> If the Voter.GenderCode = Unspecified and Death.GenderCode = Unspecified then the match will receive the MatchRankPoints associated with ExactGender.

> If the Voter.GenderCode = Unspecified (gender code 'U') then the match will receive the MatchRankPoints associated with PartialGender.

### Race Code Matches

If the RaceCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the RaceCode column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints. If the exact match returns false, a secondary search will be performed using the data from the tblRaceMatch table.  If the

Copyright - Accenture

tblVoters.RaceCode = RaceCode1 and tblDeath.RaceCode = RaceCode2, then the match rank will receive the MatchRankPoints. Values of NULL will be ignored for race matching and will not receive the MatchRankPoints.

### First Name

If the FirstName column from tblVoters for the VoterID specified in the tblMatches record is a partial match to the FirstName column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.
Note: For SSL matches the FirstName columns should not be an exact match if they were then they should be NSS matches
➢ The term "is equal" means the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage.

### Date Of Birth

If the DateOfBirth column from tblVoters for the VoterID specified in the tblMatches record is a transposed date match to the DateOfBirth column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.
Note: For SSL matches the DateOfBirth columns should not be an exact match if they were then they should be NSS matches
➢ The term "is equal" means the columns match as defined in **Appendix C – Transposed Date Matching.**

### Address Line 1

If the AddrAddressLine1 column from tblVoters for the VoterID specified in the tblMatches record is equal to the AddrAddressLine1 column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.
➢ The term "is equal" means the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage and will receive the MatchRankPoints associated with AddrLinePartial **OR** with a 100% hit percentage then the match will receive the MatchRankPoints associated with AddrLineExact.

### Address City

If the AddrCity column from tblVoters for the VoterID specified in the tblMatches record is equal to the AddrCity column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.
➢ The term "is equal" means the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage and

will receive the MatchRankPoints associated with AddrCityPartial **OR** with a 100% hit percentage then the match will receive the MatchRankPoints associated with AddrCityExact.

*Address Zip*

If the AddrZip column from tblVoters for the VoterID specified in the tblMatches record is equal to the AddrZip column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.

➢ The term "is equal" means the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage and will receive the MatchRankPoints associated with AddrZipPartial **OR** with a 100% hit percentage then the match will receive the MatchRankPoints associated with AddrZipExact.

*County of Death / Residence County*

➢ If the SiteID column "translated to a CountyCode" from tblVoters for the VoterID specified in the tblMatches record is equal to the ResidenceCountyCode column and/or the CountyOfDeathCode column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.

➢ Note: The county codes are stored in tblSites for all the voters, A lookup table may be needed to make sure that there is an appropriate Site Column that matches appropriately to the CountyOfDeathCode column and ResidenceCountyCode column that are in tblDeath.

➢ Note: These are code fields they are either going to match or not. Don't look at MatchRankThreshold

*No Activity After Date of Death*

Get the DateOfDeath from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID.

By using the voter's VoterID, get the voters DateLastChangeVoter and LastDateVoted from tblVoters.

If DateLastChangeVoter and LastDateVoted are less than DateOfDeath then it is assumed that there has not been any activity after the death date. Therefore, the match receives the MatchRankPoints.

Copyright - Accenture

## SSN & DOB Match
(Code SSB: SSN and Birth Date)

*Gender Code Matches*

If the GenderCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the GenderCode column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.
> If the Voter.GenderCode = Death.GenderCode exactly then the match will receive the MatchRankPoints associated with ExactGender.
> If the Voter.GenderCode = Unspecified and Death.GenderCode = Unspecified then the match will receive the MatchRankPoints associated with ExactGender.
> If the Voter.GenderCode = Unspecified (gender code 'U') then the match will receive the MatchRankPoints associated with PartialGender

*Race Code Matches*

If the RaceCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the RaceCode column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints. If the exact match returns false, a secondary search will be performed using the data from the tblRaceMatch table. If the tblVoters.RaceCode = RaceCode1 and tblDeath.RaceCode = RaceCode2, then the match rank will receive the MatchRankPoints. Values of NULL will be ignored for race matching and will not receive the MatchRankPoints.

*Last Name*

If the LastName column from tblVoters for the VoterID specified in the tblMatches record is equal to the LastName column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.
> The term "is equal" means the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage.

*First Name*

If the FirstName column from tblVoters for the VoterID specified in the tblMatches record is equal to the FirstName column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.
> The term "is equal" means the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage.

Copyright - Accenture

*Middle Name / Last Name (i.e. Maiden Name)*

If the MiddleName column from tblVoters for the VoterID specified in the tblMatches record contains the LastName column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints **OR** if the MiddleName column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID contains the LastName from tblVoters for the VoterID specified in the tblMatches record then the match rank will receive the MatchRankPoints.

*No Activity After Date of Death*

Get the DateOfDeath from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID.

By using the voter's VoterID, get the voters DateLastChangeVoter and LastDateVoted from tblVoters.

If DateLastChangeVoter and LastDateVoted are less than DateOfDeath then it is assumed that there has not been any activity after the death date. Therefore, the match receives the MatchRankPoints.

*Address Line 1*

If the AddrAddressLine1 column from tblVoters for the VoterID specified in the tblMatches record is equal to the AddrAddressLine1 column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.

➤ The term "is equal" means the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage and will receive the MatchRankPoints associated with AddrLinePartial **OR** with a 100% hit percentage then the match will receive the MatchRankPoints associated with AddrLineExact.

*Address City*

If the AddrCity column from tblVoters for the VoterID specified in the tblMatches record is equal to the AddrCity column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.

➤ The term "is equal" means the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage and will receive the MatchRankPoints associated with AddrCityPartial **OR** with a 100% hit percentage then the match will receive the MatchRankPoints associated with AddrCityExact.

Copyright - Accenture

*Address Zip*

If the AddrZip column from tblVoters for the VoterID specified in the tblMatches record is equal to the AddrZip column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.

➢ The term "is equal" means the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage and will receive the MatchRankPoints associated with AddrZipPartial **OR** with a 100% hit percentage then the match will receive the MatchRankPoints associated with AddrZipExact.

*County of Death / Residence County*

➢ If the SiteID column "translated to a CountyCode" from tblVoters for the VoterID specified in the tblMatches record is equal to the ResidenceCountyCode column and/or the CountyOfDeathCode column from tblDeath for the DeathID specified in the tblMatchesDeath record where the tblMatches record MatchID is the same as the tblMatchesDeath MatchID then the match rank will receive the MatchRankPoints.

➢ Note: The county codes are stored in tblSites for all the voters, A lookup table may be needed to make sure that there is an appropriate Site Column that matches appropriately to the CountyOfDeathCode column and ResidenceCountyCode column that are in tblDeath.

➢ Note: These are code fields they are either going to match or not. Don't look at MatchRankThreshold

# Felon Matches

## Name Match

(Code NAM: Last, First, LCD Middle, DOB)

*Gender Code Matches*

If the GenderCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the GenderCode column from tblFelonIdentity for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID then the match rank will the MatchRankPoints.

➢ If the Voter.GenderCode = Felon.GenderCode exactly then the match will receive the MatchRankPoints associated with ExactGender.

➢ If the Voter.GenderCode = Unspecified and Felon.GenderCode = Unspecified then the match will receive the MatchRankPoints associated with ExactGender.

Copyright - Accenture

> If the Voter.GenderCode = Unspecified (gender code 'U') then the match will receive the MatchRankPoints associated with PartialGender

*Race Code Matches*

If the RaceCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the RaceCode column from tblFelonIdentity for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID then the match rank will receive the MatchRankPoints. If this query returns false, the tblRaceMatch will be queried with both race code values. If the two race code values are found on the tblRaceMatch, then the match rank will receive the MatchRankPoints. Values of NULL will be ignored for race matching and will not receive the MatchRankPoints.

*Social Security Number*

If the SocSecNo column from tblVoters for the VoterID specified in the tblMatches record is equal to the SocSecNo column from tblFelonAlias for any of the alias records for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID then the match rank will receive the MatchRankPoints.

> If the columns are both of 9 characters in length and match exactly then the match will receive the MatchRankPoints associated with SSN9Exact **OR**
> If the columns are both of 9 characters in length and match as defined in **Appendix B – Transposed String Matching** with a MatchRankThreshold hit percentage then the match will receive the MatchRankPoints associated with SSN9Transposed **OR**
> If the columns are both of 4 characters in length and match exactly then the match will receive the MatchRankPoints associated with SSN4Exact **OR**
> If the columns are both of 4 characters in length and match as defined in **Appendix B – Transposed String Matching** with a MatchRankThreshold hit percentage then the match will receive the MatchRankPoints associated with SSN4Transposed.
> Note: If there is a 9 digit SSN compared to a 4 digit SSN then the last 4 digits on the 9 digit SSN should be used

*First Name*

If the FirstName column from tblVoters for the VoterID specified in the tblMatches record is equal to the FirstName column from tblFelonAlias for any of the alias records for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID then the match rank will receive the MatchRankPoints.

Copyright - Accenture

*Middle Name*

If the MiddleName column from tblVoters for the VoterID specified in the tblMatches record is equal to the MiddleName column from tblFelonAlias for any of the alias records for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID and if both columns compared have data (cannot be blank) then the match rank will receive the MatchRankPoints.

*No Activity After Conviction Date*

Get the latest FelonConvictionDate from tblFelonJudicialActivity for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID.

By using the voter's VoterID, get the voters DateLastChangeVoter and LastDateVoted from tblVoters.

If DateLastChangeVoter and LastDateVoted are less than FelonConvictionDate then it is assumed that there has not been any activity after the conviction date. Therefore, the match receives the MatchRankPoints.

## SSN & Name Match

(Code NSS: SSN, Last, First or DOB)

*Gender Code Matches*

If the GenderCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the GenderCode column from tblFelonIdentity for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID then the match rank will the MatchRankPoints.
- ➢ If the Voter.GenderCode = Felon.GenderCode exactly then the match will receive the MatchRankPoints associated with ExactGender.
- ➢ If the Voter.GenderCode = Unspecified and Felon.GenderCode = Unspecified then the match will receive the MatchRankPoints associated with ExactGender.
- ➢ If the Voter.GenderCode = Unspecified (gender code 'U') then the match will receive the MatchRankPoints associated with PartialGender

*Race Code Matches*

If the RaceCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the RaceCode column from tblFelonIdentity for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID then the match rank will receive the MatchRankPoints. If this query returns false, the tblRaceMatch will be queried with both race code values. If the two race code values are found on the tblRaceMatch, then the match rank will receive the

Copyright - Accenture

MatchRankPoints. Values of NULL will be ignored for race matching and will not receive the MatchRankPoints.

*First Name*

If the FirstName column from tblVoters for the VoterID specified in the tblMatches record is equal to the FirstName column from tblFelonAlias for any of the alias records for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID then the match rank will receive the MatchRankPoints.

   ➤ The term "is equal" means the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage.

*Date Of Birth*

If the DateOfBirth column from tblVoters for the VoterID specified in the tblMatches record is equal to the DateOfBirth column from tblFelonAlias for any of the alias records for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID then the match rank will receive the MatchRankPoints.

   ➤ The term "is equal" means the columns match as defined in **Appendix C – Transposed Date Matching**.

*No Activity After Conviction Date*

Get the latest FelonConvictionDate from tblFelonJudicialActivity for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID.

By using the voter's VoterID, get the voters DateLastChangeVoter and LastDateVoted from tblVoters.

If DateLastChangeVoter and LastDateVoted are less than FelonConvictionDate then it is assumed that there has not been any activity after the conviction date. Therefore, the match receives the MatchRankPoints.

## SSN & Last Name Match

(Code SSL: SSN, Last and 90% First or 2/3 DOB)

*Gender Code Matches*

If the GenderCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the GenderCode column from tblFelonIdentity for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID then the match rank will the MatchRankPoints.

   ➤ If the Voter.GenderCode = Felon.GenderCode exactly then the match will receive the MatchRankPoints associated with ExactGender.

Copyright - Accenture

> If the Voter.GenderCode = Unspecified and Felon.GenderCode = Unspecified then the match will receive the MatchRankPoints associated with ExactGender.
> If the Voter.GenderCode = Unspecified (gender code 'U') then the match will receive the MatchRankPoints associated with PartialGender

*Race Code Matches*

If the RaceCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the RaceCode column from tblFelonIdentity for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID then the match rank will receive the MatchRankPoints. If this query returns false, the tblRaceMatch will be queried with both race code values. If the two race code values are found on the tblRaceMatch, then the match rank will receive the MatchRankPoints. Values of NULL will be ignored for race matching and will not receive the MatchRankPoints.

*First Name*

If the FirstName column from tblVoters for the VoterID specified in the tblMatches record is equal to the FirstName column from tblFelonAlias for any of the alias records for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID then the match rank will receive the MatchRankPoints.
> The term "is equal" means the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage.

*Date Of Birth*

If the DateOfBirth column from tblVoters for the VoterID specified in the tblMatches record is equal to the DateOfBirth column from tblFelonAlias for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID then the match rank will receive the MatchRankPoints.
> The term "is equal" means the columns match as defined in **Appendix C – Transposed Date Matching**.

*No Activity After Conviction Date*

Get the latest FelonConvictionDate from tblFelonJudicialActivity for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID.

By using the voter's VoterID, get the voters DateLastChangeVoter and LastDateVoted from tblVoters.

Copyright - Accenture

If DateLastChangeVoter and LastDateVoted are less than FelonConvictionDate then it is assumed that there has not been any activity after the conviction date. Therefore, the match receives the MatchRankPoints.


## SSN & DOB Match

(Code SSB: SSN, Birth Date)

*Gender Code Matches*

If the GenderCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the GenderCode column from tblFelonIdentity for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID then the match rank will the MatchRankPoints.

➢ If the Voter.GenderCode = Felon.GenderCode exactly then the match will receive the MatchRankPoints associated with ExactGender.
➢ If the Voter.GenderCode = Unspecified and Felon.GenderCode = Unspecified then the match will receive the MatchRankPoints associated with ExactGender.
➢ If the Voter.GenderCode = Unspecified (gender code 'U') then the match will receive the MatchRankPoints associated with PartialGender

*Race Code Matches*

If the RaceCode column from tblVoters for the VoterID specified in the tblMatches record is equal to the RaceCode column from tblFelonIdentity for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID then the match rank will receive the MatchRankPoints. If this query returns false, the tblRaceMatch will be queried with both race code values. If the two race code values are found on the tblRaceMatch, then the match rank will receive the MatchRankPoints. Values of NULL will be ignored for race matching and will not receive the MatchRankPoints.

*Last Name*

If the LastName column from tblVoters for the VoterID specified in the tblMatches record is equal to the LastName column from tblFelonAlias for any of the alias records for the FelonIdentityID specified in the tblMatchesFelonIdentity record where the tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID then the match rank will receive the MatchRankPoints.

➢ The term "is equal" means the columns match as defined in **Appendix A – Partial String Matching** with a MatchRankThreshold hit percentage.

Copyright - Accenture

*First Name*

> If the FirstName column from tblVoters for the VoterID specified in the
> tblMatches record is equal to the FirstName column from tblFelonAlias for any of
> the alias records for the FelonIdentityID specified in the tblMatchesFelonIdentity
> record where the tblMatches record MatchID is the same as the
> tblMatchesFelonIdentity MatchID then the match rank will receive the
> MatchRankPoints.
> > ➤ The term "is equal" means the columns match as defined in **Appendix A –
> > Partial String Matching** with a MatchRankThreshold hit percentage.

*Middle Name / Last Name (i.e. Maiden Name)*

> If the MiddleName column from tblVoters for the VoterID specified in the
> tblMatches record contains the LastName column from tblFelonAlias for the
> FelonIdentityID specified in the tblMatchesFelonIdentity record where the
> tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID
> then the match rank will receive the MatchRankPoints **OR** if the MiddleName
> column from tblFelonAlias for the FelonIdentityID specified in the
> tblMatchesFelonIdentity record where the tblMatches record MatchID is the same
> as the tblMatchesFelonIdentity MatchID contains the LastName from tblVoters
> for the VoterID specified in the tblMatches record then the match rank will
> receive the MatchRankPoints.

*No Activity After Conviction Date*

> Get the latest FelonConvictionDate from tblFelonJudicialActivity for the
> FelonIdentityID specified in the tblMatchesFelonIdentity record where the
> tblMatches record MatchID is the same as the tblMatchesFelonIdentity MatchID.
>
> By using the voter's VoterID, get the voters DateLastChangeVoter and
> LastDateVoted from tblVoters.
>
> If DateLastChangeVoter and LastDateVoted are less than FelonConvictionDate
> then it is assumed that there has not been any activity after the conviction date.
> Therefore, the match receives the MatchRankPoints.

Copyright - Accenture

## Clemency Clearing a Felony Conviction

When performing Clemency to Felony matches there are several things that need to be tested :

- ➢ If there is only 1 record based on lastname, firstname and dob then it's a match
- ➢ If the dept of corr ref # match then it's a definite match
- ➢ If there are more than 1 record then it's a questionable match, the addressline1 and city should be checked to obtain a higher confidence in the match.
- ➢ Use Felony Alias Firstknown, LastKnown, Middleknown records to increase the probability for SSN & DOB felony to clemency matches.

In the case of Felon to Clemency Matches, if a clemency record exists that clears a felony conviction the tblMatches record should have its status changed to 'VRC' in the following cases:

- ➢ Verification via DeptCorrRefNo
  1. By using the DeptCorrRefNo column from the tblFelonIdentity table compared with the DeptCorrRefNo column from the tblClemency table a match between clemency and felon identities can be determined.
  2. Once a possible match is determined, it is required that the ClemencyDate column from the tblClemency table be greater than the latest FelonConvictionDate from the tblFelonJudicialActivity table for the FelonIdentityID from tblFelonIdentity identified in Step #1
  3. If a match is determined, the status code of the match will be changed to 'VRC'
- ➢ Verification via Last Name, First Name, DOB
  1. By using the LastName, FirstName, DateOfBirth columns from the tblFelonAlias table compared with the LastName, FirstName, DateOfBirth columns from the tblClemency table a match between clemency and felon aliases can be determined. Once a match is identified, it is required that the match be further refined to an individual FelonIdentity record by using the FelonIdentityID on the tblFelonAlias table.
  2. Once a possible match is determined, it is required that the ClemencyDate column from the tblClemency table be greater than the latest FelonConvictionDate from the tblFelonJudicialActivity table for the FelonIdentityID from tblFelonIdentity identified in Step #1
  3. If a match is determined, the status code of the match will be changed to 'VRC'

Copyright - Accenture

## Appendix A – Partial String Matching

➢ String A will be compared with String B
➢ Both the strings will be converted to Uppercase with all spaces removed from the strings
➢ The smaller of the two strings will be declared as sShort and the Larger will be declared as sLong
➢ If sLong contains the sShort string then that's a match
➢ If sLong does not contain the sShort string then sShort will be compared to sLong character by character

    o If the characters match then the iCountPass will be incremented by +1, the position in sShort will be incremented by +1, the position in sLong will be incremented by +1

    o If the characters do not match but the next character in sLong matches the current character in sShort then the iCountFail will be incremented by +1, the position in sShort will stay the same, the position in sLong will be incremented by +1

    o If the characters do not match but the next character in sLong matches the next character in sShort then the iCountFail will be incremented by +1, the position in sShort will be incremented by +1, the position in sLong will be incremented by +1

    o If the characters do not match then the default action is that iCountFail will be incremented by +1, the position in sLong will be incremented by +1

    o After the strings are compared then iCountPass/(iCountPass + iCountFail) will determine the passpercentage. If the passpercentage is greater than or equal to the required percentage then return true

```
Private Function TestString(
                                    ByVal str1 As String,_
                                    ByVal str2 As String, _
                                    ByVal PassPercent As Double _
                                    ) As Boolean

        Dim sShort As String = ""
        Dim sLong As String = ""

        If str1.Length > str2.Length Then
            sShort = str2.ToUpper.Trim
            sLong = str1.ToUpper.Trim
        Else
            sShort = str1.ToUpper.Trim
            sLong = str2.ToUpper.Trim
        End If

        Dim iShortCnt As Integer = 0
        Dim iLongCnt As Integer = 0
        Dim iShortLen As Integer = 0
        Dim iLongLen As Integer = 0
        Dim iCountPass As Integer = 0
        Dim iCountFail As Integer = 0
```

Copyright - Accenture

```
iShortLen = sShort.Length - 1
iLongLen = sLong.Length - 1

If sLong.IndexOf(sShort) > -1 Then
    ' The primary string is contained in the secondary string
    Return True
Else
    Do While iShortCnt <= iShortLen And iLongCnt <= iLongLen
        Dim WorkDone As Boolean = False

        ' If the same characters at the same positions match
        If Not WorkDone Then
            If sShort.Substring(iShortCnt, 1) = _
                sLong.Substring(iLongCnt, 1) Then
                iCountPass += 1
                iShortCnt += 1
                iLongCnt += 1
                WorkDone = True
            End If
        End If

        ' If the Next character in the long string matches
        ' the current character in the short string
        If Not WorkDone Then
            If (iLongCnt + 1 <= iLongLen) Then
                If sShort.Substring(iShortCnt, 1) = _
                sLong.Substring(iLongCnt + 1, 1) Then
                    iCountFail += 1
                    iLongCnt += 1
                    WorkDone = True
                End If
            Else
                iCountFail += 1
                iLongCnt += 1
                WorkDone = True
            End If
        End If

        ' If the Next character in the strings match
        If Not WorkDone Then
            If (iShortCnt + 1 <= iShortLen) AND _
                (iLongCnt + 1 <= iLongLen) Then
                If sShort.Substring(iShortCnt + 1, 1) = _
                sLong.Substring(iLongCnt + 1, 1) Then
                    iCountFail += 1
                    iShortCnt += 1
                    iLongCnt += 1
                    WorkDone = True
                End If
            Else
                iCountFail += 1
                iShortCnt += 1
                iLongCnt += 1
                WorkDone = True
            End If
        End If
```

Copyright - Accenture

```
                    ' Otherwise increment the long string
                    If Not WorkDone Then
                         iCountFail += 1
                         iLongCnt += 1
                    End If
            Loop

            Dim PassPercentage As Double
            PassPercentage = iCountPass / (iCountPass + iCountFail)
            If PassPercentage >= PassPercent Then
                    Return True
            Else
                    Return False
            End If
        End If

    End Function
```

Copyright - Accenture

## Appendix B - Transposed String Matching

➤ String A will be compared with String B
➤ The strings must both be of the same length
➤ Both strings will be converted to Uppercase with spaces trimmed off the ends of the strings
➤ String A will be compared to String B character by character
  o If the characters match then the iCountPass will be incremented by +1, the position in String A will be incremented by +1, the position in String B will be incremented by +1
  o If the characters do not match but the next character in String A matches the current character in String B AND the current character in String A matches the next character in String B then the iCountPass will be incremented by +1, the position in String A will be incremented by +2, the position in String B will be incremented by +2
  o If the characters do not match then the default action is that iCountFail will be incremented by +1, the position in String A will be incremented by +1, the position in String B will be incremented by +1
  o After the strings are compared then iCountPass/(iCountPass + iCountFail) will determine the passpercentage. If the passpercentage is greater than or equal to the required percentage then return true

Copyright - Accenture

# Florida Department of State – Division of Elections
## Central Voter Database

# Match Ranking Design Modifications

# Table of Contents

Inclusion of User-Defined Function ...................................................................3
Modification of First Name Rule.......................................................................3
Modification of what Records to Process............................................................4
Modification of the Match Base Points Reference ...........................................4
Modification to only Rank Positive Basis Matches........................................4

# Inclusion of User-Defined Function

### MatchRankingRules

The MatchRankingRules User-Defined function was developed to process each match record for specific additional ranking rules. This User-Defined function was called for each match record. This code was incorporated into the stored procedure called spMatchRanking. The stored procedure was then modified to use temporary tables for several inputs. The list below identifies the temporary tables that were created as part of this process.

1. @tblDeath
2. @tblVoters
3. @tblVoters2 ( a second copy of tblVoters for Voter Dup Matches)
4. @tblFelonIdentity
5. @tblFelonAlias
6. @tblFelonJudicialActivity

The use of the temporary tables required each rule to be modified to use the new temporary table and no longer reference the actual table. An example of this is listed below.

```
SELECT @TempA = AddrZip FROM tblVoters
SELECT @TempA = AddrZip FROM @tblVoters
```

# Modification of First Name Rule

### NONICKNAMEFIRST

The business rules for how to match a first name had been modified to deal with multi-word first names (i.e. Billy Sue). The business rule changed to only consider the first word of the first name when checking for an exact non-nickname first name. The code snippet listed below will set two variables to the first word for each first name. Then the original comparison of TempA = TempB then give the points for a non-nickname match. An example of this function is Billy Sue would be considered a match with Billy.

```
IF charindex(' ', @TempA) > 0
        BEGIN
        select @TempA = ' '+ substring(@TempA, 1, charindex(' ', @TempA))
        END
IF charindex(' ', @TempB) > 0
        BEGIN
        select @TempB = ' '+ substring(@TempB, 1, charindex(' ', @TempB))
END
```

# Modification of what Records to Process

**RunSinceThisStatusChangeDate**
The MatchRanking stored procedure has been modified to allow a parameter to be passed from the Admin Console that identifies the date from which match records should be evaluated within the MatchRanking stored procedure. This functionality allows the ranking process to only evaluate new or recent matches instead of having it process all matches. This will allow for a faster ranking process on a daily/weekly basis. Ranking for all records can still be accomplished by not passing a date to the stored procedure. The snippet of code below highlights the logic used to enable this functionality.

```
SELECT
      MatchID, VoterID,RecordTypeCode,MatchBasisCode,MatchRank,
      0 as RecordID
FROM tblMatches
WHERE StatusCode = 'BRT'
      AND LastStatusChangeDate >= @RunSinceThisStatusChangeDate
      OR LastStatusChangeDate IS NULL
      AND MatchRank > 0
```

# Modification of the Match Base Points Reference

The MatchRanking stored procedure has been modified to reference the table tblMAtchRankPointsMod for the basis points for all types of matches. This will consolidate where the basis points are referenced when the match ranking process is started. This will ensure that the point values are not compounded every time the match is re-evaluated by the MatchRanking stored procedure. Each match will be given the basis points and any ranking points that have been identified for the match and then evaluate if the current rank points for the match is higher or lower than the points from the re-evaluation.

# Modification to only Rank Positive Basis Matches

The Match Ranking stored procedure was modified to not run those records that have a Status Code of 'BRT' (below ranking threshold) and have Match Rank Points greater than zero. This was added due to the creation of the stored procedure to "Filter Out" matches that have not passed the additional requirements outlined in the Match Filter Design regarding stricter matches on SSN, Date of Birth, Gender, and Race.

# <u>Modification to Rank Points</u>

The match ranking points have been updated to meet the design rules outlined below. These points are stored in the table 'tblMatchRankPointsMod' and contain points for initial match basis, match basis required for export, and ranking points.

- Basis points are to be valued by the basis type in the order of NAM, NSS, NDL, SSL, SSB, DLL, DLB.

- Ranking Points, based on which rules are checked, must not exceed 90 points.

- Example:
    - o Base Match
        - ▪ NAM therefore points are at 45
    - o Rules
        - ▪ NONICKNAMEFIRST          12
        - ▪ FLIDEXACT                8
        - ▪ GENDEREXACT              5
        - ▪ MIDDLENAMEEXACT          8
        - ▪ NOACTIVITY               1
        - ▪ RACE                     1
        - ▪ SSN9EXACT                10
    - o Results
        - ▪ Rank Points set to 90

# EXHIBIT B

## EXHIBIT B

## NVRA COORDINATOR

Coordinates the National Voter Registration Act (NVRA) and the Florida Voter Registration Act. Processes online voter registration applications. Forwards applications, cancellations and felony convictions to appropriate county/state election offices. Provides continuous assistance to, collects information from, conducts annual training and performs periodic site visits for the supervisors of elections, the Department of Highway Safety and Motor Vehicles, voter registration agencies and universities on the National Voter Registration Act.

Prepares monthly NVRA report. Prepares book-closing reports prior to each election.

Conducts research for compiling statistical reports, including research concerning voter registration activities of Department of Highway Safety and Motor Vehicles and voter registration agencies.

Identifies operational problems in the implementation of division policies and procedures, including by the Department of Highway Safety and Motor Vehicles and by voter registration agencies. Investigates, assesses, analyzes and makes such recommendations as the Coordinator deems appropriate to address issues and problems identified.

Handles special complex projects and assignments. Investigates and researches subject matter. Prepares reports, recommends solutions and/or takes necessary corrective measures. Processes a variety of correspondence and prepares replies. Reviews records and reports which require action and recommends course of action or solutions.

**EXHIBIT B**

# SETTLEMENT AGREEMENT

## SECTION I.          PARTIES AND TERM OF AGREEMENT

A.   *Parties*. This Settlement Agreement (hereinafter "Agreement") between the following (hereinafter collectively referred to as "Parties"):

Those named  Plaintiffs, together with their counsel of record, in the lawsuit styled: *National Association for the Advancement of Colored People, Inc. et al v. Jim Smith, Florida Secretary of State, et al.* Case No. 01-0120-CIV-GOLD/SIMONTON, in the United States District Court for the Southern District of Florida (hereinafter Plaintiffs')

and

Defendant Fred Dickinson, Executive Director, Florida Department of Highway Safety & Motor Vehicles (hereinafter "Dickinson" or "Defendant")

B.   *Term.*   This Agreement shall be effective upon final court approval as set out below, and shall continue through January 31, 2004.   The terms of this Agreement are binding on Dickinson and Dickinson's successors.   The Parties shall maintain copies of all documents related to satisfaction of this Agreement through the January 31, 2004 end date for the Agreement.

## SECTION II:            MUTUAL UNDERSTANDINGS; PURPOSE AND INTENT; AGREEMENT APPROVAL PROCESS

In furtherance of this Agreement, the Parties agree as follows:

A. *No concessions regarding allegations*.   It is mutually understood by the Parties that nothing contained in this Agreement shall be considered or interpreted to be an admission of liability or violation of any laws by DICKINSON, nor shall it be considered an admission by Plaintiffs of an inability to prove the allegations raised in the lawsuit.   Rather, the parties are entering into this Agreement to resolve the existing litigation in the most effective and efficient manner for all involved.   To the extent that this Agreement states that DICKINSON will "continue" a practice or policy, such language is not an admission by Plaintiffs that DICKINSON has  previously undertaken such a practice or policy; similarly, to the extent that this Agreement states that DICKINSON will take or refrain from any action, such language is not an admission by DICKINSON that he has not already implemented or refrained from such a practice independent of this lawsuit or Agreement.

B. **Purpose and Intent of Agreement.** DICKINSON has taken an oath to support,

protect and defend the Constitution and laws of the United States and the State of Florida, and is dedicated to act in a manner consistent with the requirements of federal, state and local election law, including the federal Voting Rights Act, and all its various provisions. Plaintiffs' have not alleged that DICKINSON acted in a purposefully discriminatory manner toward any group. It is further understood by the parties to this Agreement that following the November 2000 general election, new laws, rules and procedures were implemented in Florida which affect the registration and voting process. In exchange for the Plaintiffs' agreement to file a voluntary dismissal of this action against DICKINSON with prejudice, DICKINSON agrees to follow the specified procedures.

    **C.     Class Certification Understanding.** This litigation was brought as a class action. On July 31, 2002, the Court conditionally certified a subclass of voters against DICKINSON. Plaintiffs hereby agree to ask the Court to withdraw Plaintiffs' request for class certification as it relates to DICKINSON. Therefore, the Parties believe the requirements of Rule 23(e) of the Federal Rules of Civil Procedure do not apply and need not be followed. To the extent that the Court determines that Rule 23(e) approval is required, the Parties will submit a joint proposal regarding Rule 23(e) compliance within ten days from the Court's determination. The parties further agree that the fact of this settlement shall not be cited or urged by them in this or other litigation as an indication of the propriety of class certification.

    **D.     Effect of Agreement Upon Remaining Lawsuit.** Nothing contained herein shall be interpreted to waive any claims Plaintiffs' may have or make against other defendants in this litigation, whether they be state or local defendants. Unless otherwise specifically waived in this Agreement, the Parties have not waived and do not relinquish any rights under federal and state law.

    **E.     Notice of Settlement.** Upon execution of this Agreement, Counsel for Plaintiffs and DICKINSON agree to file a "Joint Notice of Settlement and Motion for Dismissal With Prejudice pursuant to Fed.R.Civ.P. 41(a)(2). That Joint Notice shall request that the Court enter a final order of dismissal with prejudice of all claims against DICKINSON, based upon the terms of this Agreement, which shall be attached to the Order of Dismissal. This Agreement is not effective unless or until DICKINSON is dismissed with prejudice on the terms described above. This agreement is not a consent decree, nor shall it be construed as such.

# SECTION III.     Administration of Voter Registration Procedures at Department of Highway Safety and Motor Vehicles (DHSMV)

    A.    In an effort to provide clarity regarding voter registration, driver's license examiners changing a customer's address on a driver's license will ask the customer as follows: "Would you also like to change your address for voter registration purposes?" In addition, DICKINSON will create a computerized

2

prompt that will appear on the screen of each DHSMV examiner to prompt them to ask this question directly following the new address on the driver's license screen. This change will be included in all training materials. This change will be effective by no later than January 31, 2003.

B.     DICKINSON will work with the Division of Elections (DOE) and Supervisors of Elections (SOE) to create and implement a mechanism for the electronic transmittal of voter registration applications and signatures of applicants. Electronic applications will be batched at the end of the day. Electronic transmittal of applications to DOE or SOE will occur daily or within 5 days of receipt of the application. If the DOE or SOE insist on an original signature for voter registration applications, then DICKINSON will send applications both electronically and via transmittal of paper voter registration application. If requested, DICKINSON will advise Plaintiffs of the status of his efforts to electronically transmit voter registration applications to DOE or SOE.

C.     Prior to book closing for the 2002 general election and throughout the duration of the term of this agreement, DICKINSON will provide marketing notices, to the extent practicable, in mailings and other customer communications regarding opportunities to register to vote at DHSMV. DICKINSON will provide Plaintiffs' counsel with copies of these marketing notices annually.

D.     DICKINSON will revise its DHSMV examiners' manual to incorporate changes to voter registration procedures. These changes include but are not limited to the change to the question asked of customers in ¶ IIIA above. One hard copy of the examiner's manual will be provided to each DHSMV office and made available to each examiner via an online system.

E.     DICKINSON will ensure that DHSMV employees are trained to make sure that applications are date stamped and that one employee in each office will ensure that all applications are date stamped to coincide with the end-of-day transmittal report.

F.     DICKINSON will place additional laser printers for voter registration applications in more areas at individual DHSMV offices.

## SECTION IV.     Audits and Spot Checks of DHSMV Voter Registration Procedures

A.     DICKINSON shall designate a DHSMV employee who will conduct statistical analyses of the motor voter choices and driver's license issuances disaggregated by office and review quality assurance reports to identify problems with voter registration implementation and work with office supervisors toward corrective

3

action for specific offices.

## SECTION V.        Reporting

A.    DICKINSON will report to Plaintiffs counsel every 6 months for 18 months the following:

       1.    statistical data regarding motor voter choices and driver's license issuance disaggregated by offices within county. This data will cover the time period of January 31, 2001 to January 31, 2004.

       2.    the location and date of trainings for DHSMV employees including the identity of the trainer.

B.    DICKINSON shall annually provide to Plaintiffs' counsel copies of quality assurance reports about voter registration procedures, referred to in ¶IVA of this agreement.

## SECTION VI.      Enforcement of Agreement

    In furtherance of the enforcement of the Agreement, the Parties hereby mutually agree as follows:

A.    **Written Notification Alleged Violations and Voluntary Correction.** If Plaintiffs' believe that DICKINSON has breached the terms of this Agreement, Plaintiffs' will notify DICKINSON of the provision of the Agreement with which they allege DICKINSON has not complied, and with a written explanation of the nature of the alleged breach. Said notification shall be within ten (10) days of discovering such alleged breach. Upon receipt of this written notice and explanation (hereinafter "Notice"), DICKINSON will conduct an appropriate investigation and respond, in writing within ten (10) business days. However, if the book closing date for the next election is less than ten business days away, DICKINSON will make a good faith effort to respond by the book closing date. The Parties may, if warranted, take voluntary corrective action. There shall be no award of attorneys' fees or costs to either Party for any actions/inactions taken at this stage, regardless of the eventual outcome of the dispute.

B.    **Mediation.**   If Plaintiffs' reasonably believe that the response provided by DICKINSON does not resolve the issue(s) or alleged violation(s) raised in the Notice, the Parties may invoke a mediation (hereinafter "Mediation") process to resolve the dispute. The costs of Mediation shall be divided evenly between the Parties. Unless otherwise agreed in writing between Parties, Mediation must commence within 30 calendar days from receipt of Notice. For alleged violations

4

which Plaintiffs', in good faith, reasonably believe may result in immediate and irreparable harm to Plaintiffs', the Notice shall so indicate this belief, and Mediation must then commence within five (5) business days, if at all practicable. However, should Plaintiffs' learn of an alleged breach at a time that is five (5) days or less prior to an election, they shall promptly notify DICKINSON of the alleged breach, and DICKINSON shall make a good faith effort to correct the alleged breach within 24 hours thereof. The Parties shall conduct the Mediation in good faith in an attempt to resolve the matter(s) contained in the Notice, and shall therefore have a representative, with full authority to settle the dispute, attend the Mediation (subject to any limitations imposed upon DICKINSON by State Law, Florida Statute § 45.062). Neither side is entitled to attorneys' fees for any time devoted toward this Mediation process, regardless of outcome.

C.      **Performance of this Agreement:** If the issue(s) of noncompliance raised in the Notice is/are not resolved through Mediation, then Plaintiffs' sole remedy is to file a separate action to enforce performance of this Agreement in the U.S. District Court for the Southern District of Florida. DICKINSON will not object to the filing of such a case on the grounds of lack of jurisdiction. Strict compliance with paragraphs A and B of Section VI is agreed by the Parties to be a condition precedent to the filing of any such action. Neither Party may recover attorneys' fees or cost for any such action unless the noncompliance with this Agreement that is the subject of the action is determined by the Court to constitute a violation of federal or state law and such fees are provided-for pursuant to said law.

# SECTION VII.    Attorneys' Fees and Costs in Case No. 01-0120-CIV-GOLD/SIMONTON

In furtherance of this Agreement, the Parties agree as follows:

A.      **Attorneys' Fees/Costs.** Each party shall bear their own attorneys fees. DICKINSON agrees to pay Plaintiffs' their costs for this litigation in the amount of $10,000.00 in settlement of all claims for attorney fees and/or costs that Plaintiffs' or Plaintiffs' counsel may have in connection with claims against DICKINSON.

B.      **Public Records and Copying Costs.** DICKINSON agrees to waive any and all unpaid costs currently due and owing from Plaintiffs' as a result of copies provided pursuant to any public records or discovery request. Plaintiffs' similarly waive any and all unpaid costs which DICKINSON may owe as a result of discovery requests or other litigation-related costs. DICKINSON will waive labor, photocopying, and all other fees for obtaining any public records request, up to $2,000, for documents to be provided subsequent to the execution of this

5

agreement, up to January 31, 2004, the end date of this agreement.

## SECTION VIII.          EXECUTION

The Parties, having reviewed the above terms and conditions, and being in mutual agreement thereto, do hereby execute this Agreement in the following manner:

Dated:  August 29, 2002

_____              _____
George L. Waas, Esq.                          Monique L. Dixon, Esq.
Douglas B. MacInnes, Esq.                     Judith A. Browne, Esq.
Assistant Attorneys General                   Advancement Project
Department of Legal Affairs                   1730 M Street, NW, Suite 401
PL-01, The Capitol                            Washington, D.C. 20036
Tallahassee, FL 32399-1050

For Defendant Fred  Dickinson                 For Plaintiffs

6

agreement, up to January 31, 2004, the end date of this agreement.

## SECTION VIII.             EXECUTION

The Parties, having reviewed the above terms and conditions, and being in mutual agreement thereto, do hereby execute this Agreement in the following manner:

Dated:  August *29*, 2002


George L. Waas, Esq.                       Monique L. Dixon, Esq.
Douglas B. MacInnes, Esq.                  Judith A. Browne, Esq.
Assistant Attorneys General                Advancement Project
Department of Legal Affairs                1730 M Street, NW, Suite 401
PL-01, The Capitol                         Washington, D.C. 20036
Tallahassee, FL 32399-1050

For Defendant Fred  Dickinson             For Plaintiffs

6

**EXHIBIT C**

# SETTLEMENT AGREEMENT

## SECTION I.        PARTIES AND TERM OF AGREEMENT

A.  *Parties*. This Settlement Agreement (hereinafter "Agreement") between the following (hereinafter collectively referred to as "Parties"):

Those named  Plaintiffs, together with their counsel of record, in the lawsuit styled: *National Association for the Advancement of Colored People, Inc. et al v. Jim Smith, Florida Secretary of State, et al.* Case No. 01-0120-CIV-GOLD/SIMONTON, in the United States District Court for the Southern District of Florida (hereinafter Plaintiffs')

and

Defendant Kathleen Kearney, Secretary of the Department of Children and Families (hereinafter "KEARNEY" or "Defendant")

B.  *Term.*  This Agreement shall be effective upon final court approval as set out below, and shall continue through January 31, 2004.   The terms of this Agreement are binding on KEARNEY and KEARNEY's successors.   The Parties shall maintain copies of all documents related to satisfaction of this Agreement through the January 31, 2004 end date for the Agreement.

## SECTION II:            MUTUAL UNDERSTANDINGS; PURPOSE AND INTENT; AGREEMENT APPROVAL PROCESS

In furtherance of this Agreement, the Parties agree as follows:

A.  *No concessions regarding allegations*.  It is mutually understood by the Parties that nothing contained in this Agreement shall be considered or interpreted to be an admission of liability or violation of any laws by KEARNEY, nor shall it be considered an admission by Plaintiffs of an inability to prove the allegations raised in the lawsuit.  Rather, the parties are entering into this Agreement to resolve the existing litigation in the most effective and efficient manner for all involved.  To the extent that this Agreement states that KEARNEY will "continue" a practice or policy, such language is not an admission by Plaintiffs that KEARNEY has  previously undertaken such a practice or policy; similarly, to the extent that this Agreement states that KEARNEY will take or refrain from any action, such language is not an admission by KEARNEY that she has not already implemented or refrained from such a practice independent of this lawsuit or Agreement.

B. **Purpose and Intent of Agreement.**        KEARNEY has taken an oath to support, protect and defend the Constitution and laws of the United States and the State of Florida, and is dedicated to act in a manner consistent with the requirements of federal, state and local election

1

law, including the federal Voting Rights Act, and all its various provisions. Plaintiffs' have not alleged that KEARNEY acted in a purposefully discriminatory manner toward any group. It is further understood by the parties to this Agreement that following the November 2000 general election, new laws, rules and procedures were implemented in Florida which affect the registration and voting process. In exchange for the Plaintiffs' agreement to file a voluntary dismissal of this action against KEARNEY with prejudice, KEARNEY agrees to follow the specified procedures in this agreement.

   **C.   Class Certification Understanding.**   This litigation was brought as a class action. On July 31, 2002, the Court conditionally certified a subclass of voters against KEARNEY. Plaintiffs hereby agree to ask the Court to withdraw Plaintiffs' request for class certification as it relates to KEARNEY. Therefore, the Parties believe the requirements of Rule 23(e) of the Federal Rules of Civil Procedure do not apply and need not be followed. To the extent that the Court determines that Rule 23(e) approval is required, the Parties will submit a joint proposal regarding Rule 23(e) compliance within ten days from the Court's determination. The parties further agree that the fact of this settlement shall not be cited or urged by them in this or other litigation as an indication of the propriety of class certification.

   **D.   Effect of Agreement Upon Remaining Lawsuit.**   Nothing contained herein shall be interpreted to waive any claims Plaintiffs' may have or make against other defendants in this litigation, whether they be state or local defendants.  Unless otherwise specifically waived in this Agreement, the Parties have not waived and do not relinquish any rights under federal and state law.

   **E.   Notice of Settlement.**  Upon execution of this Agreement, Counsel for Plaintiffs and KEARNEY agree to file a "Joint Notice of Settlement and Motion for Dismissal With Prejudice pursuant to Fed.R.Civ.P. 41(a)(2).  That Joint Notice shall request that the Court enter a final order of dismissal with prejudice of all claims against KEARNEY, based upon the terms of this Agreement, which shall be attached to the Order of Dismissal.  This Agreement is not effective unless or until KEARNEY is dismissed with prejudice on the terms described above. This agreement is not a consent decree, nor shall it be construed as such.

# SECTION III.   Administration of Voter Registration Procedures at Department of Children and Families (DCF)

   A.   KEARNEY shall create and implement a computerized system for voter registration procedures at DCF.  By January 2003, DCF will develop and implement a computer or web-based application for offering voter registration preference forms to clients by DCF employees.  The employee using this system will orally ask clients the questions contained on the voter preference form, will provide a voter registration application to clients who choose to register, will orally offer the client assistance in filling out the voter registration application and

2

will accept completed voter registration applications. This system will collect and maintain clients' voter registration choices. Data from this computer or web-based system regarding the number of declinations, registration forms accepted in-office, and updates of voter registration records by DCF office will be used to monitor compliance with the NVRA. These procedures will be in addition to any required under NVRA and Florida law.

B.     KEARNEY shall post on each computer used by DCF employees, whose duties involve NVRA responsibilities, a sticker which states "Don't forget voter registration." This sticker shall be placed on the computer monitors of all DCF employees who assist clients with applying or recertifying for public assistance and services or changing addresses for the purposes of receiving public assistance or services.

C.     By January 2003, KEARNEY shall provide to DCF clients receipts indicating their voter registration choice as provided by them on their voter registration preference form.

D.     KEARNEY shall create and implement uniform procedures for offering and for storing voter registration preference forms at DCF offices.

E.     KEARNEY shall create and enforce procedures that DCF shall implement to keep voter registration preference forms confidential.

F.     KEARNEY shall require DCF offices to retain web-based records of voter registration preference choices during the term of this Settlement Agreement. Hard-copy voter preference forms shall be kept in accordance with the law.

G.     KEARNEY shall create and implement uniform procedures for forwarding DCF voter registration applications to Supervisors of Elections offices (SOE). This uniform procedure shall ensure that voter registration applications are transmitted within 5 days of receipt of these applications by DCF offices. DCF offices shall maintain records, during the term of this agreement, of the number of applications transmitted to Supervisors of Elections for each transmission of applications.

H.     KEARNEY shall direct District Coordinators or a District designee shall meet (telephonically or in person) annually with Supervisors of Elections to discuss implementation of voter registration programs and make needed improvements to these programs.

## SECTION IV.     Training and Voter Education

A.     KEARNEY will provide annual training with regard to NVRA responsibilities,

3

including the completion of voter registration preference forms and assisting clients in completing voter registration applications, to all DCF employees who assist clients with applying or recertifying for public assistance and services or changing addresses with regard to public assistance and services. All employees, whose duties involve NVRA responsibilities, shall receive training in 2002, but no later than September 30, 2002.

B.    By April 2003, KEARNEY shall develop and implement computer-based training with regard to NVRA responsibilities, including the completion of voter registration preference forms and voter registration applications, for all DCF employees who assist clients with applying or recertifying for public assistance and services or changing addresses with regard to public assistance and services. This system will maintain the number of employees who participated in computer-based training.

C.    KEARNEY will post in each DCF office signs/posters regarding voter registration opportunities. These signs/posters shall be written in English, Spanish and Creole. Posters should appear in waiting rooms and offices of DCF employees who provide assistance and services to clients.

D.    KEARNEY shall issue public service announcements concerning voter registration opportunities at DCF. These announcements will provide information about voter registration opportunities available at DFC offices.

## SECTION V.        Monitoring of DCF Voter Registration Procedures

A.    KEARNEY shall require that DCF's Quality Assurance Program include compliance with the NVRA and terms of this agreement during audits of DCF offices/processes. This change shall be implemented no later than September 30, 2002. Reports of compliance with NVRA shall be forwarded to the Program Administrator of Special Programs or other individuals responsible for administration of the voter registration programs. A corrective action to cure NVRA implementation problems will be developed by DCF Program Administrator/ District Coordinators and the effectiveness of such plan will be monitored by Quality Assurance. A final report of corrective steps taken will be provided to the Program Administrator of Special Programs or other individuals responsible for administration of the voter registration program.

## SECTION VI.       Audits, Data collection, Client Surveys

A.    KEARNEY shall direct and assure that, no later than January 31, 2003, DCF District Coordinators or their designees shall begin regularly to conduct random spot checks of DCF offices and surveys of DCF clients to ensure compliance with

4

NVRA and semi-annually review data gathered by the web-based application referred to in ¶ IIIA.

B.     Data gathered and reviewed under ¶ VIA shall include number of clients who were offered voter registration preference forms; number of clients who registered to vote; number of clients who declined to register to vote; number of clients who updated their voter registration records, and the number of voter registration applications transmitted to Supervisors of Elections.  These reports shall be provided to the Program Administrator of Special Programs or other individuals responsible for administration of the voter registration program, who shall take steps to ensure compliance.

C.     KEARNEY shall, commencing no later than January 31, 2003, add two questions to DCF client surveys: "what was the purpose of your visit to DCF?" (providing choices that designate whether they received services for which they would be entitled to voter registration opportunities) and "were you offered the opportunity to apply for voter registration?"  Client surveys shall be maintained for the term of this agreement.

## SECTION VII.     Reporting

A.     KEARNEY shall report to Plaintiffs' counsel every 6 months for the term of this Settlement Agreement, the number of voter registration applications received by DCF offices, number of declinations, number of updates to voter registration information, number of persons served, and the number of voter registration applications transmitted to Supervisors of Elections disaggregated by DCF district and county.

B.     KEARNEY shall also report to Plaintiffs' counsel every 6 months for the term of this settlement agreement the location and date of trainings for DCF employees including the identity of the trainer as well as the number of employees trained.  Additionally, KEARNEY shall report annually the number of employees trained by computer-based training referred to in ¶IVB of this agreement.

C.     KEARNEY annually, for the term of this settlement agreement, shall provide to Plaintiffs' counsel copies of quality assurance reports about voter registration procedures, referred to in ¶ VA of this agreement.

## SECTION VIII.   Enforcement of Agreement

In furtherance of the enforcement of this Agreement, the Parties hereby mutually agree as follows:

5

A.     **Written Notification of Alleged Breach and Voluntary Correction.** If Plaintiffs believe that KEARNEY has breached the terms of this Agreement, Plaintiffs' will notify KEARNEY of the provision of the Agreement with which they allege KEARNEY has not complied, and with a written explanation of the nature of the alleged breach. Said notification shall be within ten (10) days of discovering such alleged breach. Upon receipt of this written notice and explanation (hereinafter "Notice"), KEARNEY will conduct an appropriate investigation and respond, in writing within ten (10) business days. However, if the book closing date for the next election is less than ten business days away, KEARNEY will make a good faith effort to respond by the book closing date. The Parties may, if warranted, take voluntary corrective action. There shall be no award of attorneys' fees or costs to either Party for any actions/inactions taken at this stage, regardless of the eventual outcome of the dispute.

B.     **Mediation.** If Plaintiffs reasonably believe that the response provided by KEARNEY does not resolve the issue(s) or alleged breach raised in the Notice, the Parties may invoke a mediation (hereinafter "Mediation") process to resolve the dispute. The costs of Mediation shall be divided evenly between the Parties. Unless otherwise agreed in writing between Parties, Mediation must commence within 30 calendar days from receipt of Notice. For alleged violations which Plaintiffs', in good faith, reasonably believe may result in immediate and irreparable harm to Plaintiffs', the Notice shall so indicate this belief, and Mediation must then commence within five (5) business days, if at all practicable. However, should Plaintiffs' learn of an alleged breach at a time that is five (5) days or less prior to an election, they shall promptly notify KEARNEY of the alleged breach, and KEARNEY shall make a good faith effort to correct the alleged breach within 24 hours thereof. The Parties shall conduct the Mediation in good faith in an attempt to resolve the matter(s) contained in the Notice, and shall therefore have a representative, with full authority to settle the dispute, attend the Mediation (subject to any limitations imposed upon KEARNEY by State Law, Florida Stat.45.062). Neither side is entitled to attorneys' fees for any time devoted toward this Mediation process, regardless of outcome.

C.     **Performance of this Agreement:** If the issue(s) of noncompliance raised in the Notice is/are not resolved through Mediation, then Plaintiffs' sole remedy is to file a separate action to enforce performance of this Agreement in the U.S. District Court for the Southern District of Florida. KEARNEY will not object to the filing of such a case on the grounds of lack of jurisdiction. Strict compliance with paragraphs A and B of Section VIII is agreed by the Parties to be a condition precedent to the filing of any such action. Neither Party may recover attorneys' fees or cost for any such action unless the noncompliance with this Agreement that is the subject of the action is determined by the Court to constitute a violation of federal or state law and such fees are provided-for pursuant to said law.

6

**SECTION IX        ATTORNEYS' FEES AND COSTS IN CASE NO. 01-0120-CIV-GOLD/SIMONTON**

In furtherance of this Agreement, the Parties agree as follows:

**A.   Attorneys' Fees/Costs.** Each party shall bear their own attorneys' fees. KEARNEY agrees to pay Plaintiffs' their costs for this litigation in the amount of $10,000.00 in settlement of all claims for attorney fees and/or costs that Plaintiffs' or Plaintiffs' counsel may have in connection with claims against KEARNEY.

**B.        Public Records and Copying Costs.** KEARNEY agrees to waive any and all unpaid costs currently due and owing from Plaintiffs' as a result of copies provided pursuant to any public records or discovery request. Plaintiffs' similarly waive any and all unpaid costs which KEARNEY may owe as a result of discovery requests or other litigation-related costs. KEARNEY will waive labor, photocopying, and all other fees for obtaining any public records request, up to $2,000.

**SECTION X.          EXECUTION**

The Parties, having reviewed the above terms and conditions, and being in mutual agreement thereto, do hereby execute this Agreement in the following manner:

Dated:   August 2⁹, 2002


_____              _____
George L. Waas, Esq.                          Monique L. Dixon, Esq,
Douglas B. MacInnes, Esq.                     Judith A. Browne, Esq.
Assistant Attorneys General                   Advancement Project
Department of Legal Affairs                   1730 M Street, NW, Suite 401
PL-01, The Capitol                            Washington, D.C. 20036
Tallahassee, FL 32399-1050

For Defendant Kathleen Kearney               For Plaintiffs

7

**SECTION IX**          **ATTORNEYS' FEES AND COSTS IN CASE NO. 01-0120-CIV-GOLD/SIMONTON**

In furtherance of this Agreement, the Parties agree as follows:

**A.   Attorneys' Fees/Costs.**  Each party shall bear their own attorneys' fees. KEARNEY agrees to pay Plaintiffs' their costs for this litigation in the amount of $10,000.00 in settlement of all claims for attorney fees and/or costs that Plaintiffs' or Plaintiffs' counsel may have in connection with claims against KEARNEY.

**B.          Public Records and Copying Costs.**  KEARNEY agrees to waive any and all unpaid costs currently due and owing from Plaintiffs' as a result of copies provided pursuant to any public records or discovery request. Plaintiffs' similarly waive any and all unpaid costs which KEARNEY may owe as a result of discovery requests or other litigation-related costs. KEARNEY will waive labor, photocopying, and all other fees for obtaining any public records request, up to $2,000.

**SECTION X.          EXECUTION**

The Parties, having reviewed the above terms and conditions, and being in mutual agreement thereto, do hereby execute this Agreement in the following manner:

Dated:   August **29**, 2002

_____
George L. Waas, Esq.
Douglas B. MacInnes, Esq.
Assistant Attorneys General
Department of Legal Affairs
PL-01, The Capitol
Tallahassee, FL 32399-1050

For Defendant Kathleen Kearney

_____
Monique L. Dixon, Esq,
Judith A. Browne, Esq.
Advancement Project
1730 M Street, NW, Suite 401
Washington, D.C. 20036

For Plaintiffs

7

**EXHIBIT D**

SETTLEMENT AGREEMENT
NAACP ET AL. V. SMITH ET AL., CASE NO. 01-0120-CIV
GOLD/SIMONTON

In a joint effort to resolve any and all pending claims, the named Plaintiffs in the above-styled lawsuit, and Defendant Pam Iorio, Hillsborough County Supervisor of Elections ("The Supervisor"), agree and stipulate as follows:

I.      INTRODUCTION

A.      Nothing contained in this Settlement Agreement ("Agreement") shall be considered or interpreted to be an admission of liability or wrongdoing by the Supervisor. The Supervisor has taken an oath to support, protect and defend the Constitution and the laws of the United States and of the State of Florida. The Supervisor is dedicated to act in a manner consistent with the requirements of federal, state, and local election law. Plaintiffs have not alleged that the Supervisor acted in a purposefully discriminatory manner toward any group. It is further understood by the Parties that following the November 2000 general election, new laws, rules, and procedures were implemented in Florida that affect the registration and voting process. The Supervisor contends that these changes have made necessary some of the practices called for within this Agreement. This Agreement is entered into by the Parties in order to resolve this litigation in the most effective and efficient manner for all Parties and in mutual recognition that it is in the Parties' best interest to resolve this matter in lieu of incurring the expense and time of a trial. To the extent that this Agreement states that the Supervisor will "continue" a practice or policy, such language is not an admission by Plaintiffs that the Supervisor has previously undertaken such a practice or policy, nor do Plaintiffs deny such, but reflects the Supervisor's belief that she is merely continuing practices that she engaged in prior to this Agreement.

B.      Unless otherwise set forth herein, nothing in this Agreement creates any administrative duties or judicial remedies or causes of action, with respect to Florida voter registration, election procedures or list maintenance other than exist under relevant state and federal law on the date this Agreement is executed by the Parties. Nothing in this Agreement creates any liability, cause of action or enforcement right under Section II.H of the Agreement against the Supervisor, arising from or related to any action or inaction by third parties, including without limitation the Secretary of State, Division of Elections, Florida Department of Children and Families, Florida Department of Highway Safety and Motor Vehicles, and any Supervisor of Elections of any county other than Hillsborough County, Florida, in response to or as a result of actions undertaken by the Supervisor pursuant to the terms of this Agreement.

C.      The Supervisor's obligations under this Agreement shall not apply to municipal elections that are not conducted in conjunction with a countywide election.

II.     AGREEMENT

In exchange for the Plaintiffs' agreement to file a voluntary dismissal with prejudice of this action against the Supervisor, the Supervisor agrees:

1

A.    Administration of Voting at Precincts

    1.    To continue to maintain a list, within each precinct register, of active and inactive voters within each precinct.

    2.    At least 30 days before each federal, state, or county election, beginning with the 2002 General Election, the Supervisor will provide to Plaintiffs' counsel and make available to the general public a report and supporting documents containing (a) plans for improving the communications system between the polling places and the Supervisor of Election's office, including the number of phone lines (b) which precincts will have computers, the criteria used for assigning the computers to the precincts, and the method for accessing data, and (c) the method by which voters who reside and are registered in Hillsborough County who appear at the wrong precinct will be assisted in finding the location of their correct precinct and polling place.

    3.    The Supervisor plans to gradually increase the number of laptop computers and technicians to operate the computers at precincts.  Increase will depend on funding and successful recruitment of personnel.  The Supervisor will allocate 75 laptop computers for use at precincts during the 2002 General Election and will assign qualified personnel to operate the computers.

    4.    To continue to assign at all times at least one poll worker to each polling site who is trained to instruct voters on the use of the voting equipment.

    5    To continue not to post any sign that states that a voter "must" have photo identification in order to cast a ballot and to continue to provide a form at the check-in table that a voter can complete if he or she does not have any photo identification or does not have identification of the type approved under Florida law.

    6.    Pursuant to Florida's Public Records Law, Chapter 119.07(1)(a), and upon request and without charge to provide to anyone who tries but is not allowed to vote during such election a copy of his or her voter affirmation form or other similar form, along with an explanation for the basis for his or her not being allowed to vote within 60 days of the request.

    7.    To continue the practice of requesting that all poll Clerks complete a survey regarding election day administration and/or the operations at the precinct during the election, after each election, and to continue to make comment cards available at each precinct, for anyone to complete and return to the Supervisor.

B.    Provisional Ballots

    1.    To continue to train all poll clerks on the use of provisional ballots, including the following elements:

        a.    To determine if a voter is in the correct precinct based on the voter's current residential address before giving the voter a provisional ballot, and if the voter is not in the correct precinct, to direct the voter to the correct precinct;

2

      b.     To instruct voters that their ballot will not be counted if they are in the wrong precinct;

      c.     To offer a provisional ballot to any voter who does not receive a regular ballot, even if the Supervisor of Elections' data indicates that the voter is ineligible to vote;

      d.     To offer a provisional ballot to any voter for whom the poll worker is not able to determine eligibility, for example, based on an inability to communicate with the Supervisor of Elections' office or otherwise review countywide voter registration data on Election Day;

      e.     To instruct voters to accurately complete the provisional ballot envelope by supplying all requested information, in order to assist in determining whether or not the voter is eligible to vote, as outlined in section 101.048, Florida Statutes.

   2.    To continue the current practice, following each election, to provide a written explanation by first class mail to the address on the Provisional Ballot Voter's Certificate and Affirmation if available, and if not available, to the address on record in the Supervisor's office, for those persons whose provisional ballots are not counted, disqualified, or "Rejected as Illegal," pursuant to section 101.048(2)(b) of the Florida Statutes, of the reason(s) for the rejection of the provisional ballot.–Beginning with the November 2002 general election, the Supervisor will make reasonable efforts to provide such explanation in a timely manner before the book closing date for the next scheduled election, so long as such book closing date is at least thirty days after the date of the election in which the subject provisional ballots were cast. Should circumstances prevent completion of this task in a timely manner for all provisional ballots, such failure shall not constitute a breach of the Agreement.

   3.    To continue to provide notice of the time and date of the canvassing board meeting where the validity of provisional ballots will be determined pursuant to section 102.141(2), Florida Statutes.

C.    Voter Education

   1.    To continue, upon request, to conduct workshops for persons interested in engaging in voter registration drives, including information regarding provisional ballots.

   2.    To continue outreach activities consistent with Rule 1S-2.033, Florida Administrative Code.

   3.    To continue to work to develop plans to expand voter registration outreach to all voters, including minorities within the community.

D.   Voter Registration

 i. To continue to make reasonable efforts to process (including the mailing of voter registration cards) voter registration applications and registration changes within 30 days of receipt of the application.

 2. To continue to make reasonable efforts to mail voter registration cards, for all new voter registration applications received by book closing date for that election, at least 10 days before the election. To continue to make reasonable efforts to process registration changes received by the book closing date, prior to Election Day, even if new registration cards cannot be sent to those voters, to ensure that on Election Day every eligible voter whose registration or registration change was timely received, is on the voter rolls with their current address and will be able to vote. Inability to meet these deadlines will not constitute a breach of this Agreement.

E.   List Maintenance

 1. To continue to comply with the Supervisor's legal duty to conduct list maintenance in conformance with all state and federal laws. Further, the Supervisor will follow the applicable list maintenance provisions specified in Section III and IV of the Settlement Agreement, dated August 30, 2002, between named Plaintiffs in this lawsuit and the Florida Secretary of State and the Director of the Division of Elections and in communication(s) issued by the Secretary of State or the Division of Elections pursuant thereto.

 2. To provide to Plaintiffs an electronic list of those voters who were placed in canceled status in Hillsborough County as a result of their being in inactive status and failing to vote in the November 7, 2000 election, as the second general election in which such persons did not vote after being placed in inactive status. The list will not include any such persons whose status changed to deceased, active, or other status, after having been placed in canceled status as described above.

 3. To not remove from the voter rolls, or deny registration to, any ex-felon based on a felony conviction outside the State of Florida if the Supervisor knows that such individual's felony conviction occurred in a state that grants automatic restoration of rights to those with felony convictions (including the states identified pursuant to Section III.D of the Settlement Agreement between Plaintiffs and the Secretary of State and the Division of Elections) unless (a) directed differently by the Division or (b) the Court issues a ruling to the contrary.

F.   Ongoing Consultation

 1. In accordance with the Supervisor's current practices of meeting with all members of the public, to meet with Hillsborough County named Plaintiffs and their counsel on at least one occasion at a mutually convenient time to discuss, address, and correct, to the extent possible, the problems encountered by Hillsborough County named Plaintiffs. Plaintiffs have not yet requested a

4

meeting with the Supervisor, and the Supervisor will meet with plaintiffs at a mutually convenient time. Plaintiffs' counsel shall contact the Supervisor's counsel to schedule the meeting.

2. In accordance with the Supervisor's current practices, to continue to meet with representatives of the local NAACP regularly prior to the 2002 General Election and 2004 Elections and solicit their views on what steps are needed to ensure successful elections.

G. Implementation of Statewide Relief

1. To comply with lawful directions from the Secretary of State which the Supervisor is obligated to follow by law implementing any further relief obtained in this litigation, whether through agreement, settlement, or Court order.

2. The Parties agree to incorporate, into this Agreement, Section VIII as fully set forth in the Settlement Agreement, dated August 30, 2002, between named plaintiffs in this lawsuit and the Florida Secretary of State and the Director of the Division of Elections.

H. Enforcement

1. The term of this Agreement shall extend through May 15, 2005. The Parties shall maintain copies of all documents relating to the satisfaction of this Agreement through the May 15, 2005, end date of the Agreement.

2. Plaintiffs' voluntary dismissal of their claims against the Supervisor is based and conditioned on this Agreement and the performance of its obligations. Nothing contained herein shall be interpreted to waive any claims Plaintiffs may make against other Defendants in this litigation, including in particular State Defendants. Unless specifically waived in the Agreement, Plaintiffs have not waived and do not relinquish any rights under federal and state law.

3. Upon execution of the Settlement Agreement, the Parties will file a Joint Motion for Approval of this Agreement and Dismissal With Prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure along with a dismissal with prejudice of all claims against the Supervisor. Upon approval of this Agreement, the Parties will ask the Court to enter a Final Order dismissing with prejudice all claims against the Supervisor consistent with the terms of this Agreement which shall be attached to the Order of Dismissal. This Agreement shall not be effective until entry of the Order dismissing the Supervisor with prejudice. This Agreement is not a consent decree, nor shall it be construed as such, and the Court shall not retain jurisdiction.

4. Notwithstanding the Order of Dismissal, the Parties agree that enforcement of the Agreement shall proceed as follows:

a. If Plaintiffs believe that the Supervisor has materially breached the terms of this Agreement, Plaintiffs' counsel will provide a written notice via traceable U.S. mail or private courier, including but not limited to certified mail with return receipt requested or overnight mail ("Notice")

5

to the Supervisor of the provisions of this Agreement with which they believe the Supervisor has not complied. Such notification shall be sent by Plaintiffs within ten (10) business days of discovery of such alleged breach, and a copy shall be forwarded to the Supervisor's counsel. The Supervisor agrees that, upon receipt of this Notice, the Supervisor will conduct an investigation and respond, in writing, via one of the methods set forth above, to Plaintiffs within ten (10) business days of receipt, such response to be sent to the person who provided notice to the Supervisor. There shall be no award of attorneys' fees or costs to either party for any actions/inactions taken at this stage, regardless of the eventual outcome of the dispute.

b.   If Plaintiffs reasonably believe that the response provided by the Supervisor does not resolve the issue of alleged noncompliance, the Parties may invoke mediation procedures as described in Chapter 9 of the Local Rules of the United States District Court, Middle District of Florida to resolve the matter; provided that Plaintiffs may not file an action pursuant to paragraph 4c, unless mediation occurs or is waived by both Parties. The mediation shall occur in Hillsborough County. The costs of mediation shall be divided evenly between the Parties. Each party to the mediation shall bear its own costs and attorneys' fees. Mediation must occur within thirty days of the Supervisor's written response to the Notice unless otherwise agreed in writing by the Parties. For alleged violations which Plaintiffs, in good faith, reasonably believe may result in immediate and irreparable harm to Plaintiffs, the Notice shall so indicate this belief, and the Parties must then make reasonable efforts to commence Mediation within five business days of the Notice. Neither side is entitled to attorneys' fees or costs for any time devoted to this mediation process, regardless of outcome.

c.   If the issue(s) of alleged noncompliance raised in the Notice is not resolved during mediation, then Plaintiffs' sole recourse is to file a separate action for breach/enforcement of this Agreement in the United States District Court for the Middle District of Florida to enforce the Agreement's terms. The Supervisor will not object to the filing of such a case on the grounds of lack of jurisdiction, or seek to transfer this action to state court. Plaintiffs will not seek to transfer any action under this Agreement to any District Court other than the United States District Court for the Middle District of Florida. Strict compliance with ¶ H(4)(a)-(b) is agreed by the Parties to be a condition precedent to the filing of any such lawsuit. Neither Party may recover attorneys' fees or costs for any such action unless the noncompliance with this Agreement that is the subject of the action is determined by the Court to constitute a separate violation of federal or state law and such fees are provided for pursuant to said law.

5.   The terms of this Agreement are binding on the Supervisor and the Supervisor's successors. This Agreement may be enforced from the date of the Order of Dismissal referred to in ¶ H(3) until May 15, 2005.

6

6.  The Plaintiffs and Supervisor acknowledge that no election is error free. Should the Plaintiffs or their counsel learn of any election related issue during the conduct of any election in Hillsborough County during the term of this Agreement and not otherwise covered by the terms of this Agreement, Plaintiffs may contact the Supervisor, provide specific information on the issue to the Supervisor, and afford an opportunity for the Supervisor to investigate the matter. Within 30 days, Supervisor may meet with Plaintiffs, the aggrieved individuals, and/or their counsel prior to the initiation of any litigation by Plaintiffs or their counsel against the Supervisor relating to any such issue not covered by the terms of this Agreement.

I.  Attorneys' Fees and Costs

1.  Each party to this Agreement shall bear its own attorneys' fees and costs in this action.

3.  The Supervisor will waive all unpaid costs incurred to date by Plaintiffs to obtain public records including photocopying fees and costs.

J.  Public Statement and Press Release

1.  The Parties agree that neither Party will issue any public statement regarding this Agreement until it is formally presented to the Court for its approval.

2.  Upon presentation of this Agreement to the Court, the Parties will issue a joint press release regarding the settlement agreement, the contents of which will be agreed upon by the Parties in advance.

K.  Execution

The Parties having reviewed the above terms and conditions, and being in mutual agreement thereto, do hereby execute this Agreement by counterpart in the following manner.

Dated: August 30, 2002

Pam Iorio, Supervisor of Elections
Hillsborough County, Florida
601 E. Kennedy Blvd., 16th Floor
Tampa, FL 33602

For Defendant

Anita Hodgkiss
Lawyers' Committee For Civil Rights
1401 New York Ave., N.W., Ste. 400
Washington, D.C. 20005

For Plaintiffs

7

**EXHIBIT E**

# SETTLEMENT AGREEMENT
## NAACP ET AL. V. SMITH ET AL., CASE NO. 01-0120-CIV-GOLD/SIMONTON

In a joint effort to resolve any and all pending claims, the named Plaintiffs in the above-styled lawsuit, and Defendant Bill Cowles, Orange County Supervisor of Elections ("Supervisor"), agree and stipulate as follows:

I.   INTRODUCTION

A.   Nothing contained in this Settlement Agreement ("Agreement") shall be considered or interpreted to be an admission of liability or wrongdoing by Supervisor. Supervisor has taken an oath to support, protect, and defend the Constitution and the laws of the United States and of the State of Florida. Supervisor is dedicated to act in a manner consistent with the requirements of all federal, state, and local election laws. Plaintiffs have not alleged that Supervisor acted in a purposefully, discriminatory manner toward any group. It is further understood by the parties that following the November 2000 general election, new laws, rules, and procedures were implemented in Florida that affect the registration and voting process. Supervisor contends that these changes have made necessary some of the practices called for within this Agreement. This Agreement is entered into by the parties in order to resolve this litigation in the most effective and efficient manner for all parties and in mutual recognition that it is in the parties' best interest to resolve this matter in lieu of incurring the expense and time of a trial. To the extent that this Agreement states that Supervisor will "continue" a practice or policy, such language is not an admission by Plaintiffs that Supervisor has previously undertaken such a practice or policy, nor do Plaintiffs deny such, but reflects Supervisor's belief that he is merely continuing practices that he engaged in prior to this Agreement.

B.   Unless otherwise set forth herein, nothing in this Agreement creates any administrative duties or judicial remedies or causes of action, with respect to Florida voter registration or election procedures other than exist under relevant state and federal law on the date this Agreement is executed by the parties. Nothing in this Agreement creates any liability, cause of action, or enforcement right under Section II. H of the Agreement against the Supervisor, arising from or related to any action or inaction by third parties, including without limitation the Secretary of State, Division of Elections, Florida Department of Children and Families, Florida Department of Highway Safety and Motor Vehicles, and any Supervisor of Elections of any county other than Orange County, Florida, in response to or as a result of actions undertaken by Defendants in this case pursuant to the terms of this Agreement.

C.   Supervisor's obligations under this Agreement shall not apply to municipal elections that are not conducted in conjunction with a countywide election.

1

II.     AGREEMENT

In exchange for the Plaintiffs' agreement to file a voluntary dismissal with prejudice of this action against Supervisor, Supervisor agrees as follows:

    A.     Administration of Voting at Precincts

        1.     To maintain a list, in electronic format, of active and inactive voters as defined in section 98.065(5) of the Florida Statutes in all precincts.

        2.     At least 30 days before each federal, state, or county election, beginning with the 2002 general election, Supervisor will provide to Plaintiffs' counsel and make available to the general public a report and supporting documents containing (a) his plans for improving the communications system between the polling places and the Supervisor of Election's office, including the number of phone lines (b) whether all precincts will have computers and, if not, which precincts will have computers and the criteria used for assigning the computers to the precincts and the method for accessing data (c) the method by which voters who reside and are registered in Orange County who appear at the wrong precinct will be assisted in finding the location of their correct precinct and polling place.

        3.     Supervisor plans to continue to seek funding sufficient to permit him to assign computers to every polling place for all presidential preference primary, primary, and general elections.

        4     To continue to assign at all times at least one poll worker to each polling site who is trained to instruct voters on the use of the voting equipment.

        5     To continue not to post any sign that states that a voter "must" have photo identification in order to cast a ballot and to continue to provide a form at the check-in table that a voter can complete if he or she does not have any photo identification or does not have identification of the type approved under Florida law.

        6.     Pursuant to Florida's Public Records Law, Chapter 119.07(1)(a), and upon request and without charge, to provide to anyone who tries but is not allowed to vote during such election, a copy of his or her voter affirmation form or other similar form, along with an explanation for the basis for their not being allowed to vote, within sixty (60) days of the request.

        7.     Following each election, to request that all Poll Clerks complete a survey regarding election day administration and/or the operations at the precinct during the election.

B.    Provisional Ballots

    1.    To continue to train all Poll Clerks on the use of provisional ballots. Beginning with the 2002 general election, Supervisor agrees to ensure that the following elements are included in such training:

        a.    To determine if a voter is in the correct precinct based on the voter's current residential address before giving the voter a provisional ballot, and if the voter is not in the correct precinct, to direct the voter to the correct precinct;

        b.    To instruct voters that their ballot will not be counted if they are in the wrong precinct;

        c.    To offer a provisional ballot to any voter who asserts that he or she is eligible to vote, even if the Supervisor of Election's data indicates that the voter is ineligible to vote;

        d.    To offer a provisional ballot to any voter for whom the poll worker is not able to determine eligibility, for example, based on an inability to communicate with the Supervisor of Elections' Office or otherwise review countywide voter registration data;

        e.    To instruct voters to accurately and completely supply all of the information requested on the provisional ballot envelope in order to assist in determining whether or not the voter is eligible to vote, as outlined in section 101.048, Florida Statutes.

    2.    Following each election, to provide a written explanation by first class mail to the address on record in Supervisor's office for those persons whose provisional ballots are not counted, disqualified, or "Rejected as Illegal," pursuant to section 101.048(2)(b) of the Florida Statutes, of the reason(s) for the rejection of the provisional ballot.

    3.    To provide notice of the time, location, and date of the canvassing board meeting where the validity of provisional ballots will be determined pursuant to Chapter 102.141(2), Florida Statutes.

C.    Voter Education

    1.    To continue, upon request, to conduct workshops for persons interested in engaging in voter registration drives.

    2.    To continue outreach activities consistent with Rule 1S-2.033, Florida Administrative Code.

    3.    To continue to work to develop plans to expand voter registration outreach to all voters, including minorities within the community.

3

4.   To the extent practicable to provide information regarding provisional ballots to voters, as well as of the right of persons who complete affirmations and are not allowed to vote to request copies of such affirmation.

D.   Voter Registration

1.   To continue to make reasonable efforts to complete and mail voter registration cards to all voters from whom valid voter registration applications were received (whether for a new registration or a change of an existing registration), within thirty (30) days of receipt of the application, or, if the application is received on the book closing date, at least ten (10) days prior to the election.

2.   If requested, to provide a receipt for each voter registration application to each person applying in person at the Supervisor of Election's Office, or delivering five or fewer individual applications to the Supervisor of Election's Office, indicating the date received and the name of the employee receiving the application(s). Supervisor agrees to post a sign informing the public that a receipt for their voter registration application(s) is/are available upon request.  Supervisor agrees to train his employees to inform applicants that receipts are available.  A receipt for a submitted application shall not be considered evidence that the application is complete or valid.

3.   To continue to make reasonable efforts to contact voters whose incomplete application(s) is/are received and processed by Supervisor before the registration closing date of an election.   A letter from Supervisor indicating that the application is incomplete shall be considered reasonable efforts under this paragraph.

E.   List Maintenance

1.   To comply with the Supervisor's legal requirements to conduct list maintenance in conformance with all state and federal laws, and as directed by the Division of Elections, as such direction is specified in Sections III and IV of the Settlement Agreement, dated August 30, 2002, between the Plaintiffs in this lawsuit and the Secretary of State of Florida and the Director of the Division of Elections, and in communication(s) issued by the Secretary of State or the Division of Elections pursuant thereto.

2.      To provide to Plaintiffs an electronic list of those voters who were placed in canceled status in Orange County as a result of their being in inactive status and failing to vote in the November 7, 2000 election, as the second general election in which such persons did not vote after being placed in inactive status.  The list will not include any such persons whose status changed to deceased, active, or other status, after having been placed in canceled status as described above.

3.      To not remove from the voter rolls, or deny registration to, any ex-felon based on a felony conviction outside the State of Florida if Supervisor knows that such individual's felony conviction occurred in a state that grants automatic restoration of rights to those with felony convictions (including the states identified pursuant to Section III D of the Settlement Agreement between Plaintiffs and the Secretary of State and Division of Elections) unless (a) directed differently by the Division or (b) the Court issues a ruling to the contrary.

F.      Ongoing Consultation

1.      In accordance with his current practices of meeting with all members of the public, to meet with Plaintiff Consuelo Maria Graham and her counsel upon their request at a mutually convenient time, so long as the request is received by Supervisor prior to October 8, 2002, to discuss, address, and correct, to the extent possible, the problems encountered by Ms. Graham during the 2000 election.  Plaintiffs' counsel shall contact Supervisor's counsel to schedule any requested meeting.

2.      In accordance with his current practices, to continue to meet with representatives of the local NAACP on a regular basis. Also, Supervisor agrees to meet with the representative of the local NAACP, and at its discretion its counsel, at least one month prior to the 2002 General Election, the 2004 Presidential Preference Primary, the 2004 First Primary Election, and the 2004 General Elections and solicit their views on what steps are needed to ensure successful elections.

G.      Implementation of Statewide Relief

1.      To comply with lawful directions from the Secretary of State which Supervisors of Elections are obligated to follow by law, implementing any further relief obtained in this litigation, whether through agreement, settlement, or Court order.

2.      The parties incorporate as if fully set forth herein, Section VIII of the Settlement Agreement, dated August 30, 2002, between the Plaintiffs in this lawsuit and the Secretary of State of Florida and the Director of the Division of Elections.

5

H.   Enforcement

1.   The term of this Agreement shall extend through May 15, 2005.   The parties shall maintain copies of all documents relating to the satisfaction of this Agreement through the May 15, 2005, end date of the Agreement.

2.   Plaintiffs' voluntary dismissal of their claims against Supervisor is based and conditioned on this Agreement and the performance of its obligations. Nothing contained herein shall be interpreted to waive any claims Plaintiffs may make against other Defendants in this litigation, including in particular State Defendants.   Unless specifically waived in the Agreement, Plaintiffs have not waived and do not relinquish any rights under federal and state law.

3.   Upon execution of the Settlement Agreement, the parties will file a Joint Motion for Approval of this Agreement and Dismissal With Prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure along with a dismissal with prejudice of all claims against Supervisor.   Upon approval of this Agreement, the parties will ask the Court to enter a Final Order dismissing with prejudice all claims against Supervisor, consistent with the terms of this Agreement which shall be attached to the Order of Dismissal.   This Agreement shall not be effective until entry of the Order dismissing Supervisor with prejudice.   This Agreement is not a consent decree, nor shall it be construed as such, and the court shall not retain jurisdiction.

4.   Notwithstanding the Order of Dismissal, the parties agree that enforcement of the Agreement shall proceed as follows:

a.   If Plaintiffs believe that Supervisor has materially breached the terms of this Agreement, Plaintiffs' counsel will provide a written notice to Supervisor via traceable U.S. mail or private courier (including, but not limited to, certified mail with return receipt requested, overnight mail and Federal Express) ("Notice"), of the provisions of this Agreement with which they believe Supervisor has not complied.   Such notification shall be sent by Plaintiffs within ten (10) business days of discovery of such alleged breach, and a copy shall be forwarded to Supervisor's counsel. Supervisor agrees that, upon receipt of this Notice, Supervisor will conduct an investigation and respond, in writing via one of the methods set forth above to Plaintiffs within ten (10) business days of receipt. Supervisor will forward such response to the person who provided notice to Supervisor.   There shall be no award of attorneys' fees or costs to either party for any actions/inactions taken at this stage, regardless of the eventual outcome of the dispute.

b.   If Plaintiffs reasonably believe that the response provided by Supervisor does not resolve the issue of alleged noncompliance, the parties may invoke the mediation procedures described in

6

Chapter 9 of the Local Rules of the United States District Court, Middle District of Florida, to resolve the matter; provided that Plaintiffs may not file an action pursuant to paragraph 4c, unless mediation occurs or is waived by both parties. The mediation shall occur in Orange County. The costs of mediation shall be divided evenly between the parties. Each party to the mediation shall bear its own costs and attorneys' fees. Mediation must occur within thirty days of Supervisor's written response to the Notice unless otherwise agreed to by the parties. For alleged violations which Plaintiffs, in good faith, reasonably believe may result in immediate and irreparable harm to Plaintiffs, the Notice shall so indicate this belief, and the parties must then make reasonable efforts to commence Mediation within five business days of the Notice. Neither side is entitled to attorneys fees or costs for any time devoted to this mediation process, regardless of outcome. The Parties shall conduct the Mediation in good faith in an attempt to resolve the matter(s) contained in the Notice, and shall therefore have a representative, with full authority to settle the dispute, attend the mediation.

c.    If the issue(s) of alleged noncompliance is/are not resolved during mediation, then Plaintiffs sole remedy is to file a separate action for breach/enforcement of this Agreement in the United States District Court for the Middle District of Florida to enforce the Agreement's terms. Supervisor will not object to the filing of a case under this agreement on the grounds of lack of jurisdiction or seek to transfer this action to state court. Plaintiffs will not seek to transfer a case under this agreement to any District other than the United States District Court for the Middle District of Florida. Strict compliance with ¶ H(4)(a)-(b) is agreed by the parties to be a condition precedent to the filing of any such lawsuit. The parties shall bear their own attorneys' fees and costs in connection with any such lawsuit to enforce and any proceedings related thereto.

5.    The terms of this Agreement are binding on Supervisor and Supervisor's successors. This Agreement may be enforced from the date of the Order of Dismissal referred to in ¶ H(3) until May 15, 2005.

6.    The Plaintiffs and Supervisor acknowledge that no election is error free. Should the Plaintiffs or their counsel learn of any election related issue during the conduct of any election in Orange County during the term of this Agreement not otherwise covered by the terms of this Agreement, Plaintiffs may contact Supervisor, provide specific information on the issue to Supervisor, and afford an opportunity for Supervisor to investigate the matter. Within thirty (30) days, Supervisor may meet with Plaintiffs, the aggrieved individuals, and/or their counsel prior to the initiation of any

7

litigation by Plaintiffs or their counsel against Supervisor relating to any such issue not covered by the terms of this Agreement.

I.   **Attorneys' Fees and Costs**

   1.   Each party to this Agreement shall bear its own attorneys' fees and costs in this action.

   2.   Supervisor will waive all unpaid costs incurred to date by Plaintiffs to obtain public records including photocopying fees and costs.

J.   1.   The parties agree that neither party will issue any public statement regarding this Agreement until it is formally presented to the Court for its approval.

   2.   Upon presentation of this Agreement to the Court, the parties will issue a joint press release regarding the settlement agreement, the contents of which will be agreed upon by the parties in advance.

K.   **Execution**

   1.   The Parties having reviewed the above terms and conditions, and being in mutual agreement thereto, do hereby execute this Agreement in the following manner.

Dated:  August 30, 2002

Michael D. Cirullo, Jr.
Goren, Cherof, Doody & Ezrol, P.A.
3099 East Commercial Blvd., Suite 200
Fort Lauderdale, FL 33308

Todd A. Cox
NAACP Legal Defense and
Educational Fund, Inc.
1444 I Street, N.W., 10th Floor
Washington, D.C.  20005

For Defendant Bill Cowles

For Plaintiffs

\\JGCDE_FS\LIBRARY\2001\010041\Orange County Settlement Doc 3 (8-30-02) final.doc

8